## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **Ohio A. Philip Randolph Institute**, *et al*., | Case No.: 1:18-cv-00357-TSB |
| Plaintiffs, | Judge Timothy S. Black |
| vs. | Judge Karen Nelson Moore |
| | Judge Michael H. Watson |
| **Ryan Smith**, Speaker of the Ohio House of Representatives, *et al.*, | Magistrate Judge Karen L Litkovitz |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF MOTION OF REPUBLICAN CONGRESSIONAL DELEGATION, OHIO VOTERS, AND REPUBLICAN PARTY ORGANIZATIONS TO INTERVENE

In their *Second Amended Complaint* (ECF No. 37) (the "**SAC**"), Plaintiffs, a collection of special interest groups, Democratic Party organizations, and alleged registered Democratic voters, seek a declaration from this Court that Ohio's 2011 congressional plan, 129 Sub. H.B. 369 (2011) (the "**2011 Plan**") violates the First Amendment, the Fourteenth Amendment, and the Elections Clause of the U.S. Constitution. They argue that the 2011 Plan was drawn to "dilute the votes of individual voters" and the Plan acts to "deprive[]" voters of "their right to cast a meaningful vote." (SAC ¶ 2). And they seek to enjoin the use of the 2011 Plan for "any future elections of Ohio U.S. congressional members" in 12 of Ohio's 16 districts. (*Id.* at 51, ¶ E).

Although Plaintiffs allege their votes are "diluted" by the 2011 Plan, they do not allege their districts are malapportioned. *Compare Larios v. Cox*, 300 F. Supp. 2d 1320, 1352-1353 (N.D. Ga. 2004) (striking down legislative district plan after finding it was malapportioned to confer a partisan advantage on the Democratic Party). Instead, Plaintiffs theorize their vote is "diluted" because the alleged ideological composition of the voters in their districts makes it less

likely that their preferred candidates will win. In truth, then, Plaintiffs are asserting a right to representation by congressional representatives who share their policy and political views.

Intervenor Applicants, therefore, have a significant legal interest in the outcome of these proceedings. The Member Intervenor Applicants are incumbent representatives of Ohio's 1st, 2nd, 4th, 5th, 6th, 7th, 8th,10th, 14th, and 15th districts—all of which Plaintiffs challenge. They are also registered Republican voters and residents of those districts. They have invested significant amounts of time interacting with and serving their constituents, fundraising, and electioneering, all based on a district configuration that has existed for four election cycles. Redistricting the state for the 2020 elections would be significantly disruptive, costly, and would impair their own rights.

The Party Intervenor and Voter Intervenor Applicants are likewise affected by this action. The Party Intervenor Applicants are the Republican county parties for Ohio's two largest counties that include seven of the challenged districts. Plaintiffs' proposed relief—among other things, removing voters from the challenged districts because they support the Party Intervenor Applicants—impair their ability to organize the voters in their counties, to work with candidates running for Congress in the districts within their respective counties, and to engage in electioneering and political activity designed to promote the party, its candidates, and its values and policy positions. Similarly, the Voter Intervenor Applicants are registered voters, Republican activists, and residents of four of the challenged districts. If Plaintiffs' alleged right to enhanced representation exists, the Voter Intervenor Applicants have that same right. But their political and policy views, as Republican Party voters, differ from Plaintiffs'. Plaintiffs can only vindicate their interest in enhanced representation by diminishing the exact same interests of the

Applicants. Accordingly, to the extent Plaintiffs have a personal interest in this case, the Voter Intervenor Applicants do as well.

These substantial and important legal interests are not adequately represented by the existing defendants in this case, who consist of constitutional officers of Ohio government whose interests are not aligned to the personal rights and interests of the Intervenor Applicants. Moreover, trial in this matter is not set to occur until March 4, 2019 (ECF No. 41), by which time there will be a new Secretary of State and a new General Assembly, all of whom will have leadership, beliefs, and priorities that are unknowable. Permitting Intervenor Applicants to intervene will ensure that these unique and important interests are represented and that this Court has the benefit of the evidence and legal argument Intervenor Applicants can provide.

## THE PROPOSED INTERVENORS

The Intervenor Applicants represent a diverse coalition of registered voters, county political parties, and congressional representatives, all whose interests will be directly impacted by the relief Plaintiffs are pursuing in this action.

The Member Intervenor Applicants are the incumbent representatives of Ohio's 1st, 2nd, 4th, 5th, 6th, 7th, 8th, 10th, 14th, and 15th districts. They are all members of the Republican Party, all registered voters in the district, and all intend to run for election as representative of those districts in 2018 and 2020. Rep. Steve Chabot is the member of the United States House of Representatives for the OH-01 district. Rep. Brad Wenstrup is the member of the United States House of Representatives for the OH-02 district. Rep. Jim Jordan is the member of the United States House of Representatives for the OH-04 district. Rep. Bob Latta is the member of the United States House of Representatives for the OH-05 district. Rep. Bill Johnson is the member of the United States House of Representatives for the OH-06 district. Rep. Bob Gibbs is the

member of the United States House of Representatives for the OH-07 district. Rep. Warren

Davidson is the member of the United States House of Representatives for the OH-08 district.

Rep. Michael Turner is the member of the United States House of Representatives for the OH-10

district. Rep. Dave Joyce is the member of the United States House of Representatives for the

OH-14 district. Rep. Steve Stivers is the member of the United States House of Representatives

for the OH-15 district.

  The Voter Intervenor Applicants are qualified and registered electors in Ohio, who

regularly vote and who intend to vote in the 2018 and 2020 general elections. They are members

of the Republican Party, normally vote for Republican congressional candidates, plan to vote for

such candidates in the future, and support the current members of Ohio's Republican

congressional delegation. In addition, they invest time volunteering for Republican candidates

and in Republican Party organizations. Robert F. Bodi is a resident of Westlake, Ohio, within the

16th congressional district. Roy Palmer III is a resident of Toledo, Ohio, within the 9th

congressional district. Charles Drake is a resident of Cleveland Heights, Ohio, within the 11th

congressional district. Nathan Aichele is a resident of Columbus, Ohio, within the 3rd

congressional district.

  Finally, the Party Intervenor Applicants are the county Republican parties of the two

most populous counties in Ohio. The RPCC is dedicated to promoting the principles of the

Republican Party in Cuyahoga County, recruiting and developing candidates, organizing

grassroots activists, endorsing and promoting candidates, and mobilizing voters. Similarly, the

FRCP is dedicated to promoting the principles of the Republican Party in Franklin County, and

engages in similar political activity in Franklin County as the RPCC engages in Cuyahoga

County. The Party Intervenor Applicants each have hundreds of members of their respective

central and executive committees, substantially all of whom are registered voters and residents of Cuyahoga and Franklin Counties, respectively, and many of whom have been activists in the Republican Party for years or decades.

## ARGUMENT

### I.     Applicable Law of Intervention

Intervenor Applicants petition the Court for intervention by right pursuant to Fed. R. Civ. P. 24(a) and for permissive intervention pursuant to Fed. R. Civ. P. 24(b). The Intervenor Applicants meet the standard for intervention under both prongs.

Broadly speaking, Rule 24(a) allows a non-party to intervene by right when it "stands to have its interests harmed" by the case. *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 670 n.13 (6th Cir. 2004). The Sixth Circuit has held that Rule 24 should be "broadly construed in favor of potential intervenors." *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007) (quoting *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir. 1991)). Pursuant to that policy in favor of intervention, "close cases should be resolved in favor of recognizing an interest under Rule 24(a)." *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) (quoting *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997)). A proposed intervenor must establish four factors in order to intervene by right:

> (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest.

*Granholm*, 501 F.3d at 779 (citing *Grutter*, 188 F.3d at 397–398).

Permissive intervention under Rule 24(b) provides, "[o]n timely motion, the court may permit anyone to intervene who…has a claim or defense that shares with the main action a

common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Rule 24(b) therefore "grants the district court discretionary power to permit intervention if the motion is timely…and applicant's claim or defense and the main action have a question of law or fact in common." *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir. 1991) (citing *NAACP v. New York*, 413 U.S. 345, 365–66 (1973)). When considering permissive intervention, the Court should consider whether "the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* at 951.

For the reasons that follow, Intervenor Applicants are entitled to intervene by right and have shown that the Court should grant Intervenor Applicants permissive intervention in this case.

## II.    The Motion to Intervene Is Timely

The Intervenor Applicants' request for intervention is timely under settled Circuit precedent. Courts evaluate timeliness using five factors, while recognizing that "the determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances…" *United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001) (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)). Those five factors are:

>    (1) the point to which the suit has progressed;
>
>    (2) the purpose for which intervention is sought;
>
>    (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case;
>
>    (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his interest in the case, to apply promptly for intervention; and
>
>    (5) the existence of unusual circumstances militating against or in favor of intervention.

*Id.* In this case, the five *Tennessee* factors establish that this Motion was timely filed.

This action was first commenced in late May 2018, and the SAC was filed on July 11, 2018. The deadline to file answers to the SAC is July 20, 2018. (*See* ECF No. 41). This action has not progressed beyond the pleading stage and the exchange of initial disclosures.

The Intervenor Applicants have intervened early in the case, within two months of its filing date and on or before the deadline for existing parties to file a responsive pleading. The Intervenor Applicants will, if granted intervention in this case, be prepared to proceed on the current case management schedule. Given the minimal progress in this case, and the several months remaining for discovery and trial, the Intervenor Applicants' admission to this case will not materially disrupt the existing parties' litigation strategies. Thus, no prejudice will flow to the existing parties by virtue of intervention. This is particularly true when the Southern District of Ohio allows intervention even "on the eve of a preliminary injunction hearing" when fundamental rights are at stake. *Shreve v. Franklin County, Ohio*, No. 2:10-cv-644, 2010 WL 5173162, *3 (S.D. Ohio Dec. 14, 2010) (allowing the Government to intervene only a few days before a preliminary injunction hearing in a class action involving allegations of excessive force being used against prisoners). As this is a case about fundamental rights and the composition of the State's congressional delegation, intervention at the pleading stage is well within the bounds of this court's precedent. The Court should therefore conclude the motion was timely asserted.

III.    **The Intervenor Applicants Meet The Legal Requirements For Intervention By Right**

Here, the Intervenor Applicants meet the remaining legal requirements for intervention by right pursuant to Fed. R. Civ. P. 24(a). For the reasons that follow, the Intervenor Applicants have a substantial legal interest in the subject matter of this case, that interest is not adequately represented by the existing defendants, and would be impaired by the relief Plaintiffs seek.

### A. The Intervenor Applicants Have A Substantial Legal Interest In the Subject Matter of the Case

The Intervenor Applicants, as incumbent congressional representatives, political parties, and registered voters and advocates, have a substantial legal interest in this litigation. Plaintiffs seek, in this litigation, to expand the concept of the right to vote in a way that preferences Plaintiffs over other Ohio citizens. Plaintiffs seek to do so under the guise of avoiding a so-called "dilution" of the strength of their votes they contend was caused by the configuration of their districts by the 2011 Plan. However, "dilution" as the term is commonly understood refers to a manipulation of the population size of the districts to yield a political or other advantage. *See Larios*, 300 F. Supp. 2d at 1352-1353. No malapportionment claim has been asserted here, however. Thus, Plaintiffs' claim boils down to a claim of a right to representation by congressional representatives who share their policy and political views—i.e., a right to win.

If that right exists, the Voter Intervenor Applicants (which include the Member Intervenor Applicants who, of course, are voters themselves) have the same right. But the Voter Intervenor Applicants, as Republican Party members, have different policy and political views from Plaintiffs, who are Democratic Party members. Plaintiffs can only vindicate their interest in enhanced representation by diminishing the exact same interests of Voter Intervenor Applicants, including by obtaining court assistance in removing the congressional representatives they support from office. Accordingly, to the extent Plaintiffs have a personal interest in this case, the Voter Intervenor Applicants do as well.[1] These voters wish to participate in this lawsuit to assist

---

[1] This same principle applies however Plaintiffs frame their amorphous and easy-to-manipulate theory. For example, even if they claim they seek only a "fair shot" at representation by Democrats, not representation by Democrats itself, the theory is no less a zero-sum game. Plaintiffs can only obtain a "fair shot" by defining it in some way that prejudices what other voters may view as a "fair shot," thereby rigging the system in their favor. At a minimum, the Voter Intervenor Applicants have an interest in ensuring that this litigation does not result in a skewed map in favor of Plaintiffs' asserted interests.

this court in properly interpreting the applicable law and to thereby ensure that the interest the Plaintiffs purport to assert do not end up compromising the interests of others.

Courts in this circuit have allowed voters to intervene in cases implicating their right to vote, even when they were on the same side as a governmental entity.  *See, e.g.*, *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 571 n.2 (6th Cir. 2004) (noting that voters were granted permissive intervention by the district court shortly before hearing on motion for preliminary injunction); *Miller v. Blackwell*, 915 F. Supp. 916, 919 (S.D. Ohio 2004) (allowing registered voters who had filed pre-election challenges to the eligibility of voters to intervene in a lawsuit regarding whether such challenges are constitutional); *League of Women Voters of Ohio v. Blackwell*, 234 F.R.D. 388, 389-90 (N.D. Ohio 2005) (permitting individual voter to intervene in action challenging problems with electronic voting machines). Accordingly, the Voter Intervenor Applicants have a substantial legal interest in the subject matter of the case.

The Member Intervenor Applicants have a substantial interest in the subject matter of this case, as it involves the legality of the district they were elected to represent. As noted *supra*, the Member Intervenor Applicants represent the challenged districts in this case, providing a direct and concrete interest in the subject matter of the litigation. *See Johnson v. Mortham*, 915 F. Supp. 1529, 1538 (N.D. Fla. 1995) (granting leave to intervene to a representative from a challenged district) *cf. Gill v. Whitford*, No. 16-1161, slip op. 14–17 (June 18, 2018) (holding that in partisan gerrymandering case, like racial gerrymandering cases, district-specific injury for a particular party is a prerequisite to Article III standing).

As numerous courts have recognized, elected members from a challenged district may intervene as a matter of right under Rule 24 due to, *inter alia*, their "personal interest" in their office, their interests in the timing and form of relief, and in their continued incumbency. *See,*

*e.g.*, *Johnson*, 915 F. Supp. at 1538 ("Congresswoman…whose congressional district is being challenged in the case at bar, is entitled to intervene as of right."); *id.* ("Elected officials have personal interests in their office sufficient to give them standing when the district they represent is subject to a constitutional challenge."); *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 188–89 (5th Cir. 1989) (noting that in their individual capacity, elected officials have "personal interests in their office," "equitable interests in the remedy fashioned by the court," as well as an interest in their "ability to protect their continued tenure" such that intervention as a matter of right would be appropriate); *Cf. Williams v. State Bd. of Elections*, 696 F. Supp. 1563, 1571–72 (N.D. Ill. 1988) (holding that because "sitting elected [officials] have at the very least a colorable claim to their office" and that "if the plaintiffs should prevail, these [sitting officials] may have an equitable interest in the timing and nature of the relief to be ordered by the court, if only because many of them are likely to be candidates for election or retention even if their offices are declared vacant or their terms of office are truncated," such that they must be joined as necessary parties under Fed. R. Civ. P. 19(a)(2)).[2] *See also Martinez v. Bush*, 234 F. Supp. 2d 1275, 1287 (S.D. Fla. 2002) (congressional

---

[2] Intervenor Applicants acknowledge that a three-judge panel denied intervention to Michigan's congressional delegation in a "gerrymandering" case. Order, *League of Women Voters of Michigan v. Johnson*, No. 17-cv-14148, ECF No. 47 (filed E.D. Mich. Apr. 4, 2018) (three-judge panel). But *Johnson* should not be treated as persuasive authority. First, it was made without the benefit of the precedents cited above being presented to the court in the briefing, and consequently, the court gave them no treatment in its decision. Second, the decision relied on the absence of a specific "property interest" in elected office to distinguish elected officials from voters with a generalized interest. *Id.* ¶ 8 *et seq.* That binary reasoning between property or generalized interest is faulty, as was noted by the Fifth Circuit in *League of United Latin Am. Citizens, Council No. 4434*, "'[A]n officer's interest in his elected position, though not 'property' in the conventional sense, is a recognizable interest for purposes of procedural due process analysis.'" 884 F.2d at 188–89 (quoting *Tarrant County v. Ashmore*, 635 S.W.2d 417, 422 (Tex.), *cert. denied,* 459 U.S. 1038 (1982)). Third, these Intervenor Applicants include more than simply the congressional delegation; they include county political parties and voters. And fourth, *Johnson* is currently on appeal to the Sixth Circuit.

representatives permitted to intervene in racial gerrymandering case). In addition to those traditional reasons to permit congressional intervention in redistricting cases, the Member Intervenor Applicants have invested considerable time and money building coalitions of supporters in their districts, learning their districts, serving the needs of their constituents, raising and spending money on electioneering activities, among other activities. Those settled interests would be upset by a hasty reconfiguration of their district lines, particularly where the districts will be-drawn only two years later. In addition, there is a possibility that, if a remedial plan is ordered in this case, the remedial plan could pair two or more of the Member Intervenor Applicants in the same district, which would impede their ability to run for their seats.

Finally, the Party Intervenor Applicants similarly have a substantial legal interest in these proceedings. The RPCC is the county party for Cuyahoga County, which contains four congressional districts – CD-9, CD-11, CD-14, and CD-16 – that Plaintiffs challenge in this case for different reasons. (SAC ¶ 111). The FCRP is the county party for Franklin County, which contains three congressional districts – CD-3, CD-12, and CD-15 – which Plaintiffs similarly challenge. (*Id.* ¶ 117-119). The members of the central and executive committees of the Party Intervenor Applicants are hundreds of Republican Party voters, donors, and activists who reside in the respective counties, and are registered to vote in the same.

The Party Intervenor Applicants politically organize the voters in Cuyahoga and Franklin Counties, work with candidates running for the House of Representatives in the districts within their respective counties, and engage in a plethora of electioneering and political activity designed to promote the party, its candidates, and its values and policy positions. They, and the voters they serve, are directly impacted by Plaintiffs' attempt to assert a right to representation by congressional representatives who share the policy and political views of the Democratic

Party. Plaintiffs can only vindicate their interest in enhanced representation at the expense of the Party Intervenor Applicants' ability to serve their mission, including by obtaining court assistance in removing Republican congressional representatives from office and forcing the Party Intervenor Applicants to invest considerable time and expense learning and adapting to new congressional districts for the 2020 general elections, only to have to do the whole process over again two years later when the state is reapportioned.

For all these reasons, Intervenor Applicants respectfully represent that they have a substantial legal interest in these proceedings sufficient to warrant intervention by right.

## B. The Intervenors' Ability To Protect Their Interest May Be Impaired In The Absence of Intervention

"To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) (quotations omitted).

Here it is certain that the Party Intervenor and Voter Intervenor Applicants' asserted interests will be compromised because Plaintiffs are claiming a right that is incompatible with the same right in the hands of anyone who holds different political and policy views. The Plaintiffs seek the Court's assistance in changing the shape of representation in Ohio, and, because the Court cannot add congressional districts, it can only enhance Plaintiffs' representational power at the expense of others' power. At a minimum, it is at least "possible" that this will occur, and the Party Intervenor and Voter Intervenor Applicants have an interest in ensuring that Plaintiffs do not use this Court's equitable powers as a vehicle for partisan gerrymandering in their favor. *See id.* at 400 (finding that the impairment prong is satisfied when the would-be intervenor can show that "to some extent" the relief sought by the Plaintiff would diminish their *status quo* position).

The Member Intervenor Applicants likewise meet this "minimal burden." *Grutter*, 188 F.3d at 399. If the Plaintiffs can obtain their desired relief it will, to "some extent" impair, *inter alia*, their "personal interest" in their office, their interests in the timing and form of relief, and in their continued incumbency. *See id.* at 400.

The Intervenor Applicants have met the minimal burden of the impairment prong.

## C.     The Parties Already Before The Court Cannot Adequately Protect The Intervenor Applicants' Interests

In order to demonstrate entitlement to intervene by right, The Voter Intervenor Applicants "need only show that there is a *potential* for inadequate representation." *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (quoting *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999) and noting emphasis in original). Here, it is clear that Plaintiffs do not adequately represent the interests of the Intervenor Applicants, all of whom are Republicans, given that Plaintiffs are all Democrats and seek contrary relief.

The existing defendants in this action – the Secretary of State, the President of the Ohio Senate, and the Speaker of the Ohio House of Representatives – likewise do not adequately represent the interests of the Intervenor Applicants. As the Sixth Circuit held in *Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999 (6th Cir. 2006), adequacy of representation cannot be presumed simply because the proposed intervenor seeks the same ultimate result as an existing defendant; the distinct nature of the proposed intervenor's role and interests must be considered. *Id.* at 1008 (permitting the General Assembly to intervene in election law controversy, despite seeking the same result as the defendant Secretary of State, because of the "independent interest" the General Assembly had in defending the validity of Ohio law).

13

Here, the "independent interest" of the Intervenor Applicants' representational interests are much more personal and fundamental than those of the proposed intervenor in *Blackwell*. Defendants, constitutional officers of Ohio's government sued only in their official capacities, are not acting in the capacity of a congressional representatives with the unique challenges faced by the Member Intervenor Applicants here. They do not act in the capacity of a voter who faces the threat of having his or her district reconfigured prematurely, suddenly, and in a manner detrimental to the voter's interests. And they do not act in the capacity of a political party, like the RPCC or the FCRP, who must scramble and spend precious resources of time and money to adapt to such a reconfiguration, particularly where such a reconfiguration had the effect of harming their ability to conduct voter outreach, mobilization, to support candidates, and to promote the values, beliefs, and candidates of the Republican Party.

The presence of the Republican congressional delegation, county parties, and voters, the Intervenor Applicants believe, is now required to adequately protect their interests. As such, they have moved to intervene. The Intervenor Applicants oppose the relief that the Plaintiffs seek and the existing defendants cannot represent the unique local interests of each district, and the injury of partisan gerrymandering on either, as they are statewide officials. *Cf. Gill*, slip op. 14–16 (distinguishing between state-wide and district-specific injury and effect).

In addition, this case will be tried on March 4, 2019—after the November 6, 2018 general election in which Ohio voters will elect a new Secretary of State (as Secretary Husted is term-limited and running for Lieutenant Governor) and a new General Assembly (all House districts are up for election, and half the Senate districts are). Thus, the Secretary of State in office when the case is tried will not be Secretary Husted, and the General Assembly of 2019 will not be the same as it is in 2018. The composition, leadership, priorities, and interest(s) of the Secretary of

State in office in 2019, and those of the Houses of the General Assembly as it will be constituted in 2019, are unknowable. Any change in interest, strategy, priority, or the like could easily render those defendants openly hostile to Intervenor Applicants' interests. *See League of Women Voters of Penn. v. Commonwealth*, 178 A.3d 737, 790 (Pa. 2018) (observing that the Governor, Secretary of State, Lieutenant Governor, and Commissioner of Pennsylvania supported the petitioners in urging the court to strike down Pennsylvania's congressional district map as a partisan gerrymander).

Accordingly, the Intervenor Applicants have demonstrated that the parties before the court have *at least* the potential to inadequately represent them. Therefore, the Intervenor Applicants are entitled to intervene as a matter of right under Rule 24(a), and this Court should grant their motion to intervene.

## IV. The Intervenors Meet The Requirement Of Permissive Intervention To Show At Least One Common Question of Law or Fact With The Existing Defendants

In the event that the Court determines intervention by right is not appropriate, the Court should nonetheless permit the Intervenor Applicants to intervene permissively pursuant to Fed. R. Civ. P. 24(b). Here, the Intervenor Applicants in fact "allege[] at least one common question of law or fact." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005) (citing *Michigan State AFLCIO v. Miller,* 103 F.3d 1240, 1248 (6th Cir. 1997)), and thus should be permitted to intervene.

The Plaintiffs in this case seek to invalidate the 2011 Ohio congressional map on partisan gerrymandering claims under various federal constitutional right-to-vote theories. The Intervenor Applicants seek to defend the constitutionality of the 2011 plan, and to ensure any potential remedy does not merely create a partisan gerrymander in the opposite direction, or have some other inequitable consequence.

No less important are those Plaintiffs' interests in casting an "effective" vote than the Intervenor Applicants' in the exact same interests. (*E.g.*, SAC ¶¶ 8, 9, 120, 145). *See also Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983). Redistricting involves dividing a fixed pie where every person gets an equally meaningful share of the vote; accordingly, all of the voters of a district either have a perfectly equal interest or they do not in the constitutionality of the congressional redistricting plan, full stop. *See Gill*, slip op. 14–16 (discussing Article III standing of a district's voters in partisan gerrymandering cases). To hold otherwise would mean that voters of a certain party had a *greater* interest than the others in obtaining judicial recourse for federal constitutional privileges. That is the result of privileging one side in a zero-sum game.

Likewise, the Member Intervenor Applicants in fact "allege[] at least one common question of law or fact." *Michigan*, 424 F.3d at 445 (citing *Miller,* 103 F.3d at 1248), and thus should be permitted to intervene. The Plaintiffs in this case seek to invalidate the 2011 Plan under various federal constitutional right-to-vote theories. The Member Intervenor Applicants seek to defend the constitutionality of the 2011 Plan. They also seek to defend their personal interests in their offices and their ability to seek election to those offices in the future—interests inextricably interwoven with the legality of their respective district, their interests in the timing and form of relief sought by plaintiffs, their continued ability to run for office, and their ability to invest time and campaign funds in running for office.

Even if the Court concludes that the Intervenor Applicants are not entitled to intervene as of right, they surely satisfy the requirements for permissive intervention under Fed. R. Civ. P. 24(b). *See Baldus v. Members of Wisconsin Gov't Accountability Bd.*, No. 11-CV-562, 2011 WL 5834275, *2 (E.D. Wis. Nov. 21, 2011) (granting permissive intervention to congressional representatives due to fact incumbent representatives "are much more likely to run for

congressional election [than the average citizen-of-age] and thus have a substantial interest in establishing the boundaries of their congressional districts").

## **CONCLUSION**

For the foregoing reasons, the Court should grant the Intervenor Applicants' Motion to Intervene as a matter of right and, in the alternative, as permissive intervenors.

Dated: July 20, 2018                                       Respectfully submitted,

                                                          **BAKERHOSTETLER LLP**

                                                          */s/ Patrick T. Lewis*
                                                          Patrick T. Lewis (0078314)
                                                          *Trial Attorney*
                                                          Email: plewis@bakerlaw.com
                                                          127 Public Square, Suite 2000
                                                          Cleveland, OH  44114-1214
                                                          (216) 621-0200 / Fax (216) 696-0740

                                                          Robert J. Tucker (0082205)
                                                          Email: rtucker@bakerlaw.com
                                                          200 Civic Center Drive, Suite 1200
                                                          Columbus, OH  43215-4138
                                                          (614) 228-1541 / Fax (614) 462-2616

                                                          Katherine L. McKnight(*)
                                                          Email: kmcknight@bakerlaw.com
                                                          Richard B. Raile(*)
                                                          Email: rraile@bakerlaw.com
                                                          Washington Square, Suite 1100
                                                          1050 Connecticut Avenue, N.W.
                                                          Washington, DC  20036-5403
                                                          (202) 861-1500 / Fax (202) 861-1783
                                                          (*) pro hac vice motions to be filed

                                                          *Counsel for Intervenor Applicants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2018, a true and correct copy of the foregoing was filed via the Court's CM/ECF system and served via electronic filing upon all counsel of record in this case.

/s/ Patrick T. Lewis
Patrick T. Lewis (0078314)
*Counsel for Intervenor Applicants*