UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

. . . . . . . . . . . . . . . .
OHIO A. PHILIP RANDOLPH          .  Case No. 1:18-cv-357
INSTITUTE, et al.,              .
                                .  *Preliminary Pretrial*
          Plaintiffs,           .  *Conference*
                                .
        - v -                   .
                                .  Tuesday, July 10, 2018
GOVERNOR JOHN R. KASICH,         .  4:02 PM
et al.,                         .
                                .
          Defendants.           .  Cincinnati, Ohio
. . . . . . . . . . . . . . . .

                        - - -

               TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE TIMOTHY S. BLACK, JUDGE

APPEARANCES:

For the Plaintiffs:

FREDA J. LEVENSON, ESQ.              THERESA J. LEE, ESQ.
(present by telephone)              EMILY R. ZHANG, ESQ.
American Civil Liberties Union       (present by telephone)
  of Ohio Foundation                Americal Civil Liberties Union
4506 Chester Avenue                    Foundation
Cleveland, Ohio  44103              125 Broad Street, 18th Floor
                                    New York, New York  10004


ROBERT D. FRAM, Esq.                MICHAEL C. BAKER, ESQ.
(present by telephone)              (present by telephone)
Covington & Burling LLP             Covington & Burling LLP
One Front Street, 35th Floor        One CityCenter
San Francisco, California  94111    850 Tenth Street, NW
                                    Washington, DC  20001


For the Defendants Ryan Smith and Larry Obhof:

                    PHILLIP J. STRACH, ESQ.
                    (present by telephone)
                    Ogletree, Deakins, Nash, Smoak & Stewart,
                      P.C.
                    4208 Six Forks Road, Suite 1100
                    Raleigh, North Carolina  27609

*Proceedings recorded by stenotype; transcript
produced by computer-aided transcription.*

```
 1    APPEARANCES (Continued):

 2    For the Defendants Governor John Kasich, Secretary of State Jon
      Husted, Ryan Smith and Larry Obhof:
 3
                              STEVEN T. VOIGT, ESQ.
 4                            NICOLE M. KOPPITCH, ESQ.
                              (present by telephone)
 5                            Ohio Attorney General's Office
                              Constitutional Offices Section
 6                            30 East Broad Street, 16th Floor
                              Columbus, Ohio  43215
 7
      Law Clerk:              Jeremy D. Smith, Esq.
 8
      Court Reporter:         Luke T. Lavin, RDR, CRR
 9                            Potter Stewart U.S. Courthouse
                              100 East Fifth Street, Room 103
10                            Cincinnati, Ohio  45202
                              Telephone:  (513) 564-7500
11
                                   -  -  -
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

1

2    (In chambers at 4:02 PM.)

3       THE COURT:  Good afternoon.  This is Judge Timothy

4  Black on the record on the civil case of *Ohio A. Philip*

5  *Randolph Institute, et al. versus Kasich, et al.*  And I

6  understand the caption is going to change, but we are set for

7  preliminary pretrial conference by phone.  It's 4:02.  I was

8  told that there were six people on the line beyond me.  I heard

9  five beep in.  We may be missing somebody.

10    But let's get established, enter appearances, and then I

11  want to make an opening statement and then I'll hear from all

12  of you in turn.

13    So on behalf of plaintiff, lead counsel?

14       MS. LEVENSON:  Good afternoon, Judge.

15       THE COURT:  Yes.

16       MS. LEVENSON:  Excuse me.  I'm sorry.

17       THE COURT:  No.  Go ahead.

18       MS. LEVENSON:  Thank you.  I thought that was an

19  invitation to speak.

20    Good afternoon.  This is Freda Levenson --

21       THE COURT:  Yes.

22       MS. LEVENSON:  -- trial attorney for plaintiff.

23       MS. LEE:  You also have Theresa Lee and Emily Zhang

24  from the ACLU, also for plaintiff.

25       THE COURT:  Very well.  Bear with me as I check people

```
 1   off.  Ms. Zhang and?
 2           MS. LEE:  Lee.
 3           THE COURT:  Very well.  Got it.
 4      Okay.  Additional plaintiffs' counsel?
 5           MR. FRAM:  Robert Fram, Covington and Burling, for
 6   plaintiffs.
 7           THE COURT:  Mr. Fram.
 8           MR. BAKER:  And Michael Baker, Covington and Burling
 9   as well.
10           THE COURT:  Very well.  And anybody else on the line
11   who represents plaintiff?
12      (No response.)
13           THE COURT:  So, Ms. Levenson, the last time around I
14   believe you introduced me to Mr. Fram and he was going to be on
15   the laboring oar.  Who is going to be the laboring oar today,
16   Ms. Levenson, on behalf of plaintiff?
17           MS. LEVENSON:  It's my turn today, Judge.
18           THE COURT:  Well, brace yourself.  I think you'll get
19   through it.
20           MS. LEVENSON:  Okay.  Thank you.
21           THE COURT:  That was a joke.  You'll learn to live
22   with me.
23      Do we have counsel on the line for defendants?  And I don't
24   know how to direct the entries of appearance, but let me lay it
25   off on you.  Do we have lead counsel for defendants on the
```

1   line?

2          MR. STRACH:  Good afternoon, Your Honor.  This is Phil

3   Strach.  I'm with the Ogletree, Deakins law firm in Raleigh,

4   North Carolina.  I will be representing the legislative

5   defendants:  Speaker Smith and President Obhof.

6       Unfortunately, we were retained last week, and we have been

7   trying to get our certificate of good standing so we could file

8   a *pro hac vice* motion with the Court.  We are literally finally

9   getting that certificate this afternoon, and so we will be

10  filing very soon a *pro hac vice* motion.  But when we're in the

11  case, Your Honor, we will -- we will likely be taking the

12  laboring oar on most of these calls.

13         THE COURT:  Very well.  Thank you for speaking up.

14  And I was forewarned that that's where we are, and I regret I

15  didn't write your name down.  You're going to represent the

16  legislative defendants Smith and Obhof.  And what was your

17  name, sir?

18         MR. STRACH:  Phil, P-h-i-l, Strach, S-t-r-a-c-h.

19         THE COURT:  And somebody from your law firm is on the

20  line with you?

21         MR. STRACH:  It's just me.  And then I believe we have

22  someone from the attorney general's office.

23         THE COURT:  Very well.  Welcome aboard.  Did you have

24  trouble finding your certificate of good standing from the

25  highest state court in your state?

1          MR. STRACH:  You know, what they do they is they farm

2     that out to the state Bar, apparently, and they have a

3     bureaucratic process they follow, which I got caught up in,

4     unfortunately.

5          THE COURT:  Well, it's no problem from this Judge's

6     perspective.  I was just tickling you the way I poked Ms.

7     Levenson.

8        All right.  So we've got lawyers on the line from Ohio

9     attorney general's office no doubt?

10          MR. VOIGT:  Yes, Your Honor.  This is Steve Voigt and

11    Nicole Koppitch, and we represent the secretary of state and

12    the governor, as well as I will be local counsel for the

13    legislative defendants.

14          THE COURT:  Great.  I understand.

15       On the other hand, we've got a motion pending for a Second

16    Amended Complaint that nobody objects to, and I thought that

17    plaintiffs were dropping the governor.  Is that right from

18    plaintiffs' perspective, Ms. Levenson?

19          MS. LEVENSON:  Yes, that's correct, Your Honor.

20          THE COURT:  And you're aware of that, Mr. Voigt?

21          MR. VOIGT:  Yes, and we consent.

22          THE COURT:  All right.  So you're going to end up

23    representing the secretary of state and being local counsel for

24    Mr. Strach on the additional defendants?

25          MR. VOIGT:  Yes, Your Honor.

1          THE COURT:  Okay.  So you're not going to represent

2     the governor, because he's not going to be a party; right?

3          MR. VOIGT:  That's correct.

4          THE COURT:  Okay.

5       Do we have additional counsel on the line on behalf of any

6     defendant?

7        (No response.)

8          THE COURT:  Okay.  It sounds like we have a quorum.

9        Bear with me.  Let me make a brief statement, and then I'll

10    hear from you all in turn.

11       We've received your Rule 26(f) report.  It's really

12    helpful.  It was filed on July 6th.  Today is July 10.  In the

13    spirit of full disclosure, I had understood that the plaintiff

14    was asking to start trial February 4 and run it through -- bear

15    with me -- two weeks starting February 4.  And so I checked

16    with the court, the judges on this case, and got them to be

17    available then, and now your proposed calendar talks about a

18    trial commencing February 18.  I was struck by how compacted

19    even that calendar was.

20       But alas and behold, one of the three judges is not

21    available February 20 to March 1, and we can't do anything

22    about that.  So we're looking at two weeks in March or April,

23    unless you want to back up and go back to your original

24    proposal and start February 4 to the 15th.  And all of this

25    planning is based upon the assumption that this is a two-week

1    trial, ten days of trial and not an 11th day.  If it's an 11th

2    day, then we're going to get into scheduling issues.

3        I don't know if we'll complete the trial calendar today,

4    but you need to understand that the three judges are eager to

5    be responsive to you and get this teed up and tried timely.  We

6    just can't do it February 20 through March 1.

7        But I want to walk through the calendar with you and see if

8    we can pick a trial, a two-week trial date block today or if

9    you need to back up and check your clients' availability, and

10   we'll talk through the weeks that are available.  But I want to

11   talk through everything else that's here as well.

12       So before we get started, Ms. Levenson, what do you make of

13   the notion the Court's not available February 20 to March 1 and

14   would be available any two weeks in March and April and/or the

15   weeks of February 4 to 15, I think it is?  What do you make of

16   that?

17            MS. LEVENSON:  Yeah.  Thank you, Judge.

18       We have to really think of the ramifications of having a

19   trial later.  You didn't indicate -- and we appreciated that

20   you felt a February trial was appropriate.  And, of course, we

21   feel that it's necessary given the timetable for the 2020

22   election and the time it takes to get to a final resolution.

23   And we did obviously work, you know, hard and successfully to

24   come to an agreement on a schedule reflected here that gets us

25   to a February trial date, but we didn't operate with the

1    understanding that it was the 4th.  So maybe we should have the

2    opportunity to go back and aim for that date if we can find a

3    way to squeeze out two weeks from the schedule.

4            THE COURT:  And are you confident that this will be

5    merely two weeks of trial and if we start it on February 4,

6    Monday, you're done on Friday, the 15th?

7            MS. LEVENSON:  We had estimated that, Judge, and we

8    certainly would endeavor to do that, to establish foundations

9    and admissibility for needed documents, eliminate the need to

10   have any unnecessary testimony and try to confine it to the --

11   and hopefully definitely confine it to the two-week period.

12           THE COURT:  Well, if we get into scheduling this for a

13   two-week period, we're going to have to hold you to that,

14   because the Court's not available February 20 on, and that

15   would only give us 18 and 19 to finish up the trial that starts

16   on the 4th.

17       So if I hear from everybody that, yeah, this is ten days,

18   well, then we're going to set it for ten days and it's going to

19   run ten days, and at the end of the tenth day we're going to

20   adjourn because the judges won't be available thereafter.

21   We'll be able to spend a bunch of time coordinating how we're

22   going to get the evidence in in those days, perhaps even with a

23   timed trial presentation of some sort.

24       But what I'm hearing from the plaintiff is you can't wait

25   till March?

1      MS. LEVENSON:  I think that February is close.  What

2  we can't control is how long a proceeding in the Supreme Court

3  would take, and of course the case almost inevitably would end

4  up in the Supreme Court.

5      THE COURT:  And we need some time to reach and render

6  a decision.  I'm nervous about trying to cram it into February

7  4 given -- now that you've laid out what's there, I thought it

8  was a major crunch, push for getting ready on the 18th, because

9  you're talking about pounding chambers with a bunch of motions

10 and then rolling into trial, and, you know, we're going to need

11 some time.

12     I could guarantee that we start March 4 and have it done

13 March 15, and I guarantee you that these three judges are going

14 to jump on it and turn it around, but I'm apprehensive about

15 February 4 based on what you briefed out.  I got the Court

16 available then but learned, when I saw this, that one of the

17 judges simply cannot do the 20th through the 1st.  So we're

18 going to need to think about that.

19     Before I come back to plaintiff, what's the defendants'

20 seat-of-the-pants reaction to the threshold calendaring issue

21 of trial date, Mr. Strach?

22     MR. STRACH:  Umm --

23     THE COURT:  Go ahead.

24     MR. STRACH:  I'm sorry, Your Honor.  This is Phil

25 Strach.

1      Well, Your Honor, certainly we think that March 4 makes

2   much more sense.  It is a compacted schedule as it is.  The

3   benefit of a March 4 date is that if we stay on with the

4   current schedule that we've outlined in the report, it would

5   give the Court more time to look at the dispositive motions and

6   the pretrial filings, which would likely make the Court's job

7   easier in rendering a decision after the trial, because the

8   Court will have had a little bit more time before the trial to

9   really become familiar with the issues.

10     I can tell you it would be very difficult to squeeze two

11  more weeks out of the current schedule that we have in order to

12  shoot for a February 4th date.  If the Court wants us to

13  attempt that, we certainly will try, but from our perspective,

14  a March 4th date makes a lot more sense.

15          THE COURT:  And from your perspective -- and I need to

16  ask plaintiffs' counsel this question as well -- in terms of

17  selecting a trial date, I mean, are your witnesses all

18  available, or do you need to check that as well?  Did you check

19  out all your witness availability starting February 18, which

20  we can't do, and are you going to need to do that to determine

21  whether February 4 or March 4 trial start is doable from the

22  defendants' perspective?

23          MS. LEVENSON:  We have not checked witness schedules

24  yet.  May I just speak to what Mr. Strach said about the

25  dispositive motions?

1            THE COURT:  Yes.

2            MS. LEVENSON:  That's actually a chunk of the schedule

3    that does provide some flexibility, because these types of

4    cases are not -- generally gerrymandering cases aren't really

5    susceptible to dispositive motions.  It's impossible that there

6    would be undisputed facts so that the Court would be ordering

7    summary judgment in this case.  So this schedule fills that

8    opportunity in, but that's really a fleshy thing that could

9    come out that could shorten the timetable and allow for an

10   earlier trial.

11           THE COURT:  The Court can't try it February 20 to

12   March 1.  We're now looking at whether --

13           MS. LEVENSON:  Right.

14           THE COURT:  -- February 4 is manageable.

15           MS. LEVENSON:  Yes.

16           THE COURT:  And I'm not confident it is.

17           MS. LEVENSON:  Uh-huh.

18           THE COURT:  So that's where we are, and let's walk

19   through this.  Either way, had plaintiff checked with witness

20   availability the weeks of February 18 and 25?

21           MS. LEVENSON:  No, we haven't checked with witnesses

22   for availability for any of these time periods.

23           THE COURT:  Okay.  Well, I hope you can muscle your

24   witnesses into being available when available.

25       Did somebody need to say something?

1    MR. STRACH:  Your Honor, it's Phil Strach again.  From

2  our perspective, you know, frankly, I've only been in the case

3  a week, so I'm not even quite sure who all the witnesses will

4  be, but I am quite certain that if we have a March 4th date,

5  that's enough time that we can get who we need to get there.

6    THE COURT:  Uh-huh.  And --

7    MS. LEVENSON:  I guess I should add that our -- excuse

8  me -- our experts would be available at that point.  I don't --

9  at this point it's hard to know which facts will be contested

10 and which other witnesses would need to be called.

11    THE COURT:  Okay.  Well, we're going to have to figure

12 this out.  I'm leaning strongly to starting the trial on March

13 4 --

14    It's 30 days later than the plaintiff would have allowed.

15 The plaintiff can remind me of that every day.

16    -- and we will try and move stuff expeditiously and turn

17 around a decision early, but that's the way I'm headed.

18    Now I want to walk through the balance of what we need to

19 address today.  I want to walk through your Rule 26 report, and

20 I'm now on page two.  And looking at your discovery and case

21 management schedule, and this conference is pursuant to Rule

22 16, you asked us to set this for the week of July 9, and we set

23 it on the 10th.  We're doing that now.  You're going to have

24 initial disclosures the 13th.  That's great.

25    We have a cutoff date for filing of responses to the

1   Amended Complaint.  It's July 20.  And as I understand it,

2   plaintiff has pending an unopposed motion to file a Second

3   Amended Complaint, and as I understand it, the response date to

4   the to-be-filed-momentarily Second Amended Complaint would

5   still stay on July 20.  Is that the plaintiffs' understanding?

6            MS. LEVENSON:  Yes, Your Honor.

7            THE COURT:  And more importantly, is that the

8   defendants' understanding?

9            MR. STRACH:  Yes, Your Honor.

10           THE COURT:  All right.  So we will put on an order

11  today and on the record now grant leave to file the Second

12  Amended Complaint forthwith, and we will reaffirm that the

13  response to the Amended Complaint needs to be filed by July 20.

14      The current plan that the Court ordered was defendant to

15  serve written discovery answers by the same July 20.  Is the

16  defendant on track to do that?

17           MR. STRACH:  Yes, Your Honor, we are.

18           THE COURT:  That's good.  We're going to reaffirm it.

19      You suggested that shortly thereafter you wanted the

20  discovery status conference.  I'm happy to do that.  I wondered

21  if there was something magic about Wednesday, July 25, or if

22  you might consider another day, either the Monday or Tuesday or

23  the Thursday or Friday of that week.

24           MS. LEVENSON:  Well, it's a little magic.  There could

25  be some movement.  Our thinking on this was that if the

1    discovery responses are going to be filed on the 20th, as they

2    are, that's a Friday.

3              THE COURT:  Right.

4              MS. LEVENSON:  So over the weekend the plaintiffs

5    would review what we received.  That's the 21st and 22nd.  So

6    presumably we would have a meet-and-confer with the defendants

7    on Monday or Tuesday, which would be the 23rd or 24th.  So the

8    25th is Wednesday, and that would serve as an opportunity to

9    resolve any open issues, and then that would be also an

10   occasion to set any briefing on discovery motions and to

11   finalize a schedule for complete document production so that

12   the depositions can all go forward if they need to.

13             THE COURT:  Fair enough.  And I think that's, you

14   know, a good idea and it's properly expedited.  I wondered if

15   you could live with July 26th.

16             MR. FRAM:  Your Honor -- Mr. Fram -- unfortunately,

17   I've got an availability problem, another court hearing.  I've

18   got a trial going on the 26th and the 27th.

19             THE COURT:  Well, we'll do the discovery status on the

20   25th.  Bear with me.  I'm going to look at the calendar.  And

21   that will be by phone.

22        Where are we?  July 25 by phone.  What time does the

23   plaintiff propose?

24             MS. LEVENSON:  It's up to Your Honor.

25             THE COURT:  Does the defense have a strong preference,

1    time of day, on the Wednesday, the 25th?

2            MR. STRACH:  No, Your Honor.  Whatever works for the

3    Court.

4            THE COURT:  Well, I'm likely to be traveling and I

5    don't know what's going to work, but why don't we say 10:00 AM

6    by phone our time on July 25.  And bear with me, I may need to

7    move the hour, but we will confer on the 25th as appropriate.

8        I'd just as soon get something in writing the day before as

9    to where you are and what you think we're going to need to walk

10   through.  Is that manageable, and how would you propose to do

11   that?  First, on behalf of the plaintiff?

12           MS. LEVENSON:  I would suggest that we file

13   simultaneous statements of our positions by close of business

14   the day before.

15           THE COURT:  I'm comfortable with that.  There may be

16   another approach.  You know, I wonder if you guys could talk on

17   the 24th and come up with an agreed agenda of items.  I don't

18   want each of you blindsiding the other, and what I really don't

19   want is to walk into something on the 25th where I don't yet

20   have an idea what presents.

21       What's the defendants' proposal in that regard?

22           MR. STRACH:  Yes, sir.  Thank you, Your Honor.

23       I think what we would prefer is something along the lines

24   of what you suggested, maybe either an agreed agenda or, at a

25   minimum, a joint statement where each side could list out any

1    issues if they don't agree on what the issues are, so that we

2    don't bombard the Court with a lengthy filing the day before

3    the conference.

4           THE COURT:  Well, I think we're all on the same page.

5    I'd like you to talk on the 24th about what presents on the

6    25th.  I'd like an e-mail -- no, a filing on the docket jointly

7    presented that both sides have seen before it gets filed that

8    proposes an agenda and then captures the plaintiffs' positions

9    and the defendants' positions.  And typically when I resolve

10   discovery disputes, I tell people you can't file a motion.  You

11   have to do an informal discovery conference with me, and I ask

12   for a two- to three-page letter laying out what the discovery

13   issues are.  I want your filing on the 24th to be concise and

14   short.

15      What do you suggest in that regard, Ms. Levenson?

16           MS. LEVENSON:  In terms of how long the filing is?

17   I'm sorry.

18           THE COURT:  Yes.  How many pages?  I'm going to try

19   and limit you, and I don't want to do it unreasonably.  I don't

20   want 20-page documents.  I don't think I need them yet on that,

21   do I?  I want a proposed agenda, and if there are issues in

22   dispute, a concise statement of the parties' positions.

23      I'm doing basically what you wanted.  You're welcome to

24   provide in this joint filing, you know, plaintiffs' statements

25   of the issues and defendants' statements of the issues.  I

```
 1    can't believe you can't agree on an agenda.  So I want a

 2    somewhat agreed upon agenda and a statement of the parties'

 3    positions on whatever presents, and I'm hoping that will be

 4    short.

 5        Do you want to begin the bidding, or do you want me to?

 6            MS. LEVENSON:  Yeah.

 7            THE COURT:  Is five pages too little?

 8            MS. LEVENSON:  Whatever Your Honor thinks.  Yeah, it's

 9    to serve you, the Court, so that you can understand the

10    positions.  The level of specificity, obviously, is determined

11    by -- or partly determined by the length.  So if you want five

12    pages' worth, then we would do five pages.

13            THE COURT:  I would propose a one-page agenda that you

14    have discussed and tried to agree to.

15            MS. LEVENSON:  Okay.

16            THE COURT:  And then a five-page statement from each

17    side as to what we're going to do on the 25th and your

18    positions.  And it's just a heads-up for me.

19            MS. LEVENSON:  Okay.

20            THE COURT:  And we'll probably end up having to brief

21    discovery disputes, if any.

22        But while we're talking about that, my practice -- it's in

23    the local rules that apply to cases with me and typically would

24    here -- is you don't file a motion to compel.  You call the

25    Court and you say we've got some discovery issues, and the
```

1   Court requires you to participate in a phone conference with

2   the judge within a couple of days, and the day before you send

3   a two- to three-page letter laying out the issues that present

4   and the parties' positions.  You send them to each other and to

5   the Court, and then I and my law clerk gear up, we look at

6   them, and we give you our seat-of-the-pants reaction and tell

7   you where we think it would shake out.

8       If you can't acquiesce to that immediate informal seat-of-

9   the-pants, more than that, response from the Court and you want

10  to brief it, well, you're entitled to and we'll, you know,

11  expedite briefing schedules and all that, which we'll discuss

12  at the discovery status conference.

13      But if we have to end up briefing stuff and nothing changes

14  the Court's informal reaction, you know, I've read the rule and

15  I can respond if I think, you know, you're not being responsive

16  appropriately.

17      I'm still on page two of your Rule 26 report.  We've

18  confirmed where we are through July 25.  Settlement demand by

19  August 15th, I think that's great.

20      Do we need a date for a response?  If you get a settlement

21  demand from the plaintiff on August 15, when will the defendant

22  respond?

23              MS. LEVENSON:  That's a good question, Judge.

24              THE COURT:  Yeah.  It's sort of for the defendant.

25  When would the defendant respond?

1    MR. STRACH:  Well, that's a really good question, and

2 this isn't a normal case.  It's going to be unclear what a

3 settlement demand would look like or whether that would even

4 really apply here.  I would think, Your Honor, that we could

5 respond within a week.

6    THE COURT:  Okay.  I'm going to add that the defendant

7 will respond within a week, which is August 22.

8    My experience with cases, even though this is perhaps an

9 unusual one, is that first you need a settlement demand.  It's

10 typically perceived as outrageous.  It provokes an insulting

11 counteroffer, and then the dance begins.

12    I think you guys could settle this case, and the more you

13 work with me, the more you may be motivated to do that.  And

14 I'm delighted that you have a demand date of August 15, and I

15 think it's entirely responsive of the defendants indicating

16 that they will respond by the 22nd, and then we'll see where we

17 go.

18    I'm glad we've got a date for disclosure of plaintiffs'

19 proposed remedial map, September 28th.  Do you think it's going

20 to be one proposed remedial map, from the plaintiffs'

21 perspective?  I'm not holding you to it.

22    MS. LEVENSON:  Yes, Judge.

23    THE COURT:  Okay.  Then you're going to disclose your

24 experts by October 5.  Presumably they have been engaged in

25 working on the map, is that right, from plaintiffs'

1   perspective?

2           MS. LEVENSON:  Yes, Judge.

3           THE COURT:  Okay.  And then the defendants' turn to

4   disclose and report experts is November 8, and then by November

5   15th lay witnesses are disclosed.  You know, that's a great

6   pretrial layout.  And then we need to deal -- and then we have

7   plaintiffs' expert rebuttal reports on the 22nd.

8       The notion that we're going to have to deal with election

9   results before trial is the reality of it, and I'm glad you've

10  figured it out.  I guess the secretary of state is a party and

11  he's represented, and is there no doubt that the secretary of

12  state can provide what's provided in this paragraph by November

13  30?

14          MR. VOIGT:  Yes.

15          THE COURT:  And who said that?

16          MR. VOIGT:  Yes, Your Honor.

17          THE COURT:  Who said "Yes, Your Honor"?

18          MR. VOIGT:  This is Steven Voigt.

19          THE COURT:  Okay, okay.

20          MR. VOIGT:  Sorry for interrupting.

21          THE COURT:  No, I asked you directly.  I was looking

22  for you to answer the question.  Because that's your client;

23  right?

24          MR. VOIGT:  Yes.  Yes, Your Honor.  Absent something

25  that comes up that is unforeseen, the secretary of state will

1   be able to comply with that bullet point.

2          THE COURT:  You sound like a lawyer.  "Yeah, we'll do

3   it absent extraordinary circumstances."  Understood.  But if

4   something gets crazy, you're committed that the data will be

5   provided no later than December 7, Mr. Voigt?

6          MR. VOIGT:  Yes, Your Honor.

7          THE COURT:  And you think that November 30 and

8   December 7 are manageable?

9          MR. VOIGT:  I do not anticipate any issues with this,

10  and I am very confident that we can meet these deadlines.

11         THE COURT:  Very well.

12      Cutoff for fact discovery of December 19, I think that's

13  great but for the election stuff.  I mean, then you've got the

14  fact discovery under the belt by before Christmas break,

15  holiday breaks.

16      And you're going to depose experts on an expedited basis,

17  except as to the election results, by the same December 19th.

18  Supplemental expert reports come in December 21.  Based on what

19  we see on November 30, no later than December 7, but November

20  30 the Court's counting on.  And then we take a little break.

21      When I looked at this, I was thinking, hey, I need these

22  dispositive motions December 31st.  You know, if you filed them

23  on January 8th and they're ripened on January 25 and you

24  indicate no replies, you know, that's, what, two or three weeks

25  before trial, almost 30 days.  That's a crunch.  And *in limine,*

1  *Daubert* motions, you know, I think we're going to get swamped.

2  And we could keep these dates in place and go to trial as fast

3  as we manageably can on March 4, and the Court would be more

4  comfortable with what you're going to dump on us.

5      As to no reply memos, I mean, good for you, but reply memos

6  are really helpful to the Court.  When it finally shakes out

7  and we get down to where everybody really is and we get a short

8  reply, that's a helpful thing.  And I'm sort of sorry we're not

9  going to see that, and if there's any built-in time, fine.

10     What I dislike about motion practice is a dispositive

11 motion gets filed.  According to the rule, you have -- 21 plus

12 three -- 24 days to respond in opposition, 14 days plus three

13 is 17 to reply, and we've burned a full -- more than a month

14 just getting the thing ripe.

15     I saw that you accelerated your briefing to a degree.  The

16 sooner we can get stuff teed up and ripe, the sooner the Court

17 can work on it so as to turn it around for you.

18     We could keep the final pretrial conference of the 18th,

19 use the trial date as the final pretrial conference February 18

20 and go to trial a couple of weeks later.  We can have a

21 hearing, if necessary, on motions and a pretrial conference,

22 not a final pretrial conference, as you suggest, on February 4.

23 But that's sort of my reaction to the calendar.  And it all

24 comes back to the trial date, because we back it up from then,

25 and we'll revisit that when we've gotten through everything

1    else.

2       I'm still in the Rule 26 report.  It's helpful to

3    understand the topics of discovery.  I really have no comment

4    on it except defendants intend to seek discovery relating to,

5    among others things, plaintiffs' standing.  I want to

6    understand, on standing, whether that's something that can be

7    addressed early or whether it's something that goes down at

8    trial.  I have no concept of where we are on that issue and on

9    the law.  Let's come back to it and make sure I come back to

10   it.

11      I'm perfectly comfortable with 25 fact depositions per

12   side, including third-party depositions, but not including

13   expert depos or 30(b)(6) depos for authenticity or application

14   of hearsay.

15      I think I understand what each 30(b)(6) deposition notice

16   shall be considered to correspond to one deposition.

17      Request for admissions, I'm perfectly comfortable with your

18   increased limit of 40 requests for admission.  I've never

19   really seen requests regarding authenticity of documents and/or

20   the application of hearsay.  I'm delighted to have you guys

21   work that through, and I don't care how many requests you make,

22   but we'll stick with your five.  If we're going to move this

23   expeditiously and get to trial when we're ready, as plaintiffs'

24   counsel has already indicated, one of the real ways to cut

25   through this is to get authenticity and hearsay and all that

1  stuff figured out.

2      On the expert disclosures and reports, interesting to know

3  what the expert anticipated areas are.  On the plaintiffs'

4  issue, it just jumped out.  No big deal.  Give it some thought.

5      So there's going to be expert testimony on compliance with

6  the Voting Rights Act of 1965.  Okay.

7          MS. LEVENSON:  Yes, Judge.

8          THE COURT:  Okay.  You know, we don't need experts on

9  instruction in the law, but I suspect that this is a very

10  important issue, and I'm just telling you -- it jumped out at

11  me -- in a normal case that would seem like a suggestion that

12  you're going to have an expert telling us what the law is.

13          MS. LEVENSON:  Your Honor, it would be an expert

14  telling us whether or not a map complies.

15          THE COURT:  And that's part of the Court's

16  responsibility to determine, and expert testimony would help;

17  right?

18          MS. LEVENSON:  Yes, Your Honor.

19          THE COURT:  Okay.

20      On the defendants' expert testimony, again, no real

21  comment, I saw it, except there's "Plaintiffs' standing" again.

22  Let's pause now.

23      What's going on with standing from the plaintiffs'

24  perspective and the defendants' perspective?  When you look at

25  Rule 16 itself, one of the things it talks about at, let's see,

 1    Rule 16(c), section (N), "ordering the presentation of evidence

 2    early in the trial on a manageable issue that might, on the

 3    evidence, be the basis for a judgment."  I just wonder, is

 4    standing something that can be threshed out early?  I don't

 5    know.  I have no clue.

 6        What's the plaintiffs' perspective?  And then I'll hear the

 7    defendants'.

 8            MS. LEVENSON:  Well, frankly, the plaintiffs don't

 9    understand why standing would be listed as a topic for expert

10    testimony.  There could be fact issues that defendants wanted

11    to satisfy themselves with as to standing, but we don't see

12    this as a matter for expertise.  It's not an opinion.

13            THE COURT:  Right.  I'm not going to make you tell me

14    what the law is on why or why not plaintiffs in this case have

15    standing, but I'm going to ask defense counsel:

16        What's this all about on standing, and is this something we

17    can resolve earlier than at the conclusion of trial?  I don't

18    know.  Defense counsel?

19            MR. STRACH:  Well, Your Honor --

20        Sorry.  This is Phil Strach again.

21        -- obviously we've got, you know, fresh material on

22    standing from the U.S. Supreme Court, which would give us a lot

23    of guidance on this.  And so, number one, we expect that

24    standing may be the subject of our initial response to the

25    Second Amended Complaint.  And then, depending on what the

1   Court does with that, certainly we would -- we would be

2   developing fact evidence on the plaintiffs' standing, in

3   particular under the standard that the Court laid out in the

4   *Whitford*, or *Gill* case.

5       And then depending on how the plaintiffs react to the

6   standing arguments and evidence, there might be a need for some

7   expert testimony.  We're sort of in uncharted territory here on

8   the standing issue, so we certainly want to make sure that we

9   are cautious and reserve an ability to put any kind of evidence

10  we think we need to on that issue.

11          THE COURT:  Well, that's responsive.  And I've heard

12  what I need to hear about the issue of standing right this

13  minute, and it will play out as it plays out.

14      Depositions, 25 fact depos per side, including third-party

15  depos, that's great.  We've already talked about that.  We're

16  down -- I'm now moving to page five.

17      You guys are threatening to put together an ESI protocol.

18  You're suggesting that if you can't do it, that at the July

19  25th conference the Court will order a protocol.  Good grief.

20  I sure hope you come up with an ESI protocol and don't expect

21  me to come up with a protocol.

22      What's the plaintiffs' sense on this issue going forward?

23  Are you going to be able to get an ESI protocol together?

24          MS. LEVENSON:  Yeah.  We're very hopeful, Judge, that

25  we can.  We certainly expect to.  We hope we won't have to come

1   to ask you to do it.

2          THE COURT:  Great.

3      What's the defendants' perspective in that regard?

4          MR. STRACH:  Your Honor, I think we will be able to do

5   that.  Frankly, because I've only been in the case a week, I

6   need more time to get my head around IT issues and things with

7   the state legislature, but I'm hopeful that by the 25th we'll

8   have something in place.

9          THE COURT:  I'm very, very, very hopeful and urge you

10  to figure that out among yourselves rather than calling upon me

11  to muck it up.  That was with an "m."

12     As to expert discovery, this stuff's not subject to

13  discovery, it makes good sense.  Privilege, you were

14  threatening to negotiate a stipulated protective order that

15  addresses inadvertent disclosure, and it also talks about

16  privilege logs.

17     Where are you on coming up with a stipulated protective

18  order, first from the plaintiffs' perspective and then the

19  defense?

20          MS. LEVENSON:  Well, we accomplished a lot in coming

21  to agreement on things for the Rule 26(f) report, but that's

22  something that the parties were not able to negotiate at this

23  point.  We would be happy to.  We would like to get that done

24  right away.

25          THE COURT:  I'm not chastising anyone for the fact

1    that it's not done yet.

2              MS. LEVENSON:  Yes.

3              THE COURT:  I'm just asking how you're coming and when

4    do you think you might be on board with that.  That sounds like

5    something we need to really get rolling soon, but I think you

6    did the work on what you needed to do properly and timely, and

7    I'm simply inquiring.

8         And don't tell me you just got the case any more times.  On

9    behalf of the defense, what are you thinking about protective

10   orders?  The same approach as ESI protocol?  You think you can

11   work it out among counsel?

12             MR. STRACH:  Yes.  Yes, Your Honor.  In fact, usually

13   in these cases it's been my experience that we would do that in

14   conjunction with the ESI protocol.

15             THE COURT:  Right.

16             MR. STRACH:  So I imagine we'll be able to wrap it all

17   up together.

18             THE COURT:  Okay.  So when do you think I might see a

19   stipulated protective order?  I'm not pinning you down yet.  I

20   may in a moment.  But before July 25, presumably?

21             MR. STRACH:  Yeah, I think that would be doable.  If

22   we wrap it up with the ESI protocol, I would think that would

23   be doable.

24             THE COURT:  Do you agree, Ms. Levenson?

25             MS. LEVENSON:  Oh, yes, absolutely.  We'd be happy to

1  do that by July 25th.

2          THE COURT:  And how about if you send it to me with

3  what you're sending by on the 24th, the day before?  If you get

4  it done earlier, send it to us.  But can I order you to present

5  the proposed stipulated protective order to the Court by close

6  of business on the 24th, the day before our discovery

7  conference on the 25th?

8          MS. LEVENSON:  Okay.  Thank you, Judge.  That was --

9          THE COURT:  That's okay?  You can live with that?

10          MS. LEVENSON:  Yes, Judge.  Thank you.

11          THE COURT:  And defense as well?

12          MR. STRACH:  Yes, Your Honor, that's fine.

13          THE COURT:  All right.

14     Okay.  So where were we?  We were on -- okay.  And that

15  protective order is going to talk about inadvertent disclosure.

16  It's going to talk about nature of the privilege logs.

17     Delighted you're producing documents on a rolling basis.  I

18  love to know you're committing to providing privilege logs

19  relating to each production within 30 days of the production,

20  and I'll look in the stipulated protective order for the nature

21  of the privilege logs.

22     Third-party discovery.  I really like what you have

23  provided.  "Before serving any third-party subpoena, the Party

24  intending to serve the subpoena shall notify the other Parties

25  in the litigation" before serving any third-party subpoena.

1    And then that ends the Rule 26 report.  In looking at Rule

2    16 itself, it requires the contents of a pretrial order.  The

3    required contents of the order I'll issue, there are only a few

4    requirements, which include limiting the time to join other

5    parties, to amend the pleadings, to complete discovery and file

6    motions.  Those are mandatory.

7    You've provided all of those but for -- and I guess this

8    would be directed to the plaintiff.  Now that the Court has

9    granted leave to file forthwith the Second Amended Complaint,

10   what is the date by which the Court will cut off any potential

11   amendment of the pleadings or joining of the parties absent

12   extraordinary circumstances?  Can I say today?

13        MS. LEVENSON:  Yeah.  Thank you, Judge.

14   I don't anticipate that we would be joining any other

15   parties, and since you've added "absent special circumstances,"

16   I think that you can say today.  Thank you.

17        THE COURT:  Very well.  I mean, if we were to join new

18   parties down the road, we're in deep trouble, I would think.

19   And we've got to fix the pleadings.  So I'm going to indicate

20   that the motion -- well, I mean typically -- all right.

21   Today the Court will not entertain further motions to join

22   parties or amend the pleadings absent an extraordinary

23   circumstance.

24   Part of Rule 16 at (b)(3)(v) indicates that the Court can

25   direct that before moving for an order relating to discovery

1  the movant must request a conference with the Court.  And
2  that's my standard practice, and I would ask you, if you
3  haven't yet, to look at my standing orders and my trial
4  procedures, which are on the Web site.  And when we get to the
5  discovery conference we can thrash that through.
6      I was intrigued by Rule 16(c) at (N) and (O).  I talked to
7  you about, as to (N), whether there's any way to figure out
8  standing before trial.  I'm just raising it, and we'll see as
9  it goes along.
10     Interestingly, the Court is permitted by rule to establish
11  a reasonable limit on the time allowed to present evidence.
12  And from what I've heard from both sides, we're looking at ten
13  days.  And I want to firm that up, as we move forward, at
14  additional conferences to make sure this is going to work as
15  soon as we know it, and I'm going to -- you know, we're going
16  to figure this out such that Witness A is coming on from, you
17  know, 9:00 to 10:30 on day four, followed by this witness for
18  this time, just so we've mapped it out and make sure we can get
19  this in.
20     Beyond that, that was largely what I wanted to talk
21  through.  We need to circle back and figure out what we're
22  doing on the trial date.  My clear preference, having talked
23  this through and given it some thought, is for you all to bite
24  your tongue and try this before these three judges March 4
25  through March 15, to keep the calendar you have proposed in

 1  your Rule 26 report but for the trial date so everything gets

 2  to the Court and is teed up.

 3      I think it is unmanageable to think that you're going to be

 4  able to do this and get adequate pre-commencement of trial work

 5  out of us on February 4.  I wish we could do it on the 18th.

 6  We can't.  It's 30 days longer than the plaintiff would have

 7  liked, but I've told you you can remind me of that every time

 8  we seem to slow, and I will press as hard as we can to turn our

 9  decisions around expeditiously.

10      So we're back to the hard question.  Do you want to

11  acquiesce now, or do you want some time to think it through, or

12  can I set this for trial March 4 to 15, Ms. Levenson?

13          MS. LEVENSON:  Judge, I would really appreciate the

14  opportunity to consult with the team to see if we can sharpen

15  our pencils and make it work in terms of what has to happen

16  after we receive a ruling from you before the -- to have a

17  final resolution in time for the election.

18      I think that there's things that the secretary of state

19  could do to make it possible too, because what's the book end

20  on the other end, obviously, isn't just the election on

21  November 6.  The candidates have to run in primaries first.

22          THE COURT:  Right.

23          MS. LEVENSON:  So we're talking about a primary

24  election in February.  And they don't just come out of nowhere

25  and run.  Or, I'm sorry, in May.  They don't just come out of

1  nowhere and run.  First they have to announce their candidacy

2  by making a filing with the state.

3      If the secretary has discretion as to when candidates can

4  file with the state and that date could be adjusted to allow a

5  little more time on that end so that the trial date could be

6  put off to give us more time to take the case through all the

7  stages it has to go through to get a final resolution before

8  whatever actually is the drop-dead date, that could be very

9  helpful.  So perhaps we should explore that with the defendants

10  as well.

11          THE COURT:  Very well.

12      What's the defendant make of where we are on this issue?  I

13  understand you think March 4 is a good way to go.  How about if

14  we recess and the lawyers talk this through and figure out how

15  to adjust the calendar given the bombshell that this Judge

16  dropped indicating that the Court's not available February 20

17  to March, whatever it was, 1?  What do you make of that, sir?

18          MR. STRACH:  Well, Your Honor, you know, certainly we

19  prefer the 4th.  The 4th has the advantage of also allowing

20  perhaps a short reply period time, which might help the Court.

21          THE COURT:  Right.

22          MR. STRACH:  Having said that, we certainly -- I mean,

23  if the plaintiffs want to talk to us, we'll certainly talk to

24  them.  But it seems to us that the 4th makes much more sense.

25  And I am not so sure -- I think it may be premature to talk

1    about altering filing period dates and that kind of thing, but

2    we're certainly happy to listen to --

3          THE COURT:  Well, I'd like you guys to work on the

4    calendar one more time, given what the Court has said.  And

5    while the Court has expressed its seat-of-the-pants that I know

6    we're ready to go March 4, it gives us much more time to get

7    ready, if plaintiff comes back and talks to the defendant and

8    is able to evidence that this is all a waste of time if we

9    don't start this on February 4, I'm going to listen to that

10   argument.  Because these three judges, we're ready to go.  And

11   we don't want and you don't want to engage in all of this work

12   and find out that it's moot because it took too long.

13      So don't over-rely upon, defendants, my preference at this

14   moment for March 4, if in fact the plaintiffs can flat-out

15   evidence for me, having showed it to you first, that if we

16   don't start February 4 -- if we don't start until March 4, it's

17   a waste of time.

18      So does defense counsel understand my caution?

19         MR. STRACH:  We do, Your Honor, and we appreciate that

20   very much.

21         THE COURT:  All right.  So I guess my reaction is, how

22   about we reconvene in a week -- or we'll pick a date whenever

23   you propose; if it's sooner, it's sooner -- and you come up

24   with a new calendar matching what you have on discovery and

25   case management, modifying a little bit of this here and there

1  to get replies in and not to kill anybody, including the Court,

2  and once we get that proposed calendar, we'll reconvene?

3      What's the plaintiff make of that?

4          MS. LEVENSON:  Yes, Judge.  I appreciate the

5  opportunity to do that.

6          THE COURT:  Okay.  And when do you think we should

7  reconvene?

8          MS. LEVENSON:  Well, today is the 10th.

9          THE COURT:  Wednesday, the 10th; isn't that right?

10  No, Tuesday.

11          MS. LEVENSON:  So waiting until the 25th doesn't make

12  sense.  We need to do this in a --

13          THE COURT:  As quickly as we can.

14          MS. LEVENSON:  Yes, let's try to do this quickly.  I'm

15  just going to look at my calendar, Judge.  One second.

16          THE COURT:  That's fine.  The upcoming Friday is

17  Friday, the 13th.  Are you working that day?

18          MS. LEVENSON:  It sounds like a good day, Friday, the

19  13th.

20          THE COURT:  Is it manageable, first, in terms of the

21  work required and then, second, specifically on your calendar?

22  But in the first sense, do you think you all can mutually work

23  this through and tell me where you are by the 13th, plaintiff?

24          MS. LEVENSON:  The plaintiffs could, yes, Judge.

25          THE COURT:  All right.

```
1        And, defense, do you think that's reasonable?

2            MR. STRACH:  I think -- I think yes, Your Honor.

3   Obviously, it will depend on when we all get together to talk,

4   but I don't see any reason right now that that couldn't be

5   done.

6            THE COURT:  Very well.  So will you talk to me on the

7   phone on the 13th, having previously provided me with the rough

8   calendar and any identification of where you are?

9        Do you have a preference on time on the 13th, either of

10  you, or time you can't do it, morning, midday or afternoon?

11       From the plaintiffs' perspective?

12           MS. LEVENSON:  For me personally, I can't speak for

13  the whole team, but for me personally, I would appreciate if it

14  could be before 1:00.

15           THE COURT:  Okay.

16       Defense have any proposals in that regard?

17           MR. STRACH:  If it's before 1:00 -- I would actually

18  prefer the afternoon, but if it's before 1:00, it would be

19  better for me if it was between 10:00 and noon.

20           THE COURT:  With an end time at noon?

21           MR. STRACH:  Yes, Your Honor.

22           THE COURT:  Okay.  Can we do it at 10:30 by phone on

23  the 13th, from the plaintiffs' perspective?

24           MS. LEVENSON:  That works well for me, Judge.  Thank

25  you.
```

 1          THE COURT:  And the defense as well?

 2          MR. STRACH:  Yes.  That works for me, Your Honor.

 3          THE COURT:  All right.  Will you get me your stuff by

 4  the night before in terms of where you are?  You're going to

 5  send me a little -- so I don't walk into the new scheduling

 6  conference blind, can you send me something prior to the 13th

 7  at 10:30?

 8      What's the plaintiff propose?

 9          MS. LEVENSON:  Sure, Judge.  Would you like a joint

10  e-mail?

11          THE COURT:  Yeah.  When can you get that to me, close

12  of business on the day before?

13          MS. LEVENSON:  Close of business on the 12th.

14          THE COURT:  And is defense amenable to that?

15          MR. STRACH:  Yes, Your Honor, that would work.

16          THE COURT:  All right.  I don't wish to say this,

17  but -- no, I think it shouldn't be an e-mail.  It should be a

18  filed pleading, I'm doing all this stuff on the record, much as

19  what you're going to do for the discovery conference.  I think

20  I told you I wanted it filed.  Did I?

21          MS. LEVENSON:  Okay.

22          THE COURT:  Maybe I didn't.

23          MS. LEVENSON:  Yeah.  You said a joint filing, yes.

24          THE COURT:  Right.  So I want all this stuff on the

25  docket.  That's why I've got a court reporter here today.  I

1    typically don't do that in civil cases.  I'm going to

2    memorialize all of this.  It's necessary given the caliber of

3    the lawyers who present.

4        I think we have a plan forward.  Are there other issues we

5    need to discuss today?  If there are, tell me.  From the

6    plaintiffs' perspective?

7                MS. LEVENSON:  No, Judge.  I think this covers

8    everything.  Thank you.

9        Oh.  You know, there is one thing.  And that is a question

10   about your 120-day report of fees incurred.

11               THE COURT:  Right.

12               MS. LEVENSON:  Can that -- I trust, because a detailed

13   accounting of hours expended includes reports on the --

14               THE COURT:  Yeah.

15               MS. LEVENSON:  -- specific matters undertaken --

16               THE COURT:  Right.

17               MS. LEVENSON:  -- that would disclose work product,

18   and we wouldn't want us to do that on a regular basis.  I

19   assume it could just be a summary total amount?

20               THE COURT:  Yeah.  You're not the first lawyer to

21   point that out to me, and we just haven't fixed the language.

22       The thrust of the rule is every 120 days tell the

23   defendants how much time you've racked up, but certainly don't

24   disclose in the time individual time entries what the lawyer

25   was working on.

```
1        And the defense understands that; right?

2            MR. STRACH:  Yes, Your Honor.  That's fine with us.

3            THE COURT:  All right.  We'll try and give you a

4  sentence that reflects that somewhere in our orders to come.

5  But you're absolutely right, and you understand what the thrust

6  of the requirement is, the plaintiff does?

7            MS. LEVENSON:  Oh, yes.  They're really sensible

8  requirements, Judge.

9            THE COURT:  Okay.  Did you have more from plaintiffs'

10  perspective today?  If you do, tell me.

11            MS. LEVENSON:  No.  Thank you, Judge.  Thank you.

12  That's it from us.

13            THE COURT:  Okay.

14       And from the defendants, more on your plate yet?  I mean, I

15  know you just got on the case.

16            MR. STRACH:  No, Your Honor.  We've got plenty to work

17  on.

18            THE COURT:  You do.  You're delighted to be a part of

19  this party now; is that right?

20            MR. STRACH:  I am.  I am looking forward to it,

21  believe it or not.

22            THE COURT:  I believe it.  Actually, the three judges

23  believe that too.  And what's really nice is that, as reflected

24  in your Rule 26 report, I mean, you guys are pros and you're

25  going to do this right.
```

1    So we've made some progress.  We'll try and memorialize it.

2    I'm available to you whenever you jointly need us.  Just call

3    or e-mail.

4    And I will look forward to communicating next with you on

5    our status report this Friday at 10:30 by phone, having gotten

6    something in writing from you the day before by close of

7    business as to where you are and what we're going to talk

8    about.

9    I hate to admit it, but this close of business, it used to

10   be 5:00 o'clock.  Court docketing is available 24/7 365 days.

11   Some judges are as well.  So you can actually docket your stuff

12   at midnight if you insist, but try not to.  Get adequate sleep

13   and stay healthy and stay civil.

14   I'm delighted.  I would propose to adjourn.  Any objection

15   from the plaintiffs?

16           MS. LEVENSON:  No objection, Judge.  Thank you.

17           THE COURT:  From the defense?

18           MR. STRACH:  None, Your Honor.

19           THE COURT:  Thank you all for calling in timely.  I'm

20   going to adjourn by saying goodbye and hanging up.  Thank you,

21   counsel.  Goodbye.

22           MR. STRACH:  Goodbye.

23       (Proceedings concluded at 5:01 PM.)

24                           - - -

25

1                       C E R T I F I C A T E

2          I, Luke T. Lavin, RDR, CRR, the undersigned, certify

3    that the foregoing is a correct transcript from the record of

4    proceedings in the above-entitled matter.

5

6                             s/Luke T. Lavin
                              _____
                              Luke T. Lavin
7                             Official Court Reporter

8                              -  -  -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25