**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **Ohio A. Philip Randolph Institute**, *et al.*,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>**Ryan Smith**, Speaker of the Ohio House of Representatives, *et al.*,<br><br>                    Defendants. | Case No.: 1:18-cv-00357-TSB<br><br>Judge Timothy S. Black<br>Judge Karen Nelson Moore<br>Judge Michael H. Watson<br><br>Magistrate Judge Karen L. Litkovitz |

## INTERVENORS' POSITION STATEMENT REGARDING DISCOVERY DISPUTE

Plaintiffs seek the Court's intervention to prohibit Intervenors and Defendants from deposing more than three fact witnesses other than Plaintiffs, even though the case remains at the beginning stages of discovery, no depositions have been noticed, and Plaintiffs' initial disclosures identify at least 87 possible witnesses. After provoking this dispute prematurely by demanding Intervenors agree to such an onerous limitation only a few days after entering the case, Plaintiffs rushed this issue to the Court for resolution. While Intervenors have worked in good faith to craft a fair resolution, Plaintiffs have refused to compromise. For the reasons detailed herein, the Court should delay deciding this issue until it is ripe. If the Court believes it needs to resolve the issue now, however, it should grant Intervenors' proposal to permit a maximum of 35 fact depositions for both Intervenors and Defendants.

      **1. Plaintiffs' effort to limit Intervenors' discovery is premature and they have offered no compromise.**

Within a few days of the Court granting intervention, Plaintiffs demanded that Intervenors join a host of stipulations Plaintiffs had reached with Defendants on July 6, 2018 in their Rule 26(f) report. (Pls' Ltr. Dated 8/20/18, Ex. A). Intervenors agreed with all but one of

the stipulations: that each "side" could take 25 fact depositions. Plaintiffs demanded that Intervenors agree to this limitation before any documents had been produced, a single deposition had been scheduled, and before Intervenors had even seen the parties' initial disclosures. Ultimately, Intervenors determined they could not agree to the limitation, as doing so was premature and, as a practical matter, would leave Intervenors and Defendants with only three fact depositions after Defendants deposed all 22 Plaintiffs – a requirement given the standing issues the Court has recognized in this case. (Order on Mot. to Dismiss, ECF No. 61, at 13-15 & n. 4).

Plaintiffs refused to meet and confer to discuss any compromise on the number of depositions, stating "on this point there is really no room to compromise." (Pls' Email Dated 8/31/18, Ex. B). Instead, Plaintiffs, over Intervenors' objection, commandeered the Court's August 31, 2018 telephonic status conference—that had a sole agenda item of legislative privilege—to raise this unripe issue. The Court rightly took umbrage at Plaintiffs' improper tactics and ordered the parties to meet and confer.

On September 4, 2018, the parties conducted a meet-and-confer. As Plaintiffs insisted on pinning Intervenors down to a specific number of depositions before document discovery was complete and potential witnesses could even be enumerated, Intervenors proposed that Intervenors and Defendants be allowed up to a total of 35 depositions. Because Plaintiffs expressed concern about the impact of additional depositions on the case schedule (a concern that, in counsel's experience litigating redistricting and voting rights cases, was unfounded), Intervenors further compromised by proposing to limit the total time of the 35 depositions to the time allotted for 25 depositions under the Federal Rules—175 hours.

On September 5, 2018, Plaintiffs refused even this additional compromise. (Pls' Ltr. Dated 9/5/18, Ex. C). Tellingly, Plaintiffs' response focused on trying to hold Intervenors to a

stipulation Defendants made on deposition limits on July 6, 2018, rather than on the merits of Intervenors' position or the discovery needs of the case. (Ex. C). Intervenors responded by letter later that evening and asked Plaintiffs to reconsider. (Intvs' Ltr. Dated 9/5/18, Ex. D). Plaintiffs again refused and offered no solution. (Pls' Email Dated 9/6/18, Ex. E).[1]

In the end, the issue is not ripe. No depositions have so far been noticed in this case, let alone more than 25 "per side." Plaintiffs and Defendants stipulated to 25 depositions per side in the 26(f) report, and the Court's calendar order (ECF No. 41) sets no limit on the number of fact depositions. Intervenors have only stated they cannot commit to such a limitation at this time. This issue should only be addressed if and when a party moves the Court for leave to take additional depositions so that the Court can appropriately evaluate the need for the specific depositions being requested. *See* Fed. R. Civ. P. 30(a)(2)(A) (to take additional depositions, "a party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2)"). Such an analysis cannot be performed now: initial document discovery is incomplete (Plaintiffs' document productions will continue into October, as will third-party subpoenas) and no depositions have been scheduled or taken. Those steps are required for the parties, and ultimately the Court, to determine whether additional depositions are reasonable to ensure that the story of this compromise plan can be discovered for this litigation. It is prejudicial for Plaintiffs to sandbag the Court and Intervenors by demanding the Court decide today, so early in the case and without a developed factual record, what the total number of fact depositions in this case shall be. The Court should accordingly decline to do so.

---

[1] The timing of the Plaintiffs' stipulation with Defendants is significant. Only a week after entering the stipulation, Plaintiffs served Rule 26(a)(1) Initial Disclosures (Ex. F) identifying 87 individuals who may have discoverable information—a list that appears incomplete as few Democrats appear on the list despite Democrats' key roles in this compromise plan. It is unclear whether Defendants would have agreed to a limit of 25 depositions if they knew there were at least 87, and likely well over 100, potential persons with knowledge of the facts.

**2. In the alternative, if the Court believes it should rule on this issue now, it should adopt Intervenors' reasonable proposal of 35 depositions.**

As part of their motion to intervene, Intervenors made certain representations that are important to resolving this issue. First, as a basis for their intervention, Intervenors noted that they planned to offer evidence and arguments different than those of Defendants. (Mem. in Support Mot. to Intervene, ECF No. 43, at 3, PageID #382; Reply in Support Mot. to Intervene, ECF No. 59, at 19-20, PageID# 639-640). Second, Intervenors agreed that they would not require "prolonged discovery" and would complete their discovery within the case schedule. (*Id.* at 18, PageID #638). Finally, Intervenors agreed that they would work to avoid duplicating discovery of the named parties. (*Id.* at 17, PageID #637). These representations remain true.

A limitation of only 25 depositions for Defendants and Intervenors combined would limit Defendants and Intervenors to just three combined fact depositions after deposing the Plaintiffs—necessary depositions in this type of case to establish Plaintiffs' standing. Intervenors *may* need more than just three additional fact depositions for at least two reasons. First, Intervenors seek discovery of Democratic Party-affiliated parties regarding Democrats' role in the crafting of the 2011 congressional plan, a compromise plan that received bi-partisan support. Plaintiffs agree that this is within the scope of discovery in this case. (Ex. C). Not only is this discovery within the scope of discovery as contemplated by the named parties, but the named parties are not seeking it. Plaintiffs' third-party discovery to date has been noticeably one-sided; they have served roughly 35 subpoenas on Republican-affiliated people and entities and none on Democratic-affiliated parties. A reasonable amount of discovery into Democratic Party involvement in this plan is necessary to ensure the Court has the full story when adjudicating the constitutionality of the plan. And depositions of key Democrats involved in the compromise plan may be a necessary part of such discovery.

4

Second, after Plaintiffs and Defendants agreed to 25 depositions per side, Plaintiffs served their initial disclosures identifying 87 potential witnesses.  Certainly, Intervenors and Defendants must be permitted to depose adverse witnesses that may testify at trial, otherwise they would be subjected to trial by ambush.  But until the parties move further into discovery, Intervenors have no way of knowing how many of these witnesses they will need to depose. Plaintiffs cannot be permitted to hide behind a haystack of witnesses and hobble Intervenors' ability to identify and depose those who will ultimately testify at trial.

Consistent with their representations to this Court, Intervenors do not seek discovery that is duplicative, and note that all depositions can be completed within the timeframe already agreed to by the parties (both the final discovery deadline, and the duration of depositions). Indeed, ensuring that Intervenors are able to depose every Plaintiff, with sufficient additional fact witness depositions, will hasten the Court's review of information relevant to Plaintiffs' standing, and ensure greater efficiency at trial.  Plaintiffs' testimony is necessary for evaluating whether they have standing under *Gill*.  In order to comply with the two-week trial scheduled by the Court, the parties could potentially agree to designate some or all of Plaintiffs' deposition testimony about standing in lieu of live testimony and focus the trial presentation on the merits, or lack thereof, of Plaintiffs' case.  In order to create this efficiency, Intervenors would need to use 88% of the 25 depositions Plaintiffs claim are permitted for both Defendants and Intervenors. It is patently unreasonable to leave Defendants and Intervenors with only three combined fact witness depositions.  A request for a maximum of 35 depositions to account for the issues identified above is entirely reasonable in a case of this magnitude and importance.

Dated:  September 12, 2018

Respectfully submitted,

**BAKERHOSTETLER LLP**

*/s/ Patrick T. Lewis*
Patrick T. Lewis (0078314)
*Trial Attorney*
Email: plewis@bakerlaw.com
127 Public Square, Suite 2000
Cleveland, OH  44114-1214
(216) 621-0200 / Fax (216) 696-0740

Robert J. Tucker (0082205)
Email: rtucker@bakerlaw.com
Erika Dackin Prouty (0095821)
Email: eprouty@bakerlaw.com
200 Civic Center Drive, Suite 1200
Columbus, OH  43215-4138
(614) 228-1541 / Fax (614) 462-2616

Katherine L. McKnight(*)
Email: kmcknight@bakerlaw.com
Richard B. Raile(*)
Email: rraile@bakerlaw.com
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5403
(202) 861-1500 / Fax (202) 861-1783
(*) pro hac vice motions pending

*Counsel for Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2018, a true and correct copy of the foregoing was filed via the Court's CM/ECF system and served via electronic filing upon all counsel of record in this case.

*/s/ Patrick T. Lewis*
Patrick T. Lewis (0078314)
*Counsel for Intervenors*

013253.000001 4844-9240-3314

6