# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| OHIO A. PHILIP RANDOLPH INSTITUTE, *et al.*, | : : : | No. 1:18cv357 |
| Plaintiffs, | : : | ORDER GRANTING PLAINTIFFS' MOTION TO |
| v. | : : | COMPEL COMPLIANCE WITH SUBPOENAS SERVED |
| RYAN SMITH, *et al.*, | : : | ON E. MARK BRADEN (DOC. 105) |
| Defendants. | : | |

**Before: Moore, Circuit Judge; Black and Watson, District Judges.**

This case is before the Court on Plaintiffs' motion to compel compliance with subpoenas served on third-party E. Mark Braden (Doc. 105), as well as the parties' responsive memoranda (Docs. 114, 118). For purposes of the instant motion, the issue before the Court is whether attachments to nine emails listed on Mr. Braden's privilege log are shielded from discovery by the attorney-client privilege and the work-product doctrine.

## I. INTRODUCTION

This case is a challenge to Ohio's current United States congressional redistricting plan ("Map") and each of its component districts. Plaintiffs allege that the Map—which was created in the redistricting that followed the 2010 Census and passed into law in 2011—was drawn by the Republicans in Ohio, with the support and assistance of the

national Republican Party, and that the Map was designed to pack and crack voters across each district to establish a 12-4 Republican to Democratic seat ratio for Ohio's U.S. congressional delegation.  Plaintiffs allege the Map is an unconstitutional partisan gerrymander that violates the First Amendment, the Fourteenth Amendment, and Article I of the United States Constitution.

Under current Ohio law, the state General Assembly has the primary authority for drawing Ohio's U.S. congressional districts, and the Joint Legislative Task Force on Redistricting, Reapportionment, and Demographic Research ("Task Force") is tasked with advising the General Assembly.  (Doc. 37 at ¶ 42); Ohio Rev. Code § 103.51.

Mr. Braden is an attorney with the law firm Baker Hostetler in Washington, D.C.  (Doc. 114-1 at ¶ 3).  Mr. Braden has been representing and/or advising government entities and other stakeholders on redistricting and reapportionment matters since the late 1970s.  (*Id.* at ¶ 4).  For the 2011 redistricting process in Ohio, Mr. Braden represented the Task Force and its members on behalf of the Ohio Attorney General's office.  (*Id.* at ¶ 10).

Plaintiffs served two subpoenas for the production of documents on Mr. Braden.  (Doc. 114-3).  The subpoenas sought documents relating to Mr. Braden's work during the 2011 redistricting.  (*Id.*; Doc. 114-2).  To date, Mr. Braden has produced 177 documents in response to Plaintiffs' subpoenas.  (Doc. 105-2 at ¶ 18; Doc. 119-1).  Mr. Braden also produced a privilege log listing the documents that he withheld on the grounds that they were shielded from discovery by the attorney-client privilege and/or the work-product doctrine.  Mr. Braden's revised privilege log includes 186 entries.  (*Id.*)

2

The parties conferred on several occasions regarding Mr. Braden's refusal to produce certain documents listed on the privilege log. (Doc. 105-2 at ¶¶ 10-18). On December 2, 2018, counsel for Plaintiffs narrowed the scope of their dispute by requesting production of what Plaintiffs refer to as "factual documents" attached to nine emails listed on the privilege log. (*Id.* at ¶ 16). The parties could not resolve the issue, and Plaintiffs have asked the Court to compel Mr. Braden to produce certain attachments to those nine emails on the grounds that they are not subject to the attorney-client privilege or the work-product doctrine.

On December 4, 2018, the Court ordered Mr. Braden to submit the disputed documents to the Court for an *in camera* review. The Court has reviewed the documents *in camera* and finds that they are not covered by the attorney-client privilege or the work-product doctrine.

## II. STANDARD

### A. The Attorney Client Privilege.

The attorney-client privilege is based on two related principles. First, subjecting lawyers to routine examinations of their clients' confidential communications would offend the loyalty that forms an intrinsic part of the relationship between a lawyer and client. *Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir. 1998) (citation omitted). "The second principle is that the privilege encourages clients to make full disclosure to their lawyers. A fully informed lawyer can more effectively serve his client and promote the administration of justice." *Id.*

The Sixth Circuit has set forth the essential elements of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by his legal adviser, (8) unless the protection is waived.

*Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992) (citing *United States v. Goldfarb*, 328 F.2d 280 (6th Cir. 1964)).

Importantly, "the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing." *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) (emphasis in original) (internal quotation mark omitted).

The burden of establishing the existence of the attorney-client privilege rests with the person asserting it. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999) (citation omitted).

### B. The Work-Product Doctrine.

"The work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (citing *Hickman v. Taylor*, 329 U.S. 495, 510-14, 67 S. Ct. 385, 91 L. Ed. 451(1947)). The work-product doctrine shields from discovery (1) documents and tangible things; (2) prepared in anticipation of litigation or for trial, (3) by or for another party or its representative. *Id.* (citing Fed. R. Civ. P.

26(b)(3)).

"To determine whether a document has been prepared 'in anticipation of litigation,' and is thus protected work product, we ask two questions: (1) whether that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose, and (2) whether that subjective anticipation was objectively reasonable." *In re Professionals Direct Ins. Co.*, 578 F.3d at 439 (quoting *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)). "[D]ocuments prepared in the ordinary course of business . . . or for other nonlitigation purposes, are not covered by the work product privilege." *Roxworthy*, 457 F.3d at 593 (citing Fed. R. Civ. P. 26(b)(3) advisory committee's notes (1970)). "Thus, a document will not be protected if it would have been prepared in substantially the same manner irrespective of the anticipated litigation." *Roxworthy*, 457 F.3d at 593-94 (citing *United States v. Aldman*, 134 F.3d 1194, 1202 (2d Cir. 1998)).

As with the attorney-client privilege, "[a] party asserting the work product privilege bears the burden of establishing that the documents he or she seeks to protect were prepared 'in anticipation of litigation.'" *Roxworthy*, 457 F.3d at 593 (quoting *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473 (6th Cir. 2006)).

### III.  ANALYSIS

#### A.  The Attorney-Client Privilege.

Plaintiffs argue that Mr. Braden is improperly withholding attachments to emails marked as Control Numbers 825, 843, 1370, and 1382 pursuant to the attorney-client privilege. (Doc. 105-1 at PID # 970-71).

5

Control Number 825 is an email sent on August 19, 2011 by Chris Ventura (an aide to Mike Dovilla, a member of the Ohio House of Representatives and member of the House subcommittee on redistricting) to Mr. Braden, as well as to Ray DiRossi and Heather Mann (Republican operatives alleged to have been engaged to consult with or assist the Republican members of the Task Force), Mark Lenzo (in-house counsel for the Ohio House of Representatives), and Clark Bensen (a consultant to Mr. Braden). Attached to Control Number 825 is a spreadsheet, designated Control Number 826, that contains factual information about Ohio counties and congressional districts.

Similarly, Control Number 843 is an email sent on September, 6, 2011 by Chris Ventura to the same recipients as in Control Number 825. Attached to Control Number 843 is a spreadsheet, designated Control Number 844, that contains factual information about Ohio counties and congressional districts.

Control Number 1382 is an email from Mr. Benson to Mr. Braden dated March 11, 2011. Attached to the email is, *inter alia*, a document marked as Control Number 1384, which lists certain demographic data for Ohio's congressional districts.

Similarly, Control Number 1370 is an email from Mr. Benson to Mr. Braden dated March 15, 2011. Attached to the email is*, inter alia*, a document marked as Control Number 1371, which is a map that purports to show population deviation between Ohio's 2002 districts and the 2010 census, and a document marked as Control Number 1375, which, like Control Number 1384, lists certain demographic data for Ohio's congressional districts.

Mr. Braden argues the documents marked as Control Numbers 826, 844, 1384, 1371, and 1375 are privileged because Mr. Ventura and Mr. Benson sent these attachments to Mr. Braden in order to aid him in rendering legal advice. (Doc. 114 at PID # 1323-26; Doc. 114-1 at ¶ 15-16). The Court does not agree.

First, the Court has reviewed the documents *in camera* and they do not contain, or reference, legal advice. They contain only facts, data, and maps that are not protected by the attorney client privilege. *See Upjohn*, 449 U.S. at 395-96. Records stating the population of Adams County, Ohio, for example, do not become privileged simply because they are attached to an email on which Mr. Braden is a recipient. *See Fresenius Med. Care Holdings, Inc. v. Roxane Labs., Inc.*, No. 2:05-cv-0889, 2007 U.S. Dist. LEXIS 12018, at * 9 (S.D. Ohio Feb. 16, 2007) ("[T]o the extent that [documents] contain strictly factual information rather than legal conclusions or opinions, that factual information cannot be immunized from discovery simply by incorporating it into a document which is entitled to work-product protection.").

Second, Mr. Braden has the burden of showing these documents are privileged, and he cannot meet that burden by stating in conclusory fashion that he sent and received the documents at issue in order to help him render legal advice. *See Freiermuth v. PPG Industries*, 218 F.R.D. 694, 699 (N.D. Ala. 2003) ("An affidavit containing mere conclusory statements that a document was prepared for the purpose of obtaining legal advice will not suffice in meeting [respondent's] burden.") (citation omitted).

Third, the documents appear to be preexisting factual records that would not be privileged <u>even if</u>, as Mr. Braden contends, they were sent to him for the purpose of

7

obtaining legal advice. *See Fisher v. United States*, 425 U.S. 391, 403-04 (1976) ("[P]re-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice.").

Accordingly, the Court finds the documents marked as Control Numbers 826, 844, 1384, 1371, and 1375 are not shielded from discovery by the attorney-client privilege.

### B. The Work-Product Doctrine.

Plaintiffs argue Mr. Braden is improperly withholding attachments to emails marked as Control Numbers 843, 1370, 1382, 1434, 1439, 1473, 1487, and 1499 on the grounds of the work-product doctrine. (Doc. 105-1 at PID # 973-74).

Control Number 1434 is an email sent by Mr. Braden to Tom Hofeller, a data expert, on September 6, 2011. (*See* Doc. 114-1 at ¶ 17). There are four attachments to Control Number 1434: (1) a map of Ohio's congressional districts, marked as Control Number 1436; (2) a map of central Ohio, marked as Control Number 1437; (3) a spreadsheet of demographic data for Ohio's congressional districts, marked as Control Number 1438; and (4) a file labeled "4-WAY_SPLIT_9-6.zip" that does not have a Control Number.[1]

---

[1] The documents submitted for *in camera* review contain four .zip file attachments; the other three are attached to the documents marked as Control Numbers 1473, 1487, and 1499. The Court has not reviewed these files. Mr. Braden informed the Court that these four files consist of one .DBF file and three .DCB files that are not readable with normal computer programs and cannot be imaged or bates numbered. (Doc. 119-2 at 2). The .DBF and .DCB files can be opened in a software tool called Maptitude, which was used to draw the Congressional maps in Ohio in 2011. "DBF" is the extension name for a "block assignment file," which is the base file one imports into Maptitude to see which census blocks are assigned to what districts. (Doc. 119-

Control Number 1439 is an email sent from Mr. Hofeller to Mr. Braden on September 6, 2011. There are two attachments to Control Number 1439: (1) a map of Franklin County, Ohio, marked as Control Number 1440; and (2) a map of Hamilton County, Ohio, marked as Control Number 1441.

Control Number 1473 is an email sent by Adam Kincaid to Mr. Braden and Tom Whatman on September 9, 2011. Attached to Control Number 1473 are (1) documents marked as Control Numbers 1474-1481 which consist of maps and a spreadsheet showing demographic information for Ohio's congressional districts and (2) a file titled "Ohio_Congressional_Map_as_of_9-9.zip."[2]

Control Number 1487 is an email sent by Mr. Braden to Tom Hofeller on September 9, 2011. Attached to Control Number 1487 are (1) documents marked as Control Numbers 1488-1494 and 1497, which consist of maps and a spreadsheet showing demographic information for Ohio's congressional districts, and (2) a file titled "Ohio_Congressional_Map_as_of_9-9.zip."[3]

Control Number 1499 is an email sent by Mark Braden to Clark Benson on September 9, 2011. Attached to Control Number 1499 are (1) documents marked as

---

9 at 101:23-102:9). "DCB" files are "dictionary files" that "tell Maptitude where to look in the data file for the different fields of data." (Doc. 119-8 at Page 192).

[2] Mr. Braden's declaration states that documents marked as Control Numbers 1482 and 1483 are also attached to Control Number 1473. (Doc. 114-1 at ¶ 19). Control Numbers 1482 and 1483 were not produced in camera, and appear to relate to the .zip file.

[3] Mr. Braden's Declaration states that documents marked as Control Numbers 1495 and 1496 are also attached to Control Number 1487. (Doc. 114-1 at ¶ 19). Control Numbers 1495 and 1496 were not produced in camera, and appear to relate to the .zip file.

Control Numbers 1500-1506 and 1509 which consist of maps and a spreadsheet showing demographic information for Ohio's congressional districts, and (2) a file titled "Ohio_Congressional_Map_as_of_9-9.zip."[4]

Plaintiffs argue the documents at issue—Control Numbers 844, 1371, 1375, 1384, 1436, 1437, 1438, 1440, 1441, 1474-1483, 1488-1497, 1500-1509—are not subject to the work-product doctrine because they were not prepared in anticipation of litigation. (Doc. 105-1 at PID # 973-75).

Mr. Braden argues redistricting is a complex process that is highly contentious and claims that each of Ohio's redistricting efforts since the 1970s has resulted in litigation. (Doc. 114-1 at ¶ 5). Mr. Braden gathers data and runs analyses because failing to adequately consider certain issues and data can lead to a map being invalidated in litigation, and some of the steps that he takes would be unnecessary but for the likelihood of litigation. (*Id.* at ¶¶ 8-9). Mr. Braden argues that, if litigation over Ohio's congressional map were not likely, he would not have sent or received the emails described *supra*. (*Id.* at ¶¶ 15-19).

The Court finds Mr. Braden has not met his burden of showing that the documents at issue were created in anticipation of litigation. Mr. Braden's assertion that he would not have <u>sent</u> or <u>received</u> these documents if litigation over the Map was not likely are insufficient because there is no evidence the documents were <u>prepared</u> because of a

---

[4] Mr. Braden's Declaration states that documents marked as Control Numbers 1507 and 1508 are also attached to Control Number 1499. (Doc. 114-1 at ¶ 19). Control Numbers 1507 and 1508 were not produced in camera, and appear to relate to the .zip file.

subjective anticipation of litigation. "Because documents are not protected if they were created for nonlitigation purposes, regardless of content, '[d]etermining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question.'" *Roxworthy*, 457 F.3d at 595 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir.1992)). Consequently, the Court must examine "the circumstances surrounding the documents' creation." *Id.*

Mr. Braden offers no evidence of the circumstances surrounding the creation of any of the documents at issue. There is simply nothing before the Court from which it could conclude that these documents—which consist of data and maps—were prepared "because of" anticipated litigation, as opposed to Mr. Braden's clients' statutory duty to draft Ohio's congressional map. Similarly, there is no evidence or argument that these documents would have been prepared differently but for the anticipated litigation.

Accordingly, the Court finds the documents marked as Control Numbers 844, 1371, 1375, 1384, 1436, 1437, 1438, 1440, 1441, 1474-1483, 1488-1497, and 1500-1509, as well as the .zip files attached to the documents marked as Control Numbers 1434, 1473, 1487, and 1499 are not shielded from discovery by the work-product doctrine.[5]

---

[5] The fact that the Court was not able to view the .zip files in camera is irrelevant; Mr. Braden bears the burden of demonstrating the applicability of the work-product doctrine and did not set forth any argument or evidence indicating that the data in these files was created in anticipation of litigation. Mr. Braden states he is "not asserting privilege based on viewing the content of those data files" but because "the communication to which the files were attached" involved "Mr. Braden's seeking and use of these documents/data sets to advise his clients and prepare for anticipated litigation." This argument is not availing. As explained *supra*, the work-product doctrine only applies to documents prepared in anticipation of litigation, and there is no evidence that the information in these data files was prepared in anticipation of litigation.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel (Doc. 105) is **GRANTED**. Mr. Braden shall produce documents marked as Control Numbers 844, 1371, 1375, 1384, 1436, 1437, 1438, 1440, 1441, 1474-1483, 1488-1497, and 1500-1509, as well as the .zip files attached to the documents marked as Control Numbers 1434, 1473, 1487, and 1499, immediately. Mr. Braden shall produce these documents immediately and by a hard deadline of 12/16/18 at noon EST, at the latest.

**IT IS SO ORDERED.**

Date:     12/15/18                         /s/ *Timothy S. Black*
                                           Timothy S. Black
                                           United States District Judge

                                           /s/ *Karen Nelson Moore*
                                           Karen Nelson Moore
                                           United States Circuit Judge

                                           /s/ *Michael H. Watson*
                                           Michael H. Watson
                                           United States District Judge