# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| OHIO V. PHILIP RANDOLPH INSTITUTE, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>RYAN SMITH, Speaker of the Ohio House of Representatives, et al.,<br><br>Defendants. | Case No.: 1:18-cv-00357-TSB<br><br>Judge Timothy S. Black<br>Circuit Judge Karen Nelson Moore<br>Judge Michael H. Watson<br><br>Magistrate Judge Karen L. Litkovitz |
| IN RE: SUBPOENAS SERVED ON REPUBLICAN NATIONAL COMMITTEE, NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE, AND ADAM KINCAID | Transferred from the United States District Court for the District of Columbia,<br><br>Civil Action No. 18-mc-00031 |

## RESPUBLICAN NATIONAL COMMITTEE'S, NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE'S, AND ADAM KINCAID'S EMERGENCY MOTION TO STAY COURT'S ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL

Pursuant to Fed. R. App. P. 8(a)(1), the Republican National Committee ("RNC"), the National Republican Congressional Committee ("NRCC"), and Adam Kincaid ("Kincaid") (collectively "Respondents"), move this Court to stay its December 21, 2018 order compelling Respondents to comply with Plaintiffs' Motion to Compel pending an expedited appeal or petition for mandamus. (ECF 128) (Page ID 3465-3483). A memorandum of law supporting this Motion follows.

Respondents have consulted with Plaintiffs concerning the relief sought. Plaintiffs object to this Motion and intend to file a response by Thursday, December 27, 2018.

1

13518736v1

**MEMORANDUM IN SUPPORT**

**INTRODUCTION**

When Julius Caesar crossed the Rubicon, he did so confident that a meaningful victory was—at the very least—possible.[1] By contrast, this Court's order compels the RNC, NRCC, and Kincaid to cross the Rubicon of discovery, an act that cannot be undone even by a successful appeal. Plaintiffs will have received, reviewed, and—pending this Court's order—used the privileged documents. All this despite the fact that Plaintiffs' attorneys are some of the very people to whom Respondents asserted they did not want their communications, strategies, and mental impressions disclosed.[2] Accordingly, the RNC, NRCC, and Kincaid request that this Court stay its order pending an expedited appeal or petition for mandamus.

Nevertheless, the RNC, NRCC, and Kincaid understand that discovery is closed and the dispositive motions deadlines are looming. Accordingly, in an effort to be as accommodating as possible, Respondents are willing to seek expedited review of its appeal or petition for

---

[1] "In 49 B.C., Julius Caesar halted his army on the banks of the Rubicon River in northern Italy. According to Suetonius, he paused in momentary hesitation, before sweeping across the waters toward Rome with the immortal phrase *Alae iacta est* (The die has been cast). By violating an ancient Roman law forbidding any general to cross the Rubicon with an army, Caesar's decision made war inevitable. Ever since, 'crossing the Rubicon' has come to symbolize a point of no return . . . ." Dominic D.P. Johnson & Dominic Tierney, *The Rubicon Theory of War: How the Path to Conflict Reaches the Point of No Return*, 36 INT'L SECURITY 7, 7 (2011) (citing C. Suetonius, LIVES OF THE CAESARS, VOLUME 1: JULIUS, AUGUSTUS, TIBERIUS, GAIUS, CALIGULA (J.C. Rolfe trans., Harv. Univ. Press 1989)).

[2] As will be discussed in more detail *infra*, it is not the mere fact that these attorneys are adverse to Respondents in this litigation, it is that some of the counsel are adverse to Respondents political and legal interests in future litigation and elections as well. *See generally* Ex. C to Resp.ts' Opp.'n to Pls.' Mot. to Compel (Page ID 457-476).

Mandamus. Due to the holidays, Respondents intend to file their petition for mandamus or opening appellate brief no later than Thursday January 3, 2019.[3]

## STANDARD OF REVIEW

In evaluating a motion for stay, this Court balances the following four factors: (1) whether Respondents are likely to succeed on the merits of their appeal; (2) whether absent a stay, Respondents will likely suffer irreparable harm; (3) whether if the Court grants the stay, Plaintiffs will likely suffer harm; and (4) whether it is in the public's interest to grant the stay. *Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006). Also similar to the standard to evaluate a motion for preliminary injunction, "[a]ll four factors are not prerequisites but are interconnected considerations that must be balanced together." *Id*. Accordingly, a strong showing of one factor may overcome any weaknesses of the others. *Id*. at 252; *Ams. United for Separation of Church & State v. Grand Rapids*, 922 F.2d 303, 306 (6th Cir. 1990).

## ARGUMENT

**I. THE RNC, NRCC, AND KINCAID ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR APPEAL OR PETITION FOR MANDAMUS.**

**A. First Amendment Standard.**

Because the right to free speech is enhanced through associating with others, *Buckley v. Valeo*, 424 U.S. 1, 15 (1976), and the associational right is effectively exercised when the association is able to formulate messages and develop strategies in private, courts have developed a framework to protect from disclosure internal associational communications. *See, e.g., Perry v. Schwarzenegger,* 591 F.3d 1147, 1162 (9th Cir. 2010). *First*, the party asserting the

---

[3] In this Motion to Stay, Respondents focus their arguments on this Court's ruling concerning the First Amendment privilege. The RNC preserves its arguments concerning this Court's ruling regarding the RNC's attorney-client privilege and attorney work-product for appeal.

protections of the First Amendment privilege must make a *prima facie* case that disclosure could arguably infringe its First Amendment rights. *Black Panther Party v. Smith*, 661 F.2d 1243, 1267-68 (D.C. Cir. 1981). Because the right to associate to formulate strategies to influence the political process is enshrined in the First Amendment, the burden to demonstrate a *prima facie* case of infringement is light. *Id*. at 1267-68; *N.Y. State NOW v. Terry*, 886 F.2d 1339, 1355 (2d Cir. 1989).

Once the party resisting discovery satisfies this threshold showing, the burden shifts. This Court must therefore "carefully examine[]" the need for disclosure. *Black Panther Party*, 661 F.2d at 1268. The party seeking disclosure must show that the information sought "goes to the heart of the matter," meaning that the information sought is "crucial" to the party's case. *Id*. The party must "describe the information they hope to obtain and its importance to their case with a reasonable degree of specificity." *Id*. This high burden of requiring a demonstration that the information sought is "crucial" to the party's case, is necessary because if the information is not crucial then there is no compelling need to infringe the resisting party's constitutional rights. Disclosure must be kept to a minimum. *Id*.

Then, the party seeking disclosure must show that it has exhausted every reasonable alternative avenue of obtaining the information sought. *Id*. If a less intrusive means of obtaining the information exist, the party seeking disclosure must use that means. *Perry*, 591 F.3d at 1161.

Only if the party seeking disclosure satisfies these elements then the Court must balance the threat to the First Amendment rights at stake with the need for the information. *See id*; *see also Black Panther Party*, 661 F.2d at 1267; *see AFL-CIO v. FEC*, 333 F.3d 168, 176 (D.C. Cir. 2003) (although the evidence of First Amendment infringement was not as strong as in cases of reprisals and harassment, First Amendment harm still existed).

4
13518736v1

Although this Court correctly found that Respondents satisfied their burden of demonstrating *prima facie* harm, Mem. Op. at 8-9 (Page ID 3472-73), the Court improperly analyzed Plaintiffs' burden to demonstrate that the information sought is crucial to proving discriminatory intent. The Court then failed to address Respondents' arguments that the information sought is, as a matter of fact and law, not crucial to Plaintiffs' case. Then, the Court mischaracterized Respondents' affidavits as conclusory.

### B. **This Court Erroneously Applies The Standard.**

This Court was required to determine whether Plaintiffs satisfied their burden in establishing that the information Respondents withheld as privileged is "crucial" to establishing partisan intent. *See* Resps' Opp.'n to Pls.' Mot. to Compel at 11, 22-25 (Page ID 423-426) *Black Panther Party*, 662 F.2d at 1268; Mem. Op. at 10 (Page ID 3474).[4]

*First*, rather than determining whether Plaintiffs satisfied their burden, the Court went straight to balancing the Plaintiffs' need for the information sought with the Respondents First Amendment rights. Mem. Op. at 9 (Page ID 3473). This is an error of law because the Court must first determine if Plaintiffs satisfied their burden, namely by demonstrating that the information sought is crucial to proving intent. Then, only if the Plaintiffs have met this burden, the Court must determine if Plaintiffs exhausted all reasonable alternatives to obtaining the

---

[4] This Court stated that Plaintiffs' partisan gerrymandering claims are important. Mem. Op 9 (Page ID 3473). But it is not clear whether Plaintiffs claims are viable. *See, e.g., Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (holding that plaintiffs' lacked standing and ruling that a majority of the Court still had not ruled whether partisan gerrymandering claims are justiciable). The Court will decide the viability of partisan gerrymandering claims soon. *See Rucho v. Common Cause*, No. 18-422 (U.S. Dec. 19, 2018) (scheduled for conference on whether to note probable jurisdiction on Jan. 4, 2019); *Lamone v. Benisek,* No. 18-726 (U.S. Dec. 19, 2018) (scheduled for conference on whether to note probable jurisdiction on Jan. 4, 2019). This too counsels in favor of a stay pending appeal since compelled disclosure will infringe Respondents' First Amendment rights under a theory the Supreme Court may later determine is not viable. Again, once disclosed, the documents cannot be undisclosed.

5

information sought. Only after the Plaintiffs have satisfied these successive burdens does the Court balance the interests of the parties. Resp'ts' Opp.'n to Pls.' Mot. to Compel at 11.

*Second*, the Court erred in determining that the documents Plaintiffs seek are "relevant" to their claim that national Republicans drew the Ohio congressional map. Mem. Op. at 10 (Page ID 3474) ("The documents sought by Plaintiffs are *relevant* to their claim that the Map was drawn not by the Ohio legislature, but by state and national Republican operatives acting with an intent to lock in a Republican majority in Ohio's U.S. congressional seats.") (emphasis added). At the outset, the proper standard is not whether the documents sought are relevant. Rather, the proper standard is whether the documents sought are "crucial" or "highly relevant." *Black Panther Party*, 662 F.2d at 1268; *Perry*, 591 F.3d at 1161 (imposing a requirement that documents sought must be "highly relevant" and rejecting the relevancy standard). In this the Court committed an error of law.

*Third*, the Court misapplied the test to determine whether the information Plaintiffs seek is crucial. The Court stated that the information sought goes "to support a *crucial element* of their partisan gerrymandering claim." Mem. Op. 12 (Page ID 3476) (emphasis added). That is not the test. If it were, then parties seeking discovery would always satisfy this prong of the First Amendment privilege analysis because all elements to a claim are "crucial" to establishing the claim. Instead, the case law requires Plaintiffs prove that the information sought is crucial or highly relevant to proving a claim—here that the Ohio legislature acted with partisan intent. *Black Panther* Party, 661 F.2d at 1268; *Perry*, 591 F.3d at 1161 ("Importantly, the party seeking the discovery must show that the information sought is *highly relevant to the claims* or defenses in the litigation — a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1).") (emphasis added).

6

Additionally, the Plaintiffs do not *claim* that national Republican groups allegedly drew the map. Mem. Op. 10 (Page ID 3474). Rather, Plaintiffs *merely allege* that national Republican groups drew the map. Plaintiffs claim that their First Amendment rights and Fourteenth Amendment equal protection rights were violated. Both the First Amendment and Fourteenth Amendment claims require proof of discriminatory intent. Resp'ts.' Opp.'n to Pls.' Mot. to Compel at 22. The question then is whether the information sought is crucial to Plaintiffs satisfying the discriminatory intent standard. *Black Panther* Party, 661 F.2d at 1268; *Perry*, 591 F.3d at 1161.

If this Court holds that the information sought must be crucial to allegations contained in the Complaint, then the standard will be even more relaxed than the standard enunciated in the Federal Rules of Civil Procedure for simply seeking discovery. The Rules require a discovery requested to be anchored in a claim. *See* Fed. R. Civ. P. 26(b)(1), as distinguished from an allegation.

Furthermore, if this Court holds that the First Amendment privilege can be overruled if a few allegations are contained in a complaint and as opposed to being crucial to a claim, then the associations' First Amendment rights are subject to the artful pleading of political enemies. *AFL-CIO*, 333 F.3d at 178 (stating that the FEC's automatic disclosure of enforcement documents "encourages political opponents to file charges against their competitors to serve the dual purpose of 'chilling' the expressive efforts of their competitor and learning their political strategy so that it can be exploited to the complainant's advantage.").

*Fourth*, this Court did not address the RNC's, NRCC's, and Kincaid's arguments regarding the Ninth Circuit's decision in *Perry*. This omission is error because Respondents' central argument—comprising no less than five pages of their brief—is that if the documents

7

sought in *Perry* were not crucial to proving that the California voters who voted for Proposition 8 acted with unconstitutional animus, then the information sought here is similarly not crucial. Resp'ts.' Opp.'n to Pls.' Mot. to Compel at 22.-25, 31-32. Succinctly stated, if documents containing internal strategy communications within the official Proposition 8 campaign organization were not crucial or highly relevant to proving animus against homosexual persons on the part of Proposition 8 supporters, then the information Plaintiffs' seek about illicit intent on the part of the Ohio legislature is equally not crucial. *Perry*, 591 F.3d at 1165. This comparison is relevant since the complaints in both cases allege similar unconstitutional intent and animus. *Compare* Second Amend. Compl. ¶¶ 52-55 (stating that the national Republican Party drew Ohio's congressional districts with intent to entrench a Republican congressional majority) *with Perry v. Schwarzenegger*, No. 09-02292 (N.D. Cal. May 22, 2009) (ECF 1-1) (Compl. ¶ 43) (stating that Proposition 8 was adopted as a result of animus against a politically unpopular group and that the history of Proposition 8's adoption shows that it was backlash against rights recently conferred upon gays and lesbians). This Court failed to address this argument.

*Fifth*, the Court erred in how it characterized *AFL-CIO*'s statement that the threat to First Amendment rights is far less compelling when the disclosing party does not allege that disclosure would subject the disclosing party to violence, economic reprisals, and harassment. Mem. Op. 12 (Page ID 3476). Although true, the sentence cited continues stating that the difference between the affidavits that the Democratic National Committee submitted in *AFL-CIO*, and the facts asserted in *NAACP v. Alabama*, speak only to the strength of the First Amendment interests asserted, not to their existence. *AFL-CIO*, 333 F.3d at 176. In the end, the D.C. Circuit *upheld* the Democratic National Committee's assertion of First Amendment privilege in a case involving potential criminal violations. *See id*. at 171, 175-76; 52 U.S.C.

8
13518736v1

30109(d) (knowing and willful violations of corporate contributions are criminal violations); *Perry*, 591 F.3d at 1161 (cases involving allegations of criminal wrongdoing provide a compelling interest to the information sought).

*Sixth*, the Court is mistaken that Respondents' affidavits are conclusory, containing "boilerplate" language that did not explain how disclosure would impact the RNC's, NRCC's, and Kincaid's internal operations. Mem. Op. at 12 (Page ID 3476). This is simply incorrect. The affidavits gave substantive descriptions of the documents withheld, *see* Winkelman Aff. ¶ 9 (Page ID 465-66); Oldham Aff. ¶ 7 (Page ID 459-60); and Kincaid Aff. ¶¶ 14 (Page ID 473-74); described that the documents contained mental impressions and strategies, *see* Winkelman Aff. ¶¶ 12, 14 (Page ID 468); Oldham Aff. ¶¶ 9, 11 (Page ID 461); Kincaid Aff. ¶¶ 17, 19 (Page ID 474), and explained why disclosure to Plaintiffs would harm the association and frustrate the internal workings of the association, *see* Winkelman, Aff. ¶¶ 13-14, 16, 21 (Page ID 468-69); Oldham Aff. ¶¶ 10-13, 17-18, (Page ID 461-63); Kincaid Aff. ¶¶ 18-19, 21-22, 26-27, (Page ID 474-75). Accordingly, these affidavits are anything but conclusory.[5] In fact, these affidavits are consistent with what courts have held as sufficient to demonstrate that the First Amendment privilege applies. *See AFL-CIO*, 333 F.3d at 176-77 (stating that disclosure of polling data, member mobilization campaigns and state-by-state strategies would reveal to political opponents strategies and tactics that entity would likely use again implicates significant First Amendment interests and intrudes on the "privacy of association and belief" guaranteed under the First Amendment); *Perry*, 591 F.3d at 1163; *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 492-93 (10th Cir. 2011) (Kelly, J., concurring).

---

[5] Additionally, if Respondents added any additional information to their affidavits, that were approximately six pages each, they risked revealing precisely what the privilege protects.

*Seventh*, finally, this Court's reliance on *Bethune-Hill* is misplaced because its statement that "officials seldom, if ever, announce on the record that they are pursuing a particular course of action…" is taken out of context. Mem. Op. 11 n.5 (Page ID 3475). The court in *Bethune-Hill* made that statement in the context of overruling a legislative privilege objection. The argument the court was rejecting was that plaintiffs there could obtain the information they sought—legislative intent in redistricting case—from "special interest group position papers, press releases, newspaper articles, census reports, registered voter data and election returns." *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 341 (E.D. Va. 2015) (three-judge court). The *Bethune-Hill* ruling permitted plaintiffs to obtain the email communications of legislators. *Id.* at 330.

Here Plaintiffs obtained legislative emails and were able to seek legislative communications through freedom of information requests. Resp.ts' Opp.n to Pls.' Mot. to Compel 30-31; *see* Ohio Redistricting Transparency Report *The Elephant in the Room*[6] at 16-18, 21 (quoting emails from Senator Niehaus, Ray DiRossi, Heather Mann and stating that Plaintiff League of Women Voters of Ohio, in response to its freedom of information act request received documents from "Governor Kasich, Senator Niehaus, Senator Faber, Leader Budish, Heather Mann, Ray DiRossi, and the Legislative Services Commission…."). Accordingly, unlike the plaintiffs in *Bethune-Hill*, Plaintiffs here have obtained internal legislative communications. Furthermore, Plaintiffs did not obtain some documents because—having waited over six years—Plaintiffs were dilatory in bringing their claims. Plaintiffs should not benefit from their delay by violating the RNC's, NRCC's, and Kincaid's internal communications.

---

[6] Available at https://my.lwv.org/sites/default/files/leagues/wysiwyg/%5Bcurrent-user%3Aog-user-node%3A1%3Atitle%5D/the_elephant_in_the_room_-_transparency_report.pdf (last visited Dec. 24, 2018).

13518736v1

Accordingly, Respondents are likely to succeed on the merits, which weighs strongly in favor of granting the requested stay pending Respondents' expedited petition for mandamus, to allow for meaningful appellate review.

## II. ABSENT A STAY, THE RNC, NRCC, AND KINCAID WILL SUFFER IRREPARABLE HARM.

The very definition of irreparable harm is a harm that once occurred cannot be undone through monetary remedies. *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1382 (6th Cir. 1995). The Sixth Circuit has recognized that "an erroneous forced disclosure of confidential information could not be adequately remedied on direct appeal because a court cannot restore confidentiality to documents after they are disclosed." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009); *In re Lott*, 424 F.3d 446, 452 (6th Cir. 2005) ("If the District Court's discovery order is in error and Lott's counsel is wrongfully forced to disclose privileged communications, there is no way to cure the harm done to Lott or to the privilege itself, even if some of the disclosure's consequences could be remedied on direct appeal."). "[O]nce privileged materials are ordered disclosed, the practical effect of the order is often "irreparable by any subsequent appeal." *UMG Recording, Inc. v. Bertelsmann AG (In re Napster Copyright Litig.)*, 479 F.3d 1078, 1088 (9th Cir. 2007) (internal citations omitted). Erroneous privilege rulings lead to persisting prejudice against the party compelled to produce documents, a prejudice that is difficult to undo. *See Irth Sols., LLC v. Windstream Communs., LLC*, No. 16-219, 2018 U.S. Dist. LEXIS 66093, *4 (S.D. Ohio April 19, 2018) (certifying interlocutory appeal of attorney-client privilege claim because construction of Fed. R. Evid. 502 is a question of law).

The Court has attempted to create two layers of equally unhelpful limitations. First, the Court has a "confidentiality order" in place that in no way protects against the associational

11
13518736v1

harms that Respondents' allege. Second, this Court's "attorney's eyes only" restriction while on appeal does not effectively protect Respondents from their greatest concern for exposure: the release of documents to some of *the attorneys themselves*. This is especially true since one of the firms representing Plaintiffs is Covington and Burling. Eric Holder is a partner at Covington and Burling and Chairman of the National Democratic Redistricting Committee. *See, e.g.,* Oldham Aff. ¶ 13 (Page ID 462). Furthermore, the ACLU, another entity representing Plaintiffs, supports Democratic candidates. *Id*. ¶ 17 (Page ID 462).

Even with this Court's limitation that the documents be produced and shared with the attorneys, consultants, and testifying experts only, the privilege is still violated. The point of the First Amendment privilege, similar to the Attorney-Client privilege, is to encourage associational communications to formulate strategies and messages. *Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir. 1998) (stating that the purpose of the attorney-client privilege is to encourage communication between client and attorney); *Perry*, 591 F.3d at 1162-63 ("Implicit in the right to associate with others to advance one's shared political beliefs is the right to exchange ideas and formulate strategy and messages, and to do so in private. Compelling disclosure of internal campaign communications can chill the exercise of these rights."). Once the documents are disclosed, this purpose—internal communications made in private—is irreparably harmed. *Lott*, 424 F.3d at 451-52. "Mandatory disclosure of the communications is the exact harm the privilege is meant to guard against, and this disclosure is not remedied merely because a disclosed confidence is not used against the holder in a particular case." *Id*. Accordingly, if this Court refuses to grant a stay and compels the RNC, NRCC, and Kincaid to disclose their documents while the appeal is pending, "there is no way to cure the harm done to [Respondents]

12

or to the privilege itself, even if some of the disclosure's consequences could be remedied on direct appeal." *Id*. at 452.

Additionally, the disclosure of the withheld documents—even under this Court's attorneys' eyes only limitation—is precisely the disclosure the RNC, NRCC, and Kincaid sought to avoid. Winkelman Aff. ¶¶ 13-14, 16, 20-21 (Page ID 468-69); Oldham Aff. ¶¶ 11-13, 17-18 (Page ID 461-63); Kincaid Aff. ¶¶ 17-19, 21-22, 26-27 (Page ID 474-75). The concerns Respondents had regarding disclosure will come true, namely, that the very attorneys who will continue to advise Democratic legislators concerning redistricting, and who support Democratic campaigns, will know the internal communications and strategies of the RNC, NRCC, and Kincaid. Winkelman Aff. ¶¶ 13-14, 16, 20-21 (Page ID 468-69); Oldham Aff. ¶¶ 11-13, 17-18 (Page ID 461-63); Kincaid Aff. ¶¶ 17-19, 21-22, 26-27 (Page ID 474-75). The Sixth Circuit has already recognized that an "attorneys eyes only" limitation is inadequate when disclosure to your adversary is precisely what you want to avoid. The Sixth Circuit ruled:

> In the case of the attorney-client privilege, however, a litigant claiming the privilege would probably prefer almost anyone other than adversary counsel to review the documents in question. The attorneys'-eyes-only condition simply does not limit disclosure to persons whose knowledge of the confidential communication is not material to the purpose of the privilege. To the contrary, it allows one kind of critical disclosure--to opposing counsel in litigation--that the privilege was designed to prevent.

*In re Perrigo Co.*, 128 F.3d 430, 436 (6th Cir. 1997); *AFL-CIO*, 333 F.3d at 177-78 (holding that disclosure of a political party's internal confidential materials placing the party at a disadvantage to their political opponents and seriously interferes with the internal operations of

13

the party). Once this injury occurs it cannot be remedied by a subsequent order of the Court of Appeals. *Lott*, 424 F.3d at 451-52.[7]

Furthermore, the burden of establishing irreparable harm in the First Amendment context is light. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Platt v. Bd. of Comm'rs on Grievs. & Discipline of the Ohio Supreme Court*, 769 F.3d 447, 454 (6th Cir. 2014) (adopting the *Elrod* framework) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Accordingly, this factor favors granting the stay pending the expedited appeal or petition for mandamus to prevent the RNC, NRCC, and Kincaid from experiencing irreparable harm, and to permit the RNC, NRCC, and Kincaid to pursue a meaningful appeal, this Court should stay its order pending the expedited appeal or petition for mandamus. *Lott*, 424 F.3d at 452.

### III. THE PROSPECT THAT PLAINTIFFS WILL BE HARMED IF A STAY IS GRANTED IS MINIMAL BECAUSE RESPONDENTS SEEK AN EXPEDITED APPEAL OR PETITION FOR MANDAMUS.

Granting the stay will impose, at most, minimal harm to Plaintiffs. Dispositive motions are due January 8, 2019 and trial is set for March 4, 2019.[8] *See* Calendar Order at 2-3 (Page ID

---

[7] Additionally, the protective order at issue in *Perry* contained an attorneys' eyes only limitation. *See Perry v. Schwarzenegger*, No. 09-02292 (N.D. Cal. Dec. 3, 2009 and Jan. 7, 2010) (ECF 273-1, 361, ¶ 7.3.). The Ninth Circuit was well aware of this provision. *See, e.g., Perry v. Schwarzenegger*, No. 09-17241 at 12, 29, 33-34 (9th Cir. Nov. 23, 2009) (Doc. ID# 7139901) (appellees repeatedly referencing the protective order that the parties were negotiating under orders from the magistrate judge, ***including an attorneys' eyes only provision***). Still, the Court disregarded the protective order and upheld the privilege. *Perry*, 591 F.3d at 1163-65 (stating that the protective order could ameliorate the threatened chill but could not eliminate it and therefore the Proposition 8 proponents satisfied the light burden).

[8] Because intent is an element of Plaintiffs' claims, summary judgment for Plaintiffs is unlikely. *See, e.g., Hunt v. Cromartie*, 526 U.S. 541, 549, 553 (1999) (stating that legislative intent in redistricting cases is a factual question and that summary judgment is inappropriate where evidence is susceptible to multiple interpretations and thus summary judgment is unlikely).

14

355-56). Although it is true a stay could cause a delay, the Sixth Circuit has frequently granted expedited appeals and issued expedited decisions in cases involving the First Amendment and elections. Frequently in these cases, the Sixth Circuit and other circuits have acted with alacrity. *League of Women Voters of Michigan, et al. v. Johnson*, *et al*., No. 18-2382 (6th Cir. Dec. 20, 2018) (granting motion to expedite and issuing opinion and order within 17 days from notice of appeal); *See also*, *e.g., Obama for Am. v. Husted*, No. 12-4055, 12-4076 (6th Cir. Sept. 10, 2012) (appeal docketed), 697 F.3d 423 (6th Cir. Oct. 5, 2012) (issuing opinion and order 26 days after notice of appeal filed); *League of Women Voters of Michigan, et al. v. Johnson*, *et al*., No. 18-1437 (6th Cir. April 26, 2018) (Dkt. No. 8-1) (granting Proposed Congressional Intervenors' consented motion to expedite); *See League of Women Voters, et al. v. Johnson*, No. 18-1946 (6th Cir. Aug. 28, 2018) (granting Proposed Legislative Intervenors' motion to expedite); *Martins v. Pidot*, 663 Fed. Appx. 14 (2d Cir. 2016) (expediting appeal in an election law case where the notice of appeal was filed on August 30, 2016, briefs were filed on September 1, September 8, 2016, and September 12, 2016, the Second Circuit heard oral argument on September 14, 2016 and issued its written opinion on September 16, 2016); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 235 (4th Cir. 2014) (expediting appeal of an election law case where the district court issued its opinion on August 8, 2014, then the appellate court heard oral argument on September 25, 2014 and the appellate court issued its opinion on October 1, 2014); *Feldman v. Arizona Sec'y of State,* 840 F.3d 1057, 1065-66 (9th Cir. 2016) (granting motion to expedite where the appeal was docketed on September 23, 2016, parties were ordered to file simultaneous briefs on October 17, oral argument was heard on October 19, and the court issued its opinion on October 28, 2016).

Additionally, any harm brought upon Plaintiffs is self-inflicted. Plaintiffs filed their lawsuit more than six years after the Ohio Congressional maps were passed into law. Surely the dilatory nature of Plaintiffs' claim should weigh, to some extent, against their claims of irreparable harm.

Accordingly, Plaintiffs' only possible harm is delay, but this harm is minimized through use of the expedited appeal process. Accordingly, this factor weighs in favor of granting the stay.

### IV. A STAY IS IN THE PUBLIC'S INTEREST.

The public interest weighs in favor of a stay. This is because the public and the marketplace of ideas suffer from chilled political participation. *Buckley*, 424 U.S. at 71; *Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting that society is harmed from having an uninhibited marketplace of ideas when organizations and individuals abstain from speech). Disclosure to Plaintiffs' counsel will cause self-censorship and reluctance to provide full and frank discussions concerning the formulation of strategies and messages. Winkelman Aff. ¶¶ 13-14, 16, 20-21; Oldham Aff. ¶¶ 11-13, 17-18; Kincaid Aff. ¶¶ 17-19, 21-22, 26-27. This adversely impacts the inner-workings of the association. *Tashjian v. Republican Party*, 479 U.S. 208, 224 (1986); *Ripon Soc.'y v. Nat'l Republican Party*, 525 F.2d 567, 585 (D.C. Cir. 1975). Accordingly, the public interest lies in—for now—staying this Court's order and protecting Respondents' First Amendment associational communications. *Suster v. Marshall*, 149 F.3d 523, 533 (6th Cir. 1998) ("[T]here is no public interest in enforcing a law that 'curtails debate and discussion' regarding issues of political import.") (quoting *Citizens Against Rent Control/Coalition for Fair Housing v. City of Berkeley, Cal.*, 454 U.S. 290, 299 (1981)).

Accordingly, this factor weighs in favor of granting the stay.

**CONCLUSION**

For the aforementioned reasons, the order should be stayed pending expedited appeal or petition for mandamus.

Respectfully submitted,

*/s/ Pramila A. Kamath*
Pramila A. Kamath (0085114)
Bricker & Eckler LLP
201 E. Fifth Street, Suite 1110
Cincinnati, Ohio 45202
Telephone: 513-870-6700
Facsimile: 513-870-6699
pkamath@bricker.com

*and*

*/s/ Shawn T. Sheehy*
Shawn Sheehy *pro hac motion pending*
Phillip M. Gordon *pro hac motion pending*
HOLTZMAN VOGEL JOSEFIAK TORCHINSKY PLLC
45 North Hill Drive, Suite 100
Warrenton, VA 20186
Phone: (540) 341-8808
Fax: (540) 341-8809
ssheehy@hvjt.law
pgordon@hvjt.law

*Counsel for Non-Party Respondents*
*Republican National Committee,*
*National Republican Congressional Committee, and*
*Adam Kincaid*

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing has been filed through the CM/ECF system which instantaneously sent a Notice of Electronic Filing (NEF) to all counsel required to be served.

                                        */s/ Pramila A. Kamath*

                                        Pramila A. Kamath