**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

|  | 100 EAST FIFTH STREET, ROOM 540 |  |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: January 18, 2019

Mr. Phillip Michael Gordon
Mr. Shawn Toomey Sheehy
Mr. Jason Brett Torchinsky
Holtzman Vogel Josefiak Torchinsky
45 N. Hill Drive, Suite 100
Warrenton, VA 20186

Mr. Dale Edwin Ho
Ms. Theresa J. Lee
Ms. Tiffany Alora Thomas
Ms. Emily Rong Zhang
ACLU, Reproductive Freedom Project
125 Broad Street, 18th Floor
New York, NY 10004

Ms. Nicole Michelle Koppitch
Office of the Attorney General
30 E. Broad Street, 16th Floor
Columbus, OH 43215

Ms. Freda Levenson
ACLU of Ohio
4506 Chester Avenue
Cleveland, OH 44103

Mr. Patrick T. Lewis
Baker & Hostetler
127 Public Square, Suite 2000
Cleveland, OH 44114

Ms. Ann Yackshaw
Baker & Hostetler
200 Civic Center Drive, Suite 1200
Columbus, OH 43215

      Re:  Case No. 18-4258, *Ohio A. Philip Randolph Inst, et al v. John Kasich, et al*
           Originating Case No. : 1:18-cv-00357 : 1:18-mc-00031

Dear Counsel,

  The Court issued the enclosed opinion today in this case.

                                        Sincerely yours,

                                        s/Cathryn Lovely
                                        Opinions Deputy

cc:  Mr. Richard W. Nagel

Enclosure

Mandate to issue

<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 19a0030n.06

No. 18-4258

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| OHIO A. PHILIP RANDOLPH INSTITUTE, et al., | ) ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| FRANK LAROSE, et al., | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| Defendant-Appellee, | ) ) | |
| v. | ) ) | |
| REPUBLICAN NATIONAL COMMITTEE, et al., | ) ) | |
| Movants-Appellants. | ) ) | |

**BEFORE: GUY, GIBBONS and NALBANDIAN, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** This appeal of a three-judge district court's order compelling discovery disclosures arises out of a challenge to Ohio's current United States congressional redistricting plan and its component districts. The plaintiffs, five civil rights organizations and seventeen individuals in Ohio, allege that the map is an unconstitutional partisan gerrymander that violates the First Amendment, Fourteenth Amendment, and Article I of the United States Constitution. In preparation for trial, plaintiffs served subpoenas on three third-parties—the Republican National Committee ("RNC"), the National Republican Congressional Committee ("NRCC"), and the NRCC's redistricting coordinator, Adam Kincaid—for the production of documents related to the redistricting plan. The RNC, NRCC and Kincaid refused to produce the requested documents, citing First Amendment privilege, attorney-client privilege,

No. 18-4258, *Ohio A. Philip Randolph Institute, et al. v. Frank Larose, et al.*

and the work-product doctrine. After a full *in camera* review of all of the disputed documents, the district court ordered the RNC, NRCC, and Kincaid to comply with the subpoenas and produce the requested documents. The RNC, NRCC, and Kincaid complied. On the same day they produced the documents, however, they appealed the district court's order compelling disclosure and subsequently filed a motion to stay the order pending appeal. They contend that the district court erred in its application of the First Amendment privilege doctrine. Because we hold that we do not have interlocutory appellate jurisdiction to review the discovery order under either the collateral order doctrine or through a writ of mandamus, we dismiss the appeal and deny the request for a stay.

I.

In May 2018, the Ohio A. Philip Randolph Institute, League of Women Voters in Ohio, Hamilton County Young Democrats, Northeast Ohio Young Black Democrats, Ohio State University College Democrats, and seventeen individual Ohio voters, brought a challenge to Ohio's current United States congressional redistricting plan and its sixteen component districts as an unconstitutional partisan gerrymander. Plaintiffs allege that the map violates the First Amendment, Fourteenth Amendment, and Article I of the United States Constitution. Pursuant to 28 U.S.C. § 2284,[1] plaintiffs' challenge was assigned to a three-judge court in the District Court for the District of Columbia and then transferred to the Southern District of Ohio, where the case currently resides.

Plaintiffs allege that, in anticipation of the 2010 census, the Republican State Leadership Committee ("RSLC"), a national organization that seeks to elect Republicans to state-level offices,

---

[1] Under 28 U.S.C. § 2284(a), "[a] district court of three judges shall be convened when . . . an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body."

2

No. 18-4258, *Ohio A. Philip Randolph Institute, et al. v. Frank Larose, et al.*

formulated a plan to control the redistricting process. The RSLC implemented its plan through the REDistricting Majority Project ("REDMAP"). REDMAP aims to control how both state legislative and congressional district boundaries are drawn "to solidify conservative policymaking at the state level and maintain a Republican stronghold in the U.S. House of Representatives for the next decade." RLSC Redistricting Majority Project, *2012 REDMAP Summary Report*, http:/www.redistrictingmajorityproject.com/?p=646 (last visited Jan. 17, 2019). Plaintiffs allege that the RSLC targeted Ohio under REDMAP, spending nearly $1 million on races for the Ohio House of Representatives in advance of the 2010 election. Following the 2010 election, Ohio came under single-party control of the Republican party.

Next, plaintiffs allege that, despite that Ohio's General Assembly has primary authority for drawing Ohio's U.S. congressional districts, *see* Ohio Rev. Code § 103.51,[2] the RNC and NCRR influenced and managed Ohio's redistricting efforts through "covert, backroom dealings" designed to manufacture a 12-4 Republican advantage across Ohio's sixteen congressional districts. Plaintiffs allege that the map was ultimately drawn by Ray DiRossi and Heather Mann, two national Republican operatives, who worked in coordination with Adam Kincaid, the Redistricting Coordinator of the NRCC, and Tom Whatman, the Executive Director of Team Boehner. Plaintiffs contend that the redistricting meetings, which Ohio Governor John Kasich and his staff attended, took place in a secretly-rented hotel room at the DoubleTree in Columbus, Ohio, referred to as "the bunker," rather than in the offices of the General Assembly. In September 2011, the Ohio

---

[2] Under Ohio law, the state General Assembly is responsible for redistricting Ohio's U.S. congressional districts. *See* Ohio Rev. Code § 103.51. The law provides that the General Assembly will be advised by the Joint Legislative Task Force on Redistricting, Reapportionment, and Demographic Research, a six-person bipartisan committee where three members are appointed by the Speaker of the Ohio House of Representatives and three by the president of the Ohio State Senate. *Id.*

3

No. 18-4258, *Ohio A. Philip Randolph Institute, et al. v. Frank Larose, et al.*

House approved the congressional redistricting map by a 56-36 vote. Governor Kasich signed the bill into law on September 26, 2011.

In the summer of 2018, while conducting discovery, plaintiffs served the RNC, NRCC, and Kincaid with subpoenas to produce documents related to proving whether Ohio legislators drew the congressional districts with partisan intent. The RNC, NRCC, and Kincaid, citing First Amendment privilege, attorney-client privilege, and work-product doctrine, refused to comply. Plaintiffs filed a motion to compel production.

On December 2, 2018, the three-judge district court issued an order for *in camera* review of the withheld documents. On December 11, 2018, the three-judge court issued a follow-up order, noting that "upon further consideration, it appears that not all documents sought by Plaintiffs—and withheld by Respondents on the grounds of First Amendment privilege—are listed on the Respondents' privilege log." DE 116, Order, Page ID 1361. Accordingly, the district court ordered the RNC, NRCC, and Kincaid to produce the remainder of the withheld documents for *in camera* review.

The three-judge court then reviewed *in camera* all the documents at issue, with the exception of 11 files that could only be accessed on mapdrawing software unavailable to the court. After reviewing the documents and considering their relevance to the case, the court balanced the plaintiffs' need for the withheld information with regard to their unconstitutional gerrymandering claims against the RNC, NRCC, and Kincaid's First Amendment privilege, attorney-client privilege, and the work-product doctrine. On December 21, the three-judge court granted plaintiffs' motion to compel in its entirety and directed the RNC, NRCC, and Kincaid to comply

4

No. 18-4258, *Ohio A. Philip Randolph Institute, et al. v. Frank Larose, et al.*

immediately with the subpoenas. In its order, the district court wrote that the produced documents would be designated "Attorneys' Eyes Only" until a reviewing court affirmed the order.

The RNC, NCRR, and Kincaid filed an emergency motion to stay the district court's order. The district court denied the stay and directed the RNC, NCRR, and Kincaid to produce the subpoenaed documents by January 4, 2019—five days after the RNC, NCRR, and Kincaid indicated they would seek emergency treatment of the stay in the Sixth Circuit. Rather than filing a motion to stay production, however, they complied with the district court's order and produced 446 responsive documents on January 4.

On the same day they produced the documents, however, the RNC, NCRR, and Kincaid appealed the discovery order. Seven days later, on January 11, 2019, they filed a motion to stay the district court's order pending appeal. In their motion to stay the district court's order compelling document production, they also requested to stay the deposition of Kincaid, scheduled for January 17.

II.

Before considering the merits of the appeal, we must consider whether we have interlocutory jurisdiction to review the district court's discovery order.

Under 28 U.S.C. § 1291, Congress has afforded our court jurisdiction to review only "final decisions" of district courts. 28 U.S.C. § 1291. A decision is final when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981). This court has explained that "[t]he final judgment rule prevents 'piecemeal appeals' . . . which can undermine the independence of the district judge, obstruct the resolution of just claims by means of harassment and cost, or generally prevent efficient judicial administration." *U.S. ex rel. Pogue v. Diabetes Treatment Centers of*

5

*Am., Inc.*, 444 F.3d 462, 470 (6th Cir. 2006) (quoting *Firestone*, 449 U.S. at 374). Generally, discovery orders "are not final decisions and cannot be reviewed unless the trial court enters a final judgment disposing of all claims." *Id.* at 471; *see also Holt-Orsted v. City of Dickson*, 641 F.3d 230, 236 (6th Cir. 2011).

Nevertheless, the RNC, NCRR, and Kincaid argue that despite our general prohibition against interlocutory appeals of discovery orders, we may exercise jurisdiction. They contend that we should consider their appeal either through the collateral order doctrine or by granting a writ of mandamus. We disagree.

A.

Under the collateral order doctrine, we may review a "'small class' of collateral rulings" that do not end the litigation but "are appropriately deemed 'final.'" *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 105 (2009) (quoting *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–46 (1949). Under the doctrine, an order is appealable if it "(1) conclusively determines a disputed issue; (2) resolves an issue separate from the merits of the action that is too important to be denied review; and (3) will be effectively unreviewable on appeal from a final judgment." *Pogue*, 444 F.3d at 472; *see Cohen*, 337 U.S. at 546. In deciding whether immediate appeal is warranted, "we do not engage in an 'individualized jurisdictional inquiry.'" *Mohawk Industries, Inc.*, 558 U.S. at 107 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 473 (1978)). Rather, we focus on "the entire category to which a claim belongs." *Digital Equip Corp. v. Desktop Direct, Inc.*, 551 U.S. 863, 868 (1994). If "the class of claims, taken as a whole, can be adequately vindicated by other means, the chance that the litigation at hand might be speeded, or a particular injustice averted, does not provide a basis for jurisdiction under § 1291." *Mohawk Indutries, Inc.*, 558 U.S. at 107 (internal citations omitted)

No. 18-4258, *Ohio A. Philip Randolph Institute, et al. v. Frank Larose, et al.*

This court has "repeatedly held" that "discovery orders are generally not appealable under the collateral order doctrine." *Pogue*, 444 F.3d at 472; *see e.g., Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 424 (6th Cir. 1991); *Coleman v. Am. Red Cross*, 979 F.2d 1135, 1138 (6th Cir. 1992); *FDIC v. Ernst & Whinney*, 921 F.2d 83, 85 (6th Cir. 1990). The RNC, NRCC, and Kincaid argue, however, that a different rule applies when the discovery order implicates the First Amendment associational privilege. But the Supreme Court's ruling in *Mohawk Industries, Inc.* counsels otherwise.

In *Mohawk Industries, Inc.*, the Supreme Court declined jurisdiction to review a discovery appeal where parties asserted that discovery was protected by the attorney-client privilege. *See Mohawk Industries, Inc.*, 558 U.S. at 112. In doing so, the court noted that "the limited benefits of applying the blunt, categorical instrument of § 1291 collateral order appeal to privilege-related disclosure orders simply cannot justify the likely institutional costs." *Id.* This court and the Tenth Circuit have considered whether the same reasoning extends to the First Amendment associational privilege. Both have concluded that it does. *See In re Motor Fuel Temperature Sales Practice, Litig.*, 641 F.3d 470, 482 (10th Cir. 2011) (holding that "discovery orders adverse to a claimed First Amendment privilege are not immediately appealable under the [collateral order] doctrine because they are effectively reviewable after final judgment and by other means"); *Tesla Motors, Inc. v. Johnson*, No. 17-2505 (6th Cir. Mar. 5, 2018); *Tesla Motors, Inc. v. Johnson*, No. 18-1010 (6th Cir. Mar. 5, 2018).

Application of the *Cohen* factors further convinces us that this case is not appropriate for collateral order review. Most significantly, there are alternative avenues through which the RNC, NRCC, and Kincaid may remedy the alleged violation of their First Amendment privilege. *See Cohen*, 337 U.S. at 546. First, they may ask the district court to certify an interlocutory appeal

7

under 28 U.S.C. § 1292(b). *See Mohawk Industries, Inc.*, 558 U.S. at 110. Second, they may—as they have already done—seek a writ of mandamus. *Id.* at 111. Third, a "long-recognized option" for nonparties aggrieved by discovery orders is to defy the disclosure orders and incur appealable contempt citations. *Id.* Indeed, this court has noted that the requirement "that an individual seeking to appeal a discovery order must first disobey the order and suffer a contempt citation . . . remains the general rule today." *Pogue*, 444 F.3d at 472. Thus, "the availability of these alternatives counsels strongly against permitting immediate collateral order review of all discovery orders adverse to a claimed First Amendment privilege." *In re Motor Fuel Temperature Sales Practice Litigation*, 641 F.3d at 484. Therefore, we decline to exercise interlocutory review under the collateral order doctrine.

B.

Alternatively, the RNC, NRCC, and Kincaid contend that we should grant a writ of mandamus to review the discovery order. Under the All Writs Act, this court may issue "all writs necessary or appropriate in aid of [its] jurisdiction[s] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). This encompasses mandamus "as a means of immediate appellate review of orders compelling the disclosure of documents and information claimed to be protected from disclosure by privilege or other interests in confidentiality." *Pogue*, 444 F.3d at 472 (quoting *In re Perrigo Co.*, 128 F.3d at 436). But "this is a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004). It is "usually reserved for questions of unusual importance necessary to the economical and efficient administration of justice or important issues of first impression." *In re Lott*, 424 F.3d 446, 449 (6th Cir. 2005). Thus, as "the writ is one of the most potent weapons in the judicial arsenal," "only exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of

8

No. 18-4258, *Ohio A. Philip Randolph Institute, et al. v. Frank Larose, et al.*

discretion will justify the invocation of this extraordinary remedy." *Id.* (internal citations omitted). For the writ to issue, a petitioner must show that his right to issuance is "clear and indisputable." *Id.* at 381.

This court has embraced a five-factor balancing test to determine when to issue the writ. It considers whether:

> (1) the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired;
> (2) the petitioner will be damaged or prejudiced in a way not correctable on appeal after a final judgment;
> (3) the district court's order is clearly erroneous as a matter of law;
> (4) the district court's order contains an oft-repeated error, or manifests a persistent disregard of the federal rules; and
> (5) the district court's order raises new and important questions, or legal issues of first impression.

*In re Professionals Direct Ins.*, 578 F.3d 432, 437 (6th Cir. 2009). For this court to issue a writ, "not every factor need apply . . . but together they must present extraordinary circumstances to justify issuance." *Id.*

Here, the first and second factors disfavor issuance. As noted in our discussion of the collateral order doctrine, appellants have alternative adequate means to obtain the desired relief. *See discussion supra* Section 2A. Most significantly, because the RNC, NRCC, and Kincaid are nonparties to the action, they can withhold the requested documents and immediately seek review of the contempt sanction. *See Pogue*, 444 F.3d at n. 6 ("Unlike a party, which can only immediately appeal an adjudication of criminal contempt, a nonparty can immediately appeal an adjudication of either civil or criminal contempt.") (citing *United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72 (1988), *United States v. Johnson*, 736 F.2d 358 (6th Cir. 1984), and *In re Manufacturers Trading Corp.*, 194 F.2d 948 (6th Cir. 1952)); *In re Professionals Direct Ins.*, 578 F.3d at 438. The contempt route "ensures that the aggrieved party will first take a careful second look at the issue in question to determine whether it truly warrants

9

No. 18-4258, *Ohio A. Philip Randolph Institute, et al. v. Frank Larose, et al.*

inviting a contempt citation" whereas issuing a writ "encourages appeal of every unpalatable discovery ruling." *Pogue*, 444 F.3d at 474 (quoting *MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116, 121–22 (4th Cir. 1994)). Thus, the RNC, NRCC, and Kincaid have an alternative means of obtaining immediate appellate review and protecting themselves from the compelled disclosure and are not "damaged or prejudiced in a way not correctable on appeal."[3] *In re Professionals Direct Ins.*, 578 F.3d at 437; *see Perry v. Schwarzenegger*, 602 F.3d 976, 980 (9th Cir. 2010).

The fourth factor—the district court's oft-repeated error or persistent disregard of the federal rules—similarly counsels against issuance. *In re Professionals Direct Ins.*, 578 F.3d at 437. The RNC, NRCC, and Kincaid do not contend that the district court's order contains a frequent error. Nor do they argue that the order manifests a persistent disregard of the federal rules. We similarly do not find these elements to be present.

The third factor—clearly erroneous law—also militates against issuance. *In re Professionals Direct Ins.*, 578 F.3d at 437. As the Tenth Circuit explained, "although a simple showing of error may suffice to obtain reversal on direct appeal, a greater showing must be made to obtain a writ of mandamus. Indeed, there must be *more than* what we would typically consider to be an abuse of discretion in order for the writ to issue." *In re Motor Fuel Temperature Sales Practices Litigation*, 641 F.3d at 487 (emphasis added). For the writ to issue, then, the district court's error must be egregious.

Here, the RNC, NRCC, and Kincaid contend that the district court erred in two ways: (1) "the district court never shifted the burden" to plaintiffs to show that their interest in the information sought outweighed the arguable First Amendment infringement, and (2) "the district

---

[3] The disputed documents are designated as for "Attorneys' Eyes Only" until this court disposes of the appeal. Once the documents no longer have this designation, and if the appellants still perceive a harm from public disclosure, they can move to seal the documents from the public by demonstrating a compelling need for the documents to remain under seal. *See, e.g., Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 220 (6th Cir. 2016).

10

No. 18-4258, *Ohio A. Philip Randolph Institute, et al. v. Frank Larose, et al.*

court used the incorrect standard by requiring only that [a]ppellants' documents are 'relevant' [rather than highly relevant or crucial] to [p]laintiffs' claims." CA6 R. 12, Appellant Br., at 45. Neither argument compels us to find egregious error. As a threshold matter, the main cases upon which the RNC, NRCC, and Kincaid rely, *Tree of Life Christian Sch. v. City of Upper Arlington*, Case No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205) (S.D. Ohio Mar. 12, 2012) and *Black Panther Party v. Smith*, 661 F.2d 1243 (D.C. Cir. 1981) (*cert granted*, *judgment vacated as moot* by *Smith v. Black Panther Party*, 458 U.S. 1118 (1982)), had limited precedential value in the district court. It is improbable that the district court committed egregious error if the cases to which the appellants point did not confine the court in the first place.

But even assuming that the district court was bound by previous cases within the same district,[4] we do not find that the district court erred in its application of the law. The RNC, NRCC, and Kincaid's assertion that the district court failed to shift the burden to the plaintiffs mischaracterizes the district court's order. The district court explicitly applied the burden-shifting framework articulated in *Tree of Life Christian Schools*. DE 128, Order, Page ID 3471, 3473 ("If

---

[4] The Southern District of Ohio, adopting language from a 1927 case in the Southern District of New York, has said that "[i]n the absence of supervening case authority from the Supreme Court or the Court of Appeals, [the district court] is bound, under the doctrine of *stare decisis*, to follow decisions of its own judges." *Kerr v. Hurd*, 694 F. Supp. 2d 817, 843 (S.D. Ohio 2010); *see also Rutledge v. Claypool Elec., Inc.*, No. 2:12-CV-0159, 2013 WL 435058, at *3 (S.D. Ohio Feb. 5, 2013) (quoting *Kerr*, 694 F. Supp. 2d at 843).

But typically district court judges are not bound by previous decisions of other judges within the same district. *See Camreta v. Greene*, 536 U.S. 692, 730, n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (internal citations omitted); *McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) ("The general rule is that a district judge's decision neither binds another district judge nor binds him, although a judge ought to give great weight to his own prior decisions."); *NASD Dispute Resolution, Inc. v. Judicial Council of State of Cal.*, 488 F.3d 1065, 1069 (9th Cir. 2007) ("[O]utside of future litigation involving the same parties and their privies . . . a district court opinion does not have binding precedential effect."); *Algoma Steel Corp, Ltd. v. United States*, 865 F.2d 240, 243 (Fed. Cir. 1989) ("[A]mong trial courts it is unusual for one judge to be bound by the decisions of another[.]").

Thus, given the general rule that district court judges are not bound by other judges within the district, it is dubious that a lone district judge can single-handedly proclaim that all precedent within the district is horizontally binding. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 469, n.10 (1996) (noting that "if there is a federal district court standard, it must from the Court of Appeals, not from the [many] district court judges in [each district], each of whom sits alone and renders decisions not binding on the others.").

11

No. 18-4258, *Ohio A. Philip Randolph Institute, et al. v. Frank Larose, et al.*

the party asserting the privilege makes an initial showing of First Amendment infringement, the burden shifts to the party seeking discovery to demonstrate an interest in obtaining the information it seeks that is sufficient to justify the deterrent effect on the constitutionally protected free exercise of association. . . . Having found a prima facie showing of First Amendment infringement, the [c]ourt next balances the [r]espondents' burden of disclosure against [p]laintiff's interest in the information.") (citing *Tree of Life Christian Sch. v. City of Upper Arlington*, Case No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *5) (S.D. Ohio Mar. 12, 2012) (quoting *NAACP v. Alabama*, 357 U.S. 449, 460 (1958)). Applying the burden-shifting framework, the district court found that the "plaintiffs' interest in obtaining these documents . . . support[ed] a crucial element of their partisan gerrymandering claim." DE 128, Order, Page ID 3476. That the RNC, NRCC, and Kincaid do not like the way the district court balanced the competing interests does not persuade us that the district court committed an egregious error by failing to shift the burden at all.

Second, we do not find that the district court "more than" abused its discretion when it concluded that "the plaintiffs' interest in obtaining these documents to support a crucial element of their partisan gerrymandering claim simply outweighs [r]espondents' sweeping and conclusory claims of privilege." DE 128, Order, Page ID 3476; *In re Motor Fuel Temperature Sales Practices Litigation*, 641 F.3d at 487. The RNC, NCRR, and Kincaid argue that the district court erred by applying the wrong legal standard to the balancing inquiry in two ways—the district court needed to find that the requested documents were "crucial" or "highly relevant" rather than just "relevant," and this relevance should have been with respect to a claim, rather than an element of a claim, in the litigation. But the district court articulated the *exact* legal standard which the appellants argue was required. In balancing the respondents' First Amendment privilege with the plaintiffs' interest in the information sought, the district court noted that "the party seeking the discovery must show

12

No. 18-4258, *Ohio A. Philip Randolph Institute, et al. v. Frank Larose, et al.*

that the information sought is *highly relevant* to the *claims or defenses* in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." DE 128, Order, Page ID 3472 (quoting *Perry*, 591 F.3d at 1161) (emphasis added). We have no reason to think that the district court did not apply the legal standard that it articulated.[5] Thus, we can discern no error of law, let alone a particularly egregious error, that weighs in favor of mandamus.

The last factor—a new and important problem or issue of first impression—is the only factor that potentially favors issuing a writ. *In re Professionals Direct Ins.*, 578 F.3d at 437. The Sixth Circuit has not considered how the First Amendment associational privilege intersects with compelled disclosures in a partisan gerrymandering case. But the RNC, NCRR, and Kincaid offer no more support for this factor than that "the precise dimensions of the First Amendment privilege appears to be a question of first impression for this court." CA6 R. 12, Appellant Br., at 31. Without a more specific articulation of what the novel question is, we are reluctant to issue the writ.

On balance, mandamus jurisdiction is not appropriate under the five factor balancing test. Although there is a potential issue of first impression, all of the other factors disfavor issuance of the writ. Most significantly, the RNC, NCRR, and Kincaid have not demonstrated that the district court's order was clearly erroneous as a matter of law nor that they have no other adequate means of obtaining the relief desired. Accordingly, we do not find that this is an "exceptional circumstance[] amounting to a judicial usurpation of power" sufficient to "justify the invocation

---

[5] The RNC, NCRR, and Kincaid spend much time laboring over the district court's phrasing to support their argument, that although the court articulated the proper standard, it actually applied something different. But the semantic differences to which the appellants point are tautological. When the district court concluded that it found the "plaintiffs' interest in obtaining these documents to support a crucial element of their partisan gerrymandering claim," DE 128, Order, Page ID 3476, it found that the information went "to the heart of the matter"—that is, that the 446 documents were central to proving partisan intent in the redistricting of Ohio's congressional map. *Black Panther Party*, 661 F.3d at 1268; *see also Davis v. Bandemer*, 478 U.S. 109, 127 (1986). The district court therefore applied the legal standard articulated in *Perry I* and adopted by the Southern District of Ohio in *Tree of Life Christian Schools*.

13

No. 18-4258, *Ohio A. Philip Randolph Institute, et al. v. Frank Larose, et al.*

of this extraordinary remedy." *Kerr v. U.S. Dist. Court for Northern Dist. of California*, 426 U.S. 394, 402 (1976). We therefore deny the petition for issuance of a writ of mandamus.

III.

On January 11, 2019, the RNC, NCRR and Kincaid filed an emergency motion for a stay of the district court's order compelling document production pending this appeal. They also requested a stay of Kincaid's January 17 deposition. In determining whether to grant a motion for a stay pending appeal, we consider "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Mich. Coal of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

First, because the RNC, NRCC, and Kincaid failed to seek a protective order barring Kincaid's deposition in the district court, there is no reviewable order for this court to consider with respect to the stay of Kincaid's deposition. *See* Fed. R. Civ. P. 26(c)(1); *see also Serrano v. Cintas Corp.*, 699 F.3d 884, 899 (6th Cir. 2012) (noting that we review a district court's decision regarding protective order for deposition for abuse of discretion). Second, because we have concluded that we do not have appellate jurisdiction to issue a writ of mandamus, appellants have no chance of prevailing on the merits of their appeal. Therefore, in conjunction with our denial of their petition for issuance of a writ of mandamus, we deny their motion for a stay of the district court's order compelling document production.

IV.

For the reasons stated, we dismiss the appeal and deny the motion for a stay pending appeal.

14

No. 18-4258, *Ohio A. Philip Randolph Institute, et al. v. Frank Larose, et al.*

**NALBANDIAN, Circuit Judge, concurring.** I agree that we lack jurisdiction over this appeal. I write separately to express my skepticism that the district court correctly analyzed the First Amendment privilege issues presented by the third-party appellants here.

The district court provides almost no explanation as to why the documents at issue here meet the "highly relevant" standard necessary to overcome the First Amendment privilege. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010). That's particularly troublesome in the context of this case, where the substantive contours of a partisan gerrymandering claim have yet to be fleshed out to a significant degree. *See, e.g., Gill v. Whitford*, 138 S. Ct. 1916, 1926–27 (2018) (explaining that the Supreme Court's attempts at answering "what judicially enforceable limits, if any, the Constitution sets on gerrymandering of voters along partisan lines . . . have left few clear landmarks for addressing the question"). It seems that liability in this case will turn on the intent of the Ohio legislature, not these third parties. While I have no doubt the contested documents are relevant to that issue, are they *crucial* to the plaintiffs' claim, such that the plaintiffs could not prevail without them? The district court's decision leaves much to be desired in answering that question.

If the First Amendment privilege is to have any teeth—and it is an open question in this circuit whether it will—it must require something more than the conclusory assertion that the documents are crucial. On that front, I have serious misgivings about the adequacy of the opinion below. And so I do not join the majority opinion to the extent it suggests otherwise.

Yet, despite these reservations, I agree that under our circuit precedent we lack the ability to review the order here.

15