**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| OHIO A. PHILIP RANDOLPH INSTITUTE, *et. al* )<br><br>Plaintiffs, )<br><br>v. )<br><br>LARRY HOUSEHOLDER, Speaker of the Ohio House of Representatives, *et al.* )<br><br>Defendants. ) | No. 1:18-cv-00357-TSB-KNM-MHW<br><br>Judge Timothy S. Black<br>Judge Karen Nelson Moore<br>Judge Michael H. Watson<br>Magistrate Judge Karen L. Litkovitz |

**PLAINTIFFS' OPPOSITION TO THE RNC, NRCC, AND ADAM
KINCAID'S MOTION FOR A PROTECTIVE ORDER REGARDING
THE RE-OPENING OF MR. KINCAID'S DEPOSITION**

The Court has already denied the request that Movants bring yet again to prevent the re-opening of Adam Kincaid's deposition. *See* Minute Entry (Jan. 16, 2019) ("The Court ORDERS that Plaintiffs be permitted to depose Mr. Kincaid for up to seven hours on the grounds that Mr. Kincaid previously withheld voluminous documents and extensive testimony pursuant to a First Amendment Privilege objection that this Court has since found to be insufficient to justify non-disclosure."); *see also* Order, ECF No. 128 (the "December 21 Order") (granting Plaintiffs' motion to compel and rejecting the assertion of the First Amendment privilege); Minute Entry (Dec. 28, 2018) (denying the RNC, NRCC, and Mr. Kincaid's emergency motion to stay the December 21 Order); *Ohio A. Philip Randolph Inst. v. RNC*, No. 18-4258 (6th Cir. Jan. 18, 2019) (ECF No. 31-2) ("Appellate Op.") (dismissing the RNC, NRCC, and Mr. Kincaid's appeal of the December 21 Order).

In light of the Court's clear statements on the matter, the RNC, NRCC, and Mr. Kincaid have filed this motion for a protective order simply to preserve appellate review of their faulty

1

assertion of the First Amendment privilege.[1] As the RNC, NRCC, and Mr. Kincaid explain in their brief, ECF No. 165 at 6-7, the Sixth Circuit denied Mr. Kincaid's efforts to prevent a re-opened deposition because he had not moved for a protective order from this Court before asking for appellate relief. *See* Appellate Op. at 14. Mr. Kincaid has sought to cure that procedural error by filing the present motion, but no circumstances have changed regarding his flawed assertion of the First Amendment privilege.

The Court should once again deny Mr. Kincaid's request. As the Court has repeatedly made clear, Mr. Kincaid's testimony regarding his intimate role in Ohio's redistricting process is highly relevant to Plaintiffs' case; thus, Mr. Kincaid is afforded no protection by the First Amendment privilege. His re-opened deposition should go forward as scheduled on January 31, 2019.

**I.     BACKGROUND**

During his December 4, 2018 deposition, Mr. Kincaid's counsel repeatedly raised instructions based on the First Amendment privilege, prompting Mr. Kincaid to refuse to answer at least 123 questions in whole or in part. Following the deposition, the Court issued the December 21 Order rejecting the RNC, NRCC, and Mr. Kincaid's assertion of the First Amendment privilege as to their documents. The Court's analysis applied with equal weight to Mr. Kincaid's deposition testimony. Indeed, as the RNC, NRCC, and Mr. Kincaid note in their brief, the "question of Mr. Kincaid's deposition rose and fell with this Court's Order granting Plaintiffs' Motion to Compel." Br. at 7, ECF No. 165.

---

[1] *See* Declaration of Theresa J. Lee ("Lee Decl."), Ex. A, Email from Shawn Sheehy, counsel for RNC, NRCC, and Mr. Kincaid (Jan. 22, 2019) (in which Sheehy wrote, "Yes, this is correct," in response to the statement, "[t]he purpose of the motion is to preserve your record for an appeal after a judgment in this case").

In his persistent effort to avoid compliance with Plaintiffs' subpoenas, Mr. Kincaid then sought an emergency stay of the December 21 Order from this Court, which the Court denied during the December 28, 2018 status conference. Minute Entry (Dec. 28, 2018). Mr. Kincaid noted his intention to immediately appeal the December 21 Order, but he agreed to sit for a re-opened deposition to be held on January 17, 2019. Lee Decl. Ex. B, Email from Shawn Sheehy, Counsel for Mr. Kincaid (Dec. 29, 2018) (offering to schedule the deposition on January 17, 2019, discussing plans to appeal the December 21 Order, and noting "[a]s for filing a stay with the Sixth Circuit, Respondents will not be filing a stay at this time."). Plaintiffs then duly served a deposition subpoena on Mr. Kincaid for the mutually consented date of January 17, 2019. *See* Lee Decl. Ex. C. On January 11, 2019, Mr. Kincaid changed his mind, however, and sought a stay of his deposition from the Sixth Circuit. *See* Emergency Mot. For Stay, *Ohio A. Philip Randolph Inc. v. RNC*, No. 18-4258, ECF No. 24-1.

During a January 15, 2019 status conference, the Court ordered Mr. Kincaid to appear for a full day deposition on January 17, 2019. *See* Minute Entry (Jan. 16, 2019). Plaintiffs identified the scope of the deposition as including the following items: (1) answers to the 123 questions as to which Mr. Kincaid's counsel made First Amendment Privilege Instructions at the December 4, 2018 deposition; (2) questions regarding the documents produced by the RNC, NRCC, and Mr. Kincaid on January 4, 2019 and that had previously been withheld on the basis of the First Amendment privilege; and (3) certain documents produced by Mark Braden following motion practice and after the December 4, 2019 deposition; and (4) reasonable follow-up questions. *See* Lee Decl. Ex. D, Jan. 15, 2019 Status Conference Tr., at 11:21-12:25. Despite the Court's Order to re-open the deposition and Mr. Kincaid's previous agreement to be deposed on that date, Mr.

3

Kincaid's counsel indicated that his client would not appear on January 17, 2019, and he told the court he was "prepared to take the contempt citation." *Id*. at 9:2.

As forecast, neither Mr. Kincaid nor his counsel arrived at the deposition on January 17, 2019. *See* Lee Decl. Ex. E, Kincaid Dep. Tr. (Jan. 17, 2019), at 4:15-5:17. The next day, the Sixth Circuit dismissed the RNC, NRCC, and Mr. Kincaid's appeal and denied the motion to stay. Appellate Op. at 18.

Given the Sixth Circuit's decision, Mr. Kincaid has again agreed to sit for a re-opened deposition in an apparent attempt to avoid the forthcoming contempt citation. *See* Lee Decl. Ex. A, Email from Shawn Sheehy (Jan. 22, 2019). Plaintiffs served Mr. Kincaid with a third deposition subpoena on January 23, 2019, this time for a January 31, 2019 deposition. *See* Lee Decl. Ex. F, Deposition Subpoena. As mentioned, Mr. Kincaid's Motion for a Protective Order has been filed to protect his right to appeal after this Court issues a final decision in this case. Mr. Kincaid has represented that no interlocutory appeal will be taken of this Court's order regarding the instant motion. *See* Lee Decl. Ex. A, Email from Shawn Sheehy (Jan. 22, 2019).

## II. MR. KINCAID MUST SIT FOR THE JANUARY 31, 2019 DEPOSITION

The First Amendment privilege applies when the movant establishes that compliance with a discovery request will result in "(1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or chilling of members' associational rights." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010) (citation and internal quotation marks omitted); *see also Black Panther Party v. Smith*, 661 F.2d 1243, 1268 (D.C. Cir. 1981), *cert. granted, judgment vacated sub nom. Moore v.*

4

*Black Panther Party*, 458 U.S. 1118 (1982)[2] (party asserting privilege must show "there is some probability that disclosure will lead to reprisal or harassment"). Mr. Kincaid first must clear this hurdle and has not done so.

Assuming Kincaid can meet this threshold requirement, the burden then shifts to the Plaintiffs to show that their need for the information sought is greater than Mr. Kincaid's interest against disclosure. *See AFL-CIO v. FEC*, 333 F.3d 168, 176 (D.C. Cir. 2003) ("[C]ourts . . . balance the burdens imposed on individuals and associations against the significance of the . . . interest in disclosure and consider the degree to which the [requesting party] has tailored the disclosure requirements to serve its interests") (citations omitted). Here, Plaintiffs' need for the information sought, as this Court has already found, is dispositive given the highly relevant discovery at issue.

    A.    The RNC, NRCC, and Mr. Kincaid's Contention That They Face "Retaliation or Harassment" is Baseless

Plaintiffs seek to depose Mr. Kincaid for a narrow purpose: to learn about his work on Ohio redistricting in 2011. Through discovery, Plaintiffs have learned that Mr. Kincaid's work included drawing draft congressional redistricting maps, producing political data sheets regarding those maps, and communicating with state and national Republicans about this and similar work product.

Kincaid notes that in order to satisfy the first prong, he must show "some probability that disclosure will lead to reprisal or harassment." RNC, NRCC, and Mr. Kincaid's Br. at 11, ECF No. 165 (quoting *Tree of Life Christian Sch. v. City of Upper Arlington*, No. 2:11-CV-00009,

---

[2] "Even though the *Black Panther* decision was later vacated as moot, there is no suggestion in later case law in [the D.C. Circuit] that its reasoning or analysis has been rejected or abandoned." *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3 n.6 (D.D.C. 2002) (internal citations omitted).

5

2012 WL 831918, at *3 (S.D. Ohio Mar. 12, 2012)); *see also NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462-63 (1958) (finding that the production order would "expose[] these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility"). No such threat is present here.

The First Amendment privilege finds its roots in the Supreme Court's 1958 decision to protect the NAACP's Alabama chapter from having to produce its membership list to a violent and hostile public; a nationwide, multi-organizational "association" should not be permitted to use this privilege when at most only social scorn and no identifiable threat of hostility or reprisal exists. *See NAACP*, 357 U.S. at 462-63; *cf. John Doe No. 1 v. Reed*, 561 U.S. 186, 228 (2010) (Scalia, J., concurring in the judgment) ("There are laws against threats and intimidation; and harsh criticism, short of unlawful action, is a price our people have traditionally been willing to pay for self-governance. Requiring people to stand up in public for their political acts fosters civic courage, without which democracy is doomed."). Even if Mr. Kincaid's testimony causes public discussion about the Republican party's decision to insert itself into Ohio's redistricting processes, the RNC, NRCC, and Mr. Kincaid have offered no showing beyond conclusory statements that such discussion will lead to harassment, that such discussion will put the Republican party in danger of losing members, or that such discussion will expose any members to public or economic reprisal.

The RNC, NRCC, and Mr. Kincaid have therefore failed the threshold prong of asserting the First Amendment privilege: they lack an interest protected by the privilege, and therefore, Mr. Kincaid must appear at the January 31, 2019 deposition.

6

### B. Plaintiffs Have Substantial Interest in Deposing Mr. Kincaid in Order to Obtain Highly Relevant Information That is Central to Plaintiffs' Claims

An essential element of Plaintiffs' case requires proving that Ohio's congressional redistricting plan (the "plan" or "map") was drawn with discriminatory intent. *See* December 21 Order at 10, ECF No. 128. Mr. Kincaid, the NRCC's Redistricting Coordinator, played a significant role in Ohio's redistricting process in 2011. Plaintiffs have a pressing need (1) to address the questions he refused to answer at the first deposition, (2) to question him regarding newly produced documents, and (3) to obtain evidence from him that is unavailable elsewhere.

#### 1. The Instructions Not to Answer Questions at Mr. Kincaid's December 4 Deposition Barred Plaintiffs From Obtaining Highly Relevant Information

Mr. Kincaid refused to answer at least 123 questions in whole or in part based on a flawed assertion of the First Amendment privilege at his December 4, 2018 deposition.[3] His counsel's instructions related to subjects highly relevant to Plaintiffs' case, for example:

- 70 of the instructions were to not answer questions regarding internal communications with party staff, members, and members' staff about the redistricting progress and redistricting process before and after the Ohio map was passed, and internal analysis concerning the political ramifications of redistricting;

- 5 of the instructions were to not answer questions about internal talking points used to prepare members for interviews regarding redistricting; and

- 48 of the instructions were to not answer questions about internal analyses of the contours and composition of Ohio's enacted Congressional districts and draft maps.

---

[3] Plaintiffs provided a thorough summary of the Mr. Kincaid's assertion of the First Amendment privilege during the December 4, 2018 deposition in their supplemental brief filed on December 10, 2018, ECF No. 112.

7

*See* Lee Decl. Ex. H (Citations to Mr. Adam Kincaid's Assertions of the First Amendment Privilege During His December 4, 2018 Deposition).

More specifically, Mr. Kincaid refused to answer questions about how and why he drafted certain boundaries of Ohio's congressional districts. *See, e.g.*, Lee Decl. Ex. G, Kincaid Dep. Tr. (Dec. 4, 2018), at 190:24-191:7 (refusing to answer whether a map he drew "would have secured 13 Republican seats"). He refused to testify about the meaning of the phrase "Franklin County Sinkhole," a phrase that he used to label a draft map of Ohio he created in 2011. *See id.* at 154:16-155:20. The phrase "Franklin County Sinkhole" weighs directly on Plaintiffs' allegations that the Ohio legislature packed Democratic voters into District 3 (the district that includes much of Columbus and Franklin County, Ohio) in an effort to increase the Republican control of District 3's neighboring districts (*i.e.*, Districts 12 and 15). *See* Second Am. Compl., ECF No. 37, ¶¶ 91, 107.

Mr. Kincaid refused to explain the meaning of the phrase "R Seats Moved Out of Play," which is the title of a slide in a presentation produced by the NRCC.[4] *See* Kincaid Dep. at 124:16-125:9. The slide states that Ohio's First, Twelfth, and Fifteenth congressional districts had been "moved out of play . . . in Republican favor." Lee Decl. Ex. I at 5. Mr. Kincaid asserted the First Amendment privilege when asked what criteria qualified these districts as having been moved out of play. Kincaid Dep. at 125:4-9.

Mr. Kincaid also refused to testify about the meetings he held in 2011 with nearly every Republican member of Ohio's congressional delegation regarding the contours of their districts. *See* Kincaid Dep. at 70:19-71:3, 71:9-18, 72:17-21, 89:16-23, 90:4-9, 90:22-91:5, 91:10-14,

---

[4] The presentation that includes the "R Seats Moved Out of Play" slide is included as Ex. I (NRCC000031) to the Declaration of Theresa J. Lee. The slide at issue is on page 5 of the document, although the pages do not include page numbers.

8

92:3-11, 92:21-93:3, 93:13-16, 94:5-13, 95:8-14, 95:18-22, 96:8-14, 97:25-98:6, 98:13-18, 98:21-99:6, 102:19-103:2, 103:10-15, 103:20-104:2, 104:12-18, 104:20-24, 105:22-106:4. As these communications may reveal political motivations that impacted the final Ohio congressional map, Plaintiffs have a substantial interest to question Mr. Kincaid on these subjects.

        2.        The Newly Produced Documents Contain Highly Relevant Information that Mr. Kincaid Will Testify about in the Re-Opened Deposition

The 446 previously withheld documents contain highly relevant information that Plaintiffs intend to inquire about during Mr. Kincaid's re-opened deposition.

For instance, in one of the more striking documents Plaintiffs have received to date, Dr. Thomas Hofeller, the RNC's Redistricting Coordinator, and Mark Braden, a lawyer-lobbyist who gave redistricting advice to the national Republicans in 2011 at the same time he advised the Ohio General Assembly on the redistricting, exchanged a series of emails on Thursday, September 8, 2011—just one week before the passage of HB 319—with the subject line "New Idea III." Lee Decl. Ex. J. The thread demonstrates not only the active and intimate involvement of these national Republicans in drawing Ohio's congressional map, but also the discriminatory partisan intent that shaped Ohio's congressional boundaries. For example, as regards District 15, Dr. Hofeller explained that "[t]he area Adam [Kincaid] has on his version included Grandview Heights and some more of the 'downtown' area, which I took out of the map I sent – as it was 'dog meat' voting territory. I guess then, unless there is some inexplicable reason they want that awful-voting territory in the 15th, the map I sent is OK." *Id*. at 2.

Other newly produced documents indicate that Mr. Kincaid was drafting congressional boundaries throughout Ohio's redistricting process, and running analyses of how those boundaries would perform on a partisan basis. *See, e.g.*, Lee Decl. Ex. K (spreadsheet authored

9

by Mr. Kincaid titled "Ohio Changes - Congressional Map as of 9-9"). In fact, Mr. Kincaid sent what appears to be an analysis of the final map on December 14, 2011 (the day HB 369 was introduced) to Dr. Hofeller. *See* Lee Decl. Exs. L (parent email with subject line "New Ohio Map"), M (attached spreadsheet titled "HB369_Data), and N (attached spreadsheet comparing "New Ohio Map" against prior congressional boundaries).

The repeated references to Mr. Kincaid in these documents, and his clear involvement in drafting maps of Ohio's congressional boundaries as a national Republican operative in 2011, are topics that Plaintiffs seek to depose Mr. Kincaid about on January 31, 2019.

### 3. Mr. Kincaid Has Information Highly Relevant to Plaintiffs' Case That is Not Available Elsewhere

Despite substantial discovery efforts, Plaintiffs have been unable to obtain highly relevant information that is within Mr. Kincaid's personal knowledge.

Plaintiffs deposed Mr. Braden on December 17, 2018. At the deposition, Mr. Braden indicated that he was not sure whether he knew Mr. Kincaid in 2011, and that there was "a good chance [he] didn't." *See* Lee Decl. Ex. O, Braden Dep. Tr. at 67:17-21. However, documents produced after Mr. Kincaid's deposition include documents in which Mr. Braden repeatedly references Mr. Kincaid. *See* Lee Decl., Ex. J. Plaintiffs must depose Mr. Kincaid in order to learn about the contents of these communications, and any other work Mr. Braden and Mr. Kincaid completed together regarding Ohio's 2011 redistricting cycle.

Likewise, the newly produced documents indicate that Mr. Kincaid worked closely with Dr. Hofeller on Ohio's redistricting process. *See, e.g.*, *id*. However, Dr. Hofeller passed away in the summer of 2018. *See* Michael Wines, *Thomas Hofeller, Republican Master of Political Maps, Dies at 75*, N.Y. TIMES (Aug. 21, 2018), https://www.nytimes.com/2018/08/21/obituaries/thomas-hofeller-republican-master-of-political-maps-dies-at-75.html. Therefore, information

10

about Dr. Hofeller's impact on Ohio's redistricting process can only come from those who worked with him, such as Mr. Kincaid.

Finally, Heather Blessing was one of Ohio's map drawers. Though Plaintiffs possess several documents that show correspondence between Ms. Blessing and Mr. Kincaid, Ms. Blessing could not remember what work Mr. Kincaid completed for redistricting in Ohio in 2011. *See* Lee Decl. Ex. P, Blessing Dep. Tr. at 58:22-59:13.

### III. CONCLUSION

For the reasons stated above, the Plaintiffs respectfully request that the Court deny the RNC, NRCC, and Mr. Kincaid's Motion for a Protective Order regarding the January 31 deposition of Mr. Kincaid.

                                          Respectfully submitted,

                                          */s/ Theresa J. Lee*
                                          Theresa J. Lee
                                          Emily Zhang
                                          T. Alora Thomas
                                          American Civil Liberties Union Foundation, Inc.
                                          125 Broad Street, 18th Floor
                                          New York, NY 10004
                                          Tel.: 212.549.2500
                                          tlee@aclu.org
                                          ezhang@aclu.org
                                          athomas@aclu.org

Dated: January 28, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2019, a true and correct copy of the foregoing was served upon all counsel of record in this case via ECF.

/s/ Theresa J. Lee
*Counsel for Plaintiffs*
