# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| OHIO A. PHILIP RANDOLPH INSTITUTE, *et al.*, | ) ) ) | No. 1:18cv357 |
| Plaintiffs, | ) ) ) ) | ORDER GRANTING IN PART AND DENYING IN PART INTERVENORS' OMNIBUS MOTION IN LIMINE |
| v. | ) ) | |
| RYAN SMITH, *et al.*, | ) ) | |
| Defendants. | ) | |

_____

**Before: Moore, Circuit Judge; Black and Watson, District Judges.**

This case is before the Court on Intervenors' omnibus motion *in limine*. (Doc. 149-1). Intervenors ask the Court to exclude two categories of evidence: (1) evidence that partisan gerrymandering is a cause of political polarization in the United States, and (2) William S. Cooper's ("Mr. Cooper") supplemental expert report.

## I. STANDARD OF REVIEW

A motion *in limine* is "made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Courts generally use such motions "to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citation omitted). The Court derives its authority to rule *in limine* from its

inherent authority to manage trials. *See Luce*, 469 U.S. at 41 n.4. But a ruling on a motion *in limine*, is "no more than a preliminary, or advisory, opinion . . . . [and] the district court may change its ruling at trial for whatever reason it deems appropriate." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

Trial courts are hesitant to exclude broad categories of evidence on a pretrial basis because the context of trial provides a far better viewpoint from which to assess all of the elements pertaining to admissibility. *Black v. Columbus Pub. Schs.*, No. 2:96-CV-326, 2007 WL 2713873, at *2 (S.D. Ohio Sept. 17, 2007). Consequently, the Court will exclude evidence pursuant to a motion *in limine* only if the evidence is *clearly* inadmissible. *Wilson v. Hill*, No. 2:08–cv–552, 2013 WL 210285, at *1 (S.D. Ohio Jan. 18, 2013). If the movant fails to meet this high standard, a Court should defer evidentiary rulings so that the issues may be resolved in the context of a trial. *See Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

## II. ANALYSIS

### A. Partisan Gerrymandering and Political Polarization

Intervenors first move to exclude any evidence or testimony that partisan gerrymandering is a cause of political polarization in the United States. Intervenors contend that such a proposition could be supported only by expert testimony, and they contend that none of Plaintiffs' experts has offered such an opinion. Intervenors specifically argue that Professor Christopher Warshaw ("Professor Warshaw"), one of Plaintiffs' experts, opined only that "political polarization magnifies the *effect* of partisan gerrymandering on impacted voters by increasing the 'difference' between Republican

2

and Democratic politicians' policy views and decreasing citizens' trust in their representatives," (Mot. 5, Doc. 149-1), and *not* that partisan gerrymandering causes political polarization. Thus, they contend, none of Plaintiffs' experts' reports offered an opinion that partisan gerrymandering causes political polarization, and evidence of such should be excluded from trial.

Plaintiffs respond that they "have not and do not intend to render this opinion at trial, either through an expert or otherwise." (Resp. 2, Doc. 174). Rather, Plaintiffs assert, they intend to offer Professor Warshaw's opinion that, "because of congressional polarization, when an individual's preferred candidate loses an electoral challenge due to gerrymandering, there are profound effects on that individual's representation in Congress." (*Id.* at 2–3).

The parties' quoted language above shows that they similarly characterize the opinion Professor Warshaw has offered in this case. Indeed, the Court has reviewed Professor Warshaw's report and agrees that his opinion concerns the effects of partisan gerrymandering and that he has expressly disavowed any opinion that partisan gerrymandering causes political polarization. (Warshaw Rpt. 3-5, 33, 37, 39-43, Doc. 149-2; Warshaw Dep. 168:2-20, Doc. 149-3). Given that he has not opined in his report that partisan gerrymandering causes political polarization in the United States, and especially given Plaintiffs' representation that they do not wish to introduce evidence to that effect, Intervenors' motion *in limine* is **GRANTED** in this respect.

Nothing in this Opinion and Order should be construed as excluding Professor Warshaw's opinion regarding political polarization's effect on partisan gerrymandering

3

and the impact it has on an individual's representation in Congress. Although Intervenors did not concede the reliability or accuracy of Professor Warshaw's opinion (Mot. 5, Doc. No. 149-1), they did not seek to exclude the same in either their motion *in limine* or via a *Daubert* motion.

### B. Mr. Cooper's Supplemental Report

Intervenors also move to exclude the supplemental report of Plaintiffs' expert, Mr. Cooper. Intervenors contend that although Mr. Cooper's report is presented as a "rebuttal" or "supplemental" report, the report includes "two never-before-disclosed 'hypothetical plans' and 30 pages of supporting material" not relied upon in Mr. Cooper's original expert report. (Mot. 6–7, Doc. 149-1). Intervenors further argue that the report is not a rebuttal report because it does not identify what, specifically, the new data rebuts and because the new hypothetical plans do not rebut Dr. M.V. Hood III's ("Dr. Hood") criticism of the proposed map ("Proposed Plan") offered in Mr. Cooper's initial report. (*Id.* at 9). Moreover, because Intervenors contend that Mr. Cooper's supplemental report is, in fact, a new opinion, they assert that it should have been disclosed by Plaintiffs' initial expert report deadline and is, therefore, untimely.

Plaintiffs counter that Mr. Cooper's supplemental report was written "in response to points raised by Dr. M.V. Hood relating to incumbency and core retention in Section III (pp. 4-10) of his November 12, 2018 report." (Cooper Supp. Rpt. ¶ 1, Doc. 149-5).[1] The Court agrees.

---

[1] Incumbent non-pairing (avoiding pitting incumbents against one another when the map is reconfigured) and maintaining a core number of constituents are two of the traditional redistricting

Pursuant to Federal Rule of Civil Procedure 26, an expert witness is required to provide in his or her written report, as relevant, a complete statement of all opinions the witness will express, the basis for those opinions, and the facts and data considered by the expert in forming that opinion. Fed. R. Civ. P. 26(a)(2)(B). A party is required to follow the Court's established deadlines for disclosure, or, if none, the default deadlines established in Rule 26. *See* Fed. R. Civ. P. 26(a)(2)(D).

"Rebuttal testimony is responsive to new information by the other party." *Polec v. Nw. Airlines, Inc. (In re Air Crash Disaster)*, 86 F.3d 498, 528 (6th Cir. 1996); *see also E.E.O.C. v. Tepro, Inc.*, 133 F. Supp. 3d 1034, 1047 (E.D. Tenn. 2015) ("Rebuttal experts can properly 'respond[] to the content of [the original] expert witness' report and opinions.'") (citation omitted). Rebuttal reports "may not advance new arguments or new evidence outside the scope of the opposing expert's testimony." *Bentley v. Highlands Hosp. Corp.*, No. 15-cv-97, 2016 WL 5867496, at *5 (E.D. Ky. Oct. 6, 2016) (internal quotation marks and citations omitted). But "[a] rebuttal expert may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert." *Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Tr. v. State Street Bank & Tr. Co.*, 290 F.R.D. 11, 16 (D. Mass. 2013) (collecting cases).[2] The reviewing Court must look past labels and conclusions to

---

principles that both Dr. Hood and Mr. Cooper used in forming their opinions. (*See* Cooper Rpt. ¶ 34, Doc. 149-4; *see also* Hood Rpt. 4, Doc. 174-9).

[2] *See also TC Sys. Inc. v. Town of Colonie*, 213 F. Supp. 2d 171, 180 (N.D.N.Y. 2002) (interpreting phrase "same subject matter" in Rule 26(a)(2)(C)(ii) (the former version of

determine whether the report is truly provided in rebuttal. *Bentley*, 2016 WL 5867496, at *5.

After careful examination of the reports at issue, the Court finds that Mr. Cooper's supplemental report acts as a rebuttal in that it uses hypotheticals to rebut certain propositions and criticisms contained in Dr. Hood's report. Namely, Mr. Cooper's report is directed at Dr. Hood's use of the 2011 incumbent data and the assertions Dr. Hood made regarding that data in relation to Mr. Cooper's Proposed Plan and the 2012 Plan.[3]

Dr. Hood's report analyzes the propriety of enacting Mr. Cooper's Proposed Plan *in 2012*, instead of the 2012 Plan. (*See* Hood Rpt. 7, Doc. 174-9). Dr. Hood opined that had Mr. Cooper's Proposed Plan been offered in 2011, it would not have been adopted because it failed to protect the 2011 incumbents the way the 2012 Plan did. Dr. Hood further opined that Mr. Cooper's Proposed Plan elevates other traditional redistricting principles, such as compactness and county-splits, at the expense of incumbency protection—which was an "apparent emphasis" of the 2012 Plan. (Hood Rpt. 10, Doc. 174-9). Thus, Dr. Hood uses 2011 incumbency data to show that Mr. Cooper's Proposed Plan does not place enough importance on protecting incumbents compared to the 2012 Plan.

Mr. Cooper addresses Dr. Hood's critiques in his supplemental report, noting that his Proposed Plan was forward-looking, in that it only considered current incumbents,

---

subsection (D)(ii)) to allow rebuttal experts to use a different methodology to analyze the same facts considered by the expert-in-chief).

[3] The 2012 Plan refers to the map currently in place in Ohio.

and further explaining that "[p]ractically speaking, the residences of 2011 incumbents have no relevance for future elections. Nonetheless, hypothetical plans similar to the Proposed Remedial Plan, but taking into account 2011 incumbents rather than 2018 incumbents can also be drawn." (Cooper Supp. Rpt. ¶ 3, Doc. 149-5). Mr. Cooper proceeds to provide two hypotheticals that are similar to the Proposed Plan but that use 2011 incumbent data to "pair the same number of 2011 incumbents with the same partisan configuration (one pairing of two Democrats, one pairing of two Republicans, and one pairing of one Democrat and one Republican) as the 2012 Plan." (*Id.* at ¶ 5). Mr. Cooper opines that, even when using the 2011 incumbency data, his Proposed Plan parameters would have been more favorable to both incumbency protection and core retention than the 2012 Plan. (*See* Cooper Supp. Rpt. ¶¶ 8–14, 28-34, Doc. 149-5); (*Id.* at 47 ("Requiring that the 2011 incumbents be paired in the same fashion (D-D, D-R, and R-R) as in the 2012 Plan did not hinder my ability to draw a map with districts of a similar political composition to those I drew in the Proposed Remedial Plan.")). Thus, although Mr. Cooper's supplemental report does include new hypotheticals, those hypotheticals are of the "same subject matter" as Dr. Hood's report because they respond to Dr. Hood's use of the 2011 incumbents—in particular, incumbent pairings analogous to the 2012 Plan—to critique the Proposed Plan. (*See* Hood Rpt. 10, Doc. 174-9). To the extent Intervenors wish to challenge Mr. Cooper's opinions, they may do so on cross-examination.

7

Because Mr. Cooper's supplemental report is a proper rebuttal report, Intervenors' motion to exclude said supplemental report is **DENIED**.[4]

## III. CONCLUSION

For the reasons stated above, Intervenors' motion *in limine* is **GRANTED IN PART AND DENIED IN PART.**

**IT IS SO ORDERED.**

Date:  2/4/19     /s/ *Michael H. Watson*
                   Michael H. Watson
                   United States District Judge

                  /s/ *Karen Nelson Moore*
                   Karen Nelson Moore
                   United States Circuit Judge

                  /s/ *Timothy S. Black*
                   Timothy S. Black
                   United States District Judge

---

[4] Intervenors also seek an order "clarifying for Plaintiffs' experts that the time for new expert analyses, data, exhibits, and the like has ended." (Mot. 10, Doc. 149-1). Plaintiffs state they will not offer any expert evidence that was not properly disclosed. (Resp. 9, Doc. 174). The Court declines to issue an order essentially instructing Plaintiffs and their experts "to follow the law." *Carte v. Loft Painting Co.*, No 2:09-cv-178, 2011 WL 2020731, at *3 (S.D. Ohio May 24, 2011). Should anyone attempt at trial to offer evidence that was not properly disclosed, the Court trusts the parties will raise the issue via contemporaneous objection, and it will be dealt with at that time.