**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| OHIO A. PHILIP RANDOLPH INSTITUTE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LARRY HOUSEHOLDER, Speaker of the Ohio House of Representatives, *et al.*,<br><br>Defendants. | No. 1:18-cv-00357-TSB-KNM-MHW<br><br>Judge Timothy S. Black<br>Judge Karen Nelson Moore<br>Judge Michael H. Watson<br>Magistrate Judge Karen L. Litkovitz |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO STAY TRIAL**

Defendants seek to preserve their unconstitutional gerrymander by simply running out the clock. Granting Defendants' request for a stay would uphold their unconstitutional gerrymander of Ohio's congressional districts. Such a result will inflict severe prejudice on Plaintiffs and the citizens of Ohio. It will create a substantial risk that relief will not be granted in time to obtain constitutional congressional district lines for use in the 2020 election. Defendants overstate how quickly the case can move through the judicial system. Unless they have determined to waive all appeals of this Court's judgment, Defendants' suggestion that a trial this summer can provide relief in time for their purported September 2019 administrative deadline is not credible. In order for this Court to provide Plaintiffs relief from severe constitutional violations, it must deny the stay.

The decision of the Supreme Court to hear arguments on the merits of the Maryland and North Carolina cases does not come close to justifying Defendants' eleventh-hour attempt to block the trial of this action. This development does not constitute a remarkable or unforeseen

1

turn of events. Because all merits decisions from three judge panels constituted pursuant to 28 U.S.C. § 2284 are subject to appeal to the Supreme Court as of right, Defendants were aware that the decisions of the North Carolina and Maryland district courts would very likely be heard by the Supreme Court. The three judge panel decision in North Carolina was handed down over five months ago, and Maryland was handed down nearly three months ago. This case has been litigated from the start with full awareness that there were other partisan gerrymandering cases that would likely reach the Supreme Court before this case did so. Only now, on the eve of trial, and more than three weeks after the Supreme Court indicated that it would consider the appeals, do Defendants seek to alter the trial schedule.

Courts "must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977). The party seeking a stay has the burden of establishing both the "pressing need for delay" and "that neither the other party nor the public will suffer harm from entry of the order." *Id.* "[T]he supplicant for a stay [of proceedings] must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to [someone] else." *Landis v. N. American Co.*, 299 U.S. 248, 255 (1936). The Supreme Court's standard is met "[o]nly in rare circumstances." *Id*; *see also Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007) ("A stay of a civil case is an extraordinary remedy that should be granted only when justice so requires.").

Where, as here, a stay diminishes the ability of Plaintiffs to obtain relief and the Defendants have failed to meet their burden, courts deny requests for a stay. *Kirby Devs., LLC v. XPO Global Forwarding, Inc.*, No. 2:18-cv-500, 2018 WL 6075071, at *6 (S.D. Ohio Nov. 20,

2018). Granting a stay here would send the message that there is no downside to discriminatory redistricting practices because "the federal courts are powerless to effectively redress [voters'] grievances." *Coal. for Educ. in Dist. One v. Bd. of Elections*, 370 F. Supp. 42, 58 (S.D.N.Y. 1974). The motion should be denied.

## ARGUMENT

In considering the stay of a trial, courts generally consider the following factors: "the need for a stay, the balance of potential hardship to the parties and the public, and the promotion of judicial economy." *Webber v. J-W Wireline Co.*, No. 2:15-cv-02084, 2015 WL 13706214, at *2 (S.D. Ohio Oct. 20, 2015). The "most important" of these factors is the balance of the hardships. *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 628 (6th Cir. 2014). The burden on the party seeking to stay a trial is high, and the most recent court in this Circuit to consider staying a gerrymandering case pending the Supreme Court's decisions in *Common Cause v. Rucho* and *Benisek v. Lamone* declined to do so. *League of Women Voters of Mich. v. Johnson*, No. 2:17-cv-14148, slip op. at 1 (E.D. Mich. Feb. 1, 2019);[1] *see also* Notation Order, *In re Chatfield,* No.18A769 (U.S. Feb. 4, 2019) (Sotomayor, J), https://www.supremecourt.gov/search.aspx?filename=/docket/DocketFiles/html/Public/18A769.html (denying stay pending the filing and disposition of a petition for a writ of mandamus in Michigan gerrymandering case). The Court should follow this precedent and deny a stay here.

**A. Staying the trial would cause undue hardship and prejudice to Plaintiffs.**

As the Court is well aware, this case is being litigated on an extremely expedited schedule so that the Plaintiffs and the public can obtain relief from the unconstitutional

---

[1] The Seventh Circuit recently granted a stay in the Wisconsin partisan gerrymandering case, *Whitford v. Gill*, No. 15-cv-421, slip op. (W.D. Wisc. Jan. 23, 2019), but that case is distinguishable as it would have been the second trial. Since most of the evidence was entered in the first trial the parties intend to have a short four day trial.

3

gerrymander of Ohio's congressional districts in time for the 2020 elections. Plaintiffs originally sought a trial beginning in February. Pls.' Case Schedule Statement, ECF No. 31; Tr. of 7/10/2018 Status Conf. at 8:18–9:3, ECF No. 44; Rule 26(f) Report at 3, ECF No. 35. The parties only agreed to the later March trial date along with an order laying out quicker deadlines for pursuing appeal. Parties' Joint Submission Re. Schedule, ECF No. 39 at 3; Tr. of 7/13/2018 Status Conf. at 5:13–16, ECF No. 45. Defendants' stay motion attempts to throw this agreement overboard and, thus, extinguish Plaintiffs' chance to obtain relief. Waiting until after *Rucho* and *Benisek* are decided would delay this case by months. Such a long delay creates a substantial risk that there will not be adequate time to grant the relief that Plaintiffs seek: constitutional congressional district lines for use in the 2020 election. Given the responsibility of the federal courts "to ensure that future elections will not be conducted under unconstitutional plans," *see, e.g.*, *Larios v. Cox*, 305 F. Supp. 2d 1335, 1344 (N.D. Ga. 2004), this risk weighs heavily against granting a stay.

Where a constitutional violation is ongoing, as it is in this case, it cannot reasonably be claimed that the Plaintiffs have not sought to vindicate their rights. Defs.' Br. at 8, ECF No. 185 ("Defs.' Br."). Plaintiffs do not dispute their inability to obtain relief for elections that have passed, but they have litigated this case expeditiously in order to obtain relief for the elections that are still to come in 2020. *See, e.g.*, *Garza v. Cty. of Los Angeles*, 918 F.2d 763, 772 (9th Cir. 1990) (in apportionment case, "ongoing nature of the violation" meant that plaintiffs' injury "has been getting progressively worse" with each passing election cycle); *Luna v. Cty. of Kern*, 291 F. Supp. 3d 1088, 1143–44 (E.D. Cal. 2018); *Smith v. Clinton*, 687 F. Supp. 1310, 1312–13 (E.D. Ark. 1988); *Dotson v. City of Indianola*, 514 F. Supp. 397, 401 (N.D. Miss. 1981).

Plaintiffs have identified a very real hardship that would be caused by staying the trial—one known to all of the parties since the very beginning of this case. *See* Pls.' Case Schedule Statement, ECF No. 31. Even more minimal burdens are enough to deny a motion for a stay. *See, e.g.*, *Hickman v. First Am. Title Ins. Co.*, No. 1:07-CV-1543, 2010 WL 11565405, at *4 (N.D. Ohio Aug. 4, 2010) ("the degree of hardship [to the non-moving party] need not be substantial" to deny the motion). The Court and all parties to this case know that expedition is critical to the relief Plaintiffs seek, and a stay should be denied on this grounds.

### B. Public welfare weighs in favor of denying a stay.

The public is also injured by an unconstitutional districting plan remaining in place for another election cycle. Where constitutional rights are at issue, "the public interest also counsels against a stay," as "the public interest is always served by robust protection of constitutional guarantees." *Caspar v. Snyder*, 77 F. Supp. 3d 616, 644 (E.D. Mich. 2015). Defendants argue that the monetary cost of the trial counsels in favor of granting the stay. Defs.' Br. at 7. The cost of the trial is only a fraction of the taxpayer resources spent by Defendants in first drawing and now defending this unconstitutional redistricting plan. Moreover, courts in other redistricting cases have held that "mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Conkright v. Frommert*, 556 U.S. 1401, 1403 (2009) (Ginsburg, J. in chambers) (quotation marks omitted); *see also Cane v. Worcester Cty.*, 874 F. Supp. 695, 698 (D. Md. 1995); *Johnson v. Mortham*, 926 F. Supp. 1540, 1542 (N.D. Fla. 1996).

Moreover, Defendants have suggested nothing other than the monetary cost as weighing against proceeding to trial. They have identified no hardship that would befall them if the case proceeds. On this ground alone the stay should be denied. The party seeking a stay "*must* make out a clear case of hardship or inequity in being required to go forward," where, as here, there is

5

even the risk of the stay burdening the other party. *Landis*, 299 U.S. at 255 (emphasis added). Defendants have not made out such a case, so the stay should be denied.

### C. Judicial economy does not require staying the trial.

Granting a stay would only minimally advance the interests of judicial economy while exposing the Plaintiffs to substantial prejudice. Defendants waited until the eve of trial to file this motion to stay, even though the North Carolina court issued its opinion in August and the defendants in that case noticed their right of appeal over four months ago. Well before the Defendants moved to stay the proceedings, the parties completed discovery, submitted motions in limine, submitted their pre-trial order, designated exhibits, and had begun final preparations for trial. As the parties have already devoted substantial time and effort preparing this case for trial, a stay now would, at best, only minimally advance the interests of judicial economy and the prevention of hardship to the Defendants. *See Common Cause v. Rucho*, Nos. 1:16-CV-1026, 1:16-CV-11644, 2017 WL 3981300, at *7 (M.D.N.C. Sept. 8, 2017) (holding that the defendants would be "minimally harmed" by denying a stay since "[t]he parties completed discovery, submitted motions in limine, and prepared for trial before Legislative Defendants moved to stay these proceedings").

Courts in this Circuit have determined that where the court and litigants have prepared for trial, it does not serve judicial economy to then stay that proceeding. *See, e.g.*, *Blair v. City of Cleveland*, 148 F. Supp. 2d 919, 923–24 (N.D. Ohio 2000) (denying a stay where the "court has allocated sufficient time in its docket for the trial of this matter at this time and cannot predict that when the case comes back from the court of appeals a similar block of time will be immediately available" and "parties have assembled their witnesses and prepared their cases for trial"); *Henricks v. Pickaway Corr. Inst.*, No. 2:08-CV-580, 2016 WL 4706030, at *2 (S.D. Ohio Sept. 8, 2016) (denying a stay where the "parties have prepared for trial and so has the Court").

Moreover, the evidence that the parties intend to introduce at trial (laid out in their proposed pre-trial order and its attachments, ECF No. 157) is more than likely to remain relevant to resolving Plaintiffs' claims, regardless of any further guidance the Supreme Court provides in other partisan gerrymandering cases. *See Rucho*, 2017 WL 3981300, at *6 (allowing *Rucho* to proceed despite the pendency of *Gill v. Whitford* at the Supreme Court because it was "unlikely . . . to amount to an 'unnecessar[y]' expense of time and resources, as the evidence and arguments presented by the parties will be necessary to resolve this case, regardless of the disposition of *Whitford*" (alteration in original)).

Also of note is that Plaintiffs' claim regarding their right to vote is analytically distinct from the claims that have been put forward in *Rucho* and *Benisek*. Neither case has put forward a right to vote claim, and its legal test and constitutional underpinnings are distinct from the Equal Protection and First Amendment claims presented by plaintiffs in those cases. It is unlikely that the Supreme Court decision will give dispositive guidance resolving this claim. *Id.* at *6 (holding that where substantive gerrymandering claims differ "[i]t makes little sense 'to delay consideration of this case for possibly a year or more, waiting for a decision that may not ultimately affect it.'" (citations omitted)).

To the extent that Defendants' motion is based on assumptions about the outcome in *Rucho* and *Benisek*, it is entirely speculative and insufficient grounds to stay the trial. As an initial matter, there is no basis to assume that the Supreme Court will broadly rule that all partisan gerrymandering cases are non-justiciable. On the contrary, under existing Supreme Court precedent, partisan gerrymandering cases are justiciable. *See Vieth v. Jubelirer*, 541 U.S. 267, 292, 310 (2004) (Kennedy, J., concurring in the judgment) (stating that Bandemer's holding that partisan gerrymandering claims are justiciable is "controlling precedent on the question of

justiciability."); *id* at 317 (Stevens, J., dissenting) ("[F]ive Members of the Court . . . share the view that, even if these appellants are not entitled to prevail, it would be contrary to precedent and profoundly unwise to foreclose all judicial review of similar claims that might be advanced in the future."); *see also League of Women Voters of Mich. v. Johnson*, No. 2:17-cv-14148, 2018 WL 6257476, at *14 (E.D. Mich. Nov. 30, 2018); *Common Cause v. Rucho*, 318 F. Supp. 3d 777, 838 (M.D.N.C. 2018). The Supreme Court itself could have closed the door on such claims in *Gill v. Whitford* and it did not do so. 138 S. Ct. 1916, 1929 (2018). For example, the Supreme Court could have dismissed the case for lack of standing, but did not do so, but rather remanded the case to the district court. *Id.* at 1934. Coupled with the Court's recent pronouncement that "[p]artisan gerrymanders . . . are incompatible with democratic principles," *Ariz. State Legislature v. Ariz Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2658 (2015) (internal alterations and citation omitted), it is highly unlikely that a trial in this case would be for naught.

Defendants' insistence that the Supreme Court is about to declare all partisan gerrymandering cases non-justiciable because the Court has delayed consideration of jurisdiction, Defs.' Br. at 6, is wholly unfounded. In fact, there are many cases where the Supreme Court postponed consideration of the jurisdictional question, but went on to rule in favor of plaintiffs on the merits of the case. *See, e.g.*, *Wittman v. Personhuballah*, 136 S. Ct. 1732, 1736-37 (2016); *Brown v. Plata*, 563 U.S. 493, 510–16 (2011); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732–34 (2008); *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 461–64 (2007).

Additionally, to the extent this Court applies the same or similar tests to those used by the three judge panels in *Rucho* and *Benisek*, this would further demonstrate that these tests are judicially manageable (as multiple panels of the judiciary were able to understand and apply

8

them). This would assist the Supreme Court as it considers *Rucho* and *Benisek* by demonstrating whether the standards are manageable.[2] At least one court has found that courts "share[]" the "responsibility" with the parties for the development of the law with respect to partisan gerrymandering. *Baldus v. Members of Wis. Gov't Accountability Bd.*, 849 F. Supp. 2d 840, 853 (E.D. Wis. 2012). It is further clear that in practice courts do share that responsibility for articulating the law when they are able to apply legal standards to the facts before them. Proceeding with this case provides further information for the Supreme Court about the capability of the federal courts in this context.

Furthermore, in instances where a pending case may be dispositive, "this is not the only factor the court considers." *Hickman*, 2010 WL 11565405, at * 4. Even in the face of a pending potentially dispositive case, the party seeking a stay must still carry its burden under the controlling case law, that is "a 'clear case of hardship or inequity' within the meaning of *Landis*." *Peters v. Credit Prot. Ass'n LP*, No. 2:13-CV-0767, 2015 WL 5216709, at *10 (S.D. Ohio Sep. 8, 2015).

## CONCLUSION

For all of the reasons discussed above, the Court should deny Defendants' motion to stay the trial.

February 5, 2019                                        Respectfully submitted,

                                                        */s/ Freda J. Levenson*, trial attorney
T. Alora Thomas-Lundborg                                Freda J. Levenson (0045916)
Dale E. Ho                                              American Civil Liberties Union of Ohio Fdtn.
Theresa J. Lee                                          4506 Chester Avenue
Emily Rong Zhang                                        Cleveland, OH 44103

---

[2] The current state of the law stands in stark contrast to the state of the law between *Davis v. Bandemer* and *Vieth v. Jubelirer*, where judicial intervention was refused. *Vieth v. Jubelirer*, 541 U.S. 267, 279 (2004).

9

American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
athomas@aclu.org
dho@aclu.org
tlee@aclu.org
erzhang@aclu.org

Robert Fram
Nitin Subhedar
Jeremy Goldstein
Covington & Burling LLP
One Front Street
San Francisco, CA 94111
Tel.: (415) 591-6000
rfram@cov.com
nsubhedar@cov.com
jgoldstein@cov.com

Kyunghoon John Woo**
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Tel.: (424) 332-4800
jwoo@cov.com

Tel.: (216) 472-2220
Facsimile: (216) 472-2210
flevenson@acluohio.org

Michael Baker
Perrin Cooke
Peter Rechter
Robert Day
Kaitlyn Demers
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-6000
mbaker@cov.com
pcooke@cov.com
prechter@cov.com
rday@cov.com
kdemers@cov.com

*Attorneys for Plaintiffs*

10

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing document was served upon all counsel of record in this case via ECF.

/s/ *Freda J. Levenson*
Attorney for Plaintiffs
