## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| OHIO A. PHILIP RANDOLPH INSTITUTE, *et al.*, | : : | Case No. 1:18-cv-357 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| | : | Judge Karen Nelson Moore |
| | : | Judge Michael H. Watson |
| vs. | : | |
| | : | |
| LARRY HOUSEHOLDER, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## FINAL PRETRIAL ORDER

This action came before the Court for a Final Pretrial Conference on February 11, 2019, at 10:00 a.m., pursuant to Fed. R. Civ. P. 16.

## I.  APPEARANCES

For Plaintiffs:    Freda Levenson, Alora Thomas, Robert Fram, Theresa Lee, Emily Zhang, and Jeremy Goldstein

For Defendants:    Phillip Strach and Steven Voigt
For Intervenors:    Patrick Lewis, Katherine McKnight, Mark Braden, and Robert Tucker

## II.   NATURE OF ACTION

A.    This is an action for injunctive and declaratory relief, challenging the Ohio congressional map as an unconstitutional partisan gerrymander in violation of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, of the right to vote guaranteed by the First and Fourteenth Amendments, and of Article I, § 4.

B.    Plaintiffs invoke the jurisdiction of the Court under 28 U.S.C. §§ 1331, 1343, 1357, and 42 U.S.C. § 1983, and jurisdiction to grant declaratory

relief under 28 U.S.C. §§ 2201, 2202. Defendants and Intervenors deny that the Court has jurisdiction to hear the case or to grant the declaratory relief Plaintiffs seek.

C.    The jurisdiction of the Court is disputed. The parties dispute whether Plaintiffs' claims are justiciable and whether Plaintiffs have standing to bring this action.

D.    The parties have not consented to entry of final judgment by the United States Magistrate Judge.

## III.    TRIAL SCHEDULE

Trial is set for Monday, March 4, 2019 at 9:00 a.m.  Trial will begin at 9:00 a.m. each morning thereafter, and conclude for the day at 5:00 p.m.  The estimated trial length is twelve days.  *See* Order Establishing Time Limits for Trial.  (Doc. 233).  Plaintiffs and Defendants/Intervenors both have 35 hours of time to present their direct and cross examinations.  The parties are bound only by their 35-hour maximum: if a party spends more time with a witness than as anticipated in its filing (Docs. 228 and 231), then that party will have to spend less time than anticipated with other witnesses.

Each day, the Court will recess for 15 minutes once at approximately 10:30 a.m. and again at approximately 2:45 p.m., with a 60-minute lunch break at approximately 12:00 p.m.  The Court intends to maintain a consistent schedule, although the timing and length of lunch breaks and recesses may vary depending on the flow of the trial.

In order to allow adequate time to resolve any outstanding issues, and unless otherwise instructed, counsel shall be present in the courtroom at 8:45 a.m. every morning.

## IV. AGREED STATEMENTS AND LISTS

### A. General Nature of the Claims of the Parties.

#### 1. Plaintiffs' Claims:

In Claim 1, Plaintiffs allege that Ohio's congressional map violates their First Amendment rights to associate with and advocate for a political party, to vote for their candidate of choice, to express their political views, and to participate in the political process.

In Claim 2, Plaintiffs allege that Ohio's congressional map violates their right to vote under the First and Fourteenth Amendment. Partisan gerrymandering substantially burdens the right to vote. A voter is "deprive[d] . . . of the opportunity to cast a meaningful ballot" since the legislature constrains voters' ability to "vote for the candidate of their choice." *Burdick v. Takushi*, 504 U.S. 428, 447 (1992) (Kennedy, J., dissenting).

In Claim 3, Plaintiffs allege that Ohio's congressional map violates their right to Equal Protection under the Fourteenth Amendment. Each individual Plaintiff was placed in a district where their vote carries less weight or consequence than it would under a neutrally drawn map. The districts were each drawn to privilege partisan outcomes at the expense of all other criteria. Each district was constructed to disfavor Democratic voters on the basis of their political affiliation, with no legitimate, let alone compelling, reason to do so. The map and its individual districts also have the "invidiously discriminatory" effect of "minimiz[ing] or cancel[ing] out the voting strength of . . . political elements of the voting population." *Gaffney v. Cummings*, 412 U.S. 735, 751 (1973).

In Claim 4, Plaintiffs allege that since Ohio's map has both the intent and effect of a partisan gerrymander, it exceeds the state's power under Article I of the Constitution.

#### 2. Defendants' Claims:

Ohio's current congressional districting plan comports fully with the Constitution. Defendants do not assert any affirmative counterclaims in this matter but oppose all of Plaintiffs' claims and reassert the defenses asserted in their Answer to Plaintiffs' Second Amended Complaint. (Doc. 37).

3

### 3. Intervenors' Claims:

Intervenors reassert all defenses and denials contained in their Answer to Plaintiffs' Second Amended Complaint. Intervenors further assert that Plaintiffs are not entitled to any relief as asserted in Count I under the First Amendment for the following reasons:

     a. Plaintiffs lack standing to bring this claim
     b. Plaintiffs' claim is non-justiciable
     c. Plaintiffs cannot show a violation under First Amendment standards for the types of claims they assert
     d. The evidence does not show a violation of the First Amendment

Intervenors assert that Plaintiffs are not entitled to any relief as asserted in Count II under the Fourteenth Amendment's guarantee of the right to vote for the following reasons:

     a. Plaintiffs lack standing to bring this claim
     b. Plaintiffs' claim is non-justiciable
     c. Plaintiffs cannot show a violation under Fourteenth Amendment standards for the type of claim they assert
     d. The evidence does not show a violation of the Fourteenth Amendment

Intervenors assert that Plaintiffs are not entitled to any relief as asserted in Count III under the Fourteenth Amendment's guarantee of equal protection for the following reasons:

     a. Plaintiffs lack standing to bring this claim
     b. Plaintiffs' claim is non-justiciable
     c. Plaintiffs cannot show a violation under Fourteenth Amendment standards for the type of claim they assert
     d. The evidence does not show a violation of the Fourteenth Amendment

Intervenors assert that Plaintiffs are not entitled to any relief as asserted in Count IV under Article I, which empowers state legislatures to redistrict, for the following reasons:

     a. Plaintiffs lack standing to bring this claim
     b. Plaintiffs' claim is non-justiciable
     c. Plaintiffs cannot show a violation under Article I standards for the type of claim they assert

d. The evidence does not show a violation of Article I

Intervenors, as an affirmative defense, assert that Plaintiffs' claims are barred by the doctrine of laches because they waited inexcusably for years to bring this case, prejudicing Intervenors who reasonably relied on the districts created by the 2012 plan remaining in place for 10 years.

**B.** __Uncontroverted Facts__.

    1. The parties' joint list of uncontroverted facts is provided in **Appendix A**.

**C.** __Contested Issues of Fact and Law__.

    1. Plaintiffs' list of contested issues of facts is provided in **Appendix B**.

    2. Plaintiffs' list of contested issues of law is provided in **Appendix C**.

    3. Defendants' and Intervenors' list of contested issues of fact is provided in **Appendix D**.

    4. Defendants' and Intervenors' list of contested issues of law is provided in **Appendix E**.

**D.** __Witnesses__.

    1. Plaintiffs will call or will have available for testimony at trial those witnesses listed in **Appendix F**. The Plaintiffs' statement of Witnesses and anticipated time allotments is listed at the start of **Appendix F**.

    2. Defendants will call or will have available for testimony at trial those witnesses listed in **Appendix G**. The Defendants' and Intervenors' statement of Witnesses and anticipated time allotments is listed at the start of **Appendix G**.

    3. Intervenors will call or will have available for testimony at trial those witnesses listed in **Appendix H**. The Defendants' and Intervenors' statement of Witnesses and anticipated time is listed at the start of **Appendix H**.

Parties reserve the right to call at trial any witness listed by any other party in this case. The parties reserve the right to call non-listed rebuttal witnesses whose testimony

could not reasonably be anticipated without prior notice to opposing counsel. The parties

reserve the right to call foundation witness testimony if stipulations regarding document

authenticity cannot be reached. A brief synopsis of each individual's testimony is

included in **Appendices F–H.**

     **E.**    **Expert Witnesses**.

        1. Plaintiffs will call or will have available for testimony at trial those expert witnesses listed in **Appendix I**.

        2. Defendants will call or will have available for testimony at trial those expert witnesses listed in **Appendix J**.

        3. Intervenors will call or will have available for testimony at trial those expert witnesses listed in **Appendix K**.

     **F.**    **Exhibits**.

The parties will offer as exhibits those items listed as follows:

        1. Plaintiffs Exhibits – **Appendix L**

        2. Defendants Exhibits – **Appendix M**

        3. Intervenors Exhibits – **Appendix N**

Except for good cause shown, the Court will not permit the introduction of any

exhibits unless they have been listed in the pretrial order, with the exception of exhibits to

be used solely for the purpose of impeachment.

**The parties shall state their objections to the admission of any exhibit and to**

**any witness's testimony either on the record at trial or in post-trial filings, and the**

**Court will note those objections and, as necessary, rule upon those objections after**

**trial.**

**G.**     **Depositions**.

    1.  Plaintiffs will offer testimony by portions of depositions of the witnesses listed in **Appendix O**.

    2.  Defendants and Intervenors will offer testimony by portions of depositions of the witnesses listed in **Appendix P**.

**H.**     **Discovery**.

Discovery has been completed.

**I.**     **Pending Motions**.

Since the date of the Final Pretrial Conference, the Court has granted Plaintiffs' Motion to Substitute Larry Householder and Frank LaRose as defendants sued in their official capacity (Doc. 218); denied Defendants and Intervenors' motion for summary judgment (Doc. 222); granted Plaintiffs' motion to Offer Trial Testimony of U.S. Congresswoman Marcia Fudge in Open Court by Live Videoconference (Doc. 232); and entered an Order Establishing Time Limits for Trial, which provided both Plaintiffs and Defendants/Intervenors with 35 hours of time to present their direct and cross examinations.  (Doc. 233).

Currently pending before the Court are Plaintiffs' Motion to Seal Document (Doc. 161) and Plaintiff League of Women Voters of Ohio's Motion to Seal Membership List.  (Doc. 224).

## V.     MODIFICATION

This Final Pretrial Order may be modified at the trial of this action, or prior

thereto, to prevent manifest injustice.  Such modification may be made by application of

counsel or by the Court.

## VI.    SETTLEMENT EFFORTS

The parties have made a good faith effort to negotiate a settlement and believe no

settlement can be reached.

### IT IS SO ORDERED.

ENTERED:   February 27, 2019

*s/ Timothy S. Black*
TIMOTHY S. BLACK
United States District Judge

*s/ Karen Nelson Moore*
KAREN NELSON MOORE
United States Circuit Judge

*s/ Michael H. Watson*
MICHAEL H. WATSON
United States District Judge

# APPENDIX A

APPENDIX A: JOINT UNCONTROVERTED FACTS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

|  |  |
|---|---|
| OHIO A. PHILIP RANDOLPH INSTITUTE, *et al.*, Plaintiffs, | No. 1:18-cv-00357-TSB-KNM-MHW |
|  | Judge Timothy S. Black |
|  | Judge Karen Nelson Moore |
| v. | Judge Michael H. Watson |
| LARRY HOUSEHOLDER, Speaker of the Ohio House of Representatives, *et al.*, Defendants. | Magistrate Judge Karen L. Litkovitz |

## JOINT UNCONTROVERTED FACTS

I.     **Proposed Uncontested Facts**

   A.  **Redistricting in Ohio**

   1.      Under the United States constitution and laws of the State of Ohio as they existed in 2011-2012, the Ohio General Assembly (the "General Assembly") is the body responsible for enacting legislation that defines the boundaries for Ohio's congressional districts. To become law, a congressional district plan must be approved by a majority of both the Ohio House of Representatives and the Ohio State Senate, and then signed into law by the Governor of Ohio.

   2.      The bipartisan Joint Legislative Task Force on Redistricting, Reapportionment, and Demographic Research ("Task Force") is tasked with assisting the General Assembly. The Task Force is a six-person bipartisan committee, with three members appointed by the Speaker of the Ohio House of Representatives and three by the President of the Ohio State Senate, with no more than two members from each chamber from the same political party. The majority and

### APPENDIX A: JOINT UNCONTROVERTED FACTS

minority caucuses of the Ohio House of Representatives and the Ohio Senate were apportioned an equal amount of money to assist with their work on the Task Force.

### B. The legislative history of HB 319.

3.      On September 8, 2011, the House State Government and Elections Committee ("HSGEC") issued a notice that indicated that the committee would hear testimony on Ohio's congressional map. The congressional map was considered at hearings of the HSGEC on September 13 and 14. State representative Matthew Huffman introduced House Bill 319 ("HB 319") and gave sponsor testimony at the September 13 hearing. At the September 14 hearing, the committee voted HB 319 out of committee to the full House by a vote of 14 to 8 on a straight party line vote.

4.      HB 319 was debated on the floor of the House on September 15, 2011, and approved the same day by a 56-36 vote.

5.      On September 19, 2011, HB 319 was introduced in the Ohio Senate.

6.      On September 20, 2011, the Senate Committee on Government Oversight and Reform ("SCGOR"), chaired by Senator Keith Faber, held a hearing on HB 319.

7.      On September 21, 2011, the SCGOR held a second hearing on HB 319 and added an amendment to include a $2.75 million appropriation for local boards of elections. After adding the amendment, the Committee then voted to approve the map on a straight party line vote.

8.      HB 319, as amended, passed the Senate later that same day—September 21, 2011—by a vote of 24-7. Two Democratic members of the Senate voted in favor of HB 319.

9.      HB 319, as amended, returned to the House for a vote on September 21, without going to any committee. The House passed the amended bill by a 60-35 margin on September 21, 2011.

## APPENDIX A: JOINT UNCONTROVERTED FACTS

10.     HB 319 was signed into law by Governor Kasich on September 26, 2011.

### C. Referendum on HB 319.

11.     On September 28, 2011, an advocacy group called Ohioans for Fair Districts filed a mandamus action in state court seeking to compel the Ohio Secretary of State to treat Sections 1 and 2 of HB 319 as subject to the constitutional right of referendum.

12.     A referendum petition on HB 319 was filed with the Ohio Secretary of State's Office on October 12, 2011.

13.     On October 14, 2011, the Ohio Supreme Court ruled that a referendum could proceed if there were signatures of 6% of state electors collected by December 25, 2011.

### D. The legislative history of HB 369.

14.     On November 3, 2011, Huffman introduced HB 369, which amended the congressional district map adopted in HB 319, in the House Rules and Reference Committee.

15.     On November 9, 2011, Huffman gave sponsor testimony before the House Rules and Reference Committee.

16.     HB 369 also changed the primary system in Ohio by consolidating two primary election dates (one for state, local, and U.S. Senate elections and the other for the U.S. House and presidential elections) into a single primary date. This change was projected to save the State approximately $15 million per year.

17.     The Ohio House passed HB 369 on December 14, 2011, by a 77-17 margin.

18.     On December 14, 2011, HB 369 was introduced in the Ohio Senate by Faber and was passed the same day by a vote of 27-6.

19.      The Ohio General Assembly enacted HB 369, Ohio's current congressional redistricting plan, on December 14, 2011.

3

APPENDIX A: JOINT UNCONTROVERTED FACTS

20.     HB 369 was then signed into law by Governor Kasich on the following day, December 15, 2011.

### E. The 2011 Ohio Congressional District Plan.

21.     The population of each congressional district in the congressional district plan enacted under HB 369 (the "2011 Plan") is either 721,031 or 721,032, rendering the population deviation between districts as either plus one or minus one.

22.     The 2011 Plan splits 23 of Ohio's 88 counties. Hamilton, Lucas, Mahoning, Trumbull, Medina, Richland, Tuscarawas, Muskingum, Ross, Scioto, Erie, Athens, Marion, Huron, Ottawa, and Fayette counties are split into two different congressional districts. Franklin, Stark, Lorain, Portage, and Mercer counties are split into three different congressional districts. Cuyahoga and Summit counties are split into four congressional districts. The remaining 65 counties are maintained entirely in one congressional district.

23.     The 2011 Plan created a district in northeast Ohio—Congressional District 11—with a Black Voting Age Population of 52.37%.

24.     Ohio's 11th Congressional District has been represented by an African-American woman—Marcia Fudge—since 2008. The 11th Congressional District has been represented by an African-American since 1993.

25.     The 2011 Plan created a district in Franklin County—Congressional District 3—with a Black Voting Age Population of 30.87%.

26.     Ohio's 3rd Congressional District has been represented by an African-American woman—Joyce Beatty—since 2013.

27.     The 2011 Plan placed Representative Turner and Representative Austria into the same congressional district.

4

APPENDIX A: JOINT UNCONTROVERTED FACTS

28.    The 2011 Plan placed Representative Kaptur and Representative Kucinich into the same congressional district.

29.    The 2011 Plan placed Representative Renacci and Representative Sutton into the same congressional district.

30.    All other incumbent members of Congress as of 2011 were not placed into a congressional district in the 2011 Plan with another incumbent member of Congress.

31.    Republican congressional candidates have won 12 (75%) of Ohio's U.S. congressional seats in the last four election cycles held under the map.

### F. Plaintiffs' Proposed Remedial Plan

32.    The Proposed Remedial Plan splits 13 counties two ways: Clark, Coshocton, Franklin, Geauga, Hamilton, Highland, Holmes, Licking, Mahoning, Mercer, Morrow, Noble, and Wood. The only county split three ways is Cuyahoga County.

33.    Under the Proposed Remedial Plan, District 11 has a Black Voting Age Population of 47.48%

34.    Under the Proposed Remedial Plan, District 3 has a Black Voting Age Population of 30.31%.

35.    Under the Proposed Remedial Plan, District 1 has a Black Voting Age Population of 26.74%.

### G. Ohio Issue 1

36.    Ballot Issue 1 ("Issue 1"), the Congressional Redistricting Procedures Amendment, was approved by Ohio voters on May 8, 2018.

37.    Issue 1 passed with nearly 75% of the statewide vote.

38.    Issue 1 will put in place a process that begins after the next census, with map-drawing to start in 2021.

### APPENDIX A: JOINT UNCONTROVERTED FACTS

39.    Issue 1 was a bi-partisan effort to amend the manner in which the State of Ohio will draw its congressional districts following the 2020 Census. It will take effect on January 1, 2021.

40.    Issue 1 was supported by numerous groups and organizations including the Ohio Republican Party, the Ohio Democratic Party, the League of Women Voters of Ohio, the Ohio Environmental Council, Common Cause, among other groups.

41.    Under Issue 1, the Ohio legislature can adopt a 10-year congressional redistricting plan with a 60 percent vote of members in each chamber in favor, and at least 50 percent of the minority party voting in favor in each chamber.

42.    If the Ohio legislature fails to meet these vote requirements, then a seven-member Ohio Redistricting Commission (which, under Ohio's constitution, is responsible for enacting district plans for the Ohio House of Representatives and Ohio Senate) may adopt a 10-year congressional redistricting plan with support from at least two members of the minority party on the commission.

43.    If the Ohio Redistricting Commission fails to adopt a plan, the Ohio legislature may then either (a) adopt a 10-year plan with only one-third vote of the members from the minority party supporting the proposal; or (b) adopt a plan by a simple majority vote with the plan lasting just two general election cycles (four years), rather than 10 years.

### H. The Plaintiffs are Ohio organizations and voters.

#### 1. Ohio A. Philip Randolph Institute

44.    Ohio A. Philip Randolph Institute ("APRI") is the Ohio chapter of the A. Philip Randolph Institute.

45.    It has eight chapters across Ohio—in Columbus, Cleveland, Cincinnati, Toledo, Warren, Youngstown, Akron/Canton, and Dayton, seven of which are currently active.

APPENDIX A: JOINT UNCONTROVERTED FACTS

46.     Andre Washington has been the President of APRI for ten years and was the organization's Rule 30(b)(6) designee.

## 2. League of Women Voters of Ohio

47.     League of Women Voters of Ohio ("LWVO" or "the League") is the Ohio chapter of the League of Women Voters of the United States, founded in May 1920.

48.     LWVO Executive Director Jennifer Miller was designated as the group's Rule 30(b)(6) witness.

49.     The LWVO supported Ballot Issue 1.

## 3. Northeast Ohio Young Black Democrats

50.     Plaintiff Northeast Ohio Young Black Democrats ("NEOYBD") is a regional organization dedicated to "mentor, empower and recruit the next generation of young people of color who want to be involved in the political process" in Northeast Ohio.

51.     NEOYBD supported Ballot Issue 1 and canvassed to get it on the ballot in 2017.

## 4. Hamilton County Young Democrats

52.     Hamilton County Young Democrats is a Democratic organization that engages young people to be involved in politics and elections.

53.     Nathaniel Simon has been the President of the Hamilton County Young Democrats since 2017 and was the organization's Rule 30(b)(6) designee.

## 5. The Ohio State University Democrats

54.     The Ohio State University College Democrats ("OSU College Democrats") is a student organization at the Ohio State University whose aim is to "advocate, educate, and engage people on the Ohio State campus in alignment with the [Democratic] party platform."

55.     The OSU College Democrats is chartered with the Ohio Democratic Party, Ohio College Democrats, and College Democrats of America.

7

## APPENDIX A: JOINT UNCONTROVERTED FACTS

56.     Alexis Oberdorf was the President of the OSU College Democrats from December 2017 to December 2018 and was the organization's Rule 30(b)(6) designee.

### 6. Individual Plaintiffs

57.     Linda Marcy Goldenhar resides in the 1st District.

58.     Dr. Goldenhar is a U.S. citizen registered to vote in Ohio and is an active voter who has voted in every congressional and presidential election since moving to and registering to vote in Ohio in 1992.

59.     Under the Proposed Remedial Plan, Dr.. Goldenhar would be placed in the 1st Congressional District.

60.     Douglas John Burks resides in the 2nd District.

61.     Dr. Burks is a U.S. citizen registered to vote in Ohio and is an active voter.

62.     In the almost 40 years Dr. Burks has resided at his current address, he has been in both the 1st and 2nd Districts.

63.      Steve Chabot, incumbent Representative for District 1, represented Dr. Burks in the 2000s.

64.     Under the Proposed Remedial Plan, Dr. Burks is placed in the 1st Congressional District.

65.     Sarah Marie Inskeep resides in the 3rd District.

66.     Ms. Inskeep is a U.S. citizen registered to vote in Ohio and is an active voter, having voted in every congressional election since 2012.

67.     Under the Proposed Remedial Plan, Ms. Inskeep remains in the 3rd Congressional District.

68.     Cynthia Libster resides in the 4th District.

**APPENDIX A: JOINT UNCONTROVERTED FACTS**

69. Ms. Libster is a U.S. citizen registered to vote in Ohio and is an active voter, having voted in almost every election she can recall, including elections for U.S. Congress.

70. Ms. Libster's current representative is Republican Jim Jordan.

71. Under the Proposed Remedial Plan, Ms. Libster remains in the 4th Congressional District.

72. Kathy Deitsch resides in the 5th District.

73. Ms. Deitsch is a U.S. citizen registered to vote in Ohio and is an active voter.

74. Ms. Deitsch's current representative is Republican Bob Latta.

75. Under the Proposed Remedial Plan, Ms. Deitsch would be placed in the 4th Congressional District.

76. LuAnn Boothe resides in the 6th District.

77. Ms. Boothe is a U.S. citizen registered to vote in Ohio and is an active voter, having voted in every election she can recall including elections for U.S. Congress.

78. Ms. Boothe's current representative is Republican Bill Johnson.

79. Under the Proposed Remedial Plan, Ms. Boothe is placed in the 6th Congressional District.

80. Mark John Griffiths resides in the 7th District.

81. Mr. Griffiths is a U.S. citizen registered to vote in Ohio and is an active voter, having voted in every congressional election since 2012 except for 2014 when the Republican congressional candidate Bob Gibbs was unopposed.

82. Under the Proposed Remedial Plan, Mr. Griffiths is placed in the 9th Congressional District.

83. Larry Nadler resides in the 8th District.

## APPENDIX A: JOINT UNCONTROVERTED FACTS

84. Mr. Nadler is a U.S. citizen registered to vote in Ohio and is an active voter, having voted in every election he can recall including elections for U.S. Congress.

85. Mr. Nadler's current representative is Republican Warren Davidson.

86. Under the Proposed Remedial Plan, Mr. Nadler remains in the 8th Congressional District.

87. Chitra Muliyil Walker resides in the 9th District.

88. Ms. Walker is a U.S. citizen registered to vote in Ohio and is an active voter; she believes she has voted in every congressional election since 2008 except when she was out of the country.

89. Under the Proposed Remedial Plan, Ms. Walker is placed in the 9th Congressional District.

90. Tristan Rader resides in the 9th District.

91. Mr. Rader is a U.S. citizen registered to vote in Ohio and is an active voter, having voted in every congressional election at least since moving to his current residence in October 2013.

92. Under the Proposed Remedial Plan, Mr. Rader is placed in the 9th Congressional District.

93. Ria Megnin lives in the 10th District.

94. Ms. Megnin is a U.S. citizen registered to vote in Ohio and is an active voter, having voted in every election she can recall including elections for U.S. Congress.

95. Ms. Megnin's U.S. congressional Representative is Republican Michael Turner.

96. Under the Proposed Remedial Plan, Ms. Megnin remains assigned to the 10th Congressional District.

**APPENDIX A: JOINT UNCONTROVERTED FACTS**

97.     Andrew Harris has resided, during the last 10 years, at 3 addresses in the 11th District.

98.     Mr. Harris is a U.S. citizen registered to vote in Ohio and is an active voter. He registered to vote in the State of Ohio when he turned 18 in 2008. He is an active Ohio voter.

99.     Under the Proposed Remedial Plan, Mr. Harris remains in the 11th Congressional District.

100.     Aaron Dagres resides in the 12th District; he is a U.S. citizen registered to vote in Ohio and is an active voter.

101.     Mr. Dagres registered to vote in the State of Ohio in 1997.

102.     Under the Proposed Remedial Plan, Mr. Dagres remains in the 12th Congressional District.

103.     Liz Myer lives in the 13th District.

104.     Dr. Myer is a U.S. citizen registered to vote in Ohio and is an active voter, having voted in every election she can recall including elections for U.S. Congress.

105.     Dr. Myer's U.S. Congressional Representative is Democrat Tim Ryan.

106.     Under the Proposed Remedial Plan, Dr. Myer remains in the 13th Congressional District.

107.     Beth Ann Blewitt Hutton resides in the 14th District.

108.     Ms. Hutton is a U.S. citizen registered to vote in Ohio and is an active voter, having voted in every single election since registering to vote around 1971. With the exception of Representative Steve LaTourette, Ms. Hutton has always voted for Democratic candidates at the federal level.

## APPENDIX A: JOINT UNCONTROVERTED FACTS

109.    Under the Proposed Remedial Plan, Ms. Hutton is placed in the 13th Congressional District.

110.    Terri Thobaben lives in Clinton County in the 15th District.

111.    Ms. Thobaben is a U.S. citizen registered to vote in Ohio and is an active voter, having voted in every election she can recall including elections for U.S. Congress.

112.    Ms. Thobaben's Congressional Representative is Republican Steve Stivers.

113.    Under the Proposed Remedial Plan, Ms. Thobaben is placed in the 2nd Congressional District.

114.    Constance Rubin has resided, during the last 10 years, at two addresses in the 16th District.

115.    Ms. Rubin is a U.S. citizen registered to vote in Ohio and is an active voter. She registered to vote in Ohio in 1973.

116.    Under the Proposed Remedial Plan Ms. Rubin is placed in the 14th Congressional District.

**<u>Defendants</u>**

117.    Representative Ryan Smith was the Speaker of the Ohio House of Representatives at the time Plaintiffs' Second Amended Complaint was filed and was sued in his official capacity. On January 7, 2019, the Ohio House of Representatives elected Defendant Representative Larry Householder as Speaker of the Ohio House of Representatives. In his official capacity, Speaker Householder has been automatically substituted for Mr. Smith pursuant to the operation of Fed. R. Civ. P. 25(d).

118.    Defendant Larry Obhof is the President of the Ohio State Senate and is sued in his official capacity.

## APPENDIX A: JOINT UNCONTROVERTED FACTS

119.    Jon Husted was the Ohio Secretary of State at the time this action was filed and was sued in his official capacity. In the November 6, 2018 general election, Jon Husted was elected Ohio's Lieutenant Governor, and Frank LaRose was elected as the Ohio Secretary of State and currently serves in that role. In his official capacity, Mr. LaRose has been automatically substituted for Jon Husted pursuant to the operation of Fed. R. Civ. P. 25(d).

120.    Mr. LaRose is the chief election officer in Ohio responsible for overseeing election administration pursuant to Ohio Rev. Code Ann. § 3501.04.

**Intervenors**

121.    Intervenor Steve Chabot is a United States Congressman who has represented Ohio's First Congressional District from 1995-2009 and 2011 to the present.

122.    Intervenor Brad Wenstrup is a United States Congressman who has represented Ohio's Second Congressional District since 2013.

123.    Intervenor Jim Jordan is a United States Congressman who has represented Ohio's Fourth Congressional District since 2007.

124.    Representative Jordan has participated in a number of bi-partisan debates during his tenure representing the 4th Congressional District.

125.    Intervenor Bob Latta is a United States Congressman who has represented Ohio's Fifth Congressional District since 2007.

126.    Intervenor Bill Johnson is a United States Congressman who has represented Ohio's Sixth Congressional District since 2011.

127.    Intervenor Bob Gibbs is a United States Congressman who has represented Ohio's Seventh Congressional District since 2013. Representative Gibbs previously represented Ohio's Eighteenth Congressional District from 2011-2013.

## APPENDIX A: JOINT UNCONTROVERTED FACTS

128. Intervenor Warren Davidson is a United States Congressman who has represented Ohio's Eighth Congressional District since 2016.

129. Intervenor Mike Turner is a United States Congressman who has represented Ohio's Tenth Congressional District since 2013 and previously represented Ohio's Third Congressional District from 2003-2013.

130. Intervenor David Joyce is a United States Congressman who has represented Ohio's Fourteenth Congressional District since 2013.

131. Intervenor Steve Stivers is a United States Congressman who has represented Ohio's Fifteenth Congressional District since 2011.

132. Intervenor Robert F. Bodi is a resident of Westlake, Ohio, within Ohio's 16th Congressional District.

133. Intervenor Roy Palmer III is a resident of Toledo, Ohio, within Ohio's 9th Congressional District.

134. Intervenor Charles Drake is a resident of Cleveland Heights, Ohio, within Ohio's 11th Congressional District.

135. Intervenor Nathan Aichele is a resident of Columbus, Ohio, within Ohio's 3rd Congressional District.

136. Intervenor, the Republican Party of Cuyahoga County ("RPCC"), is the local Republican Party in Cuyahoga County.

137. Intervenor, the Franklin County Republican Party ("FCRP"), is the local Republican Party in Franklin County.

APPENDIX A: JOINT UNCONTROVERTED FACTS

February 7, 2019                        Respectfully submitted,


                                        /s/ Freda J. Levenson
                                        Freda J. Levenson (0045916) (Trial Attorney)
                                        American Civil Liberties Union of Ohio Foundation
                                        4506 Chester Avenue
                                        Cleveland, Ohio 44103
                                        Tel.: (614) 586-1958
                                        flevenson@acluohio.org
                                        *Counsel for Plaintiffs*


                                        /s/ Phillip J. Strach
                                        Phillip J. Strach (Trial Attorney)
                                        Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
                                        4208 Six Forks Road, Suite 1100
                                        Raleigh, NC 27609
                                        Tel.: (919) 787-9700
                                        phil.strach@ogletree.com
                                        *Counsel for Defendants*

                                        /s/Patrick T. Lewis
                                        Patrick T. Lewis (0078314) (Trial Attorney)
                                        Baker Hostetler LLP
                                        127 Public Square, Suite 2000
                                        Cleveland, Ohio 44114
                                        Tel.: (216) 621-0200
                                        plewis@bakerlaw.com
                                        *Counsel for Intervenors*

15

# APPENDIX B

**APPENDIX B: Plaintiffs' Contested Facts**

## TABLE OF CONTENTS

I.   Plaintiffs' Contested Facts ................................................................................. 1

  A.   Republican congressional leadership sought a 12-4 map. ............................... 1

  B.   The Ohio state Republican leadership was committed to a 12-4 map. .......................... 2

  C.   The national Republicans provided political data for the Ohio map drawers. .............. 3

  D.   A key part of the national Republican work and strategy was the Franklin County Sinkhole. .............. 4

  E.   The map drawers evaluated the districts that were drawn through the use of political indices. .............. 5

  F.   The map drawers used Maptitude to track changes to the partisan scoring of each district. .............. 7

  G.   Political indices were shared with Ohio legislators at the "Bunker" and digitally. ........ 7

  H.   Members of Congress and national Republicans also received updates of the political composition of draft maps. .............. 9

  I.   Prior to introducing a map, Republicans knew it would be a 12-4 map based on the political index work. .............. 9

  J.   While local and national Republican lawmakers were receiving updates about the status of draft maps, the map was kept from the public and even from members of the General Assembly until September 13, 2011. .............. 10

  K.   Republicans provided lawmakers with little time to debate the merits of the proposed plan. .............. 11

  L.   The Ohio Supreme Court's ruling on the referendum pressured Republicans to begin negotiating, but they retained the position that the map had to be 12-4 in favor of Republicans. .............. 11

  M.   HB 369 is introduced, and negotiations continue, but Democrats are unable to change the partisan breakdown of the map. .............. 12

  N.   Contemporaneous Republican documents demonstrated that HB 369 would be a 12-4 map. .............. 14

  O.   The contemporaneous Democratic analysis of HB 369 concluded that the Republicans achieved their 12-4 map. .............. 15

  P.   Republicans and Democrats openly acknowledge that the Republicans secured their 12-4 objective because they had the raw political power to achieve their goal. .............. 16

  Q.   The work of Dr. David Niven supports a finding that Ohio's map was drawn with an intent to advantage Republicans and disadvantage Democrats. .............. 17

  R.   The work of Dr. Wendy K. Tam Cho supports a finding that Ohio's map was drawn with an intent to advantage Republicans and disadvantage Democrats. .......... 17

i

**APPENDIX B: Plaintiffs' Contested Facts**

S.      Voting Rights Act compliance does not explain the 12-4 map. ................................... 18

T.      It was known at the enactment of the map that it was not drawn to comply with the Voting Rights Act. ................................................................................ 19

U.      Traditional redistricting criteria do not explain the map. ............................... 20

V.      The Partisan Bias Measures Illustrate That Ohio Was Gerrymandered ..................... 22

W.      The Plaintiffs have been harmed by the Republican gerrymander. ............................. 23

    1.      Ohio A. Philip Randolph Institute ................................................. 23

    2.      League of Women Voters of Ohio .................................................. 24

    3.      Northeast Ohio Young Black Democrats "NEOYBD" ............................ 26

    4.      Hamilton County Young Democrats .............................................. 27

    5.      The Ohio State University Democrats ............................................ 28

    6.      Individual Plaintiffs ................................................................ 30

**APPENDIX B: Plaintiffs' Contested Facts**

I.    **Plaintiffs' Contested Facts**

    **A.  Republican congressional leadership sought a 12-4 map.**

1.  John Boehner, then-Speaker of the U.S. House of Representatives, directed his political team to engage in Ohio's map drawing process.

2.  In 2011, Boehner assigned Tom Whatman, the Executive Director of Boehner's political operation (called "Team Boehner"), to work on restricting in Ohio. Among other things, he was tasked with serving as a liaison between Ohio's Republican members of Congress and Republicans in Ohio.

3.  Whatman spoke to Ohio's Republican members of Congress about what new districts might look like in Ohio following redistricting. He used that information to formulate proposals for the new Ohio congressional map.

4.  Whatman provided instructions on the preferred shapes of districts to Kincaid, who made changes to the draft maps.

5.  Under the pre-2011 congressional map, the Republicans held between 8 and 13 seats. The 1st, 6th, 15th, 16th, and 18th districts all flipped between Republican and Democrats in the previous redistricting cycle.

6.  2010 was considered a wave election for Republicans. That year, Republicans won seats in the 1st, 6th, 15th, 16th, and 18th districts that had previously been held by Democrats, making the delegation 13-5 in favor of Republicans.

7.  In 2011, Republicans considered drafting a new congressional map with a 13-3 Republican advantage (a "13-3 map"), thus preserving the seats of all 13 Republican members of Congress elected in 2010.

**APPENDIX B: Plaintiffs' Contested Facts**

8. However, doing so would result in a smaller margin of victory in several Republican-held districts, which would risk those districts becoming competitive during a strong Democratic election year and falling into Democratic control.

9. Republicans settled on drawing a map that would "lock down" a solid 12-4 Republican advantage (a "12-4 map").

10. 

**B. The Ohio state Republican leadership was committed to a 12-4 map.**

11. The Ohio Legislative leadership would not enact anything that was contrary to Boehner's wishes.

12. Prior to the enactment of HB 319, Batchelder spoke with Boehner approximately once per month regarding the redistricting process.

13. Speaker Batchelder's office sent out a memo explaining that the map would be a 12-4 map.

14. Based on various conversations, Batchelder developed "an idea" of what Boehner wanted in a map. Batchelder then relayed Boehner's requests to Mann.

15. When negotiating HB 369, Batchelder was not in communication with Boehner, although at that point he knew what Boehner wanted in a map and so he did not need to talk to Boehner about it.

16. Batchelder does not recall enacting any congressional redistricting map that went against Boehner's wishes.

17. Senate President Niehaus was also committed to ending up with a map approved by Boehner, and he accepted input directly from Whatman.

APPENDIX B: Plaintiffs' Contested Facts

18. Niehaus told Whatman on September 11, 2011, that "I am still committed to ending up with a map that Speaker Boehner fully supports."

19. As a result, Whatman understood that "the Ohio legislature wanted to come up with a map that Speaker Boehner supported."

### C. The national Republicans provided political data for the Ohio map drawers.

20. The election results data used to create the maps had been initially generated by an effort orchestrated with the help of the RNC. "[A]n outside group that the RNC was working with" oversaw the conversion of precinct-level election results estimated down to the census-block level—"the Project." This outside group generated this data set for a number of states—"including Ohio"—in 2011.

21. Hofeller was the main contact" between the RNC and those working on The Project.

22. Bensen received the block-level data from The Project for Ohio. He ran validation checks and then loaded it onto Maptitude.

23. The data Bensen provided to the map drawers included data on individual elections and "election averages" data based on two-party vote share, which could be viewed within Maptitude by labels hovering over a congressional district, at the Census Block Level. The data included elections going back to 2002.

24. Whatman, Kincaid, and Hofeller were directly involved in the drafting and approval of Ohio's districts. Their work on Ohio's draft districts started as early as January 2011.

25. Whatman and Kincaid were conduits between national Republicans and the local Ohio Republicans, including Mann and DiRossi.

26. Whatman collected input from Ohio's Republican members of congress on drafts and suggested changes to the draft map. Kincaid then implement Whatman's suggestions and then send back a draft of a map. After finishing the proposed map, Whatman sought

3

**APPENDIX B: Plaintiffs' Contested Facts**

Boehner's sign-off. Once Boehner signed off on the draft map, Whatman showed the proposed draft to Ohio's Republican members of Congress.

27. By July 2011, Kincaid was already using various political indices to "score" the political leanings of proposed congressional district maps to determine the best way to achieve a 12-4 map.

28. Kincaid sent Republican members of Congress analyses, in the form of Excel spreadsheets, showing how a Republican was expected to perform in their new districts, based on a series of partisan metrics. For example, ████████████████████████████ ████████████████████████████████████████████████ ████████████████████

29. DiRossi and Mann emailed Whatman about changes to the map and Whatman indicated his opinion of them.

30. Whatman's proposals carried a great deal of weight with the map drawers. For example, the evening before HB 319 was introduced in the Ohio House, Whatman requested that the boundaries of 16th District be altered slightly to encompass the headquarters of a Republican donor. Kincaid responded to Whatman's eleventh hour request by changing the boundaries of 16th District late in the evening on September 12, 2011.

31. Hofeller also helped to draft districts. ████████████████████████████ ████████████████████████████

**D. A key part of the national Republican work and strategy was the Franklin County Sinkhole.**

32. On September 7, 2011, Whatman sent Niehaus and Judy talking points informing him that Republicans were seeking to "lock down" 12 Republican seats. These talking points were also shared with Mann and Batchelder.

4

**APPENDIX B: Plaintiffs' Contested Facts**

33. Whatman came up with a key proposal to enable a 12-4 map: creating a new congressional district in the city of Columbus (what would become 3rd District). The new district packed Democrats in Democrat-leaning Franklin County into a single congressional district.

34. Absorbing so many Democrats into a single district was essential for creating a 12-4 map, because doing so bolstered Republican control of adjacent 12th and 15th Districts.

35. The strategy was referred to as the "Franklin County Sinkhole" and the impact of this strategy was well known among Republicans at the time. For example, on September 2, 2011, Kincaid sent and circulated to Mann, DiRossi, and Whatman a "Franklin County Sinkhole" spreadsheet he created that shows the political scoring effects of creating a new district in the Franklin County area.

36. Parts of Franklin County were considered undesirable to the Republicans, given the number of Democrats that lived in those parts. So for example, ███████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████

    **E. The map drawers evaluated the districts that were drawn through the use of political indices.**

37. The use of the election results data in the map drawing process enabled Republicans to execute the Franklin County Sinkhole strategy and ensure a 12-4 map.

38. Mann and DiRossi were interested in viewing election results data.

**APPENDIX B: Plaintiffs' Contested Facts**

39. Political indices were the data Mann's "principals," Batchelder and Judy, were most interested in receiving regarding the maps being drawn. Political indices blend together data from different races to more accurately predict the voting tendencies of voters in proposed congressional districts.

40. The political indices for each individual congressional district were relied on during the map drawing process and distributed at meetings, including those attended by Batchelder and Huffman.

41. Map drawers created the Unified Index to guide decision making.

42. The Unified Index was composed of results from the following five races: 2004 President, 2006 Auditor, 2006 Attorney General, 2008 President, and 2010 Governor.

43. At the legislative leadership level, choosing an index was Huffman's assignment.

44. At the operational level, DiRossi created the Unified Index, using results from the five elections, which were then averaged to reflect the two-party vote share.

45. The Unified Index scoring for a district would change any time the map drawers would make a change to the boundaries of any district.

46. The Unified Index is more Democratic than the actual vote share in the decade preceding the redistricting. Using a more Democratic index allowed the map drawers to be confident that districts would not switch to Democratic control when there was a year that favored Democratic candidates.

47. In addition to the Unified Index, some Republicans preferred to use McCain '08 election results in Ohio as an index. The McCain '08 numbers were included in indices, draft maps and other work product.

**APPENDIX B: Plaintiffs' Contested Facts**

48. Since it was based President Obama's defeat of John McCain in 2008, the McCain '08 index also reflected a strong Democratic outcome. Using this more Democratic metric allowed the map drawers and stakeholders to be confident that districts would not switch to Democratic control when there was a year that favored Democratic candidates.

49. National Republicans also used the Partisan Vote Index ("PVI"), to score districts. For example, Kincaid preferred PVI values.

50. The map drawers included PVI, the Unified Index, and the McCain '08 index in their work product, including indices rating maps and draft districts.

    **F. The map drawers used Maptitude to track changes to the partisan scoring of each district.**

51. Maptitude enables a map drawer to generate color coded maps of a district, showing the specific scorings of sub-portions of the district and its relative Republican or Democratic strength, which could be viewed by map drawers.

52. Maptitude could produce an output on data sets for a particular map, including data sets of the "various indexes," including the Unified Index.

53. Maptitude would calculate the elections data in real time for each district as it was drawn. The data could be viewed on the screen in a table.

54. The election results data provided by Bensen was loaded into Maptitude and was used by the map drawers. The election results data included for statewide elections going back to 2002. (They also loaded the Unified Index, which had a code "EA 12").

55. DiRossi also created charts scoring congressional districts using various indices.

    **G. Political indices were shared with Ohio legislators at the "Bunker" and digitally.**

56. The map drawers knew that the Ohio legislative leaders were interested in how changes to the map impacted the partisan makeup of the map.

**APPENDIX B: Plaintiffs' Contested Facts**

57. Beginning in July 2011, the redistricting operations were based out of a secretly-rented hotel room at the DoubleTree Hotel in Columbus, Ohio. DiRossi nicknamed the room "the Bunker" and it was generally referred to by that name. No Democratic officials or operatives were able to access the bunker, and the meetings regarding the map drawing there were limited to Republican operatives and officials. There were three computers in the Bunker. Mann and DiRossi each worked on one and Judy worked on a third. Mann, Judy, and DiRossi were the only persons with passwords to the computers. Maptitude was running on the computers. The Unified Index scorings for each district was always on the computer screen. Judy would discuss them with Mann.

58. Batchelder, Niehaus, Huffman, Mann, DiRossi, Judy, Lenzo, and Braden all attended meetings at the Bunker where draft maps and political data were shared.

59. The political index data was reviewed by legislative leaders during in-person meetings by viewing it on the computer screens and printouts. For example, Judy discussed the partisan leanings of proposed districts with Batchelder between two to five "ad hoc" meetings at the Bunker and in the Speaker's Office prior to the introduction of HB 319. At these meetings, spreadsheets that contained the Unified Index information about the districts under consideration were handed out.

60. Niehaus also would ask for political index information. DiRossi would inform Niehaus, Faber, and Schuler of the impact of any changes to the index based on any "tweaks" to the map.

61. Republicans continued to share political data among themselves as they worked on HB 369. For example, as regards to HB 369, Judy circulated and recalled reviewing spreadsheets that included Unified Index information and having them at meetings.

APPENDIX B: Plaintiffs' Contested Facts

### H. Members of Congress and national Republicans also received updates of the political composition of draft maps.

62. In addition to the updates that were provided to Republicans in the Ohio legislature, information was shared with Republican members of the U.S. Congress as draft maps were being drawn.

63. Kincaid created spreadsheets that scored districts based on index values and this information was conveyed to the members of Congress.

64. Whatman and ▮▮▮▮▮▮▮received Excel spreadsheets from Kincaid with political information regarding the map, including PVI and unified index data.

65. The spreadsheets used PVI values to score the districts. And Kincaid had PVI scorings for the final map as enacted.

66. The spreadsheets also scored the districts based on the Unified Index's average of five elections (2004 President, 2006 Attorney General, 2006 Auditor, 2008 President, and 2010 Governor).

67. The spreadsheets were shared with the Republican members of Congress.

### I. Prior to introducing a map, Republicans knew it would be a 12-4 map based on the political index work.

68. Kincaid created and circulated an analysis comparing HB 319 with the pre-redistricting map. The analysis, which was generated in Maptitude and then exported into an Excel spread sheet, scored the two maps using PVI scorings as well as the "Ohio GOP Average" based on the five elections in the Unified Index.

69. Kincaid's analysis demonstrates clear Republican PVI gains in specific districts: a gain of 7 points in District 1; a gain of 11 points in District 12; and a gain of 8 points in District 15.

APPENDIX B: Plaintiffs' Contested Facts

70. These scorings were communicated to DiRossi, who used them to create his own analyses. DiRossi's spreadsheet confirmed that Republican strength increased in Districts 12 and 15 because, among other reasons, Democrats in Franklin County were packed into newly created District 3. The PVI scorings illustrated that the Republicans obtained 11 "likely" seats that were five points in favor of Republicans (R+5) and one additional seat that would also likely elect a Republican because it was plus 3 points for Republicans (R+3).

71. The outcome of the analysis was shared with other Republicans.

72. 

> **J.** **While local and national Republican lawmakers were receiving updates about the status of draft maps, the map was kept from the public and even from members of the General Assembly until September 13, 2011.**

73. There were five public hearings held by the Senate Select Committee on Redistricting and the House Committee on Redistricting, with Faber and Huffman chairing the respective committees. These hearings were held in July and August 2011.

74. No maps were considered at the public hearings regarding congressional redistricting. Nor were any maps or indices available at the hearings. Further, the committees had no responsibility beyond hearing testimony at these hearings.

10

APPENDIX B: Plaintiffs' Contested Facts

## K. Republicans provided lawmakers with little time to debate the merits of the proposed plan.

75. The map was, according to plan, "held in the can" after it was drafted until September 13, 2011.

76. Members of the General Assembly—even Republican members—were largely kept in the dark about the content of the maps until the end of the process.

77. There were no negotiations between Democrats and Republicans regarding HB 319. The Democratic Minority Leader in the Ohio House, Armond Budish stated that "the map was drawn by Republicans in secret behind closed doors with no meaningful input whatsoever from members of the public, and now the map is being rammed through the House in just a couple of days in order to prevent any meaningful input from anyone else. . . ." Other Democrats also complained about how the map was introduced.

78. Not only did the Democratic leadership not have any input into the map, but many of Ohio's Republican legislators had little input into the map. Faber was given, at the last minute, a map that he was asked to support.

79. The proposed map was shared with the Democratic leadership just before it was introduced.

## L. The Ohio Supreme Court's ruling on the referendum pressured Republicans to begin negotiating, but they retained the position that the map had to be 12-4 in favor of Republicans.

80. On October 14, 2011, the Ohio Supreme Court authorized a referendum to challenge HB 319. However, the Supreme Court declined to extend the 90-day period during which to collect signatures in support of the referendum, giving opponents of HB 319 until December 25, 2011, to collect the requisite number of signatures.

**APPENDIX B: Plaintiffs' Contested Facts**

81. Negotiations began in mid-October 2011 soon after the Ohio Supreme Court ruled that the referendum effort could proceed.

82. The threat of a public referendum on HB 319 was the primary reason why HB 319 was repealed and replaced.

83. The Republicans approached the Democrats about a replacement proposal after the process was started for a citizen's referendum on 319.

84. Democrats proposed a map that would allow for 6 competitive districts.

85. Republicans proposed a map that did not change the 12-4 partisan outcome. This map was introduced as HB 369 on November 3, 2011.

86. Huffman told Democrats that Republicans "weren't going to draw less than 12 [seats]."

87. Judy told Democrats that if they presented a map that had less Republican seats, there was nothing to discuss.

88. During the negotiations, Republicans would let Democrats massage things here or there, but they could not touch the allocation of seats.

**M. HB 369 is introduced, and negotiations continue, but Democrats are unable to change the partisan breakdown of the map.**

89. After the introduction of HB 369, negotiations between Democrats and Republicans continued.

90. McCarthy recalled that negotiations between Republicans and Democrats reached an impasse around November 18, 2011.

91. The impasse was still in effect as of November 30, 2011.

92. To put a referendum on the ballot, the Democrats needed more than 200,000 signatures.

93. The Democrats experienced difficulties in collecting the requisite number of signatures.

**APPENDIX B: Plaintiffs' Contested Facts**

94. Initially, Republicans believed that the chance of obtaining the requisite number of signatures seemed likely.

95. The Republicans, however, became aware of the problems that the Democrats were experiencing in collecting the requisite number of signatures.

96. Publicity regarding the difficulties in obtaining the requisite number of signatures affected negotiations regarding HB 369, weakening the Democrats' ability to push for a fairer map.

97. The Republicans also brought a state court lawsuit to force the enforcement of HB 319, putting further pressure on the Democrats.

98. At some point, Batchelder came to the conclusion that the referendum effort would not gather enough signatures.

99. The proposed changes by Democrats and the Black Caucus were then pushed aside.

100.    Budish stated at the time, with respect to HB 369, "[w]e've tried to talk to [R]epublican leadership, to negotiate and to compromise, but unfortunately we've been refused. Leadership has refused to talk directly with democratic leadership." Instead, he said, Republicans decided to try to cut secret backroom deals with individual democratic members.

101.    

102.    HB 369 unified certain counties that were split in HB 319, but without changing the electoral tilt of the districts.

APPENDIX B: Plaintiffs' Contested Facts

### N. Contemporaneous Republican documents demonstrated that HB 369 would be a 12-4 map.

103.    Contemporaneous Republican analyses show no material change in the partisan composition of the districts included in the replacement map.

104.    For instance, a contemporaneous spreadsheet created by map drawers shows: (1) Four districts not changed at all (6th, 11th, 13th, and 14th Districts); (2) Two districts experienced "negligible" changes (7th and 16th Districts); (3) Eight districts experienced small changes (between 0.24% and 1.9%), which were the 1st, 2nd, 3rd, 4th, 5th, 9th, 12th, and 15th Districts; (4) Only two districts experienced a Unified Index change of 2 percentage points or greater: 8th District (2.60%) and 10th District (3.82%). However, neither of these changes altered the partisan lean of the district in question.

105.    Kincaid also circulated spreadsheets that showed that HB 369 remained a 12-4 map.

106.    Kincaid helped create the content of a redistricting PowerPoint presentation celebrating Republicans' successful efforts to move formerly competitive districts (1st, 12th and 15th Districts) "out of play."

107.    For instance, the PowerPoint presentation states that for Ohio 12th District that the "R + 8 scoring" means that "Tiberi would have been elected in a D plus 1 seat in 2010 and then in 2012 was running for re-election in an R + 8 district . . . which was 9 points more Republican than the district he was elected in in 2010." And the reason that District 12 became more Republican was, in part, because "Tiberi had portions of Columbus in his district previously that he did not have in the district after they were redrawn in 2011 which would be why the PVI had changed, a part of why the PVI had changed."

**APPENDIX B: Plaintiffs' Contested Facts**

108.     It also states that for Ohio's 1st District the scoring meant that "Chabot ran for election in 2010 in a D + 1 seat and would be run[sic] for re-election in an R + 6 district"—and so a net gain of 7 points for the Republicans. And the reason that District 1 became more Republican was because Warren County was added to the district and portions of Hamilton County were drawn out of the district.

109.     Kincaid confirmed that for the 15th District "Stivers was elected in a D plus 1 district and running for reelection in a R plus 6 district" for a net gain of 7 points. And the reason that District 15 became more Republican was also because a new district was created in Franklin County so that District 15 no longer contained Democratic portions of Columbus.

110.     As a result of redistricting, Representative Johnson's district, 6th District, became an R+5 district on the PVI scale, increasing 3 points from the prior map.

**O.  The contemporaneous Democratic analysis of HB 369 concluded that the Republicans achieved their 12-4 map.**

111.     Immediately after the passage of HB 369, the Democrats analyzed the differences between HB 319 and HB 369. The analyses was performed by Randall Routt, a Democratic staffer with a hybrid role of policy and IT-related work, and Christopher Glassburn, a former Democratic staffer, and communicated to other Democratic staff.

112.     Routt's district-by-district analysis demonstrates that with one exception (the 10th District) the differences between HB 319 and HB 369 were trivial when it came to the partisan tilt of districts.

113.     Glassburn performed a contemporaneous analysis of HB 369 and concluded that the Republicans achieved their 12-4 map when HB 369 was enacted.

15

APPENDIX B: Plaintiffs' Contested Facts

114.     His analysis was based on data provided by the Cleveland State University. He

relied primarily on 2008 presidential and 2010 governorship races.

115.     Glassburn concluded that Districts 3, 9, 11, and 13 favor Democrats and the rest

favor Republicans.

116.     Glassburn's district-by-district analysis confirms the basis for the

contemporaneous view that HB 369 was a 12-4 map.

   **P.  Republicans and Democrats openly acknowledge that the Republicans
       secured their 12-4 objective because they had the raw political power to
       achieve their goal.**

117.     Defendant Larry Obhof, who was in the Ohio Senate at the time has stated:

"While a lot of Democrats voted for the current map, they really didn't have a lot of

negotiating power at that stage, because there was always the opportunity to say hey

work with us and we'll do a slightly better map, or we'll do what we want and pass it

with 51% of the vote."

118.     Batchelder has stated that "Their theory was somehow or another that they could

overcome a majority of people who were in the other party, and I don't know how that

would have happened."

119.     Glassburn stated that the Republican leverage was based on the fact that they

"held all the cards."

120.     Senator Turner said: "To say that this map is bipartisan is laughable, no matter

how many democrats in the House decided to tow the party line and vote for a map that

is still 12 to 4."

121.     Senator Tavares said: "What this map does is basically cherry-pick" areas to

achieve a partisan aim. She continued: "Just like the people are not 12-4, they're more

16

APPENDIX B: Plaintiffs' Contested Facts

like 50/50. We never believed we were going to get eight Democratic districts and eight

Republican, but it should have been a little more even."

**Q. The work of Dr. David Niven supports a finding that Ohio's map was drawn with an intent to advantage Republicans and disadvantage Democrats.**

122.     The manner and extent to which the Republicans mapmakers split political

subdivisions and communities of interest, with resulting partisan gain, demonstrates

their objective to crack and pack Democratic voters to optimize Republican seats in

Congress.

123.     Analysis of the map shows that census tracts are split by congressional district

lines 59% more times than in the previous map.

124.     For over 3.3 million Ohioans—more than a quarter of the state—the closest

congressional district office is in another district.

125.     The map reveals patterns of splitting Democratic-leaning cities, neighborhoods,

and counties and incorporating the pieces in the creation of Republican congressional

districts.

126.     The systematic drawing of districts that disregard political boundaries and split

communities of interest—and the partisan impact of these decisions: dilution of the

opposite party's vote—can only be explained by a strategic commitment to partisan

gerrymandering on the part of the map makers.

**R. The work of Dr. Wendy K. Tam Cho supports a finding that Ohio's map was drawn with an intent to advantage Republicans and disadvantage Democrats.**

127.     Dr. Wendy K. Tam Cho used a computer algorithm to generate simulated

congressional maps that adhered to the traditional, nonpartisan districting principles

described in her report. This algorithm did not take into account any voting or

17

APPENDIX B: Plaintiffs' Contested Facts

demographic data when drawing the maps. Each map was constructed by combining Ohio voting precincts into different congressional districts, and only maps that met the traditional, nonpartisan districting criteria were deemed viable.

128.     With the above-described process, the algorithm generated a sample set of over three million viable simulated congressional maps, each of which was drawn without the influence of partisan intent.

129.     By comparing the challenged map against the simulated maps, Dr. Cho "determine[d] whether the partisan effect of the challenged map is to be expected given the underlying geography and population settlement patterns or if it is unusual among the set of non-partisan maps."

130.     Dr. Cho's analysis demonstrates that it is highly unlikely that a map reflecting as much extreme partisan unfairness as the challenged map could have been produced unintentionally.

**S.    Voting Rights Act compliance does not explain the 12-4 map.**

131.     Current 11th District is the successor district to the first majority black congressional district created in Ohio in 1968, which has consistently elected African-Americans to Congress since.

132.     Dr. Lisa Handley conducted a district-specific, functional analysis of voting patterns by race to ascertain the black voting age population necessary to provide black voters with an opportunity to elect their candidates of choice in the vicinity of the 11th District.

133.     Dr. Handley's district-specific, functional analysis relies on three statistical techniques to estimate voting patterns by race: homogenous precinct analysis, ecological regression, and ecological inference.

18

APPENDIX B: Plaintiffs' Contested Facts

134.    Her analysis demonstrates that a 45% black voting age population ("BVAP")

district offers black voters a realistic opportunity to elect their candidates of choice to

represent the 11th District.

135.    It also demonstrates that current 11th District contains far more minorities than is

necessary to elect the minority preferred candidate.

> **T.  It was known at the enactment of the map that it was not drawn to comply with the Voting Rights Act.**

136.    The Republican intent was to pack Democrats, not protect minority voters.

137.    There is no indication that Republicans engaged in the kind of analysis necessary

to determine how many African Americans were needed at the time to create a Voting

Rights Act compliant district. There are only ungrounded discussions of various

percentage cutoffs of the BVAP.

138.    There is evidence in the record that Republicans were primarily concerned with

partisanship and not opportunities to elect minority representatives. For example, the

Republican Chair of Summit County was willing to have three Summit County wards

placed into District 11 because "they were mostly black democrats [sic]" and this

"helped the other districts in Summit County be more Republican."

139.    District 11 was primarily drawn to pack Democratic voters for Republican gains

in neighboring districts and not to advantage Democrats in general nor at the request of

Democratic incumbent, nor to advantage black voters in Ohio.

140.    The packing of Democrats was the reason for the creation of District 3, not a

Republican desire to create a "minority opportunity" district.

141.    A minority opportunity district could have been created in Franklin County under

a different configuration of the map.

**APPENDIX B: Plaintiffs' Contested Facts**

### U. Traditional redistricting criteria do not explain the map.

142.    The map drawers just eye balled compactness and did not do any analysis of

districts to make sure they were compact

143.    Communities of interest are not kept intact with the map.

144.    Communities of interest are often fractured by county and municipal splits.

145.    The map needlessly splits counties and municipalities.  It is possible to create a

map with far fewer splits.

146.    The location of the 2011 incumbents did not require the Ohio congressional map

to be structured as it was.

147.    Congressional plans, which pair the same number of incumbents with the same

match-up of political parties as under the Ohio congressional map, are still better than

the Ohio congressional map on traditional redistricting criteria and partisan symmetry.

148.    Hypothetical maps that pair two 2011 Democratic incumbents, two 2011

Republican incumbents, and one 2011 Democratic with one 2011 Republican incumbent

are better the Ohio congressional map on traditional redistricting criteria.

149.    Two such hypotheticals split only 14 counties; the Ohio congressional map splits

23 counties.

150.    One such hypothetical splits 36 municipal civil divisions, and another splits 34

municipal civil divisions; the Ohio congressional map splits 73.

151.    Both of these hypothetical maps are more compact that the Ohio congressional

map.

152.    Both of these hypothetical maps have a Voting Rights Act compliant district in its

11th District.

20

**APPENDIX B: Plaintiffs' Contested Facts**

153.    Under both of these hypotheticals, District 15 has a Black Voting Age Population

of 30.17%.

154.    Under both of these hypotheticals, District 1 has a Black Voting Age Population

of 26.74%.

155.    One hypothetical has the following Democratic congressional vote percentages of

the two-party vote:

| CD | 2012 | | 2014 | | 2016 | | 2018 | |
|---|---|---|---|---|---|---|---|---|
| | Hypothetical Plan 1A | 2012 Plan | Hypothetical Plan 1A | 2012 Plan | Hypothetical Plan 1A | 2012 Plan | Hypothetical Plan 1A | 2012 Plan |
| 1 | 48.4% | 39.5% | 44.2% | 36.7% | 48.3% | 40.7% | 57.2% | 47.8% |
| 2 | 30.2% | 41.4% | 28.4% | 34.1% | 26.8% | 33.5% | 31.9% | 41.7% |
| 3 | 37.7% | 71.4% | 25.5% | 63.6% | 27.2% | 68.2% | 34.0% | 73.6% |
| 4 | 25.9% | 38.5% | 24.0% | 32.3% | 22.0% | 31.7% | 26.4% | 34.7% |
| 5 | 39.1% | 40.6% | 22.4% | 30.4% | 28.5% | 28.8% | 35.0% | 36.1% |
| 6 | 49.4% | 46.8% | 42.9% | 39.8% | 33.6% | 29.4% | 34.2% | 30.8% |
| 7 | 37.8% | 43.6% | 32.7% | 0.3% | 33.8% | 31.4% | 43.0% | 41.3% |
| 8 | 10.0% | 0.0% | 26.2% | 28.9% | 26.7% | 28.2% | 32.5% | 33.4% |
| 9 | 62.3% | 76.0% | 51.2% | 67.7% | 52.6% | 68.6% | 54.9% | 67.8% |
| 10 | 59.4% | 38.6% | 44.5% | 32.6% | 48.9% | 33.8% | 55.0% | 43.0% |
| 11 | 95.7% | 99.7% | 81.5% | 79.2% | 81.7% | 80.3% | 83.5% | 82.3% |
| 12 | 39.3% | 36.6% | 32.8% | 29.0% | 37.9% | 31.7% | 53.8% | 47.9% |
| 13 | 59.3% | 72.9% | 48.6% | 68.4% | 51.1% | 67.6% | 55.8% | 61.0% |
| 14 | 61.0% | 41.8% | 52.6% | 34.4% | 52.6% | 37.4% | 50.5% | 44.8% |
| 15 | 67.1% | 38.6% | 58.6% | 34.1% | 63.4% | 33.7% | 68.9% | 40.5% |
| 16 | 49.2% | 48.0% | 27.9% | 36.2% | 37.7% | 35.2% | 44.1% | 43.3% |

156.    Another hypothetical has the following Democratic congressional vote

percentages of the two-party vote:

| CD | 2012 | | 2014 | | 2016 | | 2018 | |
|---|---|---|---|---|---|---|---|---|
| | Hypothetical Plan 2A | 2012 Plan | Hypothetical Plan 2A | 2012 Plan | Hypothetical Plan 2A | 2012 Plan | Hypothetical Plan 2A | 2012 Plan |
| 1 | 48.5% | 39.5% | 44.2% | 36.7% | 48.3% | 40.7% | 57.2% | 47.8% |
| 2 | 30.3% | 41.4% | 28.4% | 34.1% | 26.8% | 33.5% | 31.9% | 41.7% |
| 3 | 37.7% | 71.4% | 25.5% | 63.6% | 27.2% | 68.2% | 34.0% | 73.6% |

**APPENDIX B: Plaintiffs' Contested Facts**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 4 | 25.9% | 38.5% | 24.0% | 32.3% | 22.0% | 31.7% | 26.4% | 34.7% |
| 5 | 39.1% | 40.6% | 22.4% | 30.4% | 28.5% | 28.8% | 35.0% | 36.1% |
| 6 | 49.4% | 46.8% | 42.9% | 39.8% | 33.6% | 29.4% | 34.2% | 30.8% |
| 7 | 37.8% | 43.6% | 32.7% | 0.3% | 33.9% | 31.4% | 43.0% | 41.3% |
| 8 | 10.0% | 0.0% | 26.2% | 28.9% | 26.7% | 28.2% | 32.5% | 33.4% |
| 9 | 62.3% | 76.0% | 51.2% | 67.7% | 52.6% | 68.6% | 54.9% | 67.8% |
| 10 | 59.7% | 38.6% | 45.2% | 32.6% | 49.6% | 33.8% | 55.7% | 43.0% |
| 11 | 92.0% | 99.7% | 77.6% | 79.2% | 78.7% | 80.3% | 81.5% | 82.3% |
| 12 | 39.3% | 36.6% | 32.8% | 29.0% | 37.9% | 31.7% | 53.8% | 47.9% |
| 13 | 61.2% | 72.9% | 50.3% | 68.4% | 51.8% | 67.6% | 55.5% | 61.0% |
| 14 | 61.0% | 41.8% | 52.6% | 34.4% | 52.6% | 37.4% | 50.5% | 44.8% |
| 15 | 67.1% | 38.6% | 58.6% | 34.1% | 63.4% | 33.7% | 68.9% | 40.5% |
| 16 | 49.2% | 48.0% | 27.9% | 36.2% | 37.7% | 35.2% | 44.1% | 43.3% |

## V. The Partisan Bias Measures Illustrate That Ohio Was Gerrymandered

157.    Election results show that Democrats were successfully packed into four districts, thus, ensuring that they won their districts by large margins.

158.    The four measures commonly used by political scientists to detect and measure the effects of partisan gerrymandering (the efficiency gap, the mean-median, the Gelman-King asymmetry measure, and the declination) make clear that the Ohio map is an extreme partisan gerrymander.

159.    The partisan bias measures suggest that Ohio was gerrymandered. This suggestion is consistent with political science literature which has found that when one party controls the redistricting process, the partisan bias measures shift in favor of that party.

160.    This finding is also consistent with the big shift in Ohio's partisan bias measures from 2010 to 2012. In 2010, prior to the new map Ohio's partisan bias measures were less pro-Republican than they were in 2012, after Republicans enacted the new map.

APPENDIX B: Plaintiffs' Contested Facts

### W. The Plaintiffs have been harmed by the Republican gerrymander.

#### 1. Ohio A. Philip Randolph Institute

161.    Ohio's gerrymandered congressional map impedes APRI's work and requires it to divert resources from its efforts by making it more difficult to engage voters through its education, registration, and outreach efforts, and by deterring and discouraging its members and other Ohio voters from engaging in the political process.

162.    The current congressional map causes APRI to suffer diversion of resources in accomplishing its mission, causing it to "hav(e) to divert resources to work harder to convince people and educate people that their vote does count and they should exercise their right to vote."

163.    The congressional map causes voter confusion and apathy, which require APRI to divert its resources from its work to register and engage voters. "Because of the way these [congressional district] lines are drawn, people get confused, they're frustrated. You could be in a county that's split down the middle or split in three different ways and they don't know where to vote or who to vote for so they get frustrated, they get confused, they get discouraged and they just don't know what to do so…(they) do nothing. So we're – you know, we have to spend time and resources to work this out"

164.    But for the gerrymandered map, APRI could use its resources to register more people to vote.

165.    Mr. Washington has to work to overcome voter apathy in his own home district, District 12, where "every third door I knock on people are saying my vote doesn't count in this district, it doesn't matter, the same person is going to get back in office."

166.    APRI's members are personally affected by the map as well. APRI has Democratic members in cracked and packed districts who feel "the person that I'm

23

**APPENDIX B: Plaintiffs' Contested Facts**

voting for doesn't have to work for my vote because they know that they're going to win anyway so it doesn't matter if I vote or not, there's no competition in there."

167.     APRI member Ms. White is a Democratic voter, has supported Democratic candidates for Ohio's congressional delegation in the past, and plans to support such candidates in the future. She is active in voter outreach, education, and get out the vote ("GOTV") efforts for APRI, the Democratic Party, and as a union organizer. Ms. White currently resides in Ohio's 5th District, where Democratic voters are cracked under the current map, and her vote is diluted.

### 2.  League of Women Voters of Ohio

168.      Members of the League who are Democrats are injured by the congressional map because they live in congressional districts where Democrats are cracked or packed, diluting their votes.

169.     The LWVO's members believe that, especially in Ohio's congressional districts, citizens' votes are diluted because the map is manipulated to guarantee an outcome.

170.     The current congressional map has impaired the League's operations and diverted its resources across the decade because of the confusion created by the map's "messy" district lines.

171.     This confusion requires the League to set up robust operations to answer calls from voters, confused by the district lines, to determine their polling location. The League has "hundreds of volunteers who are volunteering on election day to answer phone banks …and the reason why we need to have hundreds of volunteers is because people are confused about their congressional districts . . ."

172.     For example in the recent special election in District 12, the League "had to stop what (they) were supposed to be doing . . . so (they) could help voters understand if they

**APPENDIX B: Plaintiffs' Contested Facts**

were in 12 or not." Voters in Clintonville and Grandview were within a couple of blocks of District 3, 15, and 12, in any direction, and were confused as to whether they could vote.

173.     The Ohio congressional map causes the LWVO to divert resources because congressional candidates across the state, secure of reelection, will not agree to participate in candidate forums hosted by the League.

174.     Two examples are Congressman Stivers and Congressman Jordan, both of whom have missed League candidate forums.

175.     ████████████████████████████████████████████████████

████████████████████████████████

176.     This wastes a lot of the LWVO's time and energy: the League will have reserved the room, paid for the sound, and made multiple calls; then the LWVO must tell the opposing candidate that they cannot come and speak either, thus impairing the League in the performance of its work.

177.     Although Congressmen Stivers and Jordan are two examples; it "happens all over the state."

178.     The voter apathy caused when people feel that their votes do not count makes it harder for the League to perform its work getting out the vote.

179.     If the League did not have to divert resources to work on the problems caused by the current congressional map, it would be able to work more on voter education, outreach efforts, getting young people excited about government and registered, putting on candidate forums, and getting out the vote.

25

APPENDIX B: Plaintiffs' Contested Facts

180.     If the League did not need to have hundreds of volunteers to help with district line confusion on Election Day, it could reassign these volunteers to help ease the shortages of poll workers on Election Day.

181.     LWVO member Mr. Fitzpatrick is a Democratic voter, has supported Democratic candidates for Ohio's congressional delegation in the past, and plans to support such candidates in the future. He is active in voter outreach and education both with the League and as a Democrat. Mr. Fitzpatrick currently resides in Ohio's 14th District, where Democratic voters are cracked under the current map, and his vote is diluted.

### 3. Northeast Ohio Young Black Democrats "NEOYBD"

182.     Ohio's gerrymandered congressional map forces NEOYBD to divert resources from its mission by making it more difficult to get out the vote and keep Democratic voters engaged.

183.     The voter apathy that the map produces makes it more difficult for NEOYBD to fundraise and get members involved.

184.     NEOYBD's membership itself is harmed by the voter apathy and confusion that the map creates: "why would [members] join the organization? Why would they get involved? Why would they talk to their neighbors about us? Because they feel their vote doesn't count."

185.     NEOYBD President Gabrielle Jackson, the President of NEOYBD for the past two years and the organization's representative in this litigation, lives in the 9th District. She has experience working against voter apathy and confusion in the packed district where she lives: "It's also known as the Snake on the lake. My representative is Congresswoman Marcy Kaptur. I live in Lakewood, Ohio. She lives in Lucas County. And it's literally a thin line – the way this current map is drawn, it's literally a thin line

26

APPENDIX B: Plaintiffs' Contested Facts

that goes along Lake Erie. There's no adequate way for me, living on the west side of

Cleveland to be represented the same as someone living in Lucas County."

186.    But for the gerrymandered congressional map, NEOYBD could spend more of its

resources more effectively to get out the vote, fundraise, and otherwise support

Democratic candidates.

### 4. Hamilton County Young Democrats

187.    The votes of the members of the Hamilton County Young Democrats have been

diluted due to the construction of the 1st and 2nd Districts.

188.    These members have each been deprived of their opportunity to elect candidates

of choice in Districts 1 and 2.

189.    The way Hamilton County, and particularly the City of Cincinnati, is split

between the 1st and 2nd Districts burdens Hamilton County Young Democrats.

190.    The way the lines are drawn burdens Hamilton County Young Democrats and its

members by creating confusion about which district someone lives in.

191.    This voter confusion causes young voters to become less engaged.

192.    The way the lines are drawn causes young voters to be apathetic about voting and

convinced that being engaged in the process does not matter.

193.    This burdens Hamilton County Young Democrats by hampering its ability to

associate with young people who could be potential members.

194.    Hamilton County Young Democrats encounters young people who decline to

become engaged in the political process or to donate funds to the organization or to

Democratic candidates because they believe the system is rigged based on the

construction of the congressional map.

27

APPENDIX B: Plaintiffs' Contested Facts

195.     The congressional lines make it so that Hamilton County Young Democrats must divide their resources and focus between the 1st and 2nd Districts, instead of allowing them to focus on a district that contains the bulk of Hamilton County and the whole of Cincinnati.

196.     The Congressmen that represent Districts 1 and 2 are not responsive to the Hamilton County Young Democrats.

197.     Members of the Hamilton County Young Democrats have not received responses from Congressmen Chabot and Wenstrup.

198.     The President and Vice President of the Hamilton County Young Democrats have attempted to seek constituent services for residents of Hamilton County through their roles in the Office of the County Commissioner and in the Office of the Mayor of the City of Cincinnati. Congressmen Chabot and Wenstrup routinely do not reply to these requests.

199.     The Hamilton County Young Democrats expended resources on the campaign of Aftab Pureval in 1st District in 2018 as they felt that "he ha[d] the best chance [to win] in quite some time."

200.     Mr. Pureval did not win the 2018 election.

201.     Under Plaintiffs' Proposed Remedial Plan, the percentage of the two-party vote for the Democratic candidate in District 1 was over 57% based on 2018 election results.

### 5.  The Ohio State University Democrats

202.     The votes of the members of the OSU College Democrats have been diluted due to the construction of the 3rd, 12th, and 15th Districts.

203.     The OSU College Democrats and its members have found that the Congress people representing the 3rd, 12th, and 15th Districts are not responsive to them.

**APPENDIX B: Plaintiffs' Contested Facts**

204.     By diluting the members' votes, the congressional map, and specifically the construction of the 3rd, 12th, and 15th Districts, impairs the OSU College Democrats ability to carry out its purpose.

205.     Because the larger constituency of young voters is split up across these three districts, it impairs the effectiveness of the voting bloc.

206.     The way the lines are drawn burdens OSU College Democrats and its members by creating confusion about which district someone lives in.

207.     This voter confusion causes young voters to become frustrated and less likely to become or remain engaged with the OSU College Democrats.

208.     This was illustrated in summer 2018 during the 12th District Special Election. Many individuals who engage with OSU College Democrats were confused about whether they were supposed to vote on Special Election Day, and OSU College Democrats had to expend it volunteer resources to engage with these voters, instead of on Get Out the Vote activity directed only at the 12th District.

209.     The locked up nature of the congressional map causes members of the OSU community to believe that their votes do not matter and to become apathetic.

210.     The apathy from young voters caused by the map impairs OSU College Democrats' associational rights.

211.     In 2018, OSU College Democrats focused their resources on the Danny O'Connor campaign, both the Special Election and on the November 2018 General Election.

212.     Mr. O'Connor did not win the November 2018 election despite a 31.6 percent shift for the Democratic candidate.

**APPENDIX B: Plaintiffs' Contested Facts**

213.     Under Plaintiffs' Proposed Remedial Plan, the percentage of the two-party vote

for the Democratic candidate in District 12 was over 54% based on 2018 election

results.

### 6. Individual Plaintiffs

214.     Ms. Goldenhar's vote has been diluted through cracking Democratic voters in the

1st District.

215.     Ms. Goldenhar testified that the way the challenged map is drawn burdens her

ability to associate and participate in the political process with other Democratic voters

in the state of Ohio.

216.     Ms. Goldenhar has reached out to her representative, Mr. Chabot, multiple times

via email and phone, and has never received a response.

217.     Dr. Burks canvassed, put out yard signs and donated money for Jill Schiller's

campaign for 2nd District in the 2018 elections. In the course of canvassing, Dr. Burks

encountered several individuals who said that "they were not going to vote because it

wasn't worth it because they had a strong feeling of what the outcome would be." Given

the way in which District 2 is drawn, Jill Schiller's campaign faced an "uphill battle."

218.     Dr. Burks testified that his vote has been diluted through cracking Democratic

voters in the 2nd District.

219.     Dr. Burks testified that the way the challenged map is drawn burdens his ability to

associate and participate in the political process with other Democratic voters in the state

of Ohio.

220.     Dr. Burks testified that the current congressional map made it more difficult for

him to elect his candidate of choice.

**APPENDIX B: Plaintiffs' Contested Facts**

221.    Ms. Inskeep testified that her vote has been diluted through packing Democratic

voters into the 3rd District.

222.    Through her electoral activities, Ms. Inskeep has encountered apathetic voters

who feel like their vote does not matter as a result of the drawing of the current

congressional map.

223.    Ms. Inskeep testified that Planned Parenthood decided not to invest resources in

Ohio's 3rd District because the Democratic candidate was going to win anyway due to

the way the district was drawn.

224.    Ms. Inskeep testified that the current congressional map has caused there to be

"less political activity and investment in [her] district."

225.    Ms. Libster's vote is diluted in Ohio's 4th District, where Democratic voters are

cracked under the current Ohio map.

226.    Through Ms. Libster's canvassing and fundraising efforts and by talking to her

neighbors, she has experienced how the 4th District's design and the congressional map

as a whole contribute to voter apathy in her community.

227.    Ms. Libster has attempted to fundraise for Democratic candidates including 5th

District congressional candidate Janet Garret, but cannot amass support because of the

voter apathy caused by the map. Voters are discouraged because Garret loses by "a thirty

percent whapping all the time. It's never ever – my vote – when I go in there to vote for

Janet Garrett as a Democrat, it's never going to happen. Snowball's chance."

228.    From her experience educating voters and talking to her neighbors, Ms. Libster is

also aware of the voter confusion caused by the gerrymandered map. For instance, she

**APPENDIX B: Plaintiffs' Contested Facts**

has "friends. . . who live three miles away who are in the 12th District and didn't even realize they were in the 12th District until we talked about it."

229.  Ms. Libster's Congressman, Jim Jordan, does not represent her interests as a voter because his district is so safe that he does not need to: "He doesn't care about my vote. He doesn't care about representing me."

230.  The 2012 map makes Ms. Libster's district so safe for Representative Jordan that she and other Democratic voters like her feel their votes have no power. She has stated: "I want my vote to matter. I don't want to be disenfranchised as a voter. I don't want to feel like every time I go vote for the Democrat they're going to get pounded by thirty, forty percent."

231.  Ms. Libster's district covers so many communities and so much geographic space that she feels her representative could not effectively represent her even if he felt compelled to: "I mean, how do I go to my representative when he's clear down in Urbana? If I live in Oberlin, how does that happen? That's a long drive."

232.  Ms. Deitsch lives in the 5th District, where Democratic voters are cracked under the current map, and her vote is diluted.

233.  Ms. Deitsch's experience from canvassing, being involved in politics, and talking to her neighbors is that because the gerrymandered map makes elections a foregone conclusion, voters feel their votes do not matter. "[Y]ou would go and knock on the door and somebody would say to you it doesn't make any difference who I vote for, they're not going to win or I'm not going to give you money because they're not going to win."

234.  Based on the same experience, Ms. Deitsch knows that because the 2012 Map splits her "small county" between "three different [congress]people," voters in her

32

APPENDIX B: Plaintiffs' Contested Facts

community are often confused about which congressional district they are in. This contributes to their disengagement from the political process.

235.    Like other Democratic voters in her district, Ms. Deitsch's own vote does not matter. She feels that Bob Latta does not represent her interests as a voter because his district is so safe, that he does not need to. For example, despite inviting Representative Latta to events, and trying many times to contact his office personally, he has never responded to her or her neighbors.

236.    Ms. Boothe lives in Ohio's 6th District where Democratic voters are cracked under the current map, and her vote is diluted.

237.    Through canvassing and talking to her friends and neighbors, Ms. Boothe has heard that Democratic voters in her area "feel that their vote is monopoly money" and "said it didn't count." This kind of apathy has made it more difficult for her to successfully organize with the Democratic Party.

238.    In Ms. Boothe's experience, Representative Johnson is not responsive to her or her fellow Democrats in the 6th District. For example, she has not seen or heard back from Representative Johnson despite trying to call him.

239.    In Ms. Boothe's experience, "[n]obody comes to the district. It's so Republican that they don't have to. The Republicans don't have to come because they are going to win anyhow. And nobody that's Democrat wants to run in that area, because you're going to spend a lot of money and lose anyhow."

240.    The geographic spread of Ms. Boothe's district exacerbates these problems.

241.    Representative Johnson does not represent Ms. Boothe's interests as a voter because his district is so safe, that he does not need to. For example, in the last election,

33

**APPENDIX B: Plaintiffs' Contested Facts**

she did not see him campaign anywhere near her, and she believes his opponent had no

chance to win.

242.     As a result of the gerrymandered map, in Ms. Boothe's district, "[her] vote is like

monopoly money; you can cast it, but you can't buy anything for it, because it's too

week."

243.      Mr. Griffiths testified that his vote in Ohio's 7th District has been diluted through

the cracking of Democratic voters.

244.     Mr. Griffiths testified that the current congressional map made it more difficult

for him to recruit volunteers and campaign for candidates of his choice. He explained

that "a number of voters told [him and his wife] when [they] were circulating the [Issue

1] petition that they don't feel like it made a difference if they voted or not voted

because the system is such that it wasn't going to make a difference." Mr. Griffiths also

testified that he knew "a number of people that [he and his wife] talked to said that they

don't vote for that reason."

245.     Mr. Griffiths testified that "it has been very difficult to identify candidates willing

to take on Bob Gibbs in this case because of how heavily gerrymandered the district is."

246.     For example, Mr. Griffiths noted that in 2014 Congressman Gibbs ran unopposed

in the congressional election, and he heard conversations that no one was willing to run

against Congressman Gibbs.

247.     As another example, Mr. Griffiths noted that he spoke with Roy Rich when he ran

against Congressman Gibbs in the 2016 election about "how difficult that [it] was to

campaign in that district because of the size of the district and trying to get around to

different people."

**APPENDIX B: Plaintiffs' Contested Facts**

248.     Mr. Griffiths testified that his wife wrote to Congressman Gibbs on a specific

issue but received a letter in response from Congressman Gibbs on a completely

different issue. Mr. Griffiths testified that his wife shared this information with members

of the Indivisible group in Wellington, and other members had experienced the same

situation with Congressman Gibbs.

249.     Mr. Griffiths testified that the mismatched letters situation demonstrated that

Congressman Gibbs "doesn't really care what we think or don't think, whether we vote

or not vote" because "[h]e is in a position, and still in a position, that he's going to get

re-elected" because of the way the district is drawn "whether or not he appeals to any

small group of us Democrats that are scattered throughout the district."

250.     Mr. Griffiths testified that "[i]t has been difficult to connect with other volunteers

just because of the geographic" distance between areas that compose the 7th District.

251.     For example, Mr. Griffiths testified that the geographic distance between his

home and Knox County caused him not to participate in certain canvassing activities.

252.     As another example, Mr. Griffiths testified that the geographic distance between

his home and Huron County caused him not to participate in phone banking for

Democratic congressional candidate Ken Harbaugh.

253.     Mr. Nadler lives in Ohio's 8th District where Democratic voters are cracked

under the current map and his vote is diluted.

254.     Through his political engagement including canvassing, Mr. Nadler testified that

"there are people that I personally have encountered, who feel that it's not worth their

time to vote . . . because it's not going to make any difference."

35

**APPENDIX B: Plaintiffs' Contested Facts**

255.     Because of this voter apathy, Mr. Nadler's ability to get out the vote for

Democratic candidates in his area is inhibited.

256.     Congressman Warren Davidson does not have to care about Mr. Nadler's vote,

because he is sure to be reelected.

257.     For example, every month Mr. Nadler asks one of Representative Davidson's

aides if Davidson will come to his area of the district for a town hall, but he has never

seen him. Mr. Nadler identified many instances in which he and others tried to reach out

to Davidson and received no response.

258.     Mr. Nadler also testified that because the map makes his district so safe for a

Republican, his representative is farther to the right than he would otherwise be. "[I]f

[Davidson] were listening to people, providing an open forum or multiple meetings for

people to be heard, that it could moderate his views a little bit . . . . To be honest with

you, I think he doesn't do it because he knows he doesn't have to do it."

259.     Ms. Walker's vote in the 9th District has been diluted through the packing of

Democratic voters.

260.     Ms. Walker testified that she knows Democratic voters who feel like their vote

doesn't matter because of the way the current congressional map has been

gerrymandered.

261.     Ms. Walker believes the geographic distances between areas in the 9th District

make it difficult for Congresswoman Marcy Kaptur to adequately represent all her

constituents. For example, Ms. Walker testified that she had not seen Congresswoman

Kaptur in her neighborhood.

**APPENDIX B: Plaintiffs' Contested Facts**

262.     Ms. Walker also testified that the geographic distances between areas in the 9th District make it more difficult to campaign for Democratic candidates.

263.     Ms. Walker testified that she thinks the current congressional map makes it harder to fundraise for her candidates of choice because people believe that the "candidate's going to win anyway."

264.     Ms. Walker testified that she thinks the current congressional map has hurt her ability to educate voters because voters feel like their "vote is going to be manipulated in some way."

265.     Ms. Rader's vote in the 9th District has been diluted through the packing of Democratic voters.

266.     Mr. Rader testified that the geographic distances between areas in the 9th District has hampered constituent services and made it difficult for Congresswoman Marcy Kaptur to adequately represent her constituents.

267.     Mr. Rader testified that the fact that the congressional races in the 9th District are not competitive has caused Congresswoman Kaptur to "not draw in good competition" and as a result, "she doesn't have to be out there as someone running in a more competitive race."

268.     Mr. Rader testified that the geographic distance between areas in the 9th District has made it more difficult for him to organize constituents to visit Congresswoman Kaptur's office in Toledo.

269.     Mr. Rader testified that the current congressional map has hurt his ability to campaign for Democratic candidates. As an example, Mr. Rader said that it was difficult

**APPENDIX B: Plaintiffs' Contested Facts**

to campaign for Democratic congressional candidate Keith Mundy in the 16th District because voters felt that the "district is already staked or the outcome is predetermined."

270.    Mr. Rader testified that the current congressional map has hurt his ability to fundraise and recruit volunteers for Democratic candidates. As an example, Mr. Rader said that it was difficult to raise funds or recruit volunteers for Democratic congressional candidate Keith Mundy in the 16th District because voters "don't want to give or get involved because they think the way that the districts are drawn, again, like I said, a predetermined outcome."

271.    Mr. Rader testified that the current congressional map "discourages people from voting" by creating voter apathy. Specifically, Mr. Rader said that voters have said "Why should I vote because it doesn't matter? There's nothing I can do about it, so I don't care."

272.    Ms. Megnin lives in the 10th District, where Democratic voters are cracked under the current map, and her vote is diluted.

273.    Ms. Megnin is "someone who does regular voter canvassing" for Democratic candidates and issues. Because of the voter apathy caused by the map, she has a difficult time gathering support for Democratic candidates in her district. "[N]o matter how many doors we knocked on, how many campaign supports we did, how much strategizing we did, our structure guarantees that the people would not be able to be competitive in being represented."

274.    Ms. Megnin herself would consider running for local office, but does not believe she "would have a chance of going beyond local because of the gerrymandering."

**APPENDIX B: Plaintiffs' Contested Facts**

275.     As a Democrat in District 10, Ms. Megnin's Representative does not engage with her or other "residents of Dayton itself or other communities that might not be fully supportive of his views." For example, "Mike Turner has not held a town hall meeting for his local constituents in his sixteen years as a congressional representative."

276.     Ms. Megnin has tried to call Congressman Turner's office "around a dozen" times over the past several years without receiving a response, and has had a similar experience with email and electronic petitions.

277.     The gerrymandered map had made Ms. Megnin's district so safe for Congressman Turner that "[t]here's no reason for the representative to have to listen to the citizens in order to keep their job."

278.     Mr. Harris testified that District 11 is a packed district, and as a result his vote is diluted and is not as impactful as it would be otherwise.

279.     Mr. Harris's congressional Representative is a Democrat, Congresswoman Marcia Fudge, but she is not the candidate of his choice. She is too far to the left, and she opposes Fast Track Authority and free trade generally. Free trade is extremely important to Mr. Harris. He is pro-business, and Congresswoman Fudge's views in these areas do not align with his. On social issues, they agree more.

280.     According to Mr. Harris, Congresswoman Fudge is "from a far more liberal wing of the party that does not reflect local values, which is going to be what happens when you're in a firm, reliably blue district."

281.     Mr. Harris testified that Cleveland's economy is not the same as Akron's economy; that the current congressional map forces two very different communities into the same congressional district.

**APPENDIX B: Plaintiffs' Contested Facts**

282.     Mr. Harris's Democratic friends are discouraged from voting because there is no meaningful choice in the 11th District.

283.     Mr. Dagres testified that he is injured by the current congressional map because the way that the 12th District was drawn dilutes his vote, and his voice. His district is cracked. His vote, and the votes of other Democrats in his district, is "watered down."

284.     The systematic drawing of the district lines in the current map "took chunks, large chunks of Franklin County out of the 12th District and added additional voters in Muskingum, Richland, Morrow, and (another one)."

285.     Democrats are "not heard" in Mr. Dagres's district. The district's previous, long-time Congressman, a Republican, "would not hold any public forums, [and] would not respond oftentimes to requests from the public to be heard."

286.     Mr. Dagres talks "to other voters through the community who say that why should they vote when their votes don't matter, when there's no opportunity for success."

287.     Mr. Dagres was the President of the Licking County Democratic Club PAC from January 1, 2018 to January 1, 2019, and he is a Central and Executive Committee member of the official party within Licking County.

288.     As such, Mr. Dagres has tried to recruit candidates to run for office, but due to the nature of the district, "people do not see running as a legitimate opportunity for them because they feel the race is not winnable or competitive. It makes it very difficult to recruit candidates to run," including "highly qualified individuals who would do a superb job if elected to their roles who are unwilling to come forward and put themselves out there knowing that there is no opportunity for them to win."

**APPENDIX B: Plaintiffs' Contested Facts**

289.     Mr. Dagres knows specific individuals who did not run because the race is not

winnable because of the way the district is drawn.

290.     It is also hard to raise funds or gain financial support for Democratic candidates in

District 12 because of the perception that "it is unwinnable so why should I donate."

291.     Dr. Myer lives at in the 13th District, where Democratic voters are packed under

the current map, and her vote is diluted.

292.     In Dr. Myer's experience talking to voters and prospective voters in her area, the

gerrymandered map has made people less likely to engage with her efforts because they

feel their votes do not matter.

293.      Dr. Myer feels that since her district spans such a large geographic area including

Youngstown, Akron, and the rural northeast of the state, "people in this district aren't

necessarily interested in the same things or don't have the same concerns."

294.     Because Dr. Myer's "district is one of the most crazy looking things you've ever

seen crawling across the map towards the west and a little stripe to pick up Akron"

where voters "don't have the same concerns as people in my area" she feels her

representative cannot respond to her concerns..

295.     Because Democrats are packed into her district, in Dr. Myer's experience, Tim

Ryan is less responsive to what even Democratic voters want because he knows he will

always be re-elected.

296.     Dr. Myer feels that in the Thirteenth District her vote is less valuable because "to

put all the Democrats, as you well know, together, you know, it dilutes any power of our

influence because we're all lumped together."

**APPENDIX B: Plaintiffs' Contested Facts**

297.     Ms. Hutton lives in the Fourteenth District which is cracked under the congressional map, and her vote is diluted.

298.     Ms. Hutton contacted Representative Joyce's office within the past 5 years, likely related to a gun issue. She received a form letter in response. She has not contacted his office since because she knows "how he's going to vote."

299.     Ms. Hutton testified that the way the challenged map is drawn burdens her ability to associate and participate in the political process with other Democratic voters in the state of Ohio.

300.     Ms. Hutton testified that the current congressional map made it more difficult for her to elect her candidate of choice.

301.     Ms. Thobaben lives in the 15th District, where Democratic voters are cracked under the current map, and her vote is diluted.

302.     Ms. Thobaben testified that "a lot of people that I have talked to" say they feel like "the probability of Democrats being able to get through any of their candidates is pretty remote" and that their votes do not count. This has made it more difficult to canvass for and elect Democratic candidates.

303.     Ms. Thobaben testified that "[my] vote doesn't count because the district has been drawn in such a way that it dilutes my vote . . . It doesn't matter if I vote for Democrats. They don't count."

304.     Ms. Thobaben does not "feel represented by Steve Stivers . . . he rarely comes to Clinton County."

**APPENDIX B: Plaintiffs' Contested Facts**

305.    Ms. Thobaben contacts her Congressman often using emails, texts, and she also "ha[s] him on speed dial." But she has either received no response or only form responses.

306.    Ms. Rubin lives in the 16th District, where Democratic voters are cracked under the current map. Due to the way her district is drawn, Ms. Ruben's vote is diluted.

307.    Ms. Rubin is injured by the current congressional map because, as a Democrat in District 16, she has "no influence whatsoever on how (her) congressman votes or even considers (her) point of view."

308.    The current congressional map divides Stark County up into three different districts. Ms. Rubin's political advocacy activity is burdened because, due to this gerrymandered district, most voters she asks "do not know who their congressman is." When she attempts to help them determine this, it is difficult because "the boundaries on that [congressional] map do not adhere to political boundaries."

309.    Ms. Rubin's advocacy activities are also affected by the fact that Democrats can't win in District 16: "Voters who continually vote for candidates who never win eventually get discouraged and stop participating."

310.    Ms. Rubin has a "difficult time finding candidates who are willing to run in districts whose outcome is preconceived. Elections cost a lot of money and a lot of time, and it's hard to find people principled enough to run if they know their possibility of loss is a hundred percent." And it's hard for her party to raise money or advocate effectively.

311.    Ms. Rubin has no opportunity to influence how her Congressperson votes on legislation because he "knows he does not owe his allegiance to the voters; he only owes

**APPENDIX B: Plaintiffs' Contested Facts**

it to the party who helped put him there and who drew the district lines to assure that he would win."

312.    Ms. Rubin's Congressman will not participate in public forums. He only meets with business owners and employees of a business.

# APPENDIX C

**APPENDIX C**

## PLAINTIFFS' LIST OF CONTESTED ISSUES OF LAW

1. Elements:

    a. Are partisan gerrymandering claims justiciable?
    b. What are the elements of partisan gerrymandering claims under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, the right to vote guaranteed by the First and Fourteenth Amendments, and Article I, § 4?
    c. What standard applies to the parties' relative burdens of proof?

2. Discriminatory Intent:

    a. What if any discriminatory intent must be shown to sustain a claim that partisan gerrymandering violates the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, the right to vote guaranteed by the First and Fourteenth Amendments, or Article I, § 4?

3. Discriminatory Effect:

    a. What if any discriminatory effect must be shown to sustain a claim that a redistricting scheme violates the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, the right to vote guaranteed by the First and Fourteenth Amendments, or Article I, § 4?

4. Justification:

    a. What facts if any would justify a partisan gerrymander?

# APPENDIX D

APPENDIX D

## DEFENDANTS' AND INTERVENORS'
## LIST OF CONTESTED ISSUES OF FACT

1. That any Plaintiff lives in a "packed" or "cracked" district.

2. That the 2012 Plan has placed a burden on any Plaintiff's right to vote.

3. That the 2012 Plan has diluted the vote of any Plaintiff.

4. That any Plaintiff lacks an equal or fair opportunity to elect the Congressperson of their choice.

5. That any Plaintiff lacks an equal or fair opportunity to meaningfully influence congressional elections.

6. That any Plaintiff has been prohibited from meaningfully participating in the political process.

7. That any Plaintiff has been inhibited by the 2012 Plan in voting, volunteering for any candidate, fundraising, donating to a candidate, engaging others to vote, or otherwise participating in electioneering activities, etc.

8. That the 2012 Plan is unconstitutionally biased in favor of the Republican Party.

9. That the 2012 Plan was designed to create a 12 to 4 Republican advantage.

10. That there was a plan to consider drawing a map with a 13-3 Republican advantage.

11. That any version of the map had to be approved by any national Republicans.

12. That any particular district was drawn with the intent to make it a Republican District or a Democratic District.

13. That Redmap had any involvement or impact on Ohio's congressional redistricting in 2011.

14. How any political indices impacted the drawing of the congressional lines in 2011.

15. What role politics played in the drawing of the congressional lines in 2011.

16. That Democratic Party legislators, constituents, or representatives lacked political leverage in the redistricting process.

**APPENDIX D**

17. That any partisan tilt or so-called "bias" in the 2012 Plan is the result, solely or otherwise, of partisan intent.

18. That any partisan tilt or so-called "bias" in the 2012 Plan is the result of anything other than geography and legitimate redistricting factors.

19. That any measure Plaintiffs provide of measuring partisan tilt or so-called "bias" is reliable, accurate, or meaningful.

20. That the 2012 Plan is unfair as measured by any manageable standards of assessing fairness.

21. That the 2012 Plan can be considered too partisan under any manageable standard when the legislature intended to pair two sets of Democratic and two sets of Republican incumbents.

22. That the 2012 Plan can be considered too partisan under any manageable standard when a majority of Democratic members of the legislature voted for it.

23. That the 2012 Plan can be considered too partisan under any manageable standard when the legislature intended to protect Democratic incumbents along with Republican incumbents.

24. That the 2012 Plan can be considered too partisan under any manageable standard when the legislature chose not to attempt to create a 13-3 Republican advantage, which was possible.

# APPENDIX E

**APPENDIX E**

## DEFENDANTS' AND INTERVENORS'
## LIST OF CONTESTED ISSUES OF LAW

1. Do Plaintiffs' claims fail to state a claim upon which relief may be granted?

2. Are Plaintiffs' claims justiciable?

3. Do the allegations by Plaintiffs in the Second Amended Complaint demonstrate only generalized grievances about legislative decisions?

4. Do Plaintiffs lack standing?

5. Should Plaintiffs' claims be dismissed on the grounds of estoppel and laches?

6. Should Plaintiffs' claims be dismissed and/or the relief sought in the Second Amended Complaint be denied under *Purcell v. Gonzalez*, 549 U.S. 1 (2006)?

7. Do Plaintiffs fail to identify a manageable standard for determining a Constitutional violation?

8. Do Plaintiffs' gerrymandering theories fail to constitute evidence of individualized injury under the First Amendment, Fourteenth Amendment, or Article I of the United States Constitution?

9. Does the 2012 Plan violate Plaintiffs' rights under the First Amendment of the United States Constitution?

10. Does the 2012 Plan violate Plaintiffs' rights under the Fourteenth Amendment of the United States Constitution?

11. Does the 2012 Plan violate Plaintiffs rights under Article I of the United States Constitution?

12. Has any Plaintiff demonstrated an injury under the 2012 Plan?

13. Is any injury demonstrated by Plaintiffs fairly traceable to the 2012 Plan?

14. Is any injury demonstrated by Plaintiffs redressable?

15. Is any injury demonstrated by Plaintiffs redressable by Plaintiffs' Proposed Remedial Plan?

**APPENDIX E**

16. Have Plaintiffs submitted or defined a judicially manageable standard to assess whether the 2012 Plan violates the United States Constitution?

17. Did the overwhelming bipartisan support for the 2012 Plan violate the United States Constitution?

18. If Plaintiffs have submitted or defined a judicially manageable standard to assess whether the 2012 Plan violates the United States Constitution, then does the 2012 Plan violate any such standard in light of the overwhelming bipartisan legislative support for the Plan and the numerous nonpartisan factors that influenced individual districts in the 2012 Plan?

# APPENDIX F

**APPENDIX F**

## PLAINTIFFS' WITNESSES

| | |
|---|---|
| Plaintiffs' Opening | 20 minutes |
| Defendants' / Intervenors' Opening | 20 minutes |
| Plaintiffs' Direct Examinations: | 1075 minutes |
| Douglas Burks | 30 minutes |
| Aaron Dagres | 30 minutes |
| John Fitzpatrick | 30 minutes |
| Rep. Marcia Fudge | 30 minutes |
| Christopher Glassburn | 120 minutes |
| Mark Griffiths | 30 minutes |
| Jennifer Miller | 40 minutes |
| Elizabeth Myer | 30 minutes |
| Nathaniel Simon | 30 minutes |
| Nina Turner | 30 minutes |
| Andre Washington | 30 minutes |
| Stephanie White | 30 minutes |
| Dr. Wendy Cho | 180 minutes |
| William S. Cooper | 120 minutes |
| Dr. Lisa Handley | 45 minutes |
| Dr. David Niven | 90 minutes |
| Dr. Christopher Warshaw | 180 minutes |
| Plaintiffs' Cross Examinations: | 825 minutes |
| Plaintiffs' Reserved Rebuttal: | 180 minutes |
| Defendants' / Intervenors' Time: | 1480 minutes |
| Total Time: | 3600 minutes = 60 hours |

**1.     Douglas J. Burks**

Plaintiffs anticipate that Mr. Burks will provide testimony as to the impact of the 2011 congressional map on himself.

**2.     Aaron Dagres**

Plaintiffs anticipate that Mr. Dagres will provide testimony as to the impact of the 2011 congressional map on himself.

**3.     John Fitzpatrick**

Plaintiffs anticipate that Mr. Fitzpatrick will provide testimony as to the impact of the 2011 congressional map on himself.

APPENDIX F

**4.    U.S. Congresswoman Marcia Fudge**

Plaintiffs anticipate that Congresswoman Fudge will provide testimony about the treatment of the Eleventh Congressional District in the 2011 redistricting. On February 25, 2019, the Court granted Plaintiffs' Motion to Offer Trial Testimony of Congresswoman Fudge in Open Court by Live Videoconference. (Doc. 232).

**5.    Christopher Glassburn**

Plaintiffs anticipate that Mr. Glassburn will provide testimony about the negotiations between Democrats and Republicans regarding H.B. 369.

**6.    Mark John Griffiths**

Plaintiffs anticipate that Mr. Griffiths will provide testimony as to the impact of the 2011 congressional map on himself.

**7.    Jen Miller**

Plaintiffs anticipate that Ms. Miller will provide testimony as to the impact of the 2011 congressional map on the League of Women Voters of Ohio and its Democratic members.

**8.    Elizabeth Myer**

Plaintiffs anticipate that Dr. Myer will provide testimony as to the impact of the 2011 congressional map on herself.

**9.    Nathaniel Simon**

Plaintiffs anticipate that Mr. Simon will provide testimony as to the impact of the 2011 congressional map on the Hamilton County Young Democrats and its Democratic members.

**10.    Nina Turner**

Plaintiffs anticipate that Ms. Turner will provide testimony about the negotiations between Democrats and Republicans regarding H.B. 369.

**APPENDIX F**

**11.    Andre Washington**

Plaintiffs anticipate that Mr. Washington will provide testimony as to the impact of the 2011 congressional map on the Ohio A. Phillip Randolph Institute and its Democratic members.

**12.    Stephanie White**

Plaintiffs anticipate that Ms. White will provide testimony as to the impact of the 2011 congressional map on herself.

# APPENDIX G

APPENDIX G

## DEFENDANTS' WITNESSES

| Witness Name | Witness Type | Estimated Minutes Direct | Def/Int'v Estimate of Plaintiffs' Minutes Cross |
|---|---|---:|---:|
| B. Batchelder | Defendant Fact | 90 | 60 |
| J. Boehner | Intervenor Fact | 60 | 40 |
| R. DiRossi | Defendant Fact | 150 | 120 |
| T. Judy | Defendant Fact | 60 | 40 |
| M. Hood | Defendant Expert | 150 | 120 |
| D. Johnson | Defendant Expert | 90 | 60 |
| S. Trende | Defendant Expert | 90 | 65 |
| J. Thornton | Defendant Expert | 120 | 90 |
| T. Brunell | Intervenor Expert | 90 | 60 |

**1. Honorable William Batchelder**

Mr. Batchelder was Speaker of the Ohio House of Representatives from 2006 to 2015. Mr. Batchelder may be called to provide testimony regarding the 2011 Ohio congressional redistricting process and his involvement regarding the same.

**2. Ray DiRossi**

Mr. DiRossi was retained by the Ohio General Assembly as a consultant by the Republican members of the Task Force to assist in redrawing the Ohio congressional map in 2011. Mr. DiRossi may be called to provide testimony regarding the 2011 Ohio congressional redistricting process and his involvement regarding the same, as well as his prior involvement in the 2001 Ohio congressional redistricting process.

**3. Troy Judy**

Mr. Judy served as the Chief of Staff of the Ohio House of Representatives from 2009 to 2014. Mr. Judy may be called to provide testimony regarding the 2011 Ohio congressional redistricting process and his involvement regarding the same.

# APPENDIX H

**APPENDIX H**

## INTERVENORS' WITNESS

| Witness Name | Witness Type | Estimated Minutes Direct | Def/Int'v Estimate of Plaintiffs' Minutes Cross |
|---|---|---:|---:|
| B. Batchelder | Defendant Fact | 90 | 60 |
| J. Boehner | Intervenor Fact | 60 | 40 |
| R. DiRossi | Defendant Fact | 150 | 120 |
| T. Judy | Defendant Fact | 60 | 40 |
| M. Hood | Defendant Expert | 150 | 120 |
| D. Johnson | Defendant Expert | 90 | 60 |
| S. Trende | Defendant Expert | 90 | 65 |
| J. Thornton | Defendant Expert | 120 | 90 |
| T. Brunell | Intervenor Expert | 90 | 60 |

## 1. Honorable John Boehner

Mr. Boehner was the U.S. representative for Ohio's 8th congressional district from 1991 to 2015 and served as the Speaker of the U.S. House of Representatives from 2011 to 2015. Mr. Boehner may be called to testify regarding the 2011 Ohio congressional redistricting process and his involvement regarding the same.

# APPENDIX I

**APPENDIX I**

### PLAINTIFFS' EXPERT WITNESSES

**1.      Dr. Wendy K. Tam Cho**

Dr. Cho will testify concerning her simulated map analysis of Ohio's congressional districts.

**2.      Mr. William S. Cooper**

Mr. Cooper will testify to the remedial and hypothetical maps for Ohio's congressional districts.

**3.      Dr. Lisa Handley**

Dr. Handley will testify to the Voting Right Act (VRA) analysis she did for Ohio's congressional district that includes Cuyahoga County

**4.      Dr. David Niven**

Dr. Niven will testify to the analysis he did of Ohio's congressional boundaries.

**5.      Dr. Christopher Warshaw**

Dr. Warshaw will testify to the partisan bias and responsiveness of Ohio's congressional districts.  He will further testify to the effects that gerrymandering has representation in Congress.

# APPENDIX J

**APPENDIX J**

## DEFENDANTS' EXPERT WITNESSES

**1.     Dr. M.V. (Trey) Hood III**

Dr. Hood will provide testimony as disclosed in his initial and supplemental reports.

**2.     Dr. Douglas Johnson**

Dr. Johnson will provide expert testimony as disclosed in his report.

**3.     Dr. Janet Thornton**

Dr. Thornton will provide testimony as disclosed in her report.

**4.     Mr. Sean P. Trende**

Mr. Trende will provide expert testimony as disclosed in his report.

# APPENDIX K

**APPENDIX K**

## INTERVENORS' EXPERT WITNESS

**1.  Dr. Thomas Brunell**

Dr. Brunell will provide expert testimony as disclosed in his report.

# APPENDIX L

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*

S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P001 | 9/14/2011 | Email from M. Dittoe to T. Judy, M. Lenzo, and C. Hawley, subject FW: Media Gaggle 9/14 | LWVOH_00001745-49 |
| P002 | 12/15/2011 | Email from H. Mann to P. Halle, RE: RE: | SOS_000425-26 |
| P003 | 11/3/2011 | Email from H. Mann to H. Pelger, subject FW: New Congressional Districts | SOS_000071-78 |
| P004 | 7/23/2016 | C. Bensen Curriculum Vitae (Dkt. 59-2) | Bensen Depo Ex. 1 |
| P005 | 2010 | Presentation, "Election Data for Redistricting" | LENZO_0004434-40 |
| P006 | 10/4/2011 | Invoice for POLIDATA LLC | Bensen_0000013 |
| P007 | 2/16/2012 | Invoice for POLIDATA LLC | Bensen_0000014-15 |
| P008 | 6/1/2011 | Email from M. Braden to C. Bensen, subject FW: | BRADEN000657-58 |
| P009 | 8/10/2011 | Email from C. Bensen to H. Mann, M. Lenzo, and M. Thomas, subject RE: | JUDY_0001692-96 |
| P010 | 8/11/2011 | Email from C. Bensen to H. Mann, M. Braden, subject Re: (Case 34304) Export equivalency file (6143525819) | BRADEN000782 |
| P011 | 8/15/2011 | Email from H. Mann to C. Bensen, T. Horgan, Maptitude Technical Support, subject FW: TEST of Congressional districts as DBF | Bensen_0000033-38 |
| P012 | 9/16/2011 | Email from H. Mann to C. Bensen, (no subject) | Bensen_0000044 |
| P013 | 7/10/2011 | Email from C. Bensen to R. DiRossi, H. Mann, et al., subject Ohio Apportionment and Redistricting political data | Bensen Depo Ex. 10 |
| P014 | 7/22/2011 | Example of Calculations for Election Averages EA11 to EA16 | Bensen_0000004-06 |
| P015 | 7/22/2011 | [Metadata] Example of Calculations for Election Averages EA11 to EA16 | Bensen_0000004 Metadata |
| P016 | 10/4/2018 | Screenshot of Polidata folder | BLESSING0013211 > Polidata_2018.10.04 |
| P017 | 10/4/2018 | Screenshot of Polidata > Clark 07-24-11 folder | BLESSING0013211 > Polidata > Clark 07-24-11_2018.10.04 |
| P018 | 7/24/2011 | Maptitude screenshot, Map1 - 2010 Final Census Blocks (Ohio) | BLESSING0013211 [Polidata > Clark 07-24-11 > ccBlock.cdf] |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P019 | 9/14/2011 | Chart, District/Pop | BENSEN_0000084 [sep14 > dvw_aggset_ohcd_2011_enacted-sep14_ohmix_kl15a.xls] |
| P020 | | Example of Calculations for Election Averages EA11 to EA16 | Bensen_0000001-03 |
| P021 | 7/24/2011 | Maptitude screenshot, Map1 - 2010 Final Counties (Ohio) | BLESSING0013211 [Polidata > Clark 07-24-11 > ccCounty.cdf] |
| P022 | 9/14/2011 | Email from H. Mann to C. Bensen, (no subject) | Bensen_0000042 |
| P023 | 9/2/2011 | Email from A. Kincaid to R. DiRossi, H. Mann, and T. Whatman, subject New Idea Redraft | LWVOH_00018302-08 |
| P024 | 10/26/2011 | Email from H. Mann to C. Bensen, subject FW: Ohio Congressional District Shapefile | Bensen_0000047-48 |
| P025 | 11/9/2011 | Email from H. Mann to C. Bensen, subject test of indexes | Bensen_0000063-64 |
| P026 | | Chart, District Indexes | BLESSING0012553 |
| P027 | | Chart, District Indexes | BLESSING0013212 |
| P028 | 12/14/2011 | Chart, District Indexes | BENSEN_0000086 [dec14 > dvw_aggset_ohcd_2011_revised-hb369-dec14.xls] |
| P029 | 12/15/2011 | Measures of Compactness | BENSEN_0000086 [mtr_compactness_ohcd_2011_revised-hb369-dec14] |
| P030 | 12/15/2011 | Email from H. Mann to C. Bensen, subject RE: | Bensen_0000075-76 |
| P031 | | Maptitude screenshot, HB 369 as passed Test 2 | BENSEN_0000086 [Congressional Shape Files Test 2_HB369 as Passed Test 2.shp] |
| P032 | 7/15/2011 | Email from M. Braden to M. Salling, H. Mann, C. Bensen, et al., subject RE: conference call | BRADEN000683-84 |
| P033 | 12/15/2011 | Email from H. Mann to C. Bensen, (no subject) | Bensen_0000077 |
| P034 | 12/15/2011 | Email from H. Mann to C. Bensen, (no subject) | Bensen_0000078 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P035 | 8/29/2011 | Email from H. Mann to B. Hansen, subject Out of Office: Weekly Redistricting Meeting | GOV_000219 |
| P036 | 8/3/2011 | Consulting Agreement between Republican Members of the Legislative Task Force and Policy Widgets, LLC | LWVOH_00018268-70 |
| P037 | 7/5/2011 | Email from V. Flasher to R. DiRossi and J. Licursi, subject Re: Time sensitive issue for OHROC/RSCC - Apportionment data | Blessing Depo Ex. 5 |
| P038 | 7/5/2011 | Email from J. Licursi to V. Flasher, R. DiRossi, et al., subject Re: Time sensitive issue for OHROC/RSCC - Apportionment data | Blessing Depo Ex. 6 |
| P039 | 7/10/2011 | Email from C. Bensen to R. DiRossi, H. Mann, et al., subject RE: Ohio Apportionment and Redistricting political data | Blessing Depo Ex. 7 |
| P040 | | Final political index used | DIROSSI_0000014-16 |
| P041 | | Chart, District Indexes | BLESSING0012553 |
| P042 | | Chart, District Indexes | BLESSING0013212 |
| P043 | | Screenshot of documents in BLESSING0012635 folder | BLESSING0012635 |
| P044 | 10/28/2009 | Subcontract between Cleveland State University and Ohio University | LENZO_0002358-73 |
| P045 | | Maptitude screenshot, HB 369 Map Revised December 14th.map - 2010 Final Census Blocks (Ohio) | BLESSING0012635 [HB 369 Map Revised December 14th]_001 |
| P046 | | Maptitude screenshot, HB 369 Map Revised December 14th.map - 2010 Final Census Blocks (Ohio) (dataview District 16) | BLESSING0012635 [HB 369 Map Revised December 14th]_CD16_001-24 |
| P047 | | Maptitude screenshot, HB 369 Map Revised December 14th.map - 2010 Final Census Blocks (Ohio) (dataview District 1) | BLESSING0012635 [HB 369 Map Revised December 14th]_CD01_001-06 |
| P048 | | Maptitude screenshot, HB 369 Map Revised December 14th.map - 2010 Final Census Blocks (Ohio) (dataview District 2) | BLESSING0012635 [HB 369 Map Revised December 14th]_CD02_001-06 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P049 | | Maptitude screenshot, HB 369 Map Revised December 14th.map - 2010 Final Census Blocks (Ohio) (dataview District 3) | BLESSING0012635 [HB 369 Map Revised December 14th]_CD03 _001-06 |
| P050 | | Maptitude screenshot, HB 369 Map Revised December 14th.map - 2010 Final Census Blocks (Ohio) (dataview District 4) | BLESSING0012635 [HB 369 Map Revised December 14th]_CD04_001-06 |
| P051 | | Maptitude screenshot, HB 369 Map Revised December 14th.map - 2010 Final Census Blocks (Ohio) (dataview District 5) | BLESSING0012635 [HB 369 Map Revised December 14th]_CD05_001-06 |
| P052 | | Maptitude screenshot, HB 369 Map Revised December 14th.map - 2010 Final Census Blocks (Ohio) (dataview District 6) | BLESSING0012635 [HB 369 Map Revised December 14th]_CD06_001-06 |
| P053 | | Maptitude screenshot, HB 369 Map Revised December 14th.map - 2010 Final Census Blocks (Ohio) (dataview District 7) | BLESSING0012635 [HB 369 Map Revised December 14th]_CD07_001-06 |
| P054 | | Maptitude screenshot, HB 369 Map Revised December 14th.map - 2010 Final Census Blocks (Ohio) (dataview District 8) | BLESSING0012635 [HB 369 Map Revised December 14th]_CD08_001-06 |
| P055 | | Maptitude screenshot, HB 369 Map Revised December 14th.map - 2010 Final Census Blocks (Ohio) (dataview District 9) | BLESSING0012635 [HB 369 Map Revised December 14th]_CD09 _001-06 |
| P056 | | Maptitude screenshot, HB 369 Map Revised December 14th.map - 2010 Final Census Blocks (Ohio) (dataview District 10) | BLESSING0012635 [HB 369 Map Revised December 14th]_CD10_001-06 |
| P057 | | Maptitude screenshot, HB 369 Map Revised December 14th.map - 2010 Final Census Blocks (Ohio) (dataview District 11) | BLESSING0012635 [HB 369 Map Revised December 14th]_CD11_001-06 |
| P058 | | Maptitude screenshot, HB 369 Map Revised December 14th.map - 2010 Final Census Blocks (Ohio) (dataview District 12) | BLESSING0012635 [HB 369 Map Revised December 14th]_CD12_001-06 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P059 | | Maptitude screenshot, HB 369 Map Revised December 14th.map - 2010 Final Census Blocks (Ohio) (dataview District 13) | BLESSING0012635 [HB 369 Map Revised December 14th]_CD13_001-06 |
| P060 | | Maptitude screenshot, HB 369 Map Revised December 14th.map - 2010 Final Census Blocks (Ohio) (dataview District 14) | BLESSING0012635 [HB 369 Map Revised December 14th]_CD14_001-06 |
| P061 | | Maptitude screenshot, HB 369 Map Revised December 14th.map - 2010 Final Census Blocks (Ohio) (dataview District 15) | BLESSING0012635 [HB 369 Map Revised December 14th]_CD15_001-06 |
| P062 | | Screenshot of documents in Polidata > Clark 07-24-11 folder | BLESSING0013211 > Polidata > Clark 07-24-11 |
| P063 | | Maptitude screenshot, Map 1 - 2010 Final Census Blocks (dataview Block 4015) | BLESSING0013211 [Polidata > Clark 07-24-11 > ccBlock.cdf]_001-06 |
| P064 | | Ohio House Republican Caucus, William G. Batchelder, Speaker - Map Talking Points | SOS_000073-78 |
| P065 | 5/12/2011 | Discussion Points for Mark Braden Meetings | LWVOH_00008711 |
| P066 | 6/2/2011 | Proposed Agenda for Mark Branden Visit | LWVOH_00008710 |
| P067 | | Script & Agenda for Thursday, June 2 Meetings | LWVOH_00008708-09 |
| P068 | 7/5/2011 | Email from K. Rench to B. Hansen and H. Mann, subject RE: redistricting meetings | HANSEN_000104-05 |
| P069 | 7/1/2011 | Email from H. Mann to R. DiRossi, M. Lenzo, et al., subject Weekly Reidstricting Meetings | GOV_000223 |
| P070 | 6/1/2011 | Memorandum from H. Mann to W. Batchelder, et al., subject Proposed schedule for Congressional redistricting hearings | SENATE000001-28 |
| P071 | 7/15/2011 | Wyndham Cleveland at Playhouse Square, Group Rooming List | LWVOH_00005432 |
| P072 | 9/14/2011 | Email from H. Mann to J. Renacci, subject Numbers | LWVOH_00018321 |
| P073 | | Turner-Austria Option Talking Points | LWVOH_00008616 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P074 | 11/2/2009 | Memorandum from Mark Salling to Ohio Legislative Task on Redistricting Reapportionment and Demographic Research and the Ohio Legislative Services Commission, subject Status of Development of 2011 Redistricting Database | BRADEN_000084 |
| P075 | 6/6/2011 | Memorandum from Mark Salling to Ohio Legislative Task on Redistricting Reapportionment and Demographic Research and the Ohio Legislative Services Commission, subject Status of Development of 2011 Redistricting Database | BRADEN000713-14 |
| P076 | 9/2/2011 | Email from A. Kincaid to R. DiRossi, H. Mann, T. Whatman, subject New Idea Redraft | LWVOH_00018302-08 |
| P077 | 3/31/2011 | Chart, Ohio Changes | BRADEN001387 |
| P078 | | Chart, Ohio Changes | OHCF0001438 |
| P079 | | Chart, Ohio Changes | OHCF0001481 |
| P080 | 11/1/2011 | Email from H. Mann to R. DiRossi, M. Lenzo and T. Judy, subject I2:0901-0130-map0.pdf | LWVOH_00018250 |
| P081 | | Chart/Map - District/Member | LWVOH_00018251, BRADEN000754 |
| P082 | | Chart, CD 9 Ideas | BRADEN000753 |
| P083 | 11/3/2011 | Email from R. DiRossi to M. Braden, subject Re: Updated Fact Sheet | BRADEN000758-60 |
| P084 | 11/2/2011 | Email from R. DiRossi to M. Braden, subject Congressional Index comparison | BRADEN000757 |
| P085 | 9/21/2011 | Email from S. Chabot to S. Towns, subject Re: Update… | CHABOT_000006 |
| P086 | | Cho CV | Cho Depo Ex. 1 |
| P087 | 10/18/2018 | Cho Initial Expert Report | Cho Depo Ex. 2 |
| P088 | 11/26/2018 | Cho Rebuttal Report | Cho Depo Ex. 3 |
| P089 | 10/18/2018 | Cho source code [confidential under protective order] | Cho Depo Ex. 4 [Confidential under protective order] |
| P090 | 10/5/2018 | Cooper Declaration, Initial Report | Cooper Depo Ex. 1 |
| P091 | 11/30/2018 | Cooper Declaration Errrata and Exhibits | Cooper Depo Ex. 6 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P092 | 11/26/2018 | Cooper Supplemental Declaration and Exhibits | Cooper Depo Ex. 8 |
| P093 | 11/27/2018 | Cooper Second Supplemental Declaration | Cooper Depo Ex. 9 |
| P094 | 10/5/2018 | Subpoena to Testify (Ray DiRossi) | DiRossi Depo Ex. 1 |
| P095 | 6/15/2018 | Subpoena to Produce Documents (Ray DiRossi) | DiRossi Depo Ex. 2 |
| P096 | 10/7/2011 | Ohio Campaign for Accountable Redistricting, Letter from J. Slagle to R. DiRossi and H. Mann, subject Transparency Report; Public Records Request | LWVOH_00004033-34 |
| P097 | 5/12/2011 | Discussion Points for Mark Braden Meetings | LWVOH_00008711 |
| P098 | 5/31/2011 | R. DiRossi meeting notice REDISTRICTING: SOFTWARE DEMO - MAPTITUDE | DIROSSI_0000017 |
| P099 | 6/16/2011 | R. DiRossi meeting notice CONFIRMED: LEGISLATIVE TASK FORCE ON REDISTRICTING | DIROSSI_0000018 |
| P100 | 7/5/2011 | R. DiRossi meeting notice CONFIRMED: President Niehaus call with Congressman LaTourette | DIROSSI_0000019 |
| P101 | 7/1/2011 | Email from R. DiRossi to H. Mann, subject Re: HOLD for redistricting software training | LWVOH_00010555 |
| P102 | 8/1/2011 | Consulting Agreement between Republican Members of the Legislative Task Force and Capital Advantage, LLC | LWVOH_00005475-77 |
| P103 | 8/4/2011 | Termination Agreement | DIROSSI_0000527 |
| P104 | 7/7/2011 | R. DiRossi meeting notice, subject 2:45 p.m. CONFIRMED: REDISTRICTING TRAINING | DIROSSI_0000020 |
| P105 | 7/8/2011 | R. DiRossi meeting notice, subject CONFIRMED: REDISTRICTING TRAINING | DIROSSI_0000021 |
| P106 | 7/7/2011 | Redistricting Meetings Agenda | LWVOH_00008706-07 |
| P107 | 5/1/2010 | Slide from presentation, "Drawing the Lines" | DiRossi Depo Ex. 14 |
| P108 | 8/30/2011 | R. DiRossi meeting notice, subject CONFIRMED: Meet with Tom Whatman - DC | DIROSSI_0000038 |
| P109 | 7/12/2011 | Double Tree Guest Suites Invoice | LWVOH_00018254 |
| P110 | 9/15/2011 | R. DiRossi meeting notice, subject CONFIRMED: Meet with Niehaus at Bunker | DIROSSI_0000051 |
| P111 | 8/4/2011 | Email from R. DiRossi to C. Morefield and H. Mann, subject Re: Plotter | DiRossi Depo Ex. 18 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P112 | 11/15/2011 | 2011 Political Indexes | DIROSSI_0000139-41 |
| P113 | 11/15/2011 | Chart, The State Indexes | DIROSSI_0000526 |
| P114 | | Congressional map drawing contest - winning maps | DIROSSI_0000470-72 |
| P115 | | Chart, HB319 Indexes | DIROSSI_0000010 |
| P116 | | Chart, HB319 Indexes | DIROSSI_0000142 |
| P117 | 9/26/2011 | Bill Signings: HB 218 & HB 319 | GOVPR_008278-80 |
| P118 | 9/2/2011 | R. DiRossi meeting notice, subject CONFIRMED: Meet with Leadership on Redistricting Bill | DIROSSI_0000039 |
| P119 | 9/2/2011 | Email from A. Kincaid to R. DiRossi, H. Mann, T. Whatman, subject New Idea Redraft | LWVOH_00018302-08 |
| P120 | 9/5/2011 | R. DiRossi meeting notice, subject CONFIRMED: Meet with Speaker and others re: Redistricting | DIROSSI_0000040 |
| P121 | 9/6/2011 | R. DiRossi meeting notice, subject CONFIRMED: Meet with President Niehaus re: Apportionment and Redistricting | DIROSSI_0000043 |
| P122 | 9/8/2011 | R. DiRossi meeting notice, subject CONFIRMED: Senate Leadership Meeting | DIROSSI_0000044 |
| P123 | 9/9/2011 | R. DiRossi meeting notice, subject CONFIRMED: Senate Leadership Meeting | DIROSSI_0000045 |
| P124 | 9/10/2011 | Email from R. DiRossi to K. Faber, subject (no subject) | LWVOH_00018310 |
| P125 | 9/11/2011 | Email from T. Niehaus to R. DiRossi, subject Redistricting "tweaks" | LWVOH_00018297 |
| P126 | 9/12/2011 | Emails from R. DiRossi to T. Niehaus, subject Proposed map for LSC | LWVOH_00018298-301 |
| P127 | 9/12/2011 | Email from R. DiRossi to T. Whatman, subject Stivers maps | LWVOH_00018320 |
| P128 | 9/12/2011 | Email from R. DiRossi to A. Kincaid, subject Ohio final map with possible Stivers addition | LWVOH_00018322-25 |
| P129 | 9/12/2011 | R. DiRossi meeting notice, subject CONFIRMED: Meeting at bunker about rollout | DIROSSI_0000046 |
| P130 | 9/14/2011 | Email from H. Mann to R. DiRossi, subject Numbers | LWVOH_00018321 |
| P131 | 12/15/2011 | Email from R. DiRossi to H. Pelger, subject Re: RE: | SOS_001010-11 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P132 | 11/2/2011 | R. DiRossi meeting notice, subject CONFIRMED: Brief Leadersheip on Congressional Maps | DIROSSI_0000061 |
| P133 | | Political Indexes - Proposed Congressional Districts | DIROSSI_0000499 |
| P134 | 11/2/2011 | Chart, The State Indexes | DIROSSI_0000525 |
| P135 | 11/10/2011 | Chart, Plan Comparison | DIROSSI_0000518 |
| P136 | 7/14/2011 | Email from J. McClelland to L. Obhof, subject Niehaus Names Members to Senate Select Committee on Redistricting | SENATE000035-36 |
| P137 | 7/15/2011 | Email from E. Bittner to L. Obhof, subject FW: Senate Select Committee on Redistricting | SENATE000037-38 |
| P138 | 9/21/2011 | Transcript, Ohio State Senate Session | Faber Depo Ex. 19 |
| P139 | 12/14/2011 | Transcript, Ohio State Senate Session | Faber Depo Ex. 21 |
| P140 | 8/10/2011 | 2010 Ohio Common and Unified Redistricting Database, Technical Documentation Version 3, prepared for The Legislative Services Committee of the Ohio General Assembly by Dr. Mark Salling | CTRL0000012068 |
| P141 | 11/2/2011 | Email from K. McCarthy to C, Glassburn and A. Budish, subject Re: counter - Draft Presentation, attaching presentation, "Redistricting Discussion" | SMC-KM-000263, SMC-KM-000409-13 |
| P142 | | Major Map Files from 2010-2011 | CTRL0000011317 |
| P143 | | Metadata and list of files produced in Memorex USB\Offers folder in Glassburn Production | Glassburn Depo Ex. 15 |
| P144 | | Maptitude screenshot, 319 original.map - Block Split - Block - Block Group - Tract - BOE County (dataview District 1) | GLASSBURN_0020 [319 Original_CD01] |
| P145 | | Maptitude screenshot, OFFICIAL 369 ADOPTED FINAL.map - Block Split - Block - Block Group - Tract - BOE County (dataview District 16) | GLASSBURN_0051 [OFFICIAL HB 369 ADOPTED FINAL_CD16]_01-03 |
| P146 | | Maptitude screenshot, OFFICIAL 369 ADOPTED FINAL.map - Block Split - Block - Block Group - Tract - BOE County (dataview District 1) | GLASSBURN_0036 [OFFICIAL HB 369 ADOPTED FINAL_CD01]_01-03 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P147 | | Maptitude screenshot, OFFICIAL 369 ADOPTED FINAL.map - Block Split - Block - Block Group - Tract - BOE County (dataview District 2) | GLASSBURN_0037 [OFFICIAL HB 369 ADOPTED FINAL_CD02]_01-03 |
| P148 | | Maptitude screenshot, OFFICIAL 369 ADOPTED FINAL.map - Block Split - Block - Block Group - Tract - BOE County (dataview District 3) | GLASSBURN_0038 [OFFICIAL HB 369 ADOPTED FINAL_CD03]_01-03 |
| P149 | | Maptitude screenshot, OFFICIAL 369 ADOPTED FINAL.map - Block Split - Block - Block Group - Tract - BOE County (dataview District 4) | GLASSBURN_0039 [OFFICIAL HB 369 ADOPTED FINAL_CD04]_01-03 |
| P150 | | Maptitude screenshot, OFFICIAL 369 ADOPTED FINAL.map - Block Split - Block - Block Group - Tract - BOE County (dataview District 5) | GLASSBURN_0040 [OFFICIAL HB 369 ADOPTED FINAL_CD05]_01-03 |
| P151 | | Maptitude screenshot, OFFICIAL 369 ADOPTED FINAL.map - Block Split - Block - Block Group - Tract - BOE County (dataview District 6) | GLASSBURN_0041 [OFFICIAL HB 369 ADOPTED FINAL_CD06]_01-03 |
| P152 | | Maptitude screenshot, OFFICIAL 369 ADOPTED FINAL.map - Block Split - Block - Block Group - Tract - BOE County (dataview District 7) | GLASSBURN_0042 [OFFICIAL HB 369 ADOPTED FINAL_CD07]_01-03 |
| P153 | | Maptitude screenshot, OFFICIAL 369 ADOPTED FINAL.map - Block Split - Block - Block Group - Tract - BOE County (dataview District 8) | GLASSBURN_0043 [OFFICIAL HB 369 ADOPTED FINAL_CD08]_01-03 |
| P154 | | Maptitude screenshot, OFFICIAL 369 ADOPTED FINAL.map - Block Split - Block - Block Group - Tract - BOE County (dataview District 9) | GLASSBURN_0044 [OFFICIAL HB 369 ADOPTED FINAL_CD09]_01-03 |
| P155 | | Maptitude screenshot, OFFICIAL 369 ADOPTED FINAL.map - Block Split - Block - Block Group - Tract - BOE County (dataview District 10) | GLASSBURN_0045 [OFFICIAL HB 369 ADOPTED FINAL_CD10]_01-03 |
| P156 | | Maptitude screenshot, OFFICIAL 369 ADOPTED FINAL.map - Block Split - Block - Block Group - Tract - BOE County (dataview District 11) | GLASSBURN_0046 [OFFICIAL HB 369 ADOPTED FINAL_CD11]_01-03 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P157 | | Maptitude screenshot, OFFICIAL 369 ADOPTED FINAL.map - Block Split - Block - Block Group - Tract - BOE County (dataview District 12) | GLASSBURN_0047 [OFFICIAL HB 369 ADOPTED FINAL_CD12]_01-03 |
| P158 | | Maptitude screenshot, OFFICIAL 369 ADOPTED FINAL.map - Block Split - Block - Block Group - Tract - BOE County (dataview District 13) | GLASSBURN_0048 [OFFICIAL HB 369 ADOPTED FINAL_CD13]_01-03 |
| P159 | | Maptitude screenshot, OFFICIAL 369 ADOPTED FINAL.map - Block Split - Block - Block Group - Tract - BOE County (dataview District 14) | GLASSBURN_0049 [OFFICIAL HB 369 ADOPTED FINAL_CD14]_01-03 |
| P160 | | Maptitude screenshot, OFFICIAL 369 ADOPTED FINAL.map - Block Split - Block - Block Group - Tract - BOE County (dataview District 15) | GLASSBURN_0050 [OFFICIAL HB 369 ADOPTED FINAL_CD15]_01-03 |
| P161 | 2010-2011 | 11-4 | Identified in Glassburn Depo Ex. 14 |
| P162 | 2010-2011 | 11-4-11 | Identified in Glassburn Depo Ex. 14 |
| P163 | 2010-2011 | 11-08-11 Mod | Identified in Glassburn Depo Ex. 14 |
| P164 | 2010-2011 | 11-08-11 retry | Identified in Glassburn Depo Ex. 14 |
| P165 | 2010-2011 | 11-8-11 R Mod | Identified in Glassburn Depo Ex. 14 |
| P166 | 2010-2011 | 319 | Identified in Glassburn Depo Ex. 14 |
| P167 | 2010-2011 | 319 Original | Identified in Glassburn Depo Ex. 14 |
| P168 | 2010-2011 | 369 dec 14 | Identified in Glassburn Depo Ex. 14 |
| P169 | 2010-2011 | CongDraft | Identified in Glassburn Depo Ex. 14 |
| P170 | 2010-2011 | CongressDraft | Identified in Glassburn Depo Ex. 14 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*

S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P171 | 2010-2011 | My Ohio Congressional Draft | Identified in Glassburn Depo Ex. 14 |
| P172 | 2010-2011 | My Ohio Congressional | Identified in Glassburn Depo Ex. 14 |
| P173 | 2010-2011 | Dem Congress 2 (Dem Congress Proposal10182011) | Identified in Glassburn Depo Ex. 14 |
| P174 | 2010-2011 | Dem Congress 3 (Dem Congress Proposal10182011) | Identified in Glassburn Depo Ex. 14 |
| P175 | 2010-2011 | Dem Congress 4 (Dem Congress Proposal10182011) | Identified in Glassburn Depo Ex. 14 |
| P176 | 2010-2011 | Dem Congress 5 (Dem Congress Proposal10182011) | Identified in Glassburn Depo Ex. 14 |
| P177 | 2010-2011 | Dem Congress Nov (Dem Congress Proposal10182011) | Identified in Glassburn Depo Ex. 14 |
| P178 | 2010-2011 | Dem Congress 1 (Dem Congress Proposal10182011) | Identified in Glassburn Depo Ex. 14 |
| P179 | 2010-2011 | DemCounterDATA_NOV1_2011 | Identified in Glassburn Depo Ex. 14 |
| P180 | 2010-2011 | DemCounterDATA_NOV1_2011_HUFF | Identified in Glassburn Depo Ex. 14 |
| P181 | 2010-2011 | Congress646 | Identified in Glassburn Depo Ex. 14 |
| P182 | 2010-2011 | Counter 2 | Identified in Glassburn Depo Ex. 14 |
| P183 | 2010-2011 | Huffman R Cong | Identified in Glassburn Depo Ex. 14 |
| P184 | 2010-2011 | Huffman Sykes | Identified in Glassburn Depo Ex. 14 |
| P185 | 2010-2011 | Huffsykes | Identified in Glassburn Depo Ex. 14 |
| P186 | 2010-2011 | New District 16 | Identified in Glassburn Depo Ex. 14 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P187 | 2010-2011 | Balanced Plan | Identified in Glassburn Depo Ex. 14 |
| P188 | 2010-2011 | Balanced Plan 1 | Identified in Glassburn Depo Ex. 14 |
| P189 | 2010-2011 | DemBalanced | Identified in Glassburn Depo Ex. 14 |
| P190 | 2010-2011 | Nov 1 Counter | Identified in Glassburn Depo Ex. 14 |
| P191 | 2010-2011 | Nov 4 2011 | Identified in Glassburn Depo Ex. 14 |
| P192 | 2010-2011 | Nov 18 | Identified in Glassburn Depo Ex. 14 |
| P193 | 2010-2011 | 11-5 | Identified in Glassburn Depo Ex. 14 |
| P194 | 2010-2011 | 11-6 | Identified in Glassburn Depo Ex. 14 |
| P195 | 2010-2011 | Nov 18 D | Identified in Glassburn Depo Ex. 14 |
| P196 | 2010-2011 | Nov 2 | Identified in Glassburn Depo Ex. 14 |
| P197 | 2010-2011 | Nov 3 | Identified in Glassburn Depo Ex. 14 |
| P198 | 2010-2011 | Nov 8 | Identified in Glassburn Depo Ex. 14 |
| P199 | 2010-2011 | OH_CD_Current | Identified in Glassburn Depo Ex. 14 |
| P200 | 2010-2011 | OH_CD_Empty | Identified in Glassburn Depo Ex. 14 |
| P201 | 2010-2011 | OH_CD_Political_EastToEast | Identified in Glassburn Depo Ex. 14 |
| P202 | 2010-2011 | OH_CD_Political_Empty | Identified in Glassburn Depo Ex. 14 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P203 | 2010-2011 | OH_CD_Political_Training110805 | Identified in Glassburn Depo Ex. 14 |
| P204 | 2010-2011 | OH_CD_Political_VRA2CD11 | Identified in Glassburn Depo Ex. 14 |
| P205 | 2010-2011 | OH_CD_Training110805 | Identified in Glassburn Depo Ex. 14 |
| P206 | 2010-2011 | R First Offer | Identified in Glassburn Depo Ex. 14 |
| P207 | 2010-2011 | RandallCongressa | Identified in Glassburn Depo Ex. 14 |
| P208 | 2010-2011 | Rep Congress Final | Identified in Glassburn Depo Ex. 14 |
| P209 | 2010-2011 | Rep Congress Final2 | Identified in Glassburn Depo Ex. 14 |
| P210 | 2010-2011 | Rep Congress Final3 | Identified in Glassburn Depo Ex. 14 |
| P211 | 2010-2011 | Republican Congress | Identified in Glassburn Depo Ex. 14 |
| P212 | 2010-2011 | Republican Offer_Nov1_2011 | Identified in Glassburn Depo Ex. 14 |
| P213 | 2010-2011 | Republican New | Identified in Glassburn Depo Ex. 14 |
| P214 | 2010-2011 | Republican New1 | Identified in Glassburn Depo Ex. 14 |
| P215 | 2010-2011 | RepublicanNewDATA | Identified in Glassburn Depo Ex. 14 |
| P216 | 2010-2011 | RepublicanNewDATA_NOV_1_2011 | Identified in Glassburn Depo Ex. 14 |
| P217 | 2010-2011 | RepublicanNewDATA_NOV1 | Identified in Glassburn Depo Ex. 14 |
| P218 | 2010-2011 | RepublicanNewDATA_NOV1_2011 | Identified in Glassburn Depo Ex. 14 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P219 | 2010-2011 | CONGRESSIONAL PLAN EQUIVALENCY FILE | Identified in Glassburn Depo Ex. 14 |
| P220 | 2010-2011 | OFICIAL 369 ADOPTED FINAL | Identified in Glassburn Depo Ex. 14 |
| P221 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers | Identified in Glassburn Depo Ex. 15 |
| P222 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Democratic Response | Identified in Glassburn Depo Ex. 15 |
| P223 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Democratic Response\Democratic Responses | Identified in Glassburn Depo Ex. 15 |
| P224 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Democratic Response\Democratic Responses\Nov 18 Files (DEM) | Identified in Glassburn Depo Ex. 15 |
| P225 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Democratic Response\Democratic Responses\Nov 2 Files | Identified in Glassburn Depo Ex. 15 |
| P226 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Democratic Response\Democratic Responses\Nov 5 Files | Identified in Glassburn Depo Ex. 15 |
| P227 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Democratic Response\Democratic Responses\Nov 6 Files | Identified in Glassburn Depo Ex. 15 |
| P228 | 11/29/2018 | Directory of Y: \OPRI\20181129_Glassburn ,production\Files\Memorex USB\Offers\Democratic Response\Nov 18 | Identified in Glassburn Depo Ex. 15 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P229 | 11/29/2018 | Directory of Y: \OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Democratic Response\Nov 18\NOV 18 | Identified in Glassburn Depo Ex. 15 |
| P230 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Democratic Response\Nov 18\Nov 18 D Backups | Identified in Glassburn Depo Ex. 15 |
| P231 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Democratic Response\Nov 2 | Identified in Glassburn Depo Ex. 15 |
| P232 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Democratic Response\Nov 2\NOV1_2011REVISI0N (sent nov2) | Identified in Glassburn Depo Ex. 15 |
| P233 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Democratic Response\Nov 2\NOV1_2011REVISION (sent nov2)\Nov 2 D Backups | Identified in Glassburn Depo Ex. 15 |
| P234 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Democratic Response\Nov 5 | Identified in Glassburn Depo Ex. 15 |
| P235 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\MemorexUSB\Offers\Democratic Response\Nov 5\11-5 | Identified in Glassburn Depo Ex. 15 |
| P236 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Democratic Response\Nov 5\Nov 5 Backups | Identified in Glassburn Depo Ex. 15 |
| P237 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Democratic Response\Nov 6 | Identified in Glassburn Depo Ex. 15 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P238 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Democratic Response\Nov 6\11-6 | Identified in Glassburn Depo Ex. 15 |
| P239 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Democratic Response\Nov 6\Nov 6 Backups | Identified in Glassburn Depo Ex. 15 |
| P240 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Republican Plans | Identified in Glassburn Depo Ex. 15 |
| P241 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Republican Plans\Nov 18 | Identified in Glassburn Depo Ex. 15 |
| P242 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Republican Plans\Nov 18\Nov 18 Backups | Identified in Glassburn Depo Ex. 15 |
| P243 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Republican Plans\Nov 18\Nov Modified (minus Renacci) | Identified in Glassburn Depo Ex. 15 |
| P244 | 11/29/2018 | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Republican Plans\Nov 3 | Identified in Glassburn Depo Ex. 15 |
| P245 | | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Republican Plans\Nov 3\Nov 3 Backups | Identified in Glassburn Depo Ex. 15 |
| P246 | | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Republican Plans\Nov 3\NOV MODIFIED | Identified in Glassburn Depo Ex. 15 |
| P247 | | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Republican Plans\Nov 8 | Identified in Glassburn Depo Ex. 15 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*

S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P248 | | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Republican Plans\Nov 8\2011-11-08 REVISIONS TO MAP | Identified in Glassburn Depo Ex. 15 |
| P249 | | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Republican Plans\Nov 8\Nov 8 Backups | Identified in Glassburn Depo Ex. 15 |
| P250 | | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Republican Plans\Republican Plans | Identified in Glassburn Depo Ex. 15 |
| P251 | | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Republican Plans\Republican Plans\Nov 18 Files | Identified in Glassburn Depo Ex. 15 |
| P252 | | Directory of Y:\OPRI\20181129_Glassburn Production\Files\Memorex USB\Offers\Republican Plans\Republican Plans\Nov 3 Files | Identified in Glassburn Depo Ex. 15 |
| P253 | | Directory of Y:\OPRI\20181129_Glassburn Production\Files\MemorexUSB\Offers\Republican Plans\Republican Plans\Nov 8 Files | Identified in Glassburn Depo Ex. 15 |
| P254 | 10/5/2018 | Handley Initial Expert Report | Handley Depo Ex. 1 |
| P255 | 7/15/2018 | Email from B. Hansen to C. Sulecki, subject FWD: did you attend | HANSEN_000130-31 |
| P256 | 12/17/2018 | "Trying to Thread the Needle: The Effects of Redistricting in a Georgia Congressional District" by Hood and McKee | Hood Depo Ex. 9 |
| P257 | 12/17/2018 | Political Subdivision Split Between Districts Data | Hood Depo Ex. 10 |
| P258 | 12/17/2018 | "Unwelcome Constituents: Redistricting and Countervailing Partisan Tides" by Hood and McKee | Hood Depo Ex. 11 |
| P259 | 12/17/2018 | "Partisan Classification of Ohio's Congressional Districts, 2012" Indexes | Hood Depo Ex. 12 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P260 | 12/17/2018 | "Partisan Classification of Ohio's Congressional Districts, 2012" With Races | Hood Depo Ex. 13 |
| P261 | 12/17/2018 | Ohio House Republican Caucus "How the Problem Started" | MCGREGOR000002-07 |
| P262 | 12/17/2018 | "Partisan Classification of Ohio's Congressional Districts, 2012" with Unified Index | Hood Depo Ex. 15 |
| P263 | 12/17/2018 | "Races Used in Hood Ohio Partisan Distribution Figures" | Hood Depo Ex. 16 |
| P264 | 12/17/2018 | "2014 Statewide Races" in Hood Figure 7 | Hood Depo Ex. 17 |
| P265 | 12/17/2018 | 2002 Races by County | Hood Depo Ex. 18 |
| P266 | 11/12/2018 | rdcy_OH_2002_2010_2x.DBF | Previously Disclosed (Hood) |
| P267 | 11/12/2018 | rdst_OH_2002_2010_2x.DBF | Previously Disclosed (Hood) |
| P268 | 11/12/2018 | VTD 2004-2010.xls | Previously Disclosed (Hood) |
| P269 | 11/12/2018 | VTD 2012-2016.xls | Previously Disclosed (Hood) |
| P270 | 7/15/2011 | Email from A. Meden to GOP_All and Dem_All, subject House Subcommittee on Redistricting Regional Hearings Announcement | HOUSE000336-37 |
| P271 | 9/15/2011 | Transcript, Ohio House Session | Huffman Depo Ex. 7 |
| P272 | 9/8/2011 | Email from A. Meden to Undisclosed recipients, subject State Government & Elections Committee Notice | GOV_000026-27 |
| P273 | 9/13/2011 | Announcment of Committee Meeting | Huffman Depo Ex. 10 |
| P274 | 9/13/2011 | Announcment of Committee Meeting | Huffman Depo Ex. 11 |
| P275 | 9/21/2011 | Transcript, Ohio State House Session | Huffman Depo Ex. 13 |
| P276 | 11/3/2011 | Transcript of Video Recorded Session, Ohio House of Representatives | Huffman Depo Ex. 17 |
| P277 | 12/14/2011 | Rules and Reference Committee Minutes | Huffman Depo Ex. 18 |
| P278 | | H.B. 369, Rep. Matt Huffman, Sponsor Testimony | Huffman Depo Ex. 19 |
| P279 | 4/8/2010 | RSLC Announces Leadership Additions, Jankowski and Fehrer to Further Strengthen RSLC Team | RSLC00001614-15 |
| P280 | 6/15/2010 | Email from C. Jankowski to T. Reynolds and E. Gillespie, subject REDMAP Political Report Draft | RSLC00002806 |
| P281 | 6/1/2010 | REDMAP Political Report: June 2010 | RSLC00002807-24 |
| P282 | 7/1/2010 | REDMAP Political Report: July 2010 | RSLC00001934-36 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P283 | 9/1/2010 | REDMAP Political Report: September 2010 | RSLC00001982-89 |
| P284 | 9/21/2010 | REDMAP September Political Report, Breakfast Briefing, Washington, DC | RSLC00002020 |
| P285 | | Redistricting Majority Project REDMAP: A program of the Republican State Leadership Committee | RSLC00000373-89 |
| P286 | | Draft Memorandum from C. Jankowski, subject RSLC Redistricting | RSLC00001596 |
| P287 | | Draft Letter from JCJ Email Text | RSLC00002030 |
| P288 | | Letter from C. Jankowski to Legislative Leaders | Jankowski Depo Ex. 13 |
| P289 | 3/30/2011 | Appointment Record, subject Meeting with Tom Hofeller, Dale Oldham & Mike Wild, Organizer: Scott Ward | RSLC00002515 |
| P290 | 2012 | Spreadsheet, 2012 Cycle Redistricting Budget | RSLC00002528 |
| P291 | 2/29/2012 | Letter from C. Jankowski to T. Hofeller re termination of agreement between SGLF and Geographic Strategies LLC | SGLF00000102 |
| P292 | 1/27/2012 | SGLF Request for Payment with Invoice attached | SGLF00000088-91 |
| P293 | 1/3/2013 | Memorandum from C. Jankowski to Interested Parties, subject REDMAP Impact on Today's House GOP Majority | RSLC00002581-2585 |
| P294 | | Mailer from Congressman Bill Johnson, Ohio Leadership Briefing | JOHNSON_000065 |
| P295 | 11/16/2010 | Email from M. Weaver to B. Johnson, subject Redistricting | JOHNSON_000008-9 |
| P296 | 4/25/2011 | Email from M. Smullen to B. Johnson, P. Hashem, M. Weaver, M. Van Blargan, and D. Locke, subject redistricting / fundraising talking point | JOHNSON_000108 |
| P297 | 8/1/2011 | Memorandum from Communications Counsel, Inc., M. Weaver and M. Dole, to the Johnson For Congress Team, subject Political budget 2012 | CC0118-22 |
| P298 | 7/14/2011 | Email from M. Smullen to B. Johnson, subject Redistricting | JOHNSON_000055 |
| P299 | 7/18/2011 | Email from M. Weaver to B. Johnson, subject Tom Niehaus | JOHNSON_000040 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P300 | 2012 | NRCC Presentation, "Redistricting, Strengthening the Majority in 2012" | NRCC000031 |
| P301 | | Excel spreadsheet from Douglas Johnson | D. Johnson Depo Ex. 16 |
| P302 | 8/18/2011 | Email from J. McNulty to J. Jordan, R. Yonkura, subject 8/18 AUGLAIZE FR BRIEFING | JORDAN_000001-04 |
| P303 | 8/15/2011 | Email from J. McNulty to J. Jordan, subject 8/15 MORROW BRIEFING | JORDAN_000005-06 |
| P304 | 7/28/2011 | Email from M. Smullen to B. Johnson, M. Weaver and P. Hashem, subject Dispatch article | JOHNSON_000036-37 |
| P305 | 7/15/2018 | Email from B. Hansen to C. Sulecki, subject Fwd: did you attend | HANSEN_000130-31 |
| P306 | 8/1/2011 | Consulting Agreement between Republican Members of the Legislative Task Force and Capital Advantage, LLC | LWVOH_00005475-77 |
| P307 | 8/3/2011 | Consulting Agreement between Republican Members of the Legislative Task Force and Policy Widgets, LLC | LWVOH_00005478-80 |
| P308 | 7/11/2011 | Email from H. Mann to T. Judy, R. DiRossi, et al., subject Congressional Redistricting Regional Hearing Schedule | GOV_000202-04 |
| P309 | 7/20/2011 | Congressional redistricting timeline | LWVOH_00018247 |
| P310 | 2012 | NRCC Presentation, "Path to Victory and National Mood" | NRCC000031 |
| P311 | 5/19/2011 | Chart, District 12 Indices | TIBERI_000039 |
| P312 | 5/19/2011 | [Metadata] Chart, District 12 Indices | TIBERI_000039 Metadata |
| P313 | 3/31/2011 | Chart, Ohio Changes | NRCC000012 |
| P314 | 3/31/2011 | [Metadata] Chart, Ohio Changes | NRCC000012 Metadata |
| P315 | 9/2/2011 | Email from A. Kincaid to R. DiRossi, H. Mann, T. Whatman, subject New Idea Redraft | LWVOH_00018302-07 |
| P316 | 3/31/2011 | Chart, Ohio Changes | BRADEN001387 |
| P317 | 3/31/2011 | [Metadata] Chart, Ohio Changes | BRADEN001387 Metadata |
| P318 | 3/31/2011 | Screenshot of Excel Formula for Average from Chart, Ohio Changes | BRADEN001387 Excel Formula for Average |
| P319 | 11/19/2018 | Ohio Map, District 9 | BRADEN001388 |
| P320 | 11/19/2018 | [Metadata] Ohio Map, District 9 | BRADEN001388 Metadata |
| P321 | | Ohio Map, District 11 | BRADEN001389 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P322 | | [Metadata] Ohio Map, District 11 | BRADEN001389 Metadata |
| P323 | | Ohio Map, Hamilton County | BRADEN001390 |
| P324 | | [Metadata] Ohio Map, Hamilton County | BRADEN001390 Metadata |
| P325 | | Ohio Map, Northeast | BRADEN001391 |
| P326 | | [Metadata] Ohio Map, Northeast | BRADEN001391 Metadata |
| P327 | | Ohio Map | BRADEN001392 |
| P328 | | [Metadata] Ohio Map | BRADEN001392 Metadata |
| P329 | | Chart, District Indices | LWVOH_00018333 |
| P330 | | Chart, Ohio Changes | LWVOH_00018480 |
| P331 | 3/31/2011 | Chart, Ohio Changes | LWVOH_00018481 |
| P332 | 9/12/2011 | Email from R. DiRossi to A. Kincaid, subject Ohio final map with possible Stivers addition | LWVOH_00018322-25 |
| P333 | 3/31/2011 | Chart, Ohio Changes | NRCC000013 |
| P334 | 3/31/2011 | [Metadata] Chart, Ohio Changes | NRCC000013 Metadata |
| P335 | 10/3/2011 | Chart, HB319 Indexes | DIROSSI_0000010 |
| P336 | | Maptitude screenshot, 10-27-11 Adam New Map.map - 2010 Final Census Blocks (Ohio) | BLESSING0012635 [10-27-11 Adam New Map]_001 |
| P337 | 11/2/2011 | Chart, The State Indexes | DIROSSI_0000525 |
| P338 | 11/5/2011 | Chart, HB369/HB319 | BLESSING_0013212 |
| P339 | 10/19/2011 | Chart, HB319 | NRCC000014 |
| P340 | 10/19/2011 | Chart, HB319 Excel Formula for Average | NRCC000014 Excel Formula for Average |
| P341 | 11/2/2011 | Chart, HB319 Indexes | DIROSSI_0000142 |
| P342 | | Subpoena to Produce Documents (Michael Lenzo) | Lenzo Depo Ex. 1 |
| P343 | 7/29/2011 | Email from M. Lenzo to M.Hardenbrook, J. Barron, H. Mann and M. Grodhaus, subject Apportionment Board Records Officer | LWVOH_00013776 |
| P344 | 10/7/2011 | Letter from J. Slagle to R.DiRossi and H. Mann re Transparency Report; Public Records Request | L WVOH_ 00004033-34 |
| P345 | 11/21/2011 | Letter from M. Lenzo to J. Slagle | LWVOH_00018262-63 |
| P346 | | Presentation, "Drawing the Lines" | LENZO_0002549-80 |
| P347 | 1/12/2011 | Letter from T. Hofeller to Colleague | LENZO_0004023 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P348 | 5/12/2010 | PowerPoint Presentation, GOP Redistricting Conference, Section 5 of the Federal Voting Rights Act, Presentation by Marguerite Mary Leoni | LENZO_0004575-81 |
| P349 | 2011 | 2011 RNC Redistricting Legal and Technical Reference Materials | LENZO_0004024-26 |
| P350 | | Twelve Points of Redistricting Awareness | LENZO_0004396-400 |
| P351 | 9/28/2010 | Presentation, "What I've Learned About Redistricting - The Hard Way!" | LENZO_0004553-65 |
| P352 | 9/1/2011 | Email from H. Mann to R. DiRossi , M. Lenzo, and T. Judy, subject FW: I2-0901-0130-map0.pdf | LWVOH_00018250 |
| P353 | | map  Bates stamped LWVOH_00018251 | LWVOH_00018251 |
| P354 | | Compromise Proposal to Draw Fair Congressional Districts | SMC-KM-000363-372 |
| P355 | 11/3/2011 | Email from S. Bender to K. McCarthy, subject RE: final release | SMC-KM-000138-40 |
| P356 | 11/30/2011 | Email from K. McCarthy to M. Szollosi, subject Talking Points for Blade | SMC-KM-000270-72 |
| P357 | 12/22/2011 | Email from R. Routt to G. Boas and A. Hoyt, subject HB 369/HB319 Statistical comparison | SMC-AH-000368 |
| P358 | | Chart, HB319 and HB369 Comparison | SMC-AH-000369 |
| P359 | 12/12/2011 | Ohio Redistricting Transparency Report, The Elephant In the Room | LWVOH_00018400-21 |
| P360 | | Presentation, "Ohio Redistricting Competition" | LWVOH_0074117-32 |
| P361 | | Ohio's Gerrymandering Problem: Why Haven't We Fixed this Yet? | LWVOH_0109308-27 |
| P362 | 5/4/2017 | Proposal from J. Morgan to K. Barlow to provide the City of Placentia with map drawing services for redistricting new council districts, and J. Morgan Curriculum Vitae | Morgan Depo Ex. 2 |
| P363 | 7/7/2011 | Redistricting Meetings Agenda | LWVOH_00008706-07 |
| P364 | 7/31/2011 | Invoice for Applied Research Coordinates Ltd | MORGAN_000002 |
| P365 | 8/31/2011 | Invoice for Applied Research Coordinates Ltd | MORGAN_000018 |
| P366 | 9/29/2011 | Invoice for Applied Research Coordinates Ltd | MORGAN_000019 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*

S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P367 | 8/17/2018 | Screenshot of Morgan document production folder | Morgan Document Production_August 17, 2018 |
| P368 | 8/17/2018 | Screenshot of Morgan document production ccBlock_oh_r07 folder | Morgan Document Production_File Types_ccBlock_oh_r07 |
| P369 | 8/17/2018 | Maptitude screenshot, Map1 - 2010 Final Census Blocks (Ohio) | MORGAN>August 17, 2018>ccBlock_oh_r07_ccBlock.cdf 1-8 |
| P370 | | Presentation, "Drawing the lines" | LENZO_0002549-80 |
| P371 | 12/4/2011 | Email from Jenna Mann to Bob Latta, subject 12.14.11-Proposed Congressional Map | LATTA_000002 |
| P372 | 6/26/2011 | Email exchange between Jim Renacci and Tom Whatman, subject Ohio | RENACCI_000138 |
| P373 | 12/3/201 | Email from Jim Renacci to James Slepian and Katelyn Barlage, subject I have an idea | RENACCI_000057 |
| P374 | 3/17/2011 | Email exchange between Jim Renacci and James Slepian, no subject | RENACCI_0000079 |
| P375 | 7/8/2011 | Email exchange betweeen Thomas Queen and Jim Renacci, subject Obhof | RENACCI_000137 |
| P376 | 11/13/2011 | Email exchange between James Slepian and Jim Renacci, subject Google Alert - jim renacci | RENACCI_000131 |
| P377 | 3/4/2011 | Email exchange between Jim Renacci, James Slepian and Katelyn Barlage, no subject | RENACCI_000051-53 |
| P378 | 8/11/2011 | Email from Mike Turner to Peggy Lehner and Ryan Dwyer, subject Montgomery Co TPs, enclosing Montgomery County Redistricting TPs | TURNER_000121-22 |
| P379 | 3/20/2011 | Email exchange between Betsy Hawkings, Mike Turner, Adam Murka and Ryan Dwyer, subject redistricting meeting followup | TURNER_000314 |
| P380 | 9/9/2011 | Email from Mike Turner to scl@mail.house.gov, subject Redistricting | TURNER_000172 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P381 | 2/9/2011 | Email exchange between Betsy Hawkings, Nick Raines and Mike Turner, et al., subject Ohio Chiefs lunch today | TURNER_000319 |
| P382 | 4/29/2011 | Email exchange between Betsy Hawkings and Mike Turner, subject Redistricting scuttlebutt | TURNER_000317 |
| P383 | 9/2/2011 | Map file, "Four-Way Split 9-2-11.map" | BLESSING0013211 [Caliper > Maptitude for Redistricting 6.0 > Four-Way Split 9-2-11] |
| P384 | 9/30/2010 | Calendar entries for September 1, 2010 to September 30, 2010 | BOEHNER_000001-23 |
| P385 | 9/13/2011 | Email from Heather Mann to Michael Lenzo, subject Congressional Redistricting Talking Points, enclosing "Congressional Redistricting Talking Points" | LWVOH_0052437-40 |
| P386 | | Assignment letter from Mike DeWine and Michael Hall to Mark A. Johnson, Baker & Hostetler, LLP, enclosing retention agreement | |
| P387 | 8/29/2018 | Affidavit of Non-Party Thomas B. Whatman in support of his Assertion of First Amendment Privilege | |
| P388 | 12/14/2011 | Transcript, Ohio State House Session | |
| P389 | | House Bill # Rep. Matt Huffman, Sponsor Testimony | SENATE000002 |
| P390 | 9/22/2010 | | REV_00023206 [Attorney's Eyes Only] |
| P391 | | | REV_00023214 [Attorney's Eyes Only] |
| P392 | 2010 | | REV_00000869 [Attorney's Eyes Only] |
| P393 | 9/6/2011 | | REV_00023176-83  [Attorney's Eyes Only] |
| P394 | 9/8/2011 | | REV_00023234 (Attorney's eyes only) |
| P395 | 9/23/2010 | | REV_00023246 (Attorney's Eyes Only) |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P396 | 9/29/2010 | | REV_00023241 (Attorney's Eyes Only) |
| P397 | 9/15/2011 | | REV_00023497 (Attorney's Eyes Only) |
| P398 | 12/14/2011 | | REV_00023479 (Attorney's Eyes Only) |
| P399 | 12/14/2011 | | REV_00025340 (Attorney's Eyes Only) |
| P400 | 10/27/2011 | | REV_00023317-18 (attorney's eyes only) |
| P401 | 10/21/2011 | | REV_00023321 (Attorney's eyes only) |
| P402 | 10/31/2011 | | REV_00023334 (attorney's eyes only) |
| P403 | | | REV_00023516-17 (attorney's eyes only) |
| P404 | | | REV_00023469 (attorney's eyes only) |
| P405 | | "319" Map Files [Glassburn Volume I Production] | Glassburn Volume I Production |
| P406 | | "OFICIAL 269 ADOPTED FINAL" Map Files [Glassburn Volume I Production] | Glassburn Volume I Production |
| P407 | 9/9/2011 | Email from T. Judy to H. Mann, Fwd: Talking Points | LWVOH_0052431-32 |
| P408 | 4/19/2012 | | REV_00000016 [Attorney's Eyes Only] |
| P409 | 12/15/2011 | | REV_00023341 [Attorney's Eyes Only] |
| P410 | 9/16/2011 | | REV_00023337  [Attorney's Eyes Only] |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P411 | 9/26/2011 | ⬛ | REV_00023339 [Attorney's Eyes Only] |
| P412 | 4/25/2012 | ⬛ | REV_00000004 [Attorney's Eyes Only] |
| P413 | 4/19/2012 | ⬛ | REV_00000019 [Attorney's Eyes Only] |
| P414 | 2/6/2012 | ⬛ | REV_00000001 [Attorney's Eyes Only] |
| P415 | 2018 | LWVO Agenda for Action 2017-2019 | LWVOH_0092777-840 |
| P416 | 2017 | LWVO Agenda for Action 2016-2018 | LWVOH_0089871-934 |
| P417 | 10/2/2018 | Chart, LWVO Active Members for State | LWVOH_0058202 |
| P418 | 6/30/2018 | Chart, LWVO Balance Sheet and Statement of Equity | LWVOH_0020447 |
| P419 | 7/19/2011 | OCAR Press Release, "Redistricting Competition Begins Today" | LWVOH_0041957-58 |
| P420 | 2018 | APRI Trumbull County Membership List | OAPRI_000000157 |
| P421 | 8/11/2011 | Email from Mark Salling to John Barron, et al., subject June (and early July) 2011 Redistricting Database progress report, enclosing July-early August progress report | BRADEN000790-98 |
| P422 | 10/22/2011 | Email exchange between Mark Salling and John Barron, et al., subject September 2011 Redistricting Database project progress report | SMC-RR-029494 |
| P423 | 7/15/2011 | Email from Mark Salling to Heather Mann, Mark Braden, Clark Bensen, Mike Lenzo, and Ray DiRossi, subject conference call, attaching census_versus_boe_MCDPlace_population_MS.xls | BRADEN000737-39 |
| P424 | 8/8/2011 | Email exchange between Mike Lenzo, Clark Bensen, Troy Judy, Ray DiRossi and Heather Mann, subject Redistricting database | JUDY_0001700-02 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P425 | 4/26/2018 | Video, https://www.cityclub.org/forums/2018/04/26/ohio-ballot-beat-the-bipartisan-congressional-redistricting-reform-amendment-issue-1 | MISCPLTS_0000001 |
| P426 | 12/28/2018 | Cho Supplemental Expert Report | N/A |
| P427 | 20/20/2018 | Cho Errata | N/A |
| P428 | 11/11/2016 | A Massively Parallel Evolutionary Markov Chain Monte Carlo Algorithm for Sampling Complicated Multimodal State Spaces. Wendy Tam Cho & Yan Y. Liu. SC18: The International Conference for High Performance Computing, Networking, Storage and Analysis | N/A |
| P429 | 9/15/2018 | Sampling from Complicated and Unknown Distributions: Monte Carlo and Markov Cain Monte Carlo Methods for Redistricting. Wendy Tam Cho & Yan Y. Liu. Physica A 506:170–178. | N/A |
| P430 | 2018 | Cain, Bruce E., Wendy K. Tam Cho, Yan Y. Liu and Emily Zhang. 2018. "A Reasonable Bias Method for Redistricting: A New Tool for an Old Problem." William & Mary Law Review 59(5):1521-1557. | N/A |
| P431 | 2017 | Cho, Wendy K. Tam. 2017. "Measuring Partisan Fairness: How well does the Efficiency Gap Guard Against Sophisticated as well as Simple-Minded Modes of Partisan Discrimination?" University of Pennsylvania Law Review Online 166. | N/A |
| P432 | 2018 | Cho, Wendy K. Tam. 2018. "Algorithms Can Foster a More Democratic Society." Nature 558:487. | N/A |
| P433 | 2001 | Cho, Wendy K. Tam and Albert H. Yoon. 2001. "Strange Bedfellows: Politics, Courts, and Statistics: Statistical Expert Testimony in Voting Rights Cases." Cornell Journal of Law and Public Policy 10(2):237-264. | N/A |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P434 | 2005 | Cho, Wendy K. Tam and Albert H. Yoon. 2005. "Panethnicity Revisited: Asian Indians, Asian American Politics, and the Voting Rights Act." UCLA Asian Pacific American Law Journal 10:8-30. | N/A |
| P435 | 2015 | Cho, Wendy K. Tam and Yan Y. Liu. 2015. A High-Performance Approach for Solution Space Traversal in Combinatorial Optimization. SC15: The International Conference for High Performance Computing, Networking, Storage and Analysis. | N/A |
| P436 | 2016 | Cho, Wendy K. Tam and Yan Y. Liu. 2016a. A Scalable Evolutionary Algorithm with Intensification and Diversification Protocols Designed for Statistical Models. SC16: The International Conference for High Performance Computing, Networking, Storage and Analysis. | N/A |
| P437 | 12/1/2016 | Cho, Wendy K. Tam and Yan Y. Liu. 2016b. "Toward a Talismanic Redistricting Tool: A Fully Balanced Computational Method for Identifying Extreme Redistricting Plans." Election. Law Journal 15(4):351-366 | N/A |
| P438 | 2017 | Cho, Wendy K. Tam and Yan Y. Liu. 2017. Massively Parallel Evolutionary Computation for Empowering Electoral Reform: Quantifying Gerrymandering via Multi-objective Optimization and Statistical Analysis. SC17: The International Conference for High Performance Computing, Networking, Storage and Analysis. | N/A |
| P439 | 2012 | King, Douglas M., Sheldon H. Jacobson, Edward C. Sewell and Wendy K. Tam Cho. 2012. "GeoGraphs: An Efficient Model for Enforcing Contiguity and Hole Constraints in Planar Graph Partitioning." Operations Research 60(5):1213-1228. | N/A |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P440 | 2018 | Liu, Yan Y. and Wendy K. Tam Cho. 2018. "Spatially Explicit Evolutionary Computation for Largescale Spatial Optimization." Technical Report. | N/A |
| P441 | 7/28/2015 | Liu, Yan Y., Wendy K. Tam Cho and Shaowen Wang. 2015. A Scalable Computational Approach to Political Redistricting Optimization. In Proceedings of the 2015 Annual Conference on Extreme Science and Engineering Discovery Environment. XSEDE15: Scientific Advancements Enabled by Enhanced Cyberinfrastructure St. Louis, MO: pp. 6:1--6:2. | N/A |
| P442 | 4/4/2016 | Liu, Yan Y., Wendy K. Tam Cho and Shaowen Wang. 2016. "PEAR: A Massively Parallel Evolutionary Computation Approach for Political Redistricting Optimization and Analysis." Swarm and Evolutionary Computation 30:78-92. | N/A |
| P443 | 6/1/1973 | Tufte, Edward R. 1973. "The Relationship between Seats and Votes in Two-Party Systems." American Political Science Review 67(2):540–554. | N/A |
| P444 | 10/18/2018 | oh_presc2 | CHO_000001 |
| P445 | 10/18/2018 | cg1216.csv | Previously Disclosed (Cho) |
| P446 | 10/18/2018 | com08.r | Previously Disclosed (Cho) |
| P447 | 10/18/2018 | plaintiffs.r | Previously Disclosed (Cho) |
| P448 | 10/18/2018 | run0.txt – run63.txt | Previously Disclosed (Cho) |
| P449 | 11/26/2018 | dat12.txt | CHO_000004 |
| P450 | 11/26/2018 | rebuttal.r | CHO_000005 |
| P451 | 12/28/2018 | com.r | Previously Disclosed (Cho) |
| P452 | 12/28/2018 | dat18.txt | Previously Disclosed (Cho) |
| P453 | 12/28/2018 | pdat.txt | Previously Disclosed (Cho) |
| P454 | 10/5/2018 | Cooper Initial Expert Report Appendix | N/A |
| P455 | 9/28/2018 | PROPOSED_REMEDIAL_PLAN.DBF | N/A |
| P456 | 10/5/2018 | Cooper Report Appendix.pdf | COOPER_000001-78 |
| P457 | 10/5/2018 | OCURD_data(m.salling@csuohio.edu).zip | COOPER_000079 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P458 | 10/5/2018 | OCURD_documentation(m.salling@csuohio.edu).zip | COOPER_000080 |
| P459 | 10/5/2018 | OCURD_shapes(m.salling@csuohio.edu).zip | COOPER_000081 |
| P460 | 10/5/2018 | OH.dbf | COOPER_000082 |
| P461 | 10/5/2018 | OH.prj | COOPER_000083 |
| P462 | 10/5/2018 | OH.shp | COOPER_000084 |
| P463 | 10/5/2018 | OH.shx | COOPER_000085 |
| P464 | 10/5/2018 | 2010_VTDS_2012_2014_2016 election_data.xlsx | COOPER_000086 |
| P465 | 11/27/2018 | 2011_Incumbent_addresses_11_27.zip | COOPER_000087 |
| P466 | 11/27/2018 | HYPO1A.dbf | COOPER_000088 |
| P467 | 11/27/2018 | HYPO2A.dbf | COOPER_000089 |
| P468 | 11/30/2018 | 2018-11-30 Incumbent Addresses | Previously Disclosed (Cooper) |
| P469 | 11/30/2018 | Nov30.DBF | Previously Disclosed (Cooper) |
| P470 | 12/28/2018 | 2018_DATA.DBF | Previously Disclosed (Cooper) |
| P471 | 12/28/2018 | New Incumbent address.xlsx | Previously Disclosed (Cooper) |
| P472 | 10/5/2018 | OH data.sav | NIVEN_000001 |
| P473 | 11/12/2018 | Effgaps2.csv excel | Previously Disclosed (Trende) |
| P474 | 10/5/2018 | "USHouse_Data_updated.RData" | WARSHAW_000026 |
| P475 | 10/5/2018 | "declination_data" | WARSHAW_000012 |
| P476 | 12/28/2018 | Warshaw Supplemental Report ("An Evaluation of the Partisan Bias in Ohio's 2011 Congressional Plan and its Effects on Representation: Updated based on 2018 Elections") | Previously Disclosed (Warshaw) |
| P477 | 8/14/2012 | | REV_00000003 [Attorney's Eyes Only] |
| P478 | 9/15/2011 | | REV_00000015 [Attorney's Eyes Only] |
| P479 | 4/19/2012 | | REV_00000021 [Attorney's Eyes Only] |
| P480 | 12/20/2011 | | REV_00000040 [Attorney's Eyes Only] |
| P481 | 7/26/2018 | | REV_00000041 [Attorney's Eyes Only] |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P482 | 12/20/2011 | | REV_00000042 [Attorney's Eyes Only] |
| P483 | 7/26/2018 | | REV_00000043 [Attorney's Eyes Only] |
| P484 | 12/20/2011 | | REV_00000044 [Attorney's Eyes Only] |
| P485 | 7/26/2018 | | REV_00000045 [Attorney's Eyes Only] |
| P486 | 11/6/2011 | | REV_00000887 [Attorney's Eyes Only] |
| P487 | 9/9/2011 | | REV_00023184 [Attorney's Eyes Only] |
| P488 | 9/9/2011 | | REV_00023185 [Attorney's Eyes Only] |
| P489 | 9/9/2011 | | REV_00023186 [Attorney's Eyes Only] |
| P490 | 9/9/2011 | | REV_00023187 [Attorney's Eyes Only] |
| P491 | 9/9/2011 | | REV_00023188 [Attorney's Eyes Only] |
| P492 | 9/9/2011 | | REV_00023189 [Attorney's Eyes Only] |
| P493 | 9/9/2011 | | REV_00023190 [Attorney's Eyes Only] |
| P494 | 9/9/2011 | | REV_00023191 [Attorney's Eyes Only] |
| P495 | 9/9/2011 | | REV_00023192 [Attorney's Eyes Only] |
| P496 | 9/22/2011 | | REV_00023377 [Attorney's Eyes Only] |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P497 | 12/14/2011 | | REV_00023429 [Attorney's Eyes Only] |
| P498 | 12/14/2011 | | REV_00023430 [Attorney's Eyes Only] |
| P499 | 12/14/2011 | | REV_00023431 [Attorney's Eyes Only] |
| P500 | 9/16/2011 | | REV_00023335 [Attorney's Eyes Only] |
| P501 | 12/14/2011 | | REV_00023540 [Attorney's Eyes Only] |
| P502 | 7/13/2011 | Email from C. Boor to H. Mann, S. Marangoni and R. Kapala, subject Double Tree Suites Reservation | LWVOH_00018255 |
| P503 | 11/28/2011 | Vouchers for payment for vendors Capital Advantage LLC and Policy Widgets LLC | LWVOH_00018279-82 |
| P504 | 10/5/2018 | analysis_ushouse.R | WARSHAW_0000028 |
| P505 | 10/5/2018 | cces_OH.R | WARSHAW_0000029 |
| P506 | 10/5/2018 | cces2014_trustrep.r | WARSHAW_0000030 |
| P507 | 10/5/2018 | dataassembly_ushouse.R | WARSHAW_0000031 |
| P508 | 10/5/2018 | remedial_plan_analysis.R | WARSHAW_0000032 |
| P509 | 11/26/2018 | PrePost2011_Ohio.R | WARSHAW_0000049 |
| P510 | 11/26/2018 | rebuttal_competitiveness.R | WARSHAW_0000050 |
| P511 | 11/26/2018 | remedial_plan_analysis_imputations.R | WARSHAW_0000051 |
| P512 | 12/28/2018 | analysis_ushouse_2018.R | Previously Disclosed (Warshaw) |
| P513 | 12/28/2018 | dataassembly_ushouse_2018.R | Previously Disclosed (Warshaw) |
| P514 | 12/28/2018 | remedial_analysis_2018.R | Previously Disclosed (Warshaw) |
| P515 | 8/1/2011 | Consulting Agreement between Republican Members of the Legislative Task Force and Capital Advantage, LLC | LWVOH_00005475-77 |
| P516 | 8/3/2011 | Consulting Agreement between Republican Members of the Legislative Task Force and Policy Widgets, LLC | LWVOH_00005478-80 |
| P517 | 9/11/2011 | Email from C. Widener to T. Niehaus and M. Schuler, subject Fw: clark county | LWVOH_00018318 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P518 | 9/12/2011 | Email from R. DiRossi to T. Niehaus, subject Proposed map for LSC | LWVOH_00018298-301 |
| P519 | 9/11/2011 | Email from R. DiRossi to T. Niehaus, subject Map 2 of 4 | LWVOH_00018313 |
| P520 | 9/12/2011 | Email from M. Schuler to H. Mann and T. Judy, (no subject) | LWVOH_00018319 |
| P521 | 9/20/2011 | HB 318/HB 319 Senate Government Oversight & Reform Committee File | Niehaus Depo Ex. 24 |
| P522 | 10/12/2011 | Statement from Ohio Secretary of State Jon Husted | Niehaus Depo Ex. 26 |
| P523 | 12/14/2011 | Transcript, Ohio State Senate Session | Niehaus Depo Ex. 34 |
| P524 | 10/5/2018 | Report of David Niven, Ph.D., "Dividing Neighbors and Diminishing Voices: An Analysis of Ohio's Congressional Districts" | Niven Depo Ex. 1 |
| P525 | Oct. 2018 | David Niven Curriculum Vitae | Niven Depo Ex. 2 |
| P526 | 11/26/2018 | Report of David Niven, Ph.D., "Response to Dr. Thornton and Dr. Brunell" | Niven Depo Ex. 3 |
| P527 | 9/20/2011 | HB 318/HB 319 Senate Government Oversight & Reform Committee File | Obhof Depo Ex. 4 |
| P528 | 9/21/2011 | Transcript, Ohio State Senate Session | Obhof Depo Ex. 5 |
| P529 | 10/19/2011 | Email from M. Rowe to A. Hoyt, R. Routt, et al., subject DRAFT COPY: Letter to Niehaus and Batchelder | SMC-AH-000122 |
| P530 | 11/3/2011 | Email from R. Routt to Senator Cafaro, et al., subject Re: Proposed Batchelder Maps and info, attaching maps | SMC-AH-000267-303 |
| P531 | 11/3/2011 | Email from R. Routt to Senator Cafaro, et al., subject Re: Proposed Batchelder Maps and info, attaching maps | SMC-AH-000241-66 |
| P532 | 11/3/2011 | Email from R. Routt to Senator Cafaro, et al., subject Re: Proposed Batchelder Maps and info, attaching maps | SMC-AH-000220-40 |
| P533 | 12/15/2011 | Email from R. Routt to E.Stockhausen, subject RE: 11th Congressional District | SMC-RR-016633 |
| P534 | 11/3/2011 | Email from S. Cherry to R. Routt, subject Re: Redistricting Plan for LSC drafting | SMC-RR-029488 |
| P535 | 10/28/2011 | Email from R. Routt to E. Kearney, C. Tavares, et al., subject Proposed Republican draft concept map | SMC-RR-016980 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P536 | 12/22/2011 | Email from R. Routt to G. Boas and A. Hoyt, subject HB 369/HB319 Statistical comparison | SMC-AH-00368 |
| P537 | 7/15/2018 | Email from B. Hansen to C. Sulecki, subject Fwd: did you attend | HANSEN_000130-31 |
| P538 | 5/12/2011 | Discussion Points for Mark Braden Meetings | LWVOH_00008711 |
| P539 | | Meeting Notice: "FW: Weekly Redistricting Meeting" | GOV_000001 |
| P540 | 7/7/2011 | Redistricting Meetings Agenda | LWVOH_00010568-69 |
| P541 | 8/1/2011 | Consulting Agreement between Republican Members of the Legislative Task Force and Capital Advantage, LLC | LWVOH_00005475-77 |
| P542 | 8/3/2011 | Consulting Agreement between Republican Members of the Legislative Task Force and Policy Widgets, LLC | LWVOH_00005478-80 |
| P543 | 8/16/2011 | Email from Ray DiRossi to Matt Schuler, subject Tuesday at redistricting office | LWVOH_00018258 |
| P544 | | Maptitude screenshot, HB 319 As Enacted - Congressional Districts.map - 2010 Final Census Blocks (Ohio) | BLESSING0012635 [HB 319 As Enacted -Congressional Districts] |
| P545 | | Maptitude screenshot, HB 319 As Enacted - Congressional Districts.map - 2010 Final Census Blocks (Ohio) (dataview District 15) | BLESSING0012635 [HB 319 As Enacted - Congressional Districts] CD15_001 |
| P546 | 9/12/2011 | Email from R. DiRossi to T. Niehaus, subject Proposed map for LSC | LWVOH_00018298-301 |
| P547 | 2011 | Ohio Redistricting Competition Rules and Scoring | SLAGLE_0022-39 |
| P548 | Feb. 2012 | Ohio Redistricting Transparency Report, The Elephant In the Room (2nd edition) | SLAGLE_0058-69 |
| P549 | 11/17/2010 | Email from A. Kuhn to S. Stivers forwarding email from D. DiSanto, subject Ohio Republican Delegation Meeting -- Thursday, Nov. 18 | STIVERS_007454 |
| P550 | 1/8/2011 | Email from K. Stivers to S. Stivers forwarding email exchange with J. Husted, subject line Congratulations | STIVERS_004894 |
| P551 | 3/22/2011 | Email from M.B. Carozza to S. Stivers and A. Kuhn, subject Checking In | STIVERS_004042 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P552 | 6/1/2011 | Email from C. Whetstone to S. Stivers, M.B. Carozza and A. Kuhn, subject line redistricting | STIVERS_002589 |
| P553 | 8/15/2011 | Email from L. Crotty to S. Stivers, M.B. Carozza, and A. Kuhn, subject For Approval: Fin Com Agenda, attaching Stivers August 16, 2011 Finance Committee Meeting Agenda | STIVERS_000003-4 |
| P554 | 9/10/2011 | Email exchange between S. Stivers, M.B. Carozza and A. Kuhn, subject line Checking In | STIVERS_000766-67 |
| P555 | 12/7/2011 | Email from L. Crotty to S. Stivers, subject Calls Today and Ingram Tracker, attaching Ingram 2012 Tracker spreadsheet | STIVERS_000330-31 |
| P556 | 3/2/2012 | Email exchange between S. Stivers, C, Whetstone and A. Kuhn forwarding email from A. Blake, subject line Redistricting | STIVERS_007519-20 |
| P557 | 9/11/2011 | Email exchange between M.B. Carozza, S. Stivers and A. Kuhn, subject line Checking In | STIVERS_004406-07 |
| P558 | 9/15/2011 | Transcript, Ohio House Session | Szollosi Depo Ex. 3 |
| P559 |  | Compromise Proposal to Draw Fair Congressional Districts | SMC-KM-000363-72 |
| P560 | 11/2/2011 | Email from K. McCarthy to C. Glassburn and A. Budish, subject Re: counter - Draft Presentation, attaching presentation "Redistricting Discussions Nov. 2, 2011" | SMC-KM-000263, SMC-KM-000409-13 |
| P561 | 11/23/2011 | Email from K. McCarthy to A. Budish, (no subject), attaching spreadsheet LWV and GOP Index Composite Scores | SMC-KM-000184, SMC-KM-000167-68 |
| P562 |  | Presentation, "Summary of Compromise Efforts to Resolve Redistricting Impasse, Avoid Two Different Primary Elections and Save Taxpayers $15 million" | SMC-KM-000155-65 |
| P563 | 11/3/2011 | Email from S. Bender to K. McCarthy, subject RE: final release | SMC-KM-000138-40 |
| P564 | 11/3/2011 | Transcript of Video Recorded Session, Ohio House of Representatives | Szollosi Depo Ex. 13 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*

S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P565 | 11/4/2011 | Email from A. Budish to K. McCarthy, subject Fw: Frustration | Szollosi Depo Ex. 14 |
| P566 | 11/15/2011 | Email from D. Ramos to A. Budish, M. Szollosi, et al., subject Concerns about Redistricting | SMC-KM-000296, SMC-KM-000100 |
| P567 | 11/30/2011 | Email from K. McCarthy to T. Heard, et al., subject Talking Points fro ^_Redistricting^_ Impasse | SMC-KM-000061-63 |
| P568 | 11/30/2011 | Email from K. McCarthy to M. Szollos, subject Talking Points for Blade | SMC-KM-000270-72 |
| P569 | 12/4/2011 | The Blade Editorial, "Crossing the lines" | Szollos Depo Ex. 21 |
| P570 | 12/18/2018 | R-code | Trende Depo Ex. 13 |
| P571 | 10/5/2018 | Warshaw Report ("An Evaluation of the Partisan Bias in Ohio's 2011 Congressional Districting Plan and its Effects on Representation in Congress") | Warshaw Depo Ex. 1 |
| P572 | 11/26/2018 | Warshaw Rebuttal Report ("An Evaluation of the Partisan Bias in Ohio's 2011 Congressional Plan and its Effects on Representation: Rebuttal Report") | Warshaw Depo Ex. 6 |
| P573 | 2018 | APRI Columbus Membership List | OAPRI_0000013 |
| P574 | 10/18/2014 | APRI Dayton Membership List | OAPRI_0000018-20 |
| P575 | | APRI Youngstown Membership List | OAPRI_0000022 |
| P576 | 2018 | APRI Cleveland Membership List | OAPRI_0000016-17 |
| P577 | 2/21/2018 | APRI Akron/Canton Membership List | OAPRI_0000014-15 |
| P578 | 2018 | APRI Toledo Membership List | OAPRI_0000012 |
| P579 | 1/6/2011 | Email from A. Washington to all APRI chapters, subject 2010 labor/minority debriefing | OAPRI_0000067-68 |
| P580 | 9/2/2011 | Email from A. Kincaid to R. DiRossi, H. Mann and T. Whatman, subject New Idea Redraft | LWVOH_00018302-08 |
| P581 | 9/11/2011 | Email from R. DiRossi to T. Whatman, subject Widener proposal update | LWVOH_00018311-12 |
| P582 | 9/12/2011 | Email from R. DiRossi to T. Whatman, subject Stivers Maps | LWVOH_00018320 |
| P583 | 9/12/2011 | Email from R. DiRossi to T. Niehaus, subject Proposed map for LSC | LWVOH_00018298-01 |

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*
S.D. Ohio Case No. 1:18-cv-357-TSB-KNM-MHW

| Plaintiffs' Ex. No. | Date | Description | Bates Range |
|---|---|---|---|
| P584 | 9/11/2011 | Email from T. Niehaus to T. Whatman, subject Redistricting "tweaks" | LWVOH_00018297 |
| P585 | 9/11/2011 | Email from Chris Widener to President Niehaus and others re Clark County | LWVOH_00018318 |
| P586 | | Chart, Election Results (Breakdown in the districts between Turner and Austria) | NRCC000018 |
| P587 | 9/12/2011 | Email from R. DiRossi to A. Kincaid, subject Ohio final map with possible Stivers addition | LWVOH_00018322-25 |
| P588 | 3/31/2011 | Chart, Ohio Changes | NRCC000012 |
| P589 | | District 16 maps | NRCC000017 |
| P590 | | Chart, Ohio Changes | NRCC000013 |
| P591 | | Colored Map with sixteen districts and counties | NRCC000015 |
| P592 | 10/27/2011 | Maptitude screenshot, 10-27-11 Adam New Map.map - 2010 Final Census Blocks (Ohio) | BLESSING0012635 [10-27-11 Adam New Map]_001 |
| P593 | | Turner-Austria Option Talking Points | LWVOH_00008616 |
| P594 | | Talking Points for Speaker Boehner | NRCC000016 |
| P595 | | Spreadsheet with tables and column Turner/Austria | LWVOH_0018333 |
| P596 | 10/19/2011 | Chart, HB319 | NRCC000014 |
| P597 | 11/2/2011 | Table HB 319 Unified Indexes/Proposal Unified Indexes | DIROSSI_0000142 |
| P598 | 12/28/2018 | Cooper Third Supplemental Declaration | Previously Disclosed (Cooper) |

# APPENDIX M

**Appendix M**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| OHIO A. PHILIP RANDOLPH INSTITUTE, ) | |
| LEAGUE OF WOMEN VOTERS OF OHIO, ) | |
| THE OHIO STATE UNIVERSITY COLLEGE ) | |
| DEMOCRATS, NORTHEAST OHIO YOUNG ) | |
| BLACK DEMOCRATS, HAMILTON COUNTY ) | |
| YOUNG DEMOCRATS, LINDA GOLDENHAR, ) | |
| DOUGLAS BURKS, SARAH INSKEEP, ) | |
| CYNTHIA LIBSTER, KATHRYN DEITSCH, ) | |
| LUANN BOOTHE, MARK JOHN GRIFFITHS, ) | |
| LAWRENCE NADLER, CHITRA WALKER, ) | |
| TRISTAN RADER, RIA MEGNIN, ) | No. 1:18-cv-00357-TSB |
| ANDREW HARRIS, AARON DAGRES, ) | |
| ELIZABETH MYER, BETH HUTTON, ) | Judge Timothy S. Black |
| TERESA THOBABEN, ) | Judge Karen Nelson Moore |
| and CONSTANCE RUBIN, ) | Judge Michael H. Watson |
| ) | Magistrate Judge Karen L. Litkovitz |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| RYAN SMITH, Speaker of the Ohio House ) | |
| of Representatives, LARRY OBHOF, ) | |
| President of the Ohio Senate, and ) | |
| JON HUSTED, Secretary of State of Ohio, ) | |
| in their official capacities, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**DEFENDANTS' INITIAL TRIAL EXHIBIT LIST**

| Trial Exhibit # | Description | Case/Deposition Reference |
|---|---|---|
| D1 | Map of H.B. 369 Plan | |
| D2 | Map of H.B 319 Plan | |
| D3 | Map of Enacted Congressional Plan Used in 2002 through 2012 Election Cycles | |

1

| | | |
|---|---|---|
| D4 | Official Secretary of State Election Return Data for 2002 General Election (Statewide and Congressional Races) | https://www.sos.state.oh.us/elections/election-results-and-data/2002-elections-results/ |
| D5 | Official Secretary of State Election Return Data for 2004 General Election (Statewide and Congressional Races) | https://www.sos.state.oh.us/elections/election-results-and-data/2004-elections-results/ |
| D6 | Official Secretary of State Election Return Data for 2006 General Election (Statewide and Congressional Races) | https://www.sos.state.oh.us/elections/election-results-and-data/2006-elections-results/ |
| D7 | Official Secretary of State Election Return Data for 2008 General Election (Statewide and Congressional Races) | https://www.sos.state.oh.us/elections/election-results-and-data/2008-election-results/ |
| D8 | Official Secretary of State Election Return Data for 2010 General Election (Statewide and Congressional Races) | https://www.sos.state.oh.us/elections/election-results-and-data/2010-elections-results/ |
| D9 | Official Secretary of State Election Return Data for 2012 General Election (Statewide and Congressional Races) | https://www.sos.state.oh.us/elections/election-results-and-data/2012-elections-results/ |
| D10 | Official Secretary of State Election Return Data for 2014 General Election (Statewide and Congressional Races) | https://www.sos.state.oh.us/elections/election-results-and-data/2014-elections-results/ |
| D11 | Official Secretary of State Election Return Data for 2016 General Election (Statewide and Congressional Races) | https://www.sos.state.oh.us/elections/election-results-and-data/2016-official-elections-results/ |
| D12 | Official Secretary of State Election Return Data for August 8, 2018 Special Election for Congressional District 12 | https://www.sos.state.oh.us/elections/election-results-and-data/2018-official-elections-results/ |
| D13 | Official Secretary of State Election Return Data for 2018 General Election (Statewide and Congressional Races) | https://www.sos.state.oh.us/elections/election-results-and-data/2018-official-elections-results/ |
| D14 | 9/15/2011 - Ohio House and Senate Session Transcripts (Parts 1 & 2) with Errata Sheet | |
| D15 | 9/21/2011 - Ohio House Session Transcript with Errata Sheet | |
| D16 | 9/21/2011 - Ohio Senate Session Transcript with Errata Sheet | |
| D17 | 11/3/2011 - Ohio House Session Transcript with Errata Sheet | |
| D18 | 12/14/2011 - Ohio House Session Transcript with Errata Sheet | |
| D19 | 12/14/2011 - Ohio Senate Session Transcript with Errata Sheet | |

| D20 | Expert Report of M.V. Hood, III (11/12/2018) | Hood Exhibit 1 |
|---|---|---|
| D21 | Supplemental Expert Report of M.V. Hood III (12/28/2018) | |
| D22 | Expert Report of Douglas Johnson, Ph.D. (11/10/2018) | Johnson Exhibit 1 |
| D23 | Resume of Douglas Johnson, Ph.D. | Johnson Exhibit 2 |
| D24 | Rebuttal Report of Janet R. Thornton, Ph.D. | Thornton Exhibit 1 |
| D25 | Chart - "District/Plaintiff's Original Districts" Dr. Cho's 3+ Million Outcome for Plaintiffs Revised Districts, Percentage from 2008-2010 Statewide Elections | Thornton Exhibit 8 |
| D26 | Expert Report of Sean Trende (11/12/2018) | Trende Exhibit 1 |
| D27 | Curriculum Vitae of Sean Trende | Trende Exhibit 5 |
| D28 | 2/12/2018 - E-mail from Brad Wenstrup to Burks, Bates-Stamped INDPLTS_0015960 | Burks Exhibit 2 |
| D29 | 3/7/2018 - E-mail from Douglas Burks to Rapach, Smith and Others, Bates-Stamped INDPLTS_0015983 | Burks Exhibit 3 |
| D30 | 3/7/2018 - FCNL memo, Bates-Stamped INDPLTS_0015984-15985 | Burks Exhibit 4 |
| D31 | 8/23/2018 - E-mail from Douglas Burks to Wenstrup, Bates-Stamped INDPLTS_0016034 | Burks Exhibit 6 |
| D32 | 2/28/2018 - E-mail from Douglas Burks to Rapach, Bates-Stamped INDPLTS_0016084 | Burks Exhibit 9 |
| D33 | 5/23/2018 - E-mail from Douglas Burks to Paul Moke, Bates-Stamped INDPLTS_0016023-16025 | Burks Exhibit 11 |
| D34 | 5/23/2018 - E-mail from Douglas Burks to steve@careerfastrack.com, Bates-Stamped INDPLTS_0016093-16094 | Burks Exhibit 12 |
| D35 | Address-searchable Google map of Ohio 2012 Plan | Dagres Exhibit 2 |
| D36 | Address-searchable Google map of Ohio Proposed Remedial Plan | Dagres Exhibit 4 |
| D37 | Comments from Aaron Dagres, Bates-Stamped INDPLTS_0013073 | Dagres Exhibit 6 |
| D38 | 7/14/2018 - E-Mail from Patrick Barnacle to Aaron Dagres, Bates-Stamped INDPLTS_0002971-2995 | Dagres Exhibit 14 |
| D39 | 11/17/2016 - E-mail from Kathy Deitsch to Debbie Sneddon and others, Bates-Stamped INDPLTS_0018871-18874 | Deitsch Exhibit 2 |
| D40 | 10/31/2017 - E-mail from Kathy Deitsch to Rep48@ohiohouse.gov and Others, Bates-Stamped INDPLTS_0024143-24144 | Deitsch Exhibit 6 |
| D41 | 4/29/2018 - E-mail from Kathy Deitsch to newsroom@dailystandard.com, Bates-Stamped INDPLTS_0021432 | Deitsch Exhibit 7 |

| D42 | 5/25/2018 - E-mail from Kathy Deitsch to Catherine Turcer and others, Bates-Stamped INDPLTS_0021536-21537 | Deitsch Exhibit 8 |
|---|---|---|
| D43 | 8/31/2018 - E-mail from Kathy Deitsch to mrotondorn@yahoo.com, Bates-Stamped INDPLTS_0021692 | Deitsch Exhibit 10 |
| D44 | 5/30/2018 - E-mail from Kathy Deitsch to adkinsandaffilies@yahoo.com, Bates-Stamped INDPLTS_0022390-22391 | Deitsch Exhibit 12 |
| D45 | 1/24/2018 - M. Griffiths' Statement to Government Oversight and Reform Committee, Bates-Stamped INDPLTS_0000173 | Griffiths Exhibit 4 |
| D46 | 1/22/2018 - E-Mail from Megan Griffiths to Mark Griffiths Re: Draft Version of M. Griffiths' 1/4/2018 Statement to Government Oversight and Reform Committee, Bates-Stamped INDPLTS_0001279-1280 | Griffiths Exhibit 5 |
| D47 | 11/3/2017 - Letter to the Editor - Elyria Chronicle, Bates-Stamped INDPLTS_0001114 | Griffiths Exhibit 6 |
| D48 | M. Griffiths' Notes Re: Mileage to representatives, Bates-Stamped INDPLTS_0000161-162 | Griffiths Exhibit 7 |
| D49 | Lorain Chronicle Letter to the Editor "Gerrymandering Must be Stopped", Bates-Stamped INDPLTS_0001116 | Griffiths Exhibit 8 |
| D50 | Warbaugh Campaign - Tally Sheet- Ohio 7th County (Lorain), Bates-Stamped INDPLTS_0003100-3103 | Griffiths Exhibit 10 |
| D51 | 5/29/2018 - E-Mail chain from Alison Ricker to Hutton regarding the lawsuit, Bates-Stamped INDPLTS_0026808-26809 | Hutton Exhibit 1 |
| D52 | Written Statement, Larry Nadler, Bates-Stamped INDPLTS_0002909 | Nadler Exhibit 1 |
| D53 | Notice of 30(b)(6) deposition of League of Women Voters of Ohio | Miller Exhibit 1 |
| D54 | Ohio Redistricting Transparency Report The Elephant in the Room, Bates-Stamped LWVOH_00018400-18421 | Miller Exhibit 2 |
| D55 | Plaintiffs' Privilege Log | Miller Exhibit 3 |
| D56 | Ohio redistricting reform history, Bates-Stamped LWVOH_0074306 | Miller Exhibit 4 |
| D57 | 11/26/2012 - Letter from Dina Schoomaker and Linda Slocum to William Batchelder and Vernon Sykes, Bates-Stamped LWVOH_0022920 | Miller Exhibit 5 |
| D58 | 11/25/2014 - Press Release, A. Henkener, C. Turcer, Bates-Stamped LWVOH_0086183-86184 | Miller Exhibit 6 |
| D59 | Plaintiffs' responses and objections to legislative defendants' first set of interrogatories and first set of requests for production of documents | Miller Exhibit 7 |

| D60 | 4/30/2015 - E-mail chain from A. Henkener to C. Turcer, R. Gunther, Bates-Stamped LWVOH_0050826-50827 | Miller Exhibit 8 |
|---|---|---|
| D61 | 7/23/2015 - E-mail chain from A. Henkener to C. Davis, Bates-Stamped LWVOH_0050401-50404 | Miller Exhibit 9 |
| D62 | PowerPoint- Ohio Redistricting Competition, Bates-Stamped LWVOH_0074117-74132 | Miller Exhibit 10 |
| D63 | Brennan Center for Justice Don't Judge a Book by Its Cover Alone document, Bates-Stamped LWVOH_0044874-44875 | Miller Exhibit 11 |
| D64 | Ohio redistricting competition rules and scoring 2011, Bates-Stamped LWVOH_0044516-44533 | Miller Exhibit 12 |
| D65 | Document - Membership Surge Continues Statewide, Bates-Stamped LWVOH_0099889-99890 | Miller Exhibit 13 |
| D66 | Individual independent contractor agreement between Ohio Environmental Council Action Fund, Inc. and League of Women Voters of Ohio, Bates-Stamped LWVOH_0095013-95015 | Miller Exhibit 17 |
| D67 | Notice of 30(b)(6) Deposition of Ohio State University College Democrats | Oberdorf Exhibit 1 |
| D68 | Notice of 30(b)(6) Deposition of Ohio A. Philip Randolph Institute | Washington Exhibit 1 |
| D69 | 11/8/2011 -  Election Campaign Report, Bates-Stamped OAPRI_0000047 | Washington Exhibit 8 |
| D70 | APRI Columbus Chapter Monthly Report, Bates-Stamped OAPRI_0000049 | Washington Exhibit 9 |
| D71 | Letter from David Morgan to the APRI State Educational Conference, Bates-Stamped OAPRI_0000059 | Washington Exhibit 10 |
| D72 | 12/9/2011 - E-mail from Delores Freeman to Andre Washington, Bates-Stamped OAPRI_0000066 | Washington Exhibit 11 |
| D73 | Plaintiff Ohio A. Philip Randolph Institute's responses and objections to legislative defendants' first set of interrogatories and first set of requests for production of documents | Washington Exhibit 12 |
| D74 | 12/9/2011 - E-mail from Kimberly Daniels to Andre Washington, Bates-Stamped OAPRI_0000031 | Washington Exhibit 13 |
| D75 | Document - The Toledo Federation of Teachers Salutes the Ohio A. Philip Randolph Institute, Bates-Stamped OAPRI_0000033 | Washington Exhibit 14 |
| D76 | Letter from Andre Washington to sisters and brothers, Bates-Stamped OAPRI_0000035-36 | Washington Exhibit 15 |
| D77 | 1/6/2011 - E-mail from Andre Washington to all APRI chapters, Bates-Stamped OAPRI_0000067-68 | Washington Exhibit 16 |
| D78 | A Philip Randolph Institute - People Get Ready: 2012 Is Coming, Our One Year Plan, Bates-Stamped OAPRI_0000128 | Washington Exhibit 17 |

| D79 | Document - Youngstown APRI chapter, Bates-Stamped OAPRI_0000135 | Washington Exhibit 18 |
| D80 | Ohio Unity 2018 black voter empowerment campaign, Bates-Stamped OAPRI_0000145 | Washington Exhibit 19 |

# APPENDIX N

Appendix N
Intervenors' Trial Exhibit List

| Exhibit Number | Document Description | Document Date | Bates Number | Deposition | Deposition Exhibit Number | Objection |
|---|---|---|---|---|---|---|
| | Wendy K. Tam Cho, Ph.D. Curriculum Vitae | | | Wendy K. Tam Cho, Ph.D. | Exhibit 1 | |
| | Wendy K. Tam Cho, Ph.D. Expert Report (10/5/2018) | October 5, 2018 | | Wendy K. Tam Cho, Ph.D. | Exhibit 2 | |
| | Wendy K. Tam Cho, Ph.D. Rebuttal Expert Report (11/26/2018) | November 26, 2018 | | Wendy K. Tam Cho, Ph.D. | Exhibit 3 | |
| | Confidential Source Code | | | Wendy K. Tam Cho, Ph.D. | Exhibit 4 | |
| | 10/12/18 - Letter from E. Zhang to P. Lewis, et al. Re: Ohio A. Philip Randolph Institute v. Smith | October 12, 2018 | | Wendy K. Tam Cho, Ph.D. | Exhibit 5 | |
| | Dr. Cho's Run Output File | | | Wendy K. Tam Cho, Ph.D. | Exhibit 6 | |
| | Wendy K. Tam Cho, Ph.D. Supplemental Expert Report (12.28.18) | December 28, 2018 | | Wendy K. Tam Cho, Ph.D. | | |
| | 10/9/2018 - Letter from N. Subhedar to P. Lewis, et al. Re: Ohio A. Philip Randolph Institute v. Smith | October 9, 2018 | | Wendy K. Tam Cho, Ph.D. | | |
| | Native of Dr. Cho's Run Output File- File Name "run1.txt" | | | Wendy K. Tam Cho, Ph.D. | | |
| | Errata to Wendy K. Tam Cho, Ph.D Expert Report (10/18/2018) | October 18, 2018 | | Wendy K. Tam Cho, Ph.D. | | |
| | Declaration of William S. Cooper (10/5/2018) (also Niven Exhibit 10) | October 5, 2018 | | William S. Cooper | Exhibit 1 | |
| | Brennan Center for Justice Overview: Ohio Redistricting Reform Proposal | February 2018 | | William S. Cooper | Exhibit 2 | |
| | Ohio U.S. House Zero Deviation 2012 Plan | | | William S. Cooper | Exhibit 3 | |
| | Ohio U.S. House Proposed Remedial Plan | | | William S. Cooper | Exhibit 4 | |
| | Exhibit A - Documents Re: William S. Cooper Declaration | | | William S. Cooper | Exhibit 5 | |
| | Errata to Declaration of William S. Cooper (11/30/2018) | November 30, 2018 | | William S. Cooper | Exhibit 6 | |
| | Ohio U.S. House Proposed Remedial Plan 11/30/2018 Mod | November 30, 2018 | | William S. Cooper | Exhibit 7 | |
| | Supplemental Declaration of William S. Cooper (11/26/2018) | November 26, 2018 | | William S. Cooper | Exhibit 8 | |
| | Second Supplemental Declaration of William S. Cooper (11/27/2018) | November 27, 2018 | | William S. Cooper | Exhibit 9 | |
| | Ohio U.S. House Zero Deviation Hypothetical Plan 1A | | | William S. Cooper | Exhibit 10 | |
| | Ohio U.S. House Zero Deviation Hypothetical Plan 2A | | | William S. Cooper | Exhibit 11 | |
| | Demonstrative Re: 2012, 2014, 2016 AVG | | | William S. Cooper | Exhibit 12 | |
| | Third Supplemental Declaration of William S. Cooper (12.28.18) | December 28, 2018 | | William S. Cooper | | |
| | Lisa Handley Expert Report (10/5/2018) | October 5, 2018 | | Lisa Handley | Exhibit 1 | |
| | Lisa Handley Expert Report (U.S. v. City of Euclid) (2/1/2007) | February 1, 2007 | | Lisa Handley | Exhibit 2 | |
| | Lisa Handley Rebuttal Expert Report (U.S. v. City of Euclid) (5/10/2007) | May 10, 2007 | | Lisa Handley | Exhibit 3 | |
| | Lisa Handley Expert Report (U.S. v. Euclid City School District) (3/1/2009) | March 1, 2009 | | Lisa Handley | Exhibit 4 | |
| | Lisa Handley Rebuttal Expert Report (U.S. v. Euclid City School District) (4/15/2009) "Declaration of Dr. Lisa R. Handley" | April 15, 2009 | | Lisa Handley | Exhibit 5 | |
| | Analysis of 2009 Election for Euclid City School Board District Board of Education | March 5, 2010 | | Lisa Handley | Exhibit 6 | |
| | Rebuttal to Engstrom Report (U.S. v. Euclid City School District) (7/22/2010) "Declaration of D. Lisa R. Handley" | July 22, 2010 | | Lisa Handley | Exhibit 7 | |
| | 2009 Paper - Legislative Studies Quarterly " Has the Voting Rights Act Outlived its Usefulness? In a Word, "No" - by Lublin, Brunell, Grofman, Handley | November 1, 2009 | | Lisa Handley | Exhibit 8 | |
| | David H. Niven, Ph.D. Expert Report (10/5/2018) - Dividing Neighbors and Diminishing Voices: An Analysis of Ohio's Congressional Districts | October 5, 2018 | | David Niven, Ph.D. | Exhibit 1 | |
| | David H. Niven, Ph.D. Curriculum Vitae | October 2018 | | David Niven, Ph.D. | Exhibit 2 | |
| | David H. Niven, Ph.D. Response to Thornton and Brunell (11/26/2018) | November 26, 2018 | | David Niven, Ph.D. | Exhibit 3 | |
| | Rebuttal Expert Report of Janet R. Thornton, Ph.D. (11/12/2018) | November 12, 2018 | | David Niven, Ph.D. | Exhibit 4 | |
| | Geographic Terms and Concepts - Census Tract [www.census.gov] | December 18, 2018 | | David Niven, Ph.D. | Exhibit 5 | |
| | Niven Save File Exports | | | David Niven, Ph.D. | Exhibit 6 | |
| | Ohio Congressional District Map, 2002-2012 | | SOS_001054 | David Niven, Ph.D. | Exhibit 7 | |
| | Ohio Congressional District Map, 2012-2022 | | | David Niven, Ph.D. | Exhibit 8 | |
| | davidniven.com Website Printout | | | David Niven, Ph.D. | Exhibit 11 | |
| | HarperCollins Publishing Website - Printout Re: David Niven | December 19, 2018 | | David Niven, Ph.D. | Exhibit 12 | |
| | Niven Tweets, 12/12/2017 | December 12, 2017 | | David Niven, Ph.D. | Exhibit 13 | |
| | Niven Tweets, 11/16/2017 | November 16, 2017 | | David Niven, Ph.D. | Exhibit 14 | |
| | Niven Tweets, 3/6/2018 | March 6, 2018 | | David Niven, Ph.D. | Exhibit 15 | |
| | Niven Tweets, 11/14/2018 | November 14, 2018 | | David Niven, Ph.D. | Exhibit 16 | |
| | Niven Tweets, 6/13/2018 | June 13, 2018 | | David Niven, Ph.D. | Exhibit 17 | |
| | Christopher Warshaw Expert Report (10/5/2018) "An Evaluation of the Partisan Bias in Ohio's 2011 Congressional Districting Plan and its Effects on Representation in Congress" | October 5, 2018 | | Christopher Warshaw | Exhibit 1 | |
| | Figure 1 Ohio Partisan Distribution 2004 to 2010 | | | Christopher Warshaw | Exhibit 2 | |
| | Figure 7 Ohio Partisan Distribution 2012 to 2016 | | | Christopher Warshaw | Exhibit 3 | |
| | Essay by Wendy Cho "Measuring Partisan Fairness: How Well Does the Efficiency Gap Guard Against Sophisticated As Well As Simple Minded Modes of Partisan Discrimination" | | | Christopher Warshaw | Exhibit 4 | |
| | Figure 5 Cleveland Area | | | Christopher Warshaw | Exhibit 5 | |
| | Christopher Warshaw Rebuttal Report (11/26/2018) | November 26, 2018 | | Christopher Warshaw | Exhibit 6 | |
| | Christopher Warshaw Expert Report (11/27/2017) in League of Women Voters of Pennsylvania v. the Commonwealth of Pennsylvania, 159 MM 2017 (Pa.) | November 27, 2017 | | Christopher Warshaw | Exhibit 7 | |
| | Christopher Warshaw Expert Report (6/12/018) Michigan case in League of Women Voters of Michigan v. Johnson, No. 2:2017cv14148 (E.D. Mich.) | June 1, 2018 | | Christopher Warshaw | Exhibit 8 | |
| | 2017 Article of Gregory Warrington "Quantifying gerrymandering using the vote distribution" (5/15/2017) | May 15, 2017 | | Christopher Warshaw | Exhibit 9 | |
| | U.S. House of Representatives Roll Call Votes 114th Congress - 1st Session (2015) | November 29, 2018 | | Christopher Warshaw | Exhibit 10 | |
| | VoteView.com - Lindsay Graham Entry | | | Christopher Warshaw | Exhibit 11 | |
| | Pew Research Center Article "From the very start, sharp partisan divisions over Obamacare" (6/25/2015) | June 25, 2015 | | Christopher Warshaw | Exhibit 12 | |
| | Christopher Warshaw Supplemental Expert Report (12.28.18) | December 28, 2018 | | Christopher Warshaw | | |
| | Expert Report of Thomas Brunell (11/12/2018) (also Niven Exhibit 4) | November 12, 2018 | | Thomas Brunell | Exhibit 1 | |
| | July 20, 2011 Columbus Regional Hearing Testimony- File Name "2011-07-20 Columbus Regional Hearing Testimony.pdf" | July 20, 2011 | DIROSSI_0000151-201 | | | |
| | House Bill 319 Rep. Matt Huffman Sponsor Testimony- File Name "2011-09-13 Huffman Sponsor Testimony.docx" | | LENZO_000041-42 | | | |
| | H.B. 369 Rep. Matt Huffman Sponsor Testimony | | | Matthew Huffman | Exhibit 19 | |
| | Ohio House Republican Caucus, How the Problem Started- File Name "MCGREGOR000001-MCGREGOR000007.pdf" | | MCGREGOR000002-7 | Troy Judy | Exhibit 30 | |
| | OHIO House of Representatives JOURNAL Thursday, September 15, 2011, available at http://archives.legislature.state.oh.us/JournalText129/HJ-09-15-11.pdf | September 15, 2011 | | | | |
| | OHIO House of Representatives JOURNAL Wednesday, September 21, 2011, available at http://archives.legislature.state.oh.us/JournalText129/HJ-09-21-11.pdf | September 21, 2011 | | | | |
| | OHIO House of Representatives JOURNAL CORRECTED VERSION Wednesday, December 14, 2011, available at http://archives.legislature.state.oh.us/JournalText129/HJ-12-14-11.pdf | December 14, 2011 | | | | |
| | OHIO SENATE JOURNAL Wednesday, September 21, 2011, available at http://archives.legislature.state.oh.us/JournalText129/SJ-09-21-11.pdf | September 21, 2011 | | | | |
| | OHIO SENATE JOURNAL Wednesday, December 14, 2011, available at http://archives.legislature.state.oh.us/JournalText129/SJ-12-14-11.pdf | December 14, 2011 | | | | |
| | Screenshot of Original Map Produced in Maptitude [Original_CD01] and associated native files | | GLASSBURN_0020 | Christopher Glassburn | Exhibit 21 | |
| | Maptitude screenshot - HB 369 Map Revised December 14th.map - 2010 Final Census Blocks (Ohio)(Template) [Map Revised December 14th]_001 and associated native files | | BLESSING0012635 | Heather Blessing | Exhibit 13 | |
| | Demonstrative Exhibit – Maptitude Comparison of 319 to 369 | | | | | |
| | File Name "FINAL HB 319.map" and associated files | | BLESSING0000003170 | | | |
| | File Name "HB 319 As Enacted - Congressional Districts.map" and associated files | | BLESSING0000008229 | | | |
| | File Name "HB 369 as Enacted FINAL.map" and associated files | | BLESSING0000002450 | | | |
| | File Name "HB 369 Map Revised December 14th.map" and associated files | | BLESSING0000007750 | | | |
| | Christopher Glassburn Production: Memorex USB \ 319 Original.map | | | | | |
| | Christopher Glassburn Production: Memorex USB \ OFFICIAL 369 ADOPTED FINAL.map | | | | | |
| | Compromise Proposal to Draw Fair Congressional Districts | | SMC-KM-000363-372 | Matthew Szollosi | Exhibit 5 | |
| | 11/2/2011 - E-Mail chain from McCarthy to Glassburn and Budish | November 2, 2011 | SMC-KM-000263, 409-413 | Matthew Szollosi | Exhibit 6 | |
| | 11/23/2011 - E-Mail chain from McCarthy to Budish | November 23, 2011 | SMC-KM-000184, 167-168 | Matthew Szollosi | Exhibit 8 | |
| | PowerPoint - Summary of Compromise Efforts to Resolve Redistricting Impasse | | SMC-KM-000155-165 | Matthew Szollosi | Exhibit 9 | |
| | 11/18/2011 - E-mail chain from McCarthy to Judy | November 18, 2011 | JUDY_0001655 | Matthew Szollosi | Exhibit 21 | |
| | 12/3/2011 - E-Mail chain from Cherry to McCarthy, Hoyt and Others | December 3, 2011 | SMC-AH-000067-68 | Matthew Szollosi | Exhibit 22 | |
| | 7/11/2011 - E-Mail chain from Bonier to Routt, Burke, Hoyt | July 11, 2011 | SMC-RR-029803 | Randall Routt | Exhibit 3 | |
| | 7/15/2011 - E-Mail Routt to Hoyt | July 15, 2011 | SMC-RR-031375-31378 | Randall Routt | Exhibit 4 | |
| | 7/18/2011 - E-Mail chain from Smoot to Hoyt | July 18, 2011 | SMC-RR-029783 | Randall Routt | Exhibit 5 | |
| | 7/19/2011 - E-Mail chain from Routt to Hoyt | July 19, 2011 | SMC-RR-031366-31368 | Randall Routt | Exhibit 7 | |
| | 7/21/2011 - E-Mail chain from Peterson to Bonier, Routt, Burke and Hoyt | July 21, 2011 | SMC-RR-029095-29096 | Randall Routt | Exhibit 8 | |
| | 9/8/2011 - E-Mail from Routt to Pavan | September 8, 2011 | SMC-RR-028740-28742 | Randall Routt | Exhibit 9 | |
| | 11/17/2011 - E-Mail chain from McCarthy, Rowe and Cherry | November 17, 2011 | SMC-KM-000204, 146-147 | Randall Routt | Exhibit 14 | |
| | 10/31/2011 - E-Mail from Routt to Hoyt | October 31, 2011 | SMC-AH-000137-138 | Randall Routt | Exhibit 15 | |

**Appendix N**
**Intervenors' Trial Exhibit List**

| Exhibit Number | Document Description | Document Date | Bates Number | Deposition | Deposition Exhibit Number | Objection |
|---|---|---|---|---|---|---|
| | 11/1/2011 Maps, E-Mail, Spreadsheet | November 1, 2011 | SMC-RR-000447, 451, 452, 10785, 28680, 28681 | Randall Routt | Exhibit 16 | |
| | 11/3/2011 - Email from Routt to Hoyt and Others | November 3, 2011 | SMC-AH-000267-000303 | Randall Routt | Exhibit 17 | |
| | 11/3/2011 - E-Mail from Routt to Hoyt and Others | November 3, 2011 | SMC-AH-000241-266 | Randall Routt | Exhibit 18 | |
| | 11/3/2011 - E-Mail from Routt to Hoyt and Others | November 3, 2011 | SMC-AH-000220-240 | Randall Routt | Exhibit 19 | |
| | 11/17/2011 - E-Mail from Hoyt to Routt and Others | November 17, 2011 | SMC-RR-028279-28280 | Randall Routt | Exhibit 20 | |
| | 12/9/2011 - E-Mail from Routt, Rowe | December 9, 2011 | SMC-AH-000437-438 | Randall Routt | Exhibit 21 | |
| | 12/14/2011 - Maps, E-Mail chain | December 14, 2011 | SMC-RR-016520, 16522, 16673-16675 | Randall Routt | Exhibit 24 | |
| | 12/14/2011 - E-Mail chain from Routt to Peterson | December 14, 2011 | SMC-RR-028384-28385 | Randall Routt | Exhibit 25 | |
| | 12/22/2011 - E-Mail chain from Routt to Hoyt, Cherry, McCarthy | December 22, 2011 | SMC-AH-000341-346 | Randall Routt | Exhibit 27 | |
| | OAKS Voucher Worksheet, FY 12, Voucher ID: 00004784 | | LENZO_000z404-2415 | Keary McCarthy | Exhibit 3 | |
| | Overview, Objectives, Project Overview | | SMC-KM-000436-438 | Keary McCarthy | Exhibit 5 | |
| | 7/25/2011 - E-Mail chain from Glassburn to McCarthy and Cherry | July 25, 2011 | SMC-KM-000036 | Keary McCarthy | Exhibit 7 | |
| | 8/9/2011 - E-Mail from McCarthy to Budish and Cherry | | SMC-KM-000068 | Keary McCarthy | Exhibit 8 | |
| | 8/5/2011 - E-Mail from McCarthy to Hoyt | | SMC-KM-000067 | Keary McCarthy | Exhibit 9 | |
| | 10/16/2011 - E-Mail from Cherry to McCarthy and Brown | October 16, 2011 | SMC-KM-000226, 399 | Keary McCarthy | Exhibit 13 | |
| | Compromise Proposal to Draw Fair Congressional Districts | | SMC-KM-000363-372 | Keary McCarthy | Exhibit 15 | |
| | 11/2/2011 - E-Mail from McCarthy to Glassburn and Budish | November 2, 2011 | SMC-KM-000263, 174-178 | Keary McCarthy | Exhibit 16 | |
| | 11/10/2011 - E-Mail from McCarthy to Glassburn | November 10, 2011 | SMC-KM-000195, 171-172 | Keary McCarthy | Exhibit 17 | |
| | 11/14/2011 - E-Mail from Glassburn to McCarthy | November 14, 2011 | SMC-KM-000291, 450, 331, 332 | Keary McCarthy | Exhibit 18 | |
| | PowerPoint - Summary of Compromise Efforts | | SMC-KM-000155-165 | Keary McCarthy | Exhibit 20 | |
| | 12/15/2011 - E-Mail chain from Routt to McCarthy and Hoyt | December 15, 2011 | SMC-AH-000335-336 | Keary McCarthy | Exhibit 24 | |
| | 7/16/2018 Letter to Ben Guess from K. Kearny, Heather Taylor-Miesle | July 16, 2018 | | Keary McCarthy | Exhibit 25 | |
| | 7/5/2011 - E-Mail from Glassburn to M. Keary | July 5, 2011 | SMC-KM-000029-30 | Christopher Glassburn | Exhibit 5 | |
| | 2010 Ohio Common and Unified Redistricting Database Technical Documentation_V3_08_10_2011.pdf | | CTRL0000012608 | Christopher Glassburn | Exhibit 7 | |
| | 8/31/2011 - E-Mail from Glassburn to M. Keary, S. Cherry | August 31, 2011 | SMC-KM-000015-16 | Christopher Glassburn | Exhibit 8 | |
| | 9/6/2011 - E-Mail chain from T. Borier to R. Routt, C. Glassburn and Others | September 6, 2011 | SMC-RR-0029994-29995 | Christopher Glassburn | Exhibit 9 | |
| | 9/16/2011 - E-Mail from S. Cherry to Glassburn | September 16, 2011 | SMC-KM-000251-255, 484 | Christopher Glassburn | Exhibit 11 | |
| | Compromise Proposal to Draw Fair Congressional Districts | | SMC-KM-000363-372 | Christopher Glassburn | Exhibit 12 | |
| | 11/2/2011 - E-Mail from K. McCarthy to Glassburn | November 2, 2011 | SMC-KM-000263, 409-413 | Christopher Glassburn | Exhibit 13 | |
| | Major Map Files from 2010-2011 | | CTRL0000011317 | Christopher Glassburn | Exhibit 14 | |
| | Listing of files produced in a folder called Memorex USB\Offers | | | Christopher Glassburn | Exhibit 15 | |
| | Screenshot - Nov 2 Dmap - Block Split-Blcok-Block Group-Tract BOE County | | | Christopher Glassburn | Exhibit 16 | |
| | 11/10/2011 - E-Mail from K. McCarthy | November 10, 2011 | SMC-KM-000195, 171-172 | Christopher Glassburn | Exhibit 17 | |
| | 11/14/2011 - E-Mail from Glassburn to K. McCarthy | November 14, 2011 | SMC-KM-000291, 450, 331, 332 | Christopher Glassburn | Exhibit 18 | |
| | Summary of Compromise Efforts to Resolve Redistricting Impasse… | | SMC-KM-000155-165 | Christopher Glassburn | Exhibit 19 | |
| | 11/23/2011 - E-Mail from K. McCarthy to Glassburn | November 23, 2011 | SMC-KM-000278, 169 | Christopher Glassburn | Exhibit 20 | |
| | Screen Shot_ADOPTED FINAL.map [OFFICIAL_ADOPTED FINAL_CD16]_01-03 | | GLASSBURN_0051 | Christopher Glassburn | Exhibit 22 | |

# APPENDIX O

**APPENDIX O**

## PLAINTIFFS' DEPOSITION TESTIMONY

1. William Batchelder

2. Clark Bensen

3. Heather Blessing

4. Luann Boothe

5. Mark Braden

6. Ray DiRossi

7. Keith Faber

8. Ann Henkener

9. Matthew Huffman

10. Sarah Inskeep

11. Gabrielle Jackson

12. Chris Jankowski

13. Rep. Bill Johnson

14. Rep. Jim Jordan

15. Troy Judy

16. Adam Kincaid

17. Michael Lenzo

18. Cynthia Libster

19. Keary McCarthy

20. John Morgan

21. Lawrence Nadler

22. Tom Niehaus

**APPENDIX O**

23. Alexis Oberdorf

24. Larry Obhof

25. Tristan Rader

26. Randall Routt

27. Constance Rubin

28. Matt Schuler

29. Jim Slagle

30. Rep. Steve Stivers

31. Teresa Anne Thobaben

32. Catherine Turcer

33. Chitra Walker

34. Tom Whatman

# APPENDIX P

**APPENDIX P**

## DEFENDANTS' AND INTERVENORS' DEPOSITION TESTIMONY

1. Heather Blessing

2. Steve Chabot

3. Keith Faber

4. Christopher Glassburn

5. Matt Huffman

6. Bill Johnson

7. Jim Jordan

8. Mike Lenzo

9. Keary McCarthy

10. Tom Neihaus

11. Larry Obhof

12. Randall Routt

13. Matt Schuler

14. Steve Stivers

15. Matthew Szollosi

16. All Individual Plaintiffs and Rule 30(b)(6) Designees of Organizational Plaintiffs