# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| OHIO A. PHILIP RANDOLPH INSTITUTE, LEAGUE OF WOMEN VOTERS OF OHIO, THE OHIO STATE UNIVERSITY COLLEGE DEMOCRATS, NORTHEAST OHIO YOUNG BLACK DEMOCRATS, HAMILTON COUNTY YOUNG DEMOCRATS, LINDA GOLDENHAR, DOUGLAS BURKS, SARAH INSKEEP, CYNTHIA LIBSTER, KATHRYN DEITSCH, LUANN BOOTHE, MARK JOHN GRIFFITHS, LAWRENCE NADLER, CHITRA WALKER, TRISTAN RADER, RIA MEGNIN, ANDREW HARRIS, AARON DAGRES, ELIZABETH MYER, BETH HUTTON, TERESA THOBABEN, and CONSTANCE RUBIN, | No. 1:18-cv-00357 |
| Plaintiffs, | Judge Timothy S. Black |
| | Judge Karen Nelson Moore |
| v. | Judge Michael H. Watson |
| LARRY HOUSEHOLDER, Speaker of the Ohio House of Representatives, LARRY OBHOF, President of the Ohio Senate, and FRANK LAROSE, Secretary of State of Ohio, in their official capacities, | Magistrate Judge Karen L. Litkovitz |
| Defendants. | |

**DEFENDANTS' EMERGENCY MOTION TO STAY INJUNCTION PENDING APPEAL**

This Court should stay its injunction pending the resolution of the Defendants' appeal to the Supreme Court of the United States. The Supreme Court this Term heard argument in two so-called "partisan gerrymandering" cases: *Rucho v. Common Cause*, 18-422 and *Lamone v. Benisek*, 18-726. Those two cases collectively present precisely the same issues as this case: whether so-

called partisan gerrymanders are unconstitutional; if so, whether those suits are justiciable; and, if they are, what standards the constitutionality of congressional maps are to be judged by. In all likelihood, the Court will issue its decisions on or near the last day of the Term in June.

Whatever the Supreme Court does, it will likely grant relief to the Defendants. First, its jurisdiction is mandatory. Once the Defendants appeal this decision, the Supreme Court will have to decide the appeal. Second, because of the posture in *Rucho* and *Lamone*, the Supreme Court will issue a decision that very likely impact this Court's decision. If the Supreme Court holds that partisan gerrymandering is not unconstitutional, or that such claims are non-justiciable, then it will reverse this Court's decision. And even if the Court holds that the claims *are* justiciable, the Supreme Court will likely vacate this Court's decision for reconsideration in light of whatever test the Supreme Court settles on. The Supreme Court is a "court of review, not of first view." *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005). Thus, it has not traditionally heard argument in redistricting cases that would require it to apply newly announced doctrine in the first instance. For example, in *Gill v. Whitford*, the Supreme Court announced the standing law applicable in that case, but then remanded the case to the district court to apply that law in the first instance. 138 S. Ct. 1916, 1934 (2018). More relevant here, it also vacated and remanded a second partisan-gerrymandering decision that had been stayed pending *Gill*, instructing the district court in that case to reconsider its decision in light of *Gill*. *See Rucho v. Common Cause*, 138 S. Ct. 2679 (2018). If the Court finds that parties may challenge so-called partisan gerrymanders, it is likely to vacate this Court's decision and remand for further review.

In the absence of a stay, the State of Ohio and the public interest will be irreparably harmed. This Court's decision gives the General Assembly until June 14 to repeal the current map and replace it with another. But the Supreme Court is unlikely to decide either *Rucho* or *Lamone* until

the end of June. If the Supreme Court ultimately holds that partisan gerrymandering claims are non-justiciable, or if it issues any other decision that would require reexamination of this Court's decision, then the General Assembly will have been needlessly pressured into either repealing a validly enacted law or wasting resources trying to accommodate a mooted decision. The Court can avoid these consequences by staying its decision.

In support of this motion, the Defendants rely on the facts, law, and argument set forth in their accompanying Brief in Support. Counsel for the Defendants sought concurrence of Plaintiffs' and Intervenors' counsel. Plaintiffs oppose the requested relief, while Intervenors consent to it.

The Defendants respectfully request that this Court order expedited briefing on this issue, so that it may resolve the stay application no later than **Friday, May 10.** This expedited schedule is necessary to allow the Supreme Court to entertain a stay request prior to this Court's June 14 deadline. In order to accommodate that schedule, the Defendants are willing to waive their opportunity for a reply.

WHEREFORE, Defendants respectfully move the Court to stay the injunction in this case pending the resolution of the Defendants' appeal to the Supreme Court of the United States.

Respectfully submitted
DAVID YOST
Ohio Attorney General


By: /s/Phillip J. Strach
Phillip J. Strach*
N.C. State Bar No. 29456
phil.strach@ogletree.com
*Lead and Trial Counsel

By: /s/Michael D. McKnight
Michael McKnight
N.C. State Bar No. 36932
michael.mcknight@ogletree.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
4208 Six Forks Road, Suite 1100
Raleigh, NC 27609
Tel.: (919) 787-9700
Facsimile: (919) 783-9412

*Attorneys for Defendants Householder & Obhof*


/s/ Bridget Coontz
Bridget Coontz
Ohio State Bar No. 0072919
Ann Yackshaw
Ohio State Bar No. 0090623
Ohio Attorney General's Office
Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: (614) 466-2872
Fax: (614) 728-7592
bridget.coontz@ohioattorneygeneral.gov

*Attorneys for Defendants*

Date:  May 6, 2019

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| OHIO A. PHILIP RANDOLPH INSTITUTE, LEAGUE OF WOMEN VOTERS OF OHIO, THE OHIO STATE UNIVERSITY COLLEGE DEMOCRATS, NORTHEAST OHIO YOUNG BLACK DEMOCRATS, HAMILTON COUNTY YOUNG DEMOCRATS, LINDA GOLDENHAR, DOUGLAS BURKS, SARAH INSKEEP, CYNTHIA LIBSTER, KATHRYN DEITSCH, LUANN BOOTHE, MARK JOHN GRIFFITHS, LAWRENCE NADLER, CHITRA WALKER, TRISTAN RADER, RIA MEGNIN, ANDREW HARRIS, AARON DAGRES, ELIZABETH MYER, BETH HUTTON, TERESA THOBABEN, and CONSTANCE RUBIN, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 1:18-cv-00357 |
| Plaintiffs, | ) ) | Judge Timothy S. Black Judge Karen Nelson Moore |
| v. | ) ) | Judge Michael H. Watson |
| LARRY HOUSEHOLDER, Speaker of the Ohio House of Representatives, LARRY OBHOF, President of the Ohio Senate, and FRANK LAROSE, Secretary of State of Ohio, in their official capacities, | ) ) ) ) ) ) ) | Magistrate Judge Karen L. Litkovitz |
| Defendants. | ) ) | |

**BRIEF IN SUPPORT OF EMERGENCY MOTION FOR A STAY PENDING APPEAL**

This Court should stay its judgment pending appeal. The Supreme Court has before it two cases, *Rucho v. Common Cause*, 18-422 and *Lamone v. Benisek*, 18-726, that present precisely the same issues that this case presents. Among other things, both cases call on the Court to address whether challenges to so-called "partisan gerrymanders" are constitutional or justiciable and, if so, by what standards. Once the Court decides those issues, it is likely to either reverse this Court or

to vacate and remand for further proceedings. Yet this Court ordered Ohio's General Assembly to pass a new map for the 2020 election by June 14, which is approximately two weeks earlier than the Supreme Court is likely to issue its decision in those cases. The result? This Court's decision forces Ohio's General Assembly to expend valuable legislative time and effort attempting to address an issue before a court-imposed deadline, even though the issue is likely to become moot just a couple of weeks later. Worse, the decision forces the General Assembly to repeal and replace a duly enacted law before the Supreme Court has a chance to say whether there is any need to do so.

The Supreme Court regularly stays district court redistricting decisions that are likely to be impacted by an upcoming Supreme Court decision. *See, e.g.*, *Gill v. Whitford*, 137 S. Ct. 2289 (2017); *Rucho v. Common Cause*, 138 S. Ct. 923 (2018). Instead of forcing the Supreme Court's hand here, the Court should stay its own decision pending the resolution of the Defendants' appeal to the Supreme Court.

## STANDARD OF REVIEW

Courts will stay a judgment pending a direct appeal to the Supreme Court when there is "a reasonable probability" that the Court will note probable jurisdiction, "a fair prospect that a majority of the Court will vote to reverse the judgment below," and "a likelihood that irreparable harm will result from the denial of a stay." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam); *see also Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (Brennan, J., in chambers). This is really just a specific application of the general four-part test applicable to stays pending appeal, under which courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties

interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

## ARGUMENT

The well-established practice in the Sixth Circuit is to stay a case where the dispositive issue in that case is simultaneously pending before a higher court. *See, e.g.*, *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Kelsey-Hayes Co.*, 795 F.3d 525, 525 (6th Cir. 2015); *United States v. Prisel*, 316 F. App'x 377, 383 (6th Cir. 2008); *Cooey v. Strickland,* 479 F.3d 412, 415 (6th Cir. 2007); *Buckeye Cablevision, Inc. v. United States*, 438 F.2d 948, 950 (6th Cir. 1971); *Thibault v. Wierszewski*, No. 15-CV-11358, 2017 U.S. Dist. LEXIS 164418, at *3 (E.D. Mich. Oct. 4, 2017); *Arab Am. Civil Rights League v. Trump*, No. 17-10310, 2017 U.S. Dist. LEXIS 88546, at *2 (E.D. Mich. Jun. 9, 2017); *United States v. Wells*, No. 98-80994, 2017 U.S. Dist. LEXIS 12902, at *2 (E.D. Mich. Jan. 31, 2017); *Pierson v. DHL Holdings USA, Inc.*, Nos. 12-10176, 12-14393, 2014 U.S. Dist. LEXIS 27045, at *3 (E.D. Mich. Mar. 4, 2014); *United States v. Conception,* No. 88-80523, 2013 U.S. Dist. LEXIS 59851, at *3 (E.D. Mich. Apr. 26, 2013).

There is no reason to depart from that practice here: the Defendants are entitled to a stay pending appeal.

**I.     There is a reasonable probability that the Supreme Court will note probable jurisdiction (or defer the jurisdictional question to the hearing) and a fair prospect that a majority of the Court will vote to reverse.**

The Supreme Court is all but certain to note probable jurisdiction in this case, or even postpone consideration of the jurisdictional question to the hearing on the merits, and quite likely to reverse or vacate once it does.

The Supreme Court will take this case because it arises under the Court's mandatory appellate jurisdiction. 28 U.S.C. § 1253. That statute permits parties to "appeal to the Supreme

Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit, or proceeding required by any Act of Congress to be heard and determined by a district court of three judges." *Id*. The Defendants' appeal, of course, will be from a three-judge district court. The fact that the Supreme Court regularly either notes probable jurisdiction over these types of challenges or sets the jurisdictional issue for argument confirms the substantial nature of the underlying question. *See, e.g.*, *Rucho v. Common Cause*, 139 S. Ct. 782 (2019); *Lamone v. Benisek*, 139 S. Ct. 783 (2019); *Gill v. Whitford*, 137 S. Ct. 2268 (2017); *Benisek v. Lamone*, 138 S. Ct. 543 (2017); *GI Forum v. Perry*, 546 U.S. 1075 (2005); *Vieth v. Jubelirer*, 539 U.S. 957 (2003).

Once the Court takes Defendants' appeal, there is a "fair prospect" that the Court will vote to reverse or vacate. This follows from the fact that the Supreme Court will decide, before the end of June, *Rucho v. Common Cause*, 18-422 and *Lamone v. Benisek*, 18-726. Those two cases collectively present precisely the same issues as this case: whether so-called partisan gerrymanders are unconstitutional; if so, whether those suits are justiciable; and if they are, what standards govern such claims.

There is *at least* a "fair prospect" that the Court in *Rucho* and *Lamone* will hold either that alleged partisan gerrymanders do not violate the Constitution, or that claims challenging their constitutionality are not justiciable. (And to be clear, Ohio does not concede that its map *is* the product of partisan gerrymandering.) A plurality of the Court in 2004 believed these claims to be non-justiciable, *Vieth v. Jubelirer*, 541 U.S. 267, 281 (2004) (plurality op.), while a fifth justice concluded that such claims would be non-justiciable *at least* until someone devised "clear, manageable, and politically neutral standards for measuring the particular burden" on constitutional rights, *id*. at 307–08 (Kennedy, J, concurring in the judgment). Since five justices

8

found against such claims at the time, and since four believed the claims to be *per se* non-justiciable, surely there is at least a "fair prospect" that five justices will reject the challengers' claims this Term too. That is all the more so in light of the fact that, just last year, the Court unanimously recognized that the question whether these claims are justiciable remains open. *Gill*, 138 S. Ct. at 1926.

That conclusion is bolstered by the fact that the Constitution as originally understood did not prohibit so-called partisan gerrymanders. Elected officials have been drawing maps in ways favorable to themselves since the Founding, *see* Op. 159–63—James Madison himself was the target of an attempted partisan gerrymander by his anti-Federalist opponents. *See* Tucker, *Redefining American Democracy: Do Alternative Voting Systems Capture the True Meaning of "Representation"?*, 7 Mich. J. Race & L. 357, 371 (2002). Indeed, the founding generation was familiar enough with the risk that "a faction" might "magnify[] its control through gerrymandering electoral districts" that it gave *Congress* the power to modify state election laws. Prakash & Yoo, *People ≠ Legislature*, 39 Harv. J.L. & Pub. Pol'y 341, 351 (2016); U.S. Const. art. I, § 4. But even though they were familiar with the issue—and even though they were uneasy enough about gerrymandering that they empowered Congress to intervene into state election law via the Election Clause—*no one* at the founding or at the time of the Fourteenth Amendment's ratification suggested that political gerrymanders were unconstitutional or subject to judicial review. Nothing in this Court's opinion suggests otherwise—it establishes that people *disliked* partisan gerrymanders, but not that anyone thought the Constitution empowered courts to fashion a remedy. The fact that alleged partisan-gerrymander claims are unarguably baseless under one of the predominant modes of constitutional interpretation suggests far more than a "fair prospect" that the challengers will fail.

9

What is more, there is a "fair prospect" that the Supreme Court would vacate this Court's decision and remand for further proceedings *even if* it were to recognize some ability to challenge so-called partisan gerrymanders. If the Court finds for the challengers in *Rucho* or *Lamone*, it will announce a test for analyzing the legality of alleged partisan gerrymanders. Since it has failed to do so after more than three decades of attempts, it is unknown what that standard would look like. It is highly unlikely that any such standard would look anything like the vague, standardless "test" adopted by this Court. For example, at oral arguments in *Rucho* and *Lamone*, even Justice Breyer—who has supported the justiciability of these claims in the past—was focused on trying to divine a bright-line, mathematical rule. Justice Breyer asked counsel in *Rucho* whether States could live with a test along the following lines: in the absence of an independent commission, "a gerrymander is unconstitutional if a party … wins a majority of the votes in a state … but the other party gets more than two-third of the seats." *Rucho*, No. 18-422, Oral Arg. Tr. 20:18–22. Given the inherent speculation as to what the Court's test would be (if indeed there is one), there is more than a "fair prospect" that the Court would announce a test different from the standards this Court adopted. If it were to do so, then it would vacate and remand for further proceedings in light of the new test, as it did when it announced its standard on standing in these cases last summer in *Gill*. 138 S. Ct. at 1934. The Supreme Court has repeatedly stated that it is a "court of review, not of first view," *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005), and so it is exceedingly unlikely to apply its test to the facts of this case in the first instance.

The Supreme Court's handling of *Rucho*'s first trip to the Supreme Court confirms the likelihood that it will vacate and remand rather than applying its newly announced rule in the first instance. In *Rucho*, as in this case, the district court held that a state legislature had violated the First and Fourteenth Amendments. *See Common Cause v. Rucho*, 279 F. Supp. 3d 587, 597

10

(M.D.N.C. 2018). In *Rucho*, as in this case, the district court ordered the legislature to draw new maps on a compressed schedule, and declared that it would appoint a special master to do so if the legislature failed to act. *Id.* at 691. And in *Rucho*, as in this case, the district court ordered that relief notwithstanding the fact that the Supreme Court had two partisan gerrymandering cases pending before it—*Gill v. Whitford*, No. 16-1161; *Benisek v. Lamone*, No. 17-333—both of which threatened to moot or force reconsideration of the district court's decision. The Supreme Court, with just two Justices dissenting, "stayed" the lower court's order "pending the timely filing and disposition" of an appeal to the Supreme Court. *Rucho v. Common Cause*, 138 S. Ct. 923 (2018). Then, after it decided *Gill*, it "vacated" the district court's *Rucho* decision and "remanded" it "to the United States District Court for the Middle District of North Carolina for further consideration in light of *Gill v. Whitford*." *See Rucho v. Common Cause*, 138 S. Ct. 2679 (2018). There is no reason to doubt it would take the same approach here.

In the end, one can reasonably debate how the Court will resolve *Rucho* or *Lamone*. But it is beyond reasonable debate that there is at least a "fair prospect" that the Court will resolve both cases in a manner that requires reversal or vacatur of this Court's decision. Or, to put it differently, the Defendants are "likely to succeed on the merits"—certainly likely enough to justify a stay given the irreparable harm that this Court's order poses to Ohio and the public interest. *Nken*, 556 U.S. at 426 (quoting *Hilton*, 481 U.S. at 776). We turn to irreparable harm, the harm to third parties, and the public interest, in the next section.

II. **Ohio will be irreparably harmed absent a stay, and the public interest strongly militates in favor of a stay.**

This Court's decision—and, in particular, its command that the General Assembly pass a new map by June 14—will irreparably harm the State of Ohio.

11

As an initial matter, a State suffers "a form of irreparable injury" every time it is "enjoined by a court from effectuating statutes enacted by representatives of its people." *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)). In recognition of this, the Court typically stays decisions enjoining state laws, provided there is a reasonable prospect of Supreme Court review. *See, e.g.*, *id.*; *Herbert v. Kitchen*, 571 U.S. 1116 (2014); *San Diegans for the Mt. Soledad Nat'l War Mem. v. Paulson*, 548 U.S. 1301, 1303–04 (2006) (Kennedy, J., in chambers). Here, review is certain and there is no reason not to maintain the status quo. For one thing, the irreparable injury associated with injunctions of state law is especially great when a federal court enjoins "districting legislation," as this "represents a serious intrusion on the most vital of local functions." *Miller v. Johnson*, 515 U.S. 900, 915 (1995). For another, the 2020 election is far enough away that this Court can *at least* allow the General Assembly to await the Supreme Court's word about partisan gerrymandering in late June before acting. If indeed the Supreme Court's decision supports this Court's decision, then this Court will have time to settle on a remedy following remand or summary affirmance from the Supreme Court. It could even vacate its stay if the Supreme Court's decision makes the issue sufficiently obvious.

The scope of the Court's order exacerbates the injury. The Court's decision requires both houses of the General Assembly to separately introduce, consider and pass a new congressional districting plan by June 14; and, if they fail to do so, the Court will draw a new map itself. *See* Op. 294–97. But the Supreme Court will likely release its decisions in *Rucho* or *Lamone after* June 14. The parties argued those cases in March, and divided opinions of this magnitude are traditionally released at the very end of the Term, in late June. (Even in *Gill*, in which the Court issued a unanimous judgment, the Court did not issue its opinion until June 18, 2018, even though

it heard argument on October 3 of the previous year. 138 S. Ct. 1916.) The relief this Court ordered thus risks forcing the General Assembly to amend its law unnecessarily, and on an artificially rushed basis. If the Supreme Court ultimately holds that these claims are non-justiciable, or issues any other decision that would require reexamination of this Court's decision, then the General Assembly will have been needlessly pressured into expending energy repealing and replacing a validly enacted law. The People of the State of Ohio will be better served if the General Assembly can go about addressing pressing issues—ranging from the opioid epidemic to the state's biennial budget to education—instead of spending valuable time responding to an opinion that has a high likelihood of becoming moot mere weeks after the June 14 deadline.

It gets worse. Drafting a map that is ultimately unlikely to be used is exceptionally unfair and confusing for voters and candidates. This lawsuit alone has created confusion. If this Court's ruling were to be affirmed, the voters of Ohio will have to vote under at least three different congressional district maps in three consecutive general elections. First, Ohioans voted in 2018 in their current congressional districts. Then, in 2020, Ohioans would vote in different congressional districts produced as a result of this litigation. Finally, in 2022, congressional districts will change yet again because of the decennial census, and Ohioans will have to learn new districts for a third time. There is no telling what would happen if there needs to be a special election before 2020, which perhaps risks disenfranchising Ohio voters. Foisting new districts on voters and candidates in a matter of months will cause irreparable confusion and harm to those voters and candidates, especially if the exercise of creating new congressional districts turns out to be for naught.

The harm to the Defendants and the public is particularly stark in light of the fact that new districts need not be drawn until September 20, 2019 to be implemented in time for the 2020 elections. Doc. 185, PageID 11065. It is not clear why the State and its citizens must be forced

into a truncated, confusing, and difficult map-drawing exercise prior to a ruling in *Rucho* and *Lamone* when there is plenty of time to wait. The Court acknowledged the September 20, 2019 deadline in its Opinion and Order but failed to explain why a plan would need to be enacted even before the end of the Supreme Court's term. *See* Op. 294. Further, 75 percent of Ohioans voting in the May 2018 primary voted to ratify a new constitutional process for redistricting—one that this Court's order ignores, creating the potential for still more confusion.

These are not theoretical concerns. The Supreme Court has noted that lower courts should be mindful of the "considerations specific to election cases" and avoid the very real risks that conflicting court orders changing election rules close to an election may "result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzales*, 549 U.S. 1, 4–5 (2006) (per curiam). Incumbents and candidates for congressional districts under Ohio's existing plan have been planning campaigns in these districts for months, if not years. Drawing new districts before knowing the Supreme Court's action in *Rucho* and *Lamone* will effectively freeze campaigns, disrupt fundraising, and confuse voters. Some candidates who would otherwise run for Congress may opt out because of the confusion. Voters may ultimately fail to participate not understanding which plan is in place. If this final judgment is ultimately vacated (as has every other similar judgment in cases like these the past several years), then the damage cannot be undone.

Once again, the Supreme Court's decision to stay the decision in *Rucho* is instructive. Recall that the district court in that case ordered almost the exact same relief; it required North Carolina to pass a new map in just two weeks, all while *Gill* and *Lamone* were still pending at the Supreme Court. Instead of forcing the North Carolina legislature to risk wasting its time, the

Supreme Court stayed the district court's decision pending appeal. *Rucho*, 138 S. Ct. at 923. There is no good reason not to treat this case identically.

Finally, the failure to issue a stay will critically undermine the public interest in another way: it will confuse the public about the proper role of the federal courts. When the "intelligent man on the street," *see Gill v. Whitford*, No. 16-1161 Oral Arg. Tr. 37:18–19 (Roberts, C.J.), learns that the Court ordered the Ohio General Assembly to re-draw all of its congressional districts even before the Supreme Court has a chance to speak to the issue, he is likely to wonder why. Why could the deadline not have been set for mid-July? Or August, as it was in the recent Michigan case finding a partisan gerrymander? *See League of Women Voters of Mich. v. Benson*, No. 2:17-cv-14148, 2019 U.S. Dist. LEXIS 70167, at *223-24 (E.D. Mich. Apr. 25, 2019). Those dates would permit a redrawing before the 2020 election, and they would do so without any risk that the new map will be passed before the Supreme Court declares the entire exercise unnecessary. While we have no doubt that the Court set this deadline in a good-faith effort to remedy a perceived constitutional violation before the 2020 election, a great many intelligent people on the street may not see things that way. The Court can avoid this perception by simply staying its decision pending appeal, *at least* long enough to see what the Supreme Court decides.

## CONCLUSION

This Court should stay its injunction pending appeal to the Supreme Court.

                                        Respectfully submitted

                                        DAVID YOST
                                        Ohio Attorney General

By: /s/Phillip J. Strach
Phillip J. Strach*
N.C. State Bar No. 29456
phil.strach@ogletree.com
*Lead and Trial Counsel*

By: /s/Michael D. McKnight
Michael McKnight
N.C. State Bar No. 36932
michael.mcknight@ogletree.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
4208 Six Forks Road, Suite 1100
Raleigh, NC 27609
Tel.: (919) 787-9700
Facsimile: (919) 783-9412

*Attorneys for Defendants Householder & Obhof*


/s/ Bridget Coontz
Bridget Coontz
Ohio State Bar No. 0072919
Ann Yackshaw
Ohio State Bar No. 0090623
Ohio Attorney General's Office
Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: (614) 466-2872
Fax: (614) 728-7592
bridget.coontz@ohioattorneygeneral.gov

*Attorneys for Defendants*

Date:  May 6, 2019

## **CERTIFICATE OF SERVICE**

I, Alyssa Riggins, hereby certify that I have this day filed the foregoing document with the CM/ECF system which will provide notice to all counsel of record in this matter including the following:

| | |
|---|---|
| T. Alora Thomas-Lundborg<br>Dale E. Ho<br>Theresa J. Lee<br>Emily Rong Zhang<br>American Civil Liberties Union Foundation<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>Tel.: (212) 549-2500<br>athomas@aclu.org<br>dho@aclu.org<br>tlee@aclu.org<br>erzhang@aclu.org | Freda J. Levenson (0045916)<br>American Civil Liberties Union of Ohio Fdtn.<br>4506 Chester Avenue<br>Cleveland, OH 44103<br>Tel.: (216) 472-2220<br>Facsimile: (216) 472-2210<br>flevenson@acluohio.org<br><br>Paul Moke (0014099)<br>Cooperating Attorney for ACLU of Ohio<br>Wilmington College*<br>1252 Pyle Center<br>Wilmington, OH 45177<br>Tel.: 937-725-7501<br>paul.moke@gmail.com<br>* Institutional affiliation for the purpose of identification only |
| Robert Fram<br>Nitin Subhedar<br>Jeremy Goldstein<br>Covington & Burling LLP<br>415 Mission Street, Suite 4500<br>San Francisco, CA 94105<br>Tel.: (415) 591-6000<br>rfram@cov.com<br>nsubhedar@cov.com<br>jgoldstein@cov.com | Michael Baker<br>Perrin Cooke<br>Peter Rechter<br>Isaac Wood<br>Covington & Burling LLP<br>850 Tenth Street, NW<br>Washington, DC 20001<br>Tel.: (202) 662-6000<br>mbaker@cov.com<br>pcooke@cov.com<br>prechter@cov.com<br>iwood@cov.com<br><br>*Attorneys for Plaintiffs* |

By: /s/Alyssa Riggins
Alyssa Riggins
N.C. State Bar No. 52366
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
4208 Six Forks Road, Suite 1100
Raleigh, NC 27609
Tel.: (919) 787-9700
Facsimile: (919) 783-9412

*Attorney for Defendants Householder & Obhof*

38414582.1

2