# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **Ohio A. Philip Randolph Institute**, *et al.*, | Case No.: 1:18-cv-00357-TSB |
| Plaintiffs, | Judge Timothy S. Black |
| vs. | Judge Karen Nelson Moore |
| | Judge Michael H. Watson |
| **Larry Householder**, Speaker of the Ohio House of Representatives, *et al.*, | Magistrate Judge Karen L. Litkovitz |
| Defendants. | **MEMORANDUM IN SUPPORT OF INTERVENORS' EMERGENCY MOTION FOR STAY PENDING APPEAL** |

## INTRODUCTION

There could hardly be a more clear-cut scenario where a stay pending appeal is warranted. In enjoining Ohio's 2011 congressional redistricting plan, this Court "join[ed] the other federal courts that have held partisan gerrymandering unconstitutional and developed substantially similar standards for adjudicating claims." Opinion and Order, ECF No. 262, at 5. In so doing, this Court adopted the test for evaluating partisan gerrymandering claims set forth in *Common Cause v. Rucho*, 318 F. Supp. 3d 777 (M.D.N.C. 2018), and heavily relied on *Rucho*'s analysis in its decision. *See, e.g.,* Opinion and Order, ECF No. 262, at 150, 170, 262, 284. But none of those "other federal courts" include the Supreme Court, and their decisions have been stayed pending appeal. Furthermore, the Supreme Court's forthcoming partisan-gerrymandering decisions (including in *Rucho*) will speak to the precise questions of this case. Accordingly, the Supreme Court is likely to summarily vacate this Court's injunction and remand for further consideration—no matter what those forthcoming decisions hold. Vacatur, further liability proceedings, and (if necessary) a new remedial time frame are all but certain.

The significant uncertainty of the law governing partisan-gerrymandering claims itself justifies a stay. One of the key criteria employed by the Supreme Court in considering a stay is whether there is a "reasonable probability" that "four Justices will consider the issue sufficiently meritorious to ... note probable jurisdiction." *Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (Brennan, J., in chambers). The Sixth Circuit has deemed a similar inquiry—whether a preliminary injunction movant has established a likelihood of success on the merits—satisfied where there are, at minimum, "serious questions going to the merits" and substantial harm suffered by the adverse party. *Grutter v. Bollinger*, 247 F.3d 631, 633 (6th Cir. 2001) (quotation marks omitted). Here, this Court has itself acknowledged that "the nature of Plaintiffs' rights has been uncertain since the *Vieth* case." Opinion and Order, ECF No. 262, at 289 (*citing Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018).) The Supreme Court is currently considering the very test this Court applied. Consequently, there are, at a minimum, serious questions going to the merits, and a reasonable probability the Supreme Court will note probable jurisdiction in an appeal here. Moreover, both the injunction of a duly enacted statewide redistricting plan and the mandate for remedial proceedings amount to irreparable harm. And the balance of equities weighs in favor of a stay, given the federal intrusion into the state electoral process and the minimal threat to Plaintiffs' interests in event of affirmance.

There is time to let the appeals process play out and enormous advantage to waiting for further guidance from the Supreme Court before proceeding towards a remedy. This Court's injunction is, in short, no different from the ones that have been recently stayed under nearly identical circumstances. A stay is plainly warranted.

Given the Court's tight time frame for remedial proceedings, time is of the essence, and Intervenors request a prompt resolution of this motion so that, if necessary, they may seek a stay

in the Supreme Court. In all events, the Court should rule by this Friday. Toward that end, Intervenors will forego the right to a reply brief.

## GOVERNING STANDARD

By statute, the Supreme Court has jurisdiction over the appeal from this Court's injunction. 28 U.S.C. § 1253. The Supreme Court deems a stay pending appeal appropriate where there is: (1) "a 'reasonable probability' that four Justices will consider the issue sufficiently meritorious to grant certiorari or to note probable jurisdiction"; (2) "a fair prospect that a majority of the Court will conclude that the decision below was erroneous"; and, (3) "a demonstration that irreparable harm is likely to result from the denial of a stay." *Rostker*, 448 U.S. at 1308 (Brennan, J., in chambers); *accord Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam). These are not materially different from the factors the Sixth Circuit applies to stay motions: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay."  *Michigan State A. Philip Randolph Inst. v. Johnson*, 833 F.3d 656, 661 (6th Cir. 2016). These factors "are interconnected considerations that must be balanced together." *Id.*

## ARGUMENT

A. **There Is a Reasonable Probability That the Supreme Court Will Note Probable Jurisdiction and Reverse**

As set forth above, in the related context of preliminary injunctions, the Sixth Circuit has observed that a party seeking relief need not show a certainty of success; it is enough that there are "serious questions going to the merits." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997); *see also Rostker*, 448 U.S. at 1308 (requiring only a "fair prospect" of success). That the questions here are serious is proven by the Supreme Court's

3

current consideration of them and its orders granting stay motions in nearly identical circumstances. *Gill v. Whitford*, 137 S. Ct. 2289 (2017); *Rucho v. Common Cause*, 138 S. Ct. 923 (2018) (granting stay by a 7–2 vote). Indeed, stays were issued as to those lower-court decisions this Court relied on that reached the stay-briefing stage of litigation. *Benisek v. Lamon*, 1:13-cv-3233-JKB, ECF No. 230 (D. Md. filed Nov. 16, 2018) (staying the case pending appeal); *Common Cause v. Rucho*, 2018 WL 4214334, at *1 (M.D.N.C. Sept. 4, 2018); *see also Common Cause v. Rucho*, 1:16-cv-1026, ECF No. 155 (M.D.N.C. Sept. 12, 2018).

As shown below, there is room for substantial doubt on the merits of the Court's ruling. But it bears emphasizing as a threshold matter that the injunction is likely destined for a prompt vacatur for the simple reason that the Supreme Court routinely vacates orders touching upon issues addressed in intervening decisions it hands down. Eugene Gresseman et al., *Supreme Court Practice* 251 & n.31 (9th ed. 2008) (referring to the practice of issuing grant-vacate-reverse, or "GVR," orders as an "expansive" procedure in current Supreme Court practice). *See Rucho v. Common Cause*, 138 S. Ct. 2679 (2018) (vacating and remanding in light of *Gill v. Whitford*, 138 S. Ct. 1916 (2018))[1]; *Cantor v. Personhuballah*, 135 S. Ct. 1699 (2015) (vacating and remanding in light of *Alabama Legislative Black Caucus v. Alabama*, 135 S. Ct. 1257, 1272 (2015)). Because this Court relied so heavily on the *Rucho* and *Benisek* decisions currently under review, *see, e.g.*, Opinion and Order, ECF No. 262, at 132, 133, 137, 138, 145, 148, 150, the Supreme Court is likely to vacate this Court's injunction for reconsideration in light of its decisions in those cases—no matter how they come out. Such a vacatur will deprive the

---

[1] The appellees in *Rucho* argued in a supplemental brief that "[t]here is no need to remand" in light of *Whitford* given evidence on the *Rucho* record that was not on the record in *Whitford*. Supplemental Brief of League of Women Voters of North Carolina et al., at 1, No. 17-1295 (filed June 20, 2018). The arguments were unavailing, and the first *Rucho* injunction was unanimously vacated and remanded.

injunction of ongoing impact or effect. Thus, once *Rucho* comes out, the likely order summarily vacating this Court's injunction will bring to a halt the remedial proceedings, wherever they stand, and require further proceedings on liability, which might include anything from additional briefing, a new trial, or even renewed discovery. The likelihood of vacatur alone counsels in favor of a stay.

Additionally, the Court's order is vulnerable to numerous challenges on appeal—which was inevitable given the lack of clarity surrounding Plaintiffs' claims. The Supreme Court itself has called the "justiciability" of the claims "unresolved," along with their "contours." *Gill*, 138 S. Ct. at 1934. Although Intervenors respect that the Court views its approach to the problem as the best one in light of these circumstances, they respectfully submit that there are "serious questions going to the merits," *Six Clinics Holding*, 119 F.3d at 400, that will necessitate eventual Supreme Court review and a likelihood of reversal, *Hollingsworth*, 558 U.S. at 190. The Court is familiar with Intervenors' arguments from their prior briefing in this case, so they will only summarize here.

First, the Court's conclusion that Plaintiffs have standing does not follow from precedent. Plaintiffs did not show particularized harm from the configurations in their districts, but only identified generalized grievances "about government." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam); Def's and Int's Post-Trial Br. 64–72. It remains unknown how a district's having a higher or lower chance of electing a Democratic or Republican candidate results in a particularized harm, especially given the overwhelming presumption, and evidence presented in this case, that all citizens receive representation from their representative, regardless of partisan affiliation. And the Court's opinion does not distinguish the "packed" from the "cracked" districts or those districts where a Republican or Democratic candidate are likely to prevail in all

5

events, given geography and demographics. Further, Plaintiffs' reliance on some of the same measures identified in *Gill* as inadequate to show individualized harm, *see Gill*, 138 S. Ct. at 1933, underscores the dubious nature of the Court's holding. Moreover, the Court's rulings on organizational statewide standing have no support in precedent, and *Gill* disclaimed any endorsement of these positions. 138 S. Ct. at 1934.

Second, the Court's conclusion that Plaintiffs' claims are justiciable cut against the Supreme Court's warning that courts are "not responsible for vindicating generalized partisan preferences." *Id.* at 1933. The Court's test suffers from the flaws plaguing the very similar tests rejected by five votes in *Vieth*. Def's and Int's Post-Trial Br. 46–52. The intent factor does not provide a manageable standard for identifying how much partisan intent is too much, the effect factor does not provide a manageable standard for identifying how much partisan effect is too much, and the justification factor does not identify what justifications are proper and how much justification is needed (a point underscored by the need to shift the burden to avoid these problems). The analogy to racial cases has been rejected in Supreme Court precedent, and the reliability of social-science metrics to predict future voting patterns has been called into doubt. The Court's three-part burden-shifting test does not address the problem of identifying a "model of fair representation," *Vieth v. Jubelirer*, 541 U.S. 267, 307 (2004) (opinion of Kennedy, J.), necessary for identifying manageable standards for discrete judicial intervention in the state legislatures' constitutionally defined roles. *See, e.g.*, *Chapman v. Meier*, 420 U.S. 1, 27 (1975). That, if nothing else, renders a partisan-gerrymandering claim distinct from a one-person, one-vote claim, which is founded on an established theory of individual equality in representation. The Court's intrusion on a function defined in the Constitution as the prerogative of state

6

legislatures and Congress creates profound separation-of-powers problems. Def's and Int's Post-Trial Br. 44–46.

Third, justiciability concerns aside, Plaintiffs' rights are not grounded in the Constitution. They have identified no suspect classification, rendering rational-basis review applicable to their equal-protection claim, *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985), and all redistricting plans satisfy that standard. Def's and Int's Post-Trial Br. 53–55. Partisan motive does not burden the right to vote, *Crawford v. Marion Cty. Election Board*, 553 U.S. 181, 203–04 (2008), and no independent burden has been identified, since the right to vote does not include the right to elect an individual's preferred candidates. Def's and Int's Post-Trial Br. 54–58. Nor is there a burden on expression or association, since it is undisputed that Plaintiffs can speak and organize, and no retaliation that would deter a person of reasonable firmness from engaging in speech or association has been identified. *Id.* at 58–61. And the Elections Clause, which delegates affirmative power over congressional redistricting to the state legislature and to Congress, cannot be violated when they duly enact facially valid time, place or manner rules. No *ultra vires* act exists where a congressional districting plan identifies the place and manner of elections. *Id.* at 61–64.

Fourth, Plaintiffs failed to satisfy even the test the Court adopted. Incumbents of both parties were protected, and the even-handed protection of both parties' incumbents presents the type of political consideration supported in precedent. *Gaffney v. Cummings*, 412 U.S. 735, 753 (1973). That the considerations were not perfectly identical with those approved in *Gaffney* does not render them beyond the reach of that decision's reasoning. Plaintiffs failed to prove intent or effect, and the Court's shifting of the burden was improper. There was no obligation for the defense to present a strong basis in evidence to draw a majority-minority district or a minority-

7

influence district, and the Court's intrusion on these questions presents yet another improper judicial second-guessing of state policy decisions. *Voinovich v. Quilter*, 507 U.S. 146, 152–56 (1993). Placing the burden on the state to justify disparate partisan impact is legally improper.

Fifth, the Court's ruling on laches makes the remarkable assertion that an equitable defense does not apply to equitable claims, a proposition that cannot square with precedent. *See, e.g.*, *Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980). Intervenors' prejudiced from Plaintiffs' delay is evident from the Court's hearsay rulings, finding information inadmissible (or of limited admissible value) where Intervenors could have overcome these objections with testimony from persons who passed away during Plaintiffs' long period of delay. Plaintiffs' mass destruction of documents also presents a prejudice from their delay.

Intervenors recognize the Court's disagreement with these points, but disagreement on matters entirely unresolved in binding precedent does not negate the likelihood of success for Intervenors on at least *some* of these issues on appeal. It is likely that the Supreme Court will note probable jurisdiction, and there is at least a fair prospect of reversal or vacatur.

**B.     The Equitable Factors Favor a Stay**

Without a stay of the Court's order and the remedial proceedings, irreparable injury is certain. As the Supreme Court recently held, "the [State's] inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018) (citing *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers)); *see also Miller v. Johnson*, 515 U.S. 900, 915 (1995) ("Federal-court review of districting legislation represents a serious intrusion on the most vital of local functions."). Accordingly, the Supreme Court's "ordinary practice is to suspend … injunctions from taking effect pending appellate review" "[w]hen courts declare state laws unconstitutional and enjoin state officials from enforcing them." *Strange v. Searcy*, 135 S. Ct. 940, 940 (2015) (Thomas, J., dissenting) (citing

8

*Herbert v. Kitchen*, 134 S. Ct. 893 (2014), and *San Diegans for Mt. Soledad Nat. War Mem'l v. Paulson*, 548 U.S. 1301 (2006) (Kennedy, J., in chambers)).

The irreparable harm here is compounded because the Ohio legislature "must either adopt an alternative redistricting plan…or face the prospect that the District Court will implement its own redistricting plan." *Karcher v. Daggett*, 455 U.S. 1303, 1306 (1982) (Brennan, J., in chambers) (granting a stay on this basis). That in itself is irreparable harm. The Court's June 14 deadline for a new plan underscores this harm by declaring a date certain for its contemplated usurpation of Ohio's legislative power—a power that finds its origin in the federal Constitution. The June 14 deadline may pass prior to the Supreme Court's issuance of the forthcoming *Rucho* decision, so the legislative effort may conclude and then turn out to be a waste in light of *Rucho*. What's more, if the state legislature were to pass new legislation on the Court's timeline that eventually turned out to be unnecessary, it would be required to pass new legislation to re-enact the 2011 districts into law for the 2020 elections. It makes little sense to proceed with a remedial process before the inevitable remand for further consideration in light of *Rucho*.

"[C]onsiderations specific to election cases" also militate in favor of a stay. *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). The federal-court intrusion into the state election process is disfavored, especially as candidates and voters set their sights on the 2020 election season. For that reason, the Supreme Court has recently granted stays on similar timelines. *Gill v. Whitford*, 137 S. Ct. 2289 (2017) (granting stay on June 19 in an odd-numbered year); *Abbott v. Perez*, 138 S. Ct. 49 (2017) (granting stay on September 12 of an odd-numbered year). Generating new redistricting maps risks sowing chaos and undermining the public interest in an orderly election process. Ohio's voters, after four elections under the 2011 plan, are acclimated to it, and there is no reason to disrupt the relationships between constituents and congressmembers until it is clear

9

that such disruption is necessary. The mere existence of competing congressional plans—after four straight election cycles under the 2011 plan—will create confusion, as it will result in election preparations beginning to proceed on dual tracks. And, if the Supreme Court finds Plaintiffs' claims nonjusticiable or otherwise reverses, the state will revert back to the 2011 plan causing even further confusion.

There is no comparable harm to Plaintiffs from a stay. There is ample time for the Court's injunction to be appealed and decided by the Supreme Court and for remedial proceedings to occur, if necessary, on remand. As discussed, there will very likely be a prompt vacatur in any event, requiring a new round of liability proceedings before the remedial proceedings can even begin. Moreover, there is a possibility of affirmance on some and reversal on other districts, since the Court invalidated *all* of Ohio's congressional districts, and the scope of the remedy would necessarily shift depending on the ultimate ruling. Additionally, the Supreme Court's forthcoming *Rucho* and *Benisek* opinions may shed light on remedial considerations. So a remedial proceeding now may prove useless even if Plaintiffs are successful or partially successful on appeal. It is impossible to make those predictions at this time.

On balance, a stay is the optimal way to proceed with this case. The balance of harms weigh in favor of a stay, as the harm to the State and Intervenors is certain and the potential harm to Plaintiffs is speculative. Clarity from the Supreme Court is essential to knowing whether even the most elementary aspects of this Court's ruling are sound, and that clarity may come as early as June. Then, once *Rucho* and *Benisek* are issued, the Supreme Court will most likely call on this Court to review in the first instance their effect on this case. There is no reason to proceed towards a remedy before that time, given the cost and uncertainty regarding the viability of the Court's ruling.

## **CONCLUSION**

The Court should stay its injunction pending appeal.

Respectfully submitted,
**BAKER & HOSTETLER LLP**

/s/ Patrick T. Lewis
Patrick T. Lewis (0078314)
Trial Attorney
Email: plewis@bakerlaw.com
127 Public Square, Suite 2000
Cleveland, OH  44114-1214
(216) 621-0200 / Fax (216) 696-0740

Robert J. Tucker (0082205)
Email: rtucker@bakerlaw.com
Erika Dackin Prouty (0095821)
Email: eprouty@bakerlaw.com
200 Civic Center Drive, Suite 1200
Columbus, OH  43215-4138
(614) 228-1541 / Fax (614) 462-2616

E. Mark Braden(*)
Email: mbraden@bakerlaw.com
Katherine L. McKnight(*)
Email: kmcknight@bakerlaw.com
Richard B. Raile(*)
Email: rraile@bakerlaw.com
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5403
(202) 861-1500 / Fax (202) 861-1783
(*) admitted pro hac vice

*Counsel for Intervenors*

## **CERTIFICATE OF SERVICE**

I certify that on May 6, 2019, the foregoing was filed via the Court's CM/ECF system and served via electronic filing upon all counsel of record in this case.

/s/ Patrick T. Lewis
Patrick T. Lewis (0078314)
*Counsel for Intervenors*